# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| Soverain Software LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 6:07-CV-00511-LED |
| | ) | |
| CDW Corporation, | ) | |
| Newegg Inc., | ) | |
| Redcats USA, Inc., | ) | |
| Systemax Inc., | ) | |
| Zappos.com, Inc., | ) | |
| Redcats USA, L.P., | ) | |
| The Sportsman's Guide, Inc., and | ) | |
| Systemax Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JACK D. GRIMES, Ph.D.

1.      My name is Jack D. Grimes, and I reside at 7080 Galli Drive, San Jose, CA

95129.  I am an independent consultant.  I am over eighteen years of age, and I am competent in

all respects to make this declaration under oath.

2.      I have been retained by Jones Day, trial counsel to plaintiff Soverain Software

LLC ("Soverain"), as an expert in connection with the above matter.  I have been asked to

review and provide an expert analysis of the statements set forth in the declaration of Todd Lee

dated August 18, 2008 ("Lee declaration"), submitted in support of TigerDirect's position that its

source code be produced in a "clean room" environment in Miami, Florida.

3.      I earned B.S. and M.S. degrees in Electrical Engineering, and a Ph.D. degree in

Electrical Engineering (with a minor in Computer Science), all from Iowa State University.  I

have been active in several professional societies and have worked in the computer field for over thirty years.

4.      Details of my education, work experience, publications, and prior litigation experience are set forth in my curriculum vitae, which is attached as Appendix A.

5.      I have served as an expert in over 40 patent litigations.  While serving as an expert in those litigations, I have on numerous occasions reviewed confidential information including confidential source code.  I have reviewed such confidential information subject to the terms of protective orders and have fully complied with those protective orders.  For example, I served as an expert on infringement for Soverain in the *Soverain Software LLC v. Amazon.com, Inc.*, No. 6:04-CV-14 (E.D. Tex. Aug. 8, 2005) litigation ("*Amazon* litigation").

6.      While serving as an expert in the *Amazon* litigation, I reviewed the confidential source code of defendant Amazon.com, Inc. ("Amazon").  Despite its confidential status, Amazon produced its source code to be reviewed at two offices of Soverain's counsel, Jones Day.  One of those offices was located in Menlo Park, nearby my home in San Jose.  Amazon's source code was highly confidential and was subject to strict restrictions through the protective order entered in that case.

7.      I expect to be asked by Soverain to review and analyze the source code of Systemax and TigerDirect in this case.  I would fully comply with any protective order entered in the present case.

8.      I am based on the West Coast.  It is not practical for me to fly to Miami, Florida each time I have to review source code for a deposition, expert report or declaration.  My work on this case would be hindered by the proposed TigerDirect security procedures.

9.      The Lee declaration states that "[p]hysical review of the source code could allow an unscrupulous individual with the proper skill to achieve a SQL and/or URL based methods of attach which could potentially bring down [TigerDirect's] systems completely."  (Lee declaration at ¶ 5.)  In my experience, source code is never perfect, and therefore, any source code is always subject to attack by an unscrupulous person.  Thus, this statement in the Lee declaration does not distinguish TigerDirect's source code from the source code of any other company or justify producing it only in a "clean room" environment in Miami.

10.      The Lee declaration also states that "[d]ue to the tight integration of our websites with several additional internal private network based systems which maintain purchase information, customer personal information, payment processing and more, physical review of the source code could also potentially allow an individual to determine a methodology to violate the privacy and confidentiality of the company, its suppliers, and millions of its customers."  (*Id.* at ¶ 6.)  This statement describes a situation where an unscrupulous individual tries to "hack" into the computer system to get access to confidential information.  This, too, is a risk for any computer system operator and is not unique to TigerDirect.

11.      It is important to note that Soverain is not requesting access to TigerDirect's running system, only to the source code.  Furthermore, in my experience, it is difficult to believe that the TigerDirect source code would be so poorly designed that it does not properly isolate TigerDirect's "internal private network based systems" containing customer and supplier information from the company's website.

12.      The Lee Declaration does not convince me that TigerDirect's system is appreciably different from that of other e-commerce companies regarding the isolation of customer and supplier information.  For instance, Amazon's websites were integrated with an

- 3 -

internal private network that maintained sensitive data including personal information of customers.  Notwithstanding that fact, Amazon produced its source code isolated from such personal information.

13.     The Lee declaration additionally states that because the code was "developed by multiple development teams, some of which are no longer with the company, [and] on various software platforms[,] . . . there is no uniform documentation describing the source code." (*Id.* at ¶ 7.)  From my experience, significant documentation, even if it is not uniform, is necessary to maintain and update software, fix any bugs, and implement increased security measures such as those required by credit-card companies to process orders paid for with credit cards.

14.     The Lee declaration further states that "[s]ince our source code lacks uniform documentation, we are not able to identify in advance where in the source code are all backdoors." (*Id.* at ¶ 8.)  It is not clear to me that Mr. Lee is using the term "backdoor" in its customary sense.  "Backdoors" are *intentionally* added into code by developers for potential later use by those developers.  Mr. Lee's statement suggests that TigerDirect's backdoors are so secret that even its developers can't locate them.  I find that difficult to accept based on my experience. Furthermore, Mr. Lee does not explain how he knows that these backdoors exist, given that he says they cannot all be located.

15.     For the foregoing reasons, I see nothing in the Lee declaration supporting TigerDirect's position that it's source code is appreciably more vulnerable to attack than the source code of other e-commerce companies and therefore nothing justifying the extraordinary security measures Mr. Lee says are necessary.

16.     I swear under penalty of perjury that the foregoing is true and correct.

- 4 -

Executed in San Jose, California, on September 12, 2008

Jack D. Grimes, Ph.D.

- 5 -