IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 6:07-CV-00511-LED |
| CDW CORPORATION, et al. | ) ) |
| Defendants. | ) ) |

**PLAINTIFF SOVERAIN'S REPLY TO SYSTEMAX AND TIGERDIRECT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF PROTECTIVE ORDER**

Notwithstanding the supposed existence of "backdoors" in Systemax's and TigerDirect's source code, the provisions governing source-code inspection in the current draft protective order provide adequate protection to these defendants without prejudicing Soverain's ability to prepare its case. The other defendants in this case, and Amazon and the Gap in the prior case, have all agreed to the same or similar provisions without insinuating that someone might hack into their systems as a result (really the only basis for Systemax and TigerDirect's position). Those two defendants have shown nothing unique about their systems that justifies the extreme provisions for handling source code that they request. The same is true with respect to the prosecution bar, where all parties except Systemax and TigerDirect have reached agreement, and those defendants have shown no justification for their proposed change. The proposed Protective Order submitted by Soverain therefore should be entered.[1]

---

[1] The currently proposed Protective Order is attached as Exhibit M to Pl. Soverain's Reply to CDW's Response to Pl.'s Motion for Entry of Protective Order, filed concurrently herewith.

NYI-4130619

I.      **Soverain's Proposed Protective Order Provides Sufficient Protections To Safeguard Defendants' Source Code**

The strict source-code provisions proposed by Soverain are outlined in Soverain's opening brief.  D. I. 149 at 4.[2]  Similar provisions were sufficient to protect the source code of Amazon.com and The Gap in prior litigation without any problems arising.  Those same provisions are sufficient to protect the source code of defendants in this case.  Only Systemax and TigerDirect see any problem with those provisions.

A.      **Systemax and TigerDirect's "Backdoor" Argument Does Not Hold Up**

Soverain, its counsel, and its experts have no interest in any "highly sensitive consumer information" of Systemax and TigerDirect's customers.  Nor do those defendants at any time claim that they are unable to produce their source code without also producing this information.  There is thus no need for a "clean room" to avoid production of that information.

While Systemax and TigerDirect toss the word "backdoor" around as if a mere evocation of that term justifies their burdensome proposal, their claim that with production in a clean room "the risk of access to confidential information will be completely eliminated" simply does not make sense.  *See* D. I. 157 at 5.  What defendants fail to explain is that whether the review occurs in a clean room or in Jones Day's offices, the backdoors would still be in the code.  Defendants offer no explanation of how the backdoors would be eliminated by the use of a clean room; rather, they would still exist, and thus still presumably provide entry to the same "highly sensitive" data that Systemax and TigerDirect seek to protect.

Under the guise of providing a "on-site technical assistance" to Soverain, *id.* at 6, Systemax and TigerDirect suggest that they will have a watch dog to look over the shoulders of

---

[2] Systemax and TigerDirect make much of the number of hard copies that may be made for depositions, hearings and trial.  But current language was proposed by counsel for CDW, after Soverain pointed out that the initial proposal of three copies would result in all defendants' counsel sharing one copy (one for the witness, one for Soverain, and one for all defendants).   Soverain is amenable to a cap on the number of copies that may be made, but notes that three will not be sufficient unless Systemax and TigerDirect are willing to forgo their copies.

NYI-4130619

Soverain's reviewers, purportedly to seek out backdoors and disable them before Soverain can put them to use.³  This makes it clear that their argument really boils down to a complete lack of trust in plaintiff's counsel and experts.  Defendants are saying that the individuals reviewing the code under the protective order (*viz.*, Soverain's counsel and experts) are themselves "unscrupulous" and will use the information obtained to gain unauthorized access to defendants' systems and "highly sensitive consumer information," and are further incapable of adhering to the strict protective order provisions, thus putting the source code at risk of somehow falling into the hands of third parties.  This argument is so insubstantial and offensive, it is no surprise that, of all the defendants in the case, only Systemax and TigerDirect are advancing it.

### B. Defendants' Complexity And Lack Of Documentation Arguments Are Exaggerated And In Any Case Irrelevant

Defendants' brief makes much of the supposed complexity of their software and the lack of documentation.  But the deposition of defendants' Rule 30(b)(6) witness establishes otherwise.  For example, Mr. Lee testified that there are at most two software platforms:  one for Systemax and one for TigerDirect.  D. I. 157, Ex. D at 31-32.  And, in contrast to his declaration, Mr. Lee testified that there is much more documentation[4] than has been acknowledged by defendants in their brief or produced by them in discovery.  In any event, the complexity argument is irrelevant, because the backdoor argument it allegedly supports is without merit.

### C. Defendants' "Clean Room" Proposal Is Unrealistic And Unacceptable

---

[3] In asserting that "[i]n order [for Soverain] to successfully continue the review, technical assistance will be necessary," Systemax and TigerDirect claim that the backdoors will "prohibit further navigation or review." D. I. 157 at 6.  This is not possible.  Presumably, the source code will be produced as text files.  Nothing embedded in the code (including any backdoors) could prevent Soverain from navigating to or reviewing other portions of the text.  In any event, Soverain's experts and attorneys are more than capable of reviewing the source code without IT support from defendants.  To the extent Soverain requires further information, it has various discovery tools.

