# EXHIBIT N

# JONES DAY

222 EAST 41ST STREET • NEW YORK, NEW YORK 10017-6702
TELEPHONE: 212-326-3939 • FACSIMILE: 212-755-7306

Direct Number:  (212) 326-7854
kcanfield@jonesday.com

JP008939                           April 29, 2008
432383-600041

<u>VIA E-MAIL (CONFIRMATION BY U.S. MAIL)</u>

Julianne M. Hartzell
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, Illinois  60606

Re:     *Soverain Software LLC v. CDW Corporation et al.,*
        <u>Case No. 6:07-CV-00511-LED (E.D. Tex.)</u>

Dear Ms. Hartzell:

I am writing in response to your April 7, 2008 and April 10, 2008 letters to Tom
Giannetti regarding Soverain's infringement contentions.  In those letters, CDW Corporation,
Newegg, Inc., and Zappos.com, Inc. ("Defendants") objected to Soverain's contentions as being
insufficient in a number of respects.  As detailed below, Soverain disagrees with your
characterizations of those contentions, comprising over 30,000 pages of claim charts and
supporting material, as insufficient and believes your requests for supplementation are
unwarranted.  Soverain's infringement contentions are in full compliance with P. R. 3-1, which
requires only that plaintiffs provide "fair notice to defendants" and not the "unrealistic, overly
factual contentions" demanded by Defendants.  *Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d,
815, 818 (E.D. Tex. 2006) (Davis, J.); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F.
Supp. 2d 754, 755 (E.D. Tex.) (Davis, J.) (explaining that P. R. 3-1 infringement contains are
"not meant to provide a forum for litigation of the substantive issues; they are merely designed to
streamline the discovery process" (citation omitted)).  The fact that it took Defendants nearly two
months to review the 30,000-plus pages in itself evidences their level of detail and completeness.

Defendants' complaints generally fall into the following four categories and are unsound
for the following reasons.  (In its point-by-point responses below, Soverain will refer to these as
"Paragraph __.")

I.      <u>Improperly attempting to limit Soverain's contentions to only those aspects of
Defendants' infringing instrumentalities explicitly mentioned in Soverain's contentions.</u>

Defendants repeatedly attempt to limit Soverain's contentions to cover only those aspects
of Defendants' infringing instrumentalities explicitly mentioned in the contentions.  The law,
however, is otherwise.  Soverain need not detail every example of Defendants' infringement.  "In
dealing with something like a website, it would be unrealistic to expect plaintiffs to provide
screen shots for every possible manifestation of the alleged infringement.  Instead, plaintiffs

NYI-4078273v1

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 2

should provide specific theories of infringement and **representative examples** of the alleged infringement . . . ." *Orion*, 407 F. Supp. 2d at 817 (emphasis added).  Soverain more than fulfilled its obligation under P. R. 3-1 by providing over 30,000 pages of description and support for representative examples of Defendants' infringement.  Unless otherwise stated below, therefore, Soverain specifically disputes each of Defendants' assumptions that attempt to limit the scope of Soverain's contentions to the examples of infringement explicitly stated in the contentions.

II.    Improperly demanding that Soverain supplement its contentions to discuss nonpublic physical components and source code uniquely within Defendants' control.

Defendants' demands for supplementation impose requirements that go far beyond the local patent rules and the normal practice in this District in cases involving complex computer software and hardware systems.  Prior to discovery, Soverain cannot be expected to describe, or even identify, nonpublic components and computer source code that are in the sole possession of Defendants. *See Orion*, 407 F. Supp. 2d at 817; *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (Davis, J.).  In particular, "software cases," such as this case, "present unique challenges . . . because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself." *Am. Video*, 359 F. Supp. 2d at 560.  Similarly, Soverain also lacks access to Defendants' hardware, including their server and network architecture.  Therefore, "plaintiffs are typically unable to give highly specified infringement contentions" and instead rely on the fact that the patent rules "accommodate plaintiffs' need to supplement their initial contentions." *Id.* at 560-61; *see also* P. R. 3-6(b) (permitting amendment of infringement contentions for good cause). Soverain's detailed infringement contentions are based on the publicly available information about Defendants' websites.  Soverain has fully complied with P. R. 3-1, and no supplementation is necessary at this stage.

III.    Improperly demanding that Soverain provide a discussion of Defendants' infringing instrumentalities beyond the elements of the asserted claims.

Soverain has no obligation to describe or explain aspects of Defendants' instrumentalities not necessary for infringement of the claims.  P. R. 3-1 merely requires plaintiffs to "identify[] specifically where each element of each asserted claim is found within each Accused Instrumentality." P. R. 3-1(c).

IV.    Ignoring Soverain's right to amend its contentions for good cause or if the Court's Markman ruling so requires.

Defendants fail to acknowledge that the local patent rules provide avenues for Soverain to update its infringement contentions later in the case.  First, Soverain can amend its infringement contentions as a matter of right if the Court's Markman ruling so requires.

Julianne M. Hartzell
April 29, 2008
Page 3

P. R. 3-6(a)(1). Additionally, Soverain can amend its contentions for good cause. P. R. 3-6(b). Defendants' unrealistic demands for greater specificity and detail on Soverain's infringement theories now, before discovery on technical issues has commenced, are really an attempt to take away Soverain's right to amend or supplement its infringement contentions as permitted by P. R. 3-6.