[4] For example, Mr. Lee identified:  (1) software specifications for the TigerDirect and Systemax websites; (2) corporate network maps; (3) e-mails containing information about these websites; (4) flow charts; (5) technical information in the databases; and (6) change histories for the website's software—none of which has been produced to Soverain in this case.  *See*, *e.g.*, D. I. 157, Ex. C at 19-21, 27, 32, 40, Ex. D at 14, 20.

As a plaintiff in a patent infringement case, Soverain is entitled to full discovery of defendants' infringing systems, including inspection of defendants' source code. Defendants supposedly "very generous" offers of access to the code—described at length in their brief— were not that at all, and were therefore not accepted by Soverain. Instead, the proposals reflect defendants' desire to regulate where, when, and precisely how much discovery Soverain will have concerning the operation of defendants' infringing websites.

For example, Soverain has previously advised defendants that requiring Soverain attorneys and experts to travel to Miami to inspect the code is not workable. Defendants have instead offered partial reimbursement for travel costs to Miami, on *one* occasion, limited to three nights and four days, for two attorneys. This is not sufficient access, and is not how discovery works.

Defendants also proffer a stipulation to the definition of "session id," purportedly to eliminate Soverain's need for "non-public information." This is a red herring. In an April 29, 2008 letter, Soverain identified a number of areas where it viewed non-public information as helpful to its infringement case, not merely the "session id" issue. *See* Ex. N (attached hereto). To prepare its case, Soverain needs convenient access to defendants' source code, not defendants' inadequate offers.

## II. There Is No Basis For Systemax And TigerDirect's Proposed Modification To The Patent Prosecution Bar

The change to the prosecution bar proposed by Systemax and TigerDirect is not a "clarification"; it would alter the agreed-upon scope of the bar. The bar, agreed to by Soverain and defendants CDW, Newegg, and Zappos.com, is the result of extensive negotiations and is

sufficient to protect all parties from the misuse of their confidential information.[5]  The additional "modification" by Systemax and TigerDirect—never before discussed—is unnecessary.

The proposed patent prosecution bar is limited to certain types of patent applications and to certain information *actually reviewed*.  *See* Ex. M at ¶ 5.3(a)(i)-(iii).  Namely, it is limited to applications relating, "in whole or in part, to information disclosed in documents, testimony, information and other things designated 'CONFIDENTIAL-RESTRICTED' which said person has reviewed."  *Id.*  The intent is to correlate the scope of the bar to information actually seen, and not some general "topic" unrelated to defendants' actual production.  Systemax and TigerDirect, however, now propose revising section (iii) as follows:

> iii. provided the applications described in (i) and (ii) relate, in whole or in part, to information disclosed in documents, testimony, information and other things designated "CONFIDENTIAL-RESTRICTED" ~~which said person has reviewed~~ **with respect to the claims and subject matter of United States Patents, 5,715,314, 5,909,492 and 7,237,639**.

D. I. 157 at 9 (emphasis added).  Their proposal expands the bar to prohibit the prosecution of any patent applications relating to the patents-in-suit, and includes information not actually reviewed.  The better solution—which limits the bar to reviewed "Confidential-Restricted" information—is the one agreed to by Soverain and defendants CDW, Newegg, and Zappos.com.

### III.  Conclusion

For the foregoing reasons, Soverain's proposed Protective Order should be entered.[6]

---

[5] The current prosecution bar was proposed by counsel for defendants CDW, Newegg, and Zappos.com. Soverain proposed the same prosecution bar entered into in the prior litigation with Amazon.  Soverain remains amenable to entry of the prosecution bar entered in the Amazon litigation also being entered in this case.

[6] Soverain responds separately to the arguments of CDW, *see* D. I. 154, adopted *in toto* by defendants.  *See* Pl. Soverain's Reply to CDW's Response to Pl.'s Motion for Entry of Protective Order, filed concurrently herewith.

Respectfully submitted this 23rd day of October 2008.

<u>/s/ Thomas L. Giannetti (with permission)</u>
Kenneth R. Adamo
State Bar No. 00846960
Lead Attorney
Email: kradamo@jonesday.com
Mark C. Howland
State Bar No. 24027240
Email: mchowland@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: 214-220-3939
Facsimile: 214-969-5100

Thomas L. Giannetti
NY Attorney Reg. No. 1632819
Email: tlgiannetti@jonesday.com
Ognian V. Shentov
NY Attorney Reg. No. 2867737
Email: ovshentov@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone: 212-326-3939
Facsimile: 212-755-7306

Jennifer Seraphine
State Bar No. 245463
Email: jseraphine@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700

ATTORNEYS FOR PLAINTIFF

- 7 -

**CERTIFICATE OF SERVICE**

      The undersigned does hereby certify that a copy of Plaintiff Soverain's Reply to Systemax and TigerDirect's Response to Plaintiff's Motion For Entry of Protective Order filed in the above-captioned matter was served on October 23, 2008, via the Court's ECM/ECF service, to all counsel of record who have consented to such electronic service under Local Rule CV-5(a).


                                                /s/ Carrie L. Ortner_____