*     *     *

In addition to the above general responses, Soverain addresses each of Defendants' complaints below. Soverain has numbered each of Defendants' complaints for convenience. The following answers are not to be construed as limiting Soverain's contentions, which are in compliance with Soverain's obligations under P. R. 3-1, in any way. Further, any failure on the part of Soverain to respond to a particular portion of any of Defendants' complaints is not to be construed as agreement by Soverain with the complaint.

1.   **Zappos and Claims 65 and 125 of '314 Patent**

See Paragraphs II and IV.

Soverain's infringement contentions list the claims, on a website-by-website basis, for which Soverain could establish infringement based on publicly available information. For 6pm.com, such claims include claims 65 and 125 of the '314 patent. Soverain reserves the right to amend its contentions for the other Zappos websites to include claims 65 and 125 in accordance with P. R. 3-6.

2.   **Soverain's Reference to "Other Domains" is Appropriate**

See Paragraphs II and IV.

Soverain need not identify all domains that form part of Defendants' infringing instrumentalities at this time. P. R. 3-1(b) merely requires disclosure of "each accused apparatus, product, device, process, method, act, or other instrumentality" of which Soverain "is aware." Such identification must only be as specific "as possible," and apparatus, method, and process names must be identified only "if known." P. R. 3-1(b). At this early stage of the case, Soverain has identified (e.g., by domain name or URL) and described all of Defendants' infringing instrumentalities of which it is aware to the extent possible without the benefit of discovery. In particular, Soverain presently has no way to know the architecture of Defendants' instrumentalities or the source code used by Defendants. Through discovery, which has just started, it is possible that Soverain may learn that Defendants' instrumentalities host domain names or URLs in addition to those identified by Soverain in its contentions. Soverain reserves the right to amend its infringement contentions to address any such domain names or URLs in accordance with P. R. 3-6.

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 4

### 3.     <u>Soverain's Disclosure Regarding the Doctrine of Equivalents is Sufficient</u>

See Paragraphs II and IV.

Soverain's contentions assert that Defendants literally infringe.  However, Soverain properly has reserved the right to assert the doctrine of equivalents.  For example, under P. R. 3-6(a)(i), Soverain may amend its infringement contentions following the court's Markman ruling if the ruling "so requires."  Additionally, Soverain may learn during discovery details about the accused instrumentalities that support a doctrine of equivalents analysis and may move to amend under P. R. 3-6(b).  It follows that Defendants' attempt to limit Soverain at this early stage to literal infringement is without basis.

### 4.     <u>Soverain Adequately Identifies All Elements of the Asserted Claims</u>

See Paragraphs II and IV.

Defendants' complaint about the specificity of Soverain's infringement contentions is unjustified, as Soverain's infringement contentions are sufficiently specific as to all elements of the asserted claims.  P. R. 3-1 requires only that plaintiffs provide "fair notice to defendants" and not the "unrealistic, overly factual contentions" demanded by Defendants.  *See Orion*, 407 F. Supp. 2d at 815; *see also STMicroelectronics*, 308 F. Supp. 2d at 755.  At this stage, prior to discovery, Soverain cannot be faulted for its alleged failure to identify precisely the communications or screen shots that are most pertinent to Defendants' infringement.  If anyone has that information, it is Defendants, who designed and operate the infringing instrumentalities. Further, because Defendants provide no specific examples of the alleged "[f]ailure to [a]dequately [i]dentify [n]umerous [e]lements" in this portion of the April 7, 2008 letter, Soverain cannot respond in any more detail to the alleged deficiencies.

### 5.     <u>U.S. Patent No. 5,715,314</u>

#### a.     **Buyer computer (Claims 34, 35, 36, 39, 49, 74, 84, 109, 134, 144)**

See Paragraphs IV.

The buyer computers are those computers that perform the functions of the buyer computer recited in the claims.  No further identification is necessary.

#### b.     **User (Claims 34, 36, 39)**

See Paragraph IV.

NYI-4078273v1

Julianne M. Hartzell
April 29, 2008
Page 5

Soverain's contentions are not limited to a case where a person operating the buyer computer has "purchased goods on his or her own behalf." Further, while claims 34 and 39 recite a "request . . . to purchase," they do not specify on whose behalf the request must be made.

### c.   Shopping cart computer (Claims 34, 35, 35, 39, 49, 74, 84, 109, 134, 144)

See Paragraphs II and IV.

Soverain notes that Defendants listed claim 35 twice in this section.

The shopping cart computers are those computers that perform the functions of the shopping cart computer recited in the claims. P. R. 3-1(b) requires names or model numbers only "if known." A more particular identification of specific equipment is presently uniquely in the possession of Defendants. No supplementation is necessary at this stage.

### d.   Shopping cart database, modify, reflect (Claims 34, 39)

See Paragraphs II, III, and IV.

Soverain notes that where Defendants reference element 34e in this section, it appears that they are discussing element 34d.

The shopping cart databases are those databases that contain stored representations of collections of products. P. R. 3-1(b) requires names or model numbers only "if known." A more particular identification of specific equipment or computer data is presently uniquely in the possession of Defendants. No supplementation is necessary at this stage.

Further, to the extent Defendants desire information regarding "where and how this database is maintained" beyond an identification that the shopping cart database exists, such information is not related to any claim recitation. Similarly, the claims do not recite any particular "nature, manner, method, and timing" of the modifications to the shopping cart databases. Soverain, in its infringement contentions, established that the shopping cart databases are modified, as recited, for example, in element 34h. Soverain need not provide information unrelated to any claim recitations.

### e.   Stored representation of a collection of products (Claims 34, 39)

See Paragraphs II, III, and IV.

Contrary to Defendants' complaints, Soverain did identify what is stored in exemplary shopping carts by reference to attached screen shots. Claims 34 and 39 do not recite any particular method of storing the contents of the shopping carts or any particular location where

Julianne M. Hartzell
April 29, 2008
Page 6

the contents of the shopping carts must be stored.  In any case, any information about how and where the contents of the shopping carts are stored is uniquely in Defendants' possession.

    f.   **Programmed to receive ... requests (Claims 34, 36, 39)**

    See Paragraphs I and IV.

    Contrary to Defendants' understanding, Soverain has not identified the installed browser as the "programming required by the claims."  Soverain has, in line with P. R. 3-1, identified the programming of the browser as an example of how the buyer computers in Defendants' infringing instrumentalities are programmed.  Similarly, the customer's clicking the displayed button is an example of an aspect of Defendants' infringing instrumentalities that can serve as a "request."

    g.  **Shopping cart messages (Claims 34, 39, 84, 144) and product identifier (Claims 34, 39, 65, 125)**

    See Paragraphs II and IV.

    Absent discovery, Soverain cannot be expected to determine exactly how Defendants' shopping cart computers use the messages sent to them by buyer computers, and therefore cannot identify the shopping cart messages and product identifiers with more particularity.  Soverain has shown that messages are sent from the buyer computers to the shopping cart computers and that products are then added to the shopping carts.  On that basis, Soverain can conclude that shopping cart messages are sent and that the messages contain product identifiers.  Any more detail is uniquely in the possession of Defendants.

    h.  **Payment message ... associated with (Claims 34, 35, 39, 49, 74, 109, 134)**

    See Paragraphs II, III, and IV.

    Absent discovery, Soverain cannot be expected to determine exactly how Defendants' shopping cart computers use the messages sent to them by buyer computers, and therefore cannot identify the payment messages with more particularity.  Soverain's infringement contentions demonstrate that the payment messages exist, because activation of messages, i.e., the payment messages, initiates payment transactions.  The payment messages are associated with the shopping carts, because the initiated payment transactions are for the products added to the shopping carts.

    Further, the infringed claims do not recite any particular "message content" or "manner and method" of creating the payment message.  Therefore, Soverain need not provide such information.

Julianne M. Hartzell
April 29, 2008
Page 7

i.      **Payment message activation (Claims 34, 35, 39, 49, 74, 109, 134)**

See Paragraphs II, III, and IV.

Infringed claims 34, 35, and 39 do not recite any particular "method" of activation of the payment message.  Infringed claims 49, 74, 109, and 134 merely recite activation of the payment message by the transmission of another message, but do not recite that the other message has any particular "content" or "how" the activation is caused.  Soverain's infringement contentions demonstrate that the payment message is activated by another message, as shown in the portion of Appendix C referenced in Soverain's contentions.  Absent discovery, Soverain cannot be expected to provide any more detail as to that other message.  Such information is uniquely in the possession of Defendants.

Soverain also notes that Defendants' discussion in the second paragraph of this item does not apply to claim 35.

j.      **Payment confirmation document (Claim 74)**

See Paragraphs I and IV.

Soverain is not required to identify all documents that satisfy this claim recitation.  Soverain's infringement contentions identify an exemplary webpage as a payment confirmation document for each infringing instrumentality.

k.      **Shopping cart computer programmed to cause said payment message to be created before said buyer computer causes said payment message to be activated (Claim 35)**

See Paragraphs II, III, and IV.

"[H]ow the unidentified shopping cart computer is programmed, how the payment message is created, the specific information relied upon, [and] when that step occurs" are not elements of claim 35.  Soverain established infringement of claim 35 by demonstrating that the payment message was created prior to activation.  In any case, the information requested by Defendants is uniquely in their possession and is inaccessible to Soverain absent discovery.

l.      **Initiate payment transaction (Claims 34, 39)**

See Paragraphs II, III, and IV.

Contrary to Defendants' assertions, Soverain does identify what constitutes the "payment transaction" in the case of Defendants' infringement—it is the "transaction whereby the customer pays for the products in the shopping cart . . . ."  *See, e.g.*, element 34j.

Julianne M. Hartzell
April 29, 2008
Page 8

The requested information regarding the details of how "activation" serves to "initiate" the payment transaction is not an element of the claims. Soverain has shown infringement by showing that the payment transaction is initiated by activation of the payment message. In any case, the requested additional information is uniquely in Defendants' possession.

m.     **Transmitting a message to the shopping cart computer (Claim 49)**

See Paragraphs II, III, and IV.

Absent discovery, Soverain cannot be expected to identify the referenced message with more specificity or determine "how" transmission of the referenced message causes the payment message to be activated. In any case, with respect to "how," claim 49 does not recite any particular method of activation. Soverain has demonstrated that a message is transmitted from the buyer computer to the shopping cart computer and that the payment message is then activated. Nothing else is required.

n.     **Shopping cart URL (Claims 60, 61, 62, 65, 120, 121, 122, 125)**

See Paragraphs I, II, and IV.

First, Soverain notes that it doesn't merely "refer to the entirety of Appendices B and C," but also refers to a specific appendix within Appendix B. Further, Soverain is not required to identify all requests and shopping cart URLs that satisfy this claim recitation. Soverain's infringement contentions identify at least an exemplary request and shopping cart URL for each infringing website.

o.     **In response to the plurality of shopping cart messages (Claims 84, 144)**

See Paragraphs II and IV.

Absent discovery, Soverain cannot be expected to determine exactly how Defendants' shopping cart computers use the messages sent to them by buyer computers. Soverain established that the shopping cart computers receive a plurality of shopping cart messages, the customer presses a button, and the shopping cart computer transmits an account name and password request message. This sequence of events indicates that the transmission of the account name and password request messages occurs in response to the plurality of shopping cart messages. No supplementation is necessary at this stage.

p.     **Causes an account name and password request message (Claims 84, 144)**

See Paragraphs I, II, III, and IV.

NYI-4078273v1

Julianne M. Hartzell
April 29, 2008
Page 9

The Defendants' shopping cart computers "cause[]" an account name and password request message to be transmitted.  The claims do not recite any particular method of "caus[ing]"; therefore, no more detail is required.  Further, Soverain is not required to identify all documents that satisfy this claim recitation.  Soverain's infringement contentions identify an exemplary webpage that serves as an account name and password request message for each infringing instrumentality.

> 6.   **U.S. Patent No. 5,909,492**

> > a.   **Client computer (Claims 15, 16, 40, 41, 73, 75, 76, 108)**

See Paragraphs II and IV.

The client computers are those computers that perform the functions of the client computer recited in the claims.  No further identification is necessary.

> > b.   **Client user (Claims 15, 16)**

See Paragraph IV.

Soverain's contentions are not limited to a case where a customer is "purchasing goods on his or her own behalf."  Claims 15 and 16 do not specify on whose behalf any purchases in the purchase transaction records were made.

> > c.   **Server Computers ... programmed to record (Claims 15, 16, 40, 41, 75, 76)**

See Paragraphs II, III, and IV.

Soverain notes that claims 16, 40, 41, 75, and, 76 do not recite that a "server computer" is "programmed to record."

The server computers are those computers that perform the functions of the server computer recited in the claims.  P. R. 3-1(b) requires names or model numbers only "if known."  A more particular identification of specific equipment is presently uniquely in the possession of the Defendants.  After discovery, Soverain should be in a better position to identify specific server computers.

Further, Defendants are requesting information not recited in the claims (i.e., "how and where [the] . . . server computers record information identified in these claims, and an identification of the programming that . . . correspond[s] to that identified in the claims").  This information is also uniquely in Defendants' possession.

Julianne M. Hartzell
April 29, 2008
Page 10

### d. Server User (Claims 15, 16)

See Paragraphs II, III, and IV.

The server users operate Defendants' server computers by configuring the server computers to perform the functions recited in the infringed claims. The claims do not recite a specific mode of operation, so no further information is required. Further, any information as to the method of operation is uniquely in Defendants' possession.

### e. Statement document (Claims 15, 16, 41, 76)

See Paragraphs I and IV.

Soverain is not required to identify all statement documents. Soverain's infringement contentions identify an exemplary statement document for each infringing website.

### f. Purchase transaction records (Claims 15, 16)

See Paragraphs II, III, and IV.

With respect to identifying the portion of the document that comprises the purchase transaction records, P. R. 3-1 requires only that plaintiffs provide "fair notice to defendants" and not the "unrealistic, overly factual contentions" demanded by Defendants. Soverain's contentions provide fair notice.

The claims do not require Soverain to identify "how [the] information [pertaining to purchase transaction records] is recorded, in what database the information is recorded, or how the . . . server computer is programmed to record that information." In any case, such information is uniquely in Defendants' possession.

### g. Information pertaining to purchase transaction records (Claims 15, 16)

See Paragraphs II, III, and IV.

The "information pertaining to purchase transaction records" so "pertains" to purchase transaction records, because at least some of the information is included in the purchase transaction records appearing in the statement documents.

The claims do not require Soverain to identify "how and where" the information is recorded, only that it was recorded. Soverain's contentions establish that the information was recorded, because the information was not entered by the customer and therefore came from a

Julianne M. Hartzell
April 29, 2008
Page 11

database where it was recorded.  In any case, how and where the information is recorded in a database is uniquely in the possession of Defendants.

> **h.     Stored representation of a collection of products (Claims 17, 18, 35, 36)**

See Paragraphs II, III, and IV.

Contrary to Defendants' complaints, Soverain did identify what is stored in exemplary shopping carts by reference to attached screen shots.  Claims 17, 18, 35, and 36 do not recite any particular method of storing the contents of the shopping carts or any particular location where the contents of the shopping carts must be stored.  In any case, any information about how and where the contents of the shopping carts are stored is uniquely in Defendants' possession.

> **i.     Client computer being programmed to ... (Claims 15, 16) and buyer computer being programmed to ... (17, 18, 35, 36)**

See Paragraphs I and IV.

Contrary to Defendants' understanding, Soverain has not identified the installed browser as the "programming required by the claims."  Soverain has, in line with P. R. 3-1, identified the programming of the browser as an example of how the buyer computers or client computers in Defendants' infringing instrumentalities are programmed.  Similarly, the customer's clicking the displayed button is an example of an aspect of Defendants' infringing instrumentalities that can serve as a "request."

> **j.     Transaction detail (Claims 15, 16)**

See Paragraph IV.

With respect to identifying the transaction details, P. R. 3-1 requires only that plaintiffs provide "fair notice to defendants" and not the "unrealistic, overly factual contentions" demanded by Defendants.  Soverain's contentions more than adequately identify the transaction details and provide fair notice to Defendants.

> **k.     Transaction detail hypertext link (Claims 15, 16)**

See Paragraphs I and IV.

Soverain is not required to identify all transaction detail hyperlinks that satisfy this claim recitation.  Soverain's infringement contentions identify an exemplary transaction detail hyperlink for each infringing website.

Julianne M. Hartzell
April 29, 2008
Page 12

l.      **Buyer computer (Claims 17, 18, 35, 36, 40, 75)**

See Paragraphs II and IV.

The buyer computers are those computers that perform the functions of the buyer computer recited in the claims. No further identification is necessary.

m.      **Payment computer (Claims 40, 75)**

See Paragraphs II, III, and IV.

As explained in Soverain's infringement contentions, the payment information is any information accepted by the payment computer from a customer making a purchase. The claims do not require Soverain to more specifically identify the payment information or to identify how the information is accepted. Moreover, at this stage, how the information is accepted is uniquely in Defendants' possession.

n.      **Statement URL (Claims 41, 76)**

See Paragraphs II and IV.

Absent discovery, Soverain cannot be expected to more particularly identify the message comprising the statement URL. Soverain cannot be expected to determine the inner workings of Defendants' server computers, as such workings are uniquely in Defendants' possession at this stage. However, Soverain did establish that a message comprising a URL is sent from the client computer to at least one server computer, and that the server computer responded by sending a statement document. This is sufficient to establish infringement.

o.      **Transaction information (Claims 66, 101)**

See Paragraphs I and IV.

The claims do not require Soverain to provide a "specific and complete listing" of all transaction information on Defendants' transaction detail documents. Soverain has fulfilled its obligations by providing exemplary transaction information. No supplementation is necessary at this stage.

p.      **Merchant information (Claims 66, 101)**

See Paragraphs I and IV

The business entity information includes, for example, the fact that the Bostonian website is "Powered By Zappos.com."

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 13

> q.    **URL where product is located (Claims 67, 102)**

See Paragraphs I and IV.

Soverain's infringement contentions sufficiently identify URLs where a product is located. Nevertheless, Soverain will provide an example for Defendants' convenience. For example, Appendix A19 to Soverain's infringement contentions for the running.zappos.com website has at least a "link to a product purchased" with the text "Nubuck/Suede Proof & Cleaning Gel." As shown in Appendix B19, this text is associated with the URL "http://running.zappos.com/n/p/product_id/7281565.html," which is therefore "included" in the transaction detail document. The Nubuck/Suede Proof & Cleaning Gel is "located" at this URL, because this is the URL for a webpage describing that product.

> r.    **Transaction log identifier, expiration time, initiator number,
> beneficiary number, IP address, transaction type indicator, domain
> corresponding to product (Claims 67, 102)**

See Paragraphs I and IV.

Soverain's contentions establish infringement of claims 67 and 102. Claims 67 and 102 recite that "the transaction information includes at least one of" the types of information recited. Soverain provided at least one example of infringement for each of Defendants' instrumentalities. Soverain is not required to list every example. Defendants misunderstand Soverain's contentions to the extent they interpret Soverain's list of the routes by which Defendants infringe these claims to be exhaustive.

> s.    **Merchant country, merchant fax number (Claims 68, 103)**

See Paragraphs I and IV.

Soverain's contentions establish infringement of claims 68 and 103. Claims 68 and 103 recite that "the merchant information includes at least one of" the types of information recited. Soverain provided at least one example of infringement for each of Defendants' instrumentalities. Soverain is not required to list every example. Defendants misunderstand Soverain's contentions to the extent they interpret Soverain's list of the routes by which Defendants infringe these claims to be exhaustive.

> t.    **Transaction and merchant information (Claims 67, 68, 102, 103)**

See Paragraphs I and IV.

Soverain's infringement contentions establish infringement of claims 67, 68, 102, and 103. Claims 67 and 102 recite that "the transaction information includes at least one of" the

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 14

types of information recited.  Similarly, claims 68 and 103 recite that "the merchant information includes at least one of" the types of information recited.  Soverain provided at least one example of infringement for each claim for each of Defendants' instrumentalities.  Soverain is not required to list every avenue of infringement.  Defendants misunderstand Soverain's contentions to the extent they interpret Soverain's list of the routes by which Defendants infringe these claims to be exhaustive.

### u. Digital advertising document of (Claims 73, 108)

See Paragraphs I and IV.

Soverain is not required to identify all digital advertising documents that satisfy this claim recitation.  Soverain's infringement contentions identify an exemplary digital advertising document for each infringing website.  As explained in Soverain's contentions, the digital advertising documents are provided to the client computer because they are sent to the client computer by at least one of Defendants' server computers.

### v. Shopping cart computer (Claims 17, 18, 35, 36)

See Paragraphs II and IV.

The shopping cart computers are those computers that perform the functions of the shopping cart computer recited in the claims.  P. R. 3-1(b) requires names or model numbers only "if known."  A more particular identification of specific equipment is presently uniquely in the possession of Defendants.  No supplementation is necessary at this stage.

### w. Shopping cart computer programmed to receive the plurality of shopping cart messages (Claims 17, 35) and receiving plurality of shopping cart message (Claims 18, 36)

See Paragraphs II, III, and IV.

The claims do not require Soverain to identify the software or explain how it directs the shopping cart computer to receive the plurality of shopping cart messages.  Moreover, this information is in the unique possession of Defendants and is not available to Soverain without discovery.  Soverain has established that the shopping cart computer receives the shopping cart messages; therefore, it must have been programmed to do so.

### x. Shopping cart database, modify, reflect (Claims 17, 18, 35, 36)

See Paragraphs II, III, and IV.

Julianne M. Hartzell
April 29, 2008
Page 15

The shopping cart databases are those databases that contain stored representations of collections of products.  P. R. 3-1(b) requires names or model numbers only "if known."  A more particular identification of specific equipment or computer data is presently uniquely in the possession of Defendants.  This information is not available to Soverain without discovery.  No supplementation is necessary at this stage.

Further, the claims do not recite any particular "nature, manner, method, and timing" of the modifications to the shopping databases.  Soverain, in its infringement contentions, established that the shopping cart database is modified, as recited, for example, in element 17h.  Soverain should not be required to provide detailed information unrelated to the claim recitations.  Moreover, this information is in the unique possession of Defendants and is not available to Soverain without discovery.

> **y.**   **Shopping cart messages (Claims 17, 18, 35, 36), product identifier (Claims 17, 18, 35, 36) and universal resource locator (Claims 17, 18)**

See Paragraphs II and IV.

Absent discovery, Soverain cannot be expected to know exactly how Defendants' shopping cart computers use the messages sent to them by buyer computers.  Soverain has shown that messages are sent from the buyer computers to the shopping cart computers and that identified products are then added to the shopping carts.  Further, the appendices to Soverain's contentions show that the messages sent contain universal resource locators.  The details are uniquely in Defendants' possession at this stage.

> **z.**   **Payment message ... associated with (Claims 17, 18, 35, 36)**

See Paragraphs II, III, and IV.

Absent discovery, Soverain cannot be expected to know exactly how Defendants' shopping cart computers use the messages sent to them by buyer computers.  Soverain's infringement contentions demonstrate that such payment messages exist, because activation of messages, i.e., the payment messages, initiates payment transactions for the products added to the shopping carts, with which the messages are therefore associated.  Further, the appendices to Soverain's contentions show that the messages contain universal resource locators.  The details are uniquely in Defendants' possession at this stage.

> **aa.**   **Payment message activation (Claims 17, 18, 35, 36)**

See Paragraphs II, III, and IV.

Julianne M. Hartzell
April 29, 2008
Page 16

Infringed claims 34, 35, and 39 do not recite any particular "method" of activation of the payment message.  Soverain's infringement contentions demonstrate that the payment message is activated.

> bb.   **Payment transaction (Claims 17, 18, 35, 36)**

See Paragraphs II, III, and IV.

Contrary to Defendants' assertions, Soverain does identify what constitutes the "payment transaction" in the case of Defendants' infringement—it is the "transaction whereby the customer pays for the products in the shopping cart . . . ." *See, e.g.*, element 17j.

The requested information regarding the details of how "activation" serves to "initiate" the payment transaction is not an element of the claims.  Soverain has shown that the payment transaction is initiated by activation of the payment message.  In any case, the requested additional information is uniquely in Defendants' possession at this stage.

> 7.   **U.S. Patent No. 7,272,639**

Before responding to Defendants' specific complaints regarding their infringement of the '639 patent, Soverain reiterates what it stated in its infringement contentions concerning that patent:

> The claims of the '639 patent recite a "session identifier," a "user identifier," and other similar identifiers.  Ascertaining whether an information string is a "session identifier," a "user identifier," or another similar identifier generally requires access to nonpublic information.  The infringement contentions below provide exemplary infringement theories based on publicly available information accessible to Soverain.  Soverain reserves the right to update its contentions after discovery.

> a.   **Client (Claims 1, 62, 78, 79)**

See Paragraph IV.

Soverain notes that claim 62 does not recite a "client" (it recites a "client system").

Defendants misunderstand Soverain's infringement contentions as far as the identification of a "client" in Defendants' infringing instrumentalities.  The "client" is not a person, but a computer.  Further, the user of the client need not purchase goods on his or her own behalf for Defendants' instrumentalities to infringe.

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 17

b.     **Server System (Claims 1, 10, 47, 60, 62, 78, 79)**

See Paragraphs II and IV.

The server system is the system that performs the functions of the server system recited in the claims.  P. R. 3-1(b) requires names or model numbers only "if known."  Absent discovery, Soverain cannot be expected to be more specific.  Indeed, a more particular identification of specific equipment in Defendants' systems is information uniquely in the possession of Defendants.  No supplementation is necessary at this stage.

c.     **Service Request (Claims 1, 10, 60, 65, 78, 79)**

See Paragraphs I, II, and IV.

Soverain's infringement contentions demonstrate the existence and forwarding of service requests by reference to appropriate appendices.  Appendix C to Soverain's contentions contains http messages generated by and/or used according to code written by or for Defendants, and in some cases, code within Defendants' unique possession.  Absent discovery, Soverain cannot be expected to know the details of those messages as well as Defendants who, unlike Soverain, have full access to and are familiar with the code.  Nevertheless, Soverain's contentions, after referring to the entirety of Appendices A and C, do cite to specific appendices identifying exemplary service requests.  Soverain is not required to identify every service request satisfying the claim recitations.  Defendants should not assume that where specific examples of requests have been referenced, Defendants have not also infringed based on other requests.

d.     **Session identifier, storing (Claims 1, 10, 47, 63, 78, 79)**

See Paragraphs I, II, III, and IV.

Soverain's contentions state that that the identified information strings "contain[] a session identifier."  Therefore, part or all of the identified information strings may serve as the session identifier.  Absent discovery into the inner workings of Defendants' infringing instrumentalities, Soverain cannot be expected to more specifically identify Defendants' session identifiers.

Soverain's contentions, in accordance with P. R. 3-1, provide exemplary session identifiers (not all session identifiers used by Defendants).  Soverain is not required to list every session identifier.  Further, the exact way Defendants' infringing systems use information strings is uniquely in the possession of Defendants.  At this early stage, without discovery, Soverain cannot be expected to know all information strings that serve as session identifiers.

Julianne M. Hartzell
April 29, 2008
Page 18

Finally, Soverain notes that the infringed claims do not recite how and where the client stores the session identifier. Soverain's contentions establish that the session identifiers are stored by the client, in accordance with the claim recitations.

**e.      Appending the stored session identifier (Claims 1), wherein the session identifier is appended (Claim 63) and appended by the client (Claim 78)**

See Paragraphs I, III, and IV.

Contrary to Defendants' complaint, Soverain is not referring to "hundreds of pages of http communications" without further specification. For example, when Soverain states that the "session identifier is appended to subsequent distinct requests from the client to the server system, as shown in Appendices C2-C13," it means that the statement holds true for each of the referenced appendices, i.e., C2, C3, C4, etc., through C13. *See* running.zappos.com, element 1d.

The session identifier is appended to requests sent from the client to the server system because it is included in or along with the requests. The claims do not require Soverain to identify "how" it is appended.

Additionally, Defendants should not assume that Soverain has identified all requests to which the session identifier is appended. Soverain need only provide examples of infringement.

**f.      Subsequent distinct requests (Claims 1, 79)**

See Response 7.e.

**g.      Initial service request (Claims 1, 79)**

See Paragraphs I and IV.

Claim 1 does not recite an "initial service request."

It is unnecessary for Soverain to confirm with Defendants each and every initial service request identified in Soverain's contentions. Further, the initial service requests identified in Soverain's contentions are merely exemplary, and Soverain is not required to detail every route by which Defendants infringe.

For couture.zappos.com, Soverain did identify loading a link from the homepage as an exemplary initial service request, and Soverain attached the communication corresponding to that exemplary initial service request in Appendix C2.

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 19

### h.   Wherein the session identifier is designated by the server system (Claim 47)

See Paragraphs II, III, and IV.

The session identifier is designated by the server system because the session identifier is sent from the server system to the client prior to being appended by the client to requests from the client to the server system.  This is shown in the referenced portions of Appendix C.

To the extent Defendants are requesting additional information, such information is not necessary to establish infringement.  Absent discovery, Soverain cannot be expected to know the details of how the session identifier is formulated or created as well as Defendants.

### i.   Validating ... the appended session identifier (Claims 47, 78)

See Paragraphs II and IV.

As stated in Soverain's contentions, it is evident that Defendants' server systems validate the session identifiers, because the shopping carts are returned only if the session identifiers are valid.  In order to provide any more detail, Soverain needs access to the inner workings of Defendants' server systems through discovery.  No supplementation is necessary at this stage.

### j.   Returning a controlled document (Claim 47)

See Paragraphs I and IV.

Soverain is not required to identify all controlled documents that satisfy this claim recitation.  Soverain's infringement contentions identify an exemplary controlled document for each infringing website.  Further, Soverain cannot necessarily identify all controlled documents without discovery.

### k.   Purchase request (Claim 60) and Request to Purchase (Claim 62)

See Paragraphs II and IV.

Soverain's contentions identify appendices having messages sent from the clients to the server systems that include the purchase requests or requests to purchase.  Absent discovery, Soverain cannot be expected to identify the requests in more detail.  No supplementation is necessary at this stage.

Julianne M. Hartzell
April 29, 2008
Page 20

### l.    Associated user identifier (Claim 60) and identifier of a purchaser (Claim 62)

See Paragraphs I, II, and IV.

Soverain need not identify each and every user identifier/identifier of a purchaser or each and every use of the user identifiers/identifiers of purchasers.  Soverain has provided an exemplary infringement analysis.

The user identifier is associated with the purchase request because the user identifier identifies the user making the purchase.

Soverain's references to an "information string . . . which includes an associated user identifier" are sufficient to provide Defendants notice of the user identifier.  How Defendants use the information string is now uniquely Defendants' possession.  No supplementation is necessary at this stage.

### m.    User information (Claim 60)

See Paragraphs I and IV.

The claims do not require Soverain to list every piece of user information.  Soverain has provided exemplary user information.

### n.    Accessing ... user information associated with the user identifier (Claim 60)

See Paragraphs II, III, and IV.

Soverain established that the user information was accessed by referring to appendices showing the user information.  Claim 60 does not recite any particular method of accessing the information; therefore, Soverain need not provide more detail about "how" the user information is accessed.  In any case, such detail is uniquely in Defendants' possession, so, without discovery, Soverain cannot be expected to know it as well as Defendants.  Further, the user information is associated with the user identifier as least because it includes information sufficient to charge an account associated with the user identified by the user identifier.

### o.    Under control of the server system (Claim 62)

See Paragraphs II, III, and IV.

Soverain's contentions reference a particular appendix within Appendix C that contains the request.  Absent discovery, Soverain cannot be expected to provide further detail or to know

Julianne M. Hartzell
April 29, 2008
Page 21

the operation of Defendants' server systems as well as Defendants. The server systems' use of the messages shown in the appendices is uniquely in Defendants' possession. No supplementation is necessary at this stage.

> **p.      Retrieving additional information previously stored for the purchaser identified by the identifier in the received request (Claim 62)**

See Paragraphs I, II, III, and IV.

The claims do not require Soverain to identify where the additional information was stored. In any case, such information is uniquely in Defendants' possession, and absent discovery, Soverain should not be expected to know such information as well as Defendants.

The additional information is identified by the identifier, because, based on what Soverain can observe, the server system was able to retrieve the additional information previously stored for the purchaser through the use of the identifier. The details of how this occurs is uniquely within Defendants' possession. No supplementation is necessary at this stage.

The user information identified by Soverain serves as the additional information recited in the claim. However, Soverain's identification of specific user information (additional information) is merely exemplary. Soverain is not required to identify all avenues of Defendants' infringement.

Finally, the request recited in claim 62 is a request to purchase an item, and is shown in the appendix referenced in Soverain's contentions.

> **q.      Fulfilling the request for the product (Claims 60 and 62)**

See Paragraphs II, III, and IV.

Soverain's infringement contentions demonstrate that the request was fulfilled. The claims do not recite any particular steps that must be taken to fulfill the request or any particular person who must fulfill the request. In any case, such information is uniquely in Defendants' possession, and absent discovery, Soverain cannot be expected to know such information as well as Defendants.

> **r.      Session identifier is appended by the client (Claims 63, 78)**

See Paragraphs III and IV.

The client appends the session identifier because it is sent by the client to the server system along with the requests. The claims do not require a particular method of appending; therefore, Soverain's contentions are sufficient and supplementation is not necessary.

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 22

Where Soverain's contentions refer to a range of appendices, e.g., Appendices C3-C13, the claim is met in each of the appendices within the range.  P. R. 3-1 requires only that plaintiffs provide "fair notice to defendants" and not the "unrealistic, overly factual contentions" demanded by Defendants.  Soverain's contentions more than meet this notice requirement.

s.      **Product transmitted over a network (Claim 66)**

See Paragraphs I and IV.

Defendants would have Soverain list every product delivered online by each Defendant to prove infringement.  Soverain is not required to identify every such product to prove infringement of this claim.  Soverain has identified exemplary products, and that is sufficient. Further, absent discovery, Soverain cannot be expected to know Defendants' product lines as well as Defendants, and therefore cannot be expected to identify each website infringing this claim.

t.      **Durable product (Claim 68)**

See Paragraphs I and IV.

Soverain is not required to identify every single durable product for sale by Defendants. Soverain has identified an exemplary durable product for each of Defendants' instrumentalities.

u.      **Stored at the Client (Claim 78) and for storage by the client (Claim 79)**

See Paragraphs I and IV.

Soverain is not required to identify every session identifier used by Defendants.  Soverain has identified exemplary information strings which Soverain believes contain session identifiers. Soverain has not limited session identifiers to cookies.

8.      **April 10, 2008 Letter**

Soverain has taken into account the corrections to the April 7, 2008 letter made by Defendants in their April 10, 2008 letter in the above response.  Further, while Soverain did not include claim 57 of the '314 patent in the submitted infringement contentions, Soverain reserves the right to amend its contentions in accordance with P. R. 3-6 to include that claim.

\*       \*       \*

In the course of reviewing its contentions in responding to your letters, Soverain noticed minor typographical errors and inconsistencies in its contentions for couture.zappos.com.  First,

JONES DAY

Julianne M. Hartzell
April 29, 2008
Page 23

in accordance with element 1c (page 34), element 47a on page 35 should refer to "Appendix C2," not "Appendix C11." Second, the second sentence of the second paragraph of element 78b on page 39 should read as follows: "When a user desiring to view the shopping cart clicks the 'Shopping Bag' link shown in Appendix A10, the server system receives a GET request from the client to which the ticket session identifier has been appended, as shown in Appendix C11." Third, in accordance with claim 10 (pages 34-35), the second sentence of element 79a on page 40 should follow and read as follows: "For example, as shown in Appendix C2, the server system receives an initial service request when the user first selects a link from the homepage of the coutoure.zappos.com website shown in Appendix A1." Fourth, in accordance with claim 10, the first sentence of the second paragraph of element 79b on page 40 should refer to "Appendix C2," not "Appendix C5." Soverain does not believe an amendment to its infringement contentions is necessary to make these minor corrections. If, however, Defendants believe an amendment is necessary, please let us know. Soverain would expect that Defendants would not oppose any such amendment at this early stage.

In summary, Soverain believes that its P. R. 3-1 disclosures are sufficient in every respect. As stated above, Soverain reserves the right to amend its contentions at a later date with respect to those instrumentalities pursuant to P. R. 3-6. Similarly, Soverain also reserves the right to add instrumentalities that it may learn of during discovery. Please let us know if you have any further questions.

Very truly yours,

Kenneth S. Canfield

cc:   Mary-Olga Lovett, Esq.
      Tonya R. Deem, Esq.
      Thomas L. Giannetti, Esq.
      (via e-mail)