IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| SOVEREAIN SOFTWARE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Hon. Leonard E. Davis |
| v. | § | |
| | § | Civil Action No: 6-04CV14 |
| AMAZON.COM, INC., | § | |
| | § | |
| Defendant. | § | |

## PRELIMINARY REBUTTAL REPORT OF PLAINTIFF'S EXPERT MICHAEL IAN SHAMOS, PH.D., J.D.

## BACKGROUND

1.      My name is Michael I. Shamos.  I am a Distinguished Career Professor in the School of Computer Science at Carnegie Mellon University in Pittsburgh, Pennsylvania.  I am a founder and Co-Director of the Institute for eCommerce at Carnegie Mellon and Director of the eBusiness Technology degree program.  My resume is attached as Exhibit 1 to this report.

2.      I teach graduate courses at Carnegie Mellon in Electronic Commerce, including eCommerce Technology, Electronic Payment Systems and eCommerce Law and Regulation and have done so since 1999.

3.      From 1979-1987 I was the founder and president of two computer software development companies in Pittsburgh, Pennsylvania, Unilogic, Ltd. and Lexeme Corporation.

4.      I am an attorney admitted to practice in Pennsylvania and have been admitted to the Bar of the U.S. Patent and Trademark Office since 1981.

1

5.      I have previously testified in a number of cases concerning computer software, intellectual property, electronic payment, electronic voting and electronic commerce matters. My resume in Exhibit 1 includes a list of cases in which I have testified in the last ten years.

6.      I have been retained by Jones Day on behalf of Plaintiff as a technical expert in this action.  I have been asked to review and comment upon the Preliminary Expert Report of Professor Richard N. Taylor (the "Taylor Report"), the Supplementary Expert Report of Professor Richard N. Taylor (the "Supplementary Report") and the Expert Report Concerning the Open Market Patents 5,715,314 and 5,909,492 by Alexander B. Trevor (the "Trevor Report").  In connection with my analysis, I have reviewed a large number of documents and other materials as listed in Exhibit 2.

7.      I may offer opinions as outlined in this Rebuttal Report concerning the patents in suit and their novelty with respect to the prior art, as well as any topics covered in the Taylor and Trevor Reports.  I may present my opinions in the form of a tutorial or otherwise and reserve the right to respond to any evidence Defendant Amazon.com may present concerning the subject matter of the reports.

8.      I have been engaged through Expert Engagements LLC ("EE"), an expert witness agency located in Pittsburgh, Pennsylvania and of which I am an owner.  EE charges $475 per hour for my services, of which I receive $425.  Compensation for my services is not contingent upon the outcome of this case.

## LEGAL PRINCIPLES

9.      As an expert assisting the Court in determining claim validity, I am obliged to follow existing law.  The legal principles I have relied upon in this report are:

a. For a claim to be anticipated, every element and limitation of the claimed invention must be found in a single prior art reference, arranged as in the claim.  Karsten Mfg. Corp. v. Cleveland Golf Co., 242 F.3d 1376, 1383, 58 USPQ2d 1286, 1291 (Fed. Cir. 2001).  To the extent that Dr. Taylor's Report in paragraph 14 omits the "arranged as in the claim" requirement,

and to the extent his analysis ignores this requirement, his conclusions concerning invalidity do not follow.

b. Inherent anticipation requires that the missing descriptive material is "necessarily present," not merely probably or possibly present, in the prior art. In re Robertson, 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-51 (Fed. Cir. 1999).

c. A claim is invalid for obviousness if "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

d. Where obviousness is based on particular prior art references, there must be a showing of a suggestion or motivation to combine the teachings of those references, though it need not be expressly stated. B.F. Goodrich Co. v. Aircraft Braking Sys. Corp., 72 F.3d 1577, 1582-83, 37 USPQ2d 1314, 1318 (Fed. Cir. 1996). The teaching or suggestion to make the claimed combination and the reasonable expectation of success must both be found in the prior art, and not based on applicant's disclosure. In re Vaeck, 947 F.2d 488, 20 USPQ2d 1438 (Fed. Cir. 1991).

e. Obviousness can not be established by hindsight combination to produce the claimed invention. In re Gorman, 933 F.2d 982, 986, 18 USPQ2d 1885, 1888 (Fed. Cir. 1991). The prior art itself, and not the applicant's achievement, must establish the obviousness of the combination. Interconnect Planning Corp. v. Feil, 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed. Cir. 1985).

f. To be properly applied as an obviousness or anticipation reference, the reference must predate the invention of the subject matter of the claim, unless a statutory bar applies. See, e.g., 35 U.S.C. §§ 102-103, Graham v. John Deere Co., 383 U.S. 1, 14-15 (1966) ("Section 103 . . . . refers to the difference between the subject matter sought to be patented and the prior art, meaning what was known before as described in section 102.") (quoting S.R. Rep. No. 1979, 82d Cong. 2d Sess. at 6); In re Kuehl, 475 F.2d 658, 662 (C.C.P.A. 1973) ("We find [Appellants]

position factually defective in that it, in effect, assumes the existence *as prior art* of appellants' discovery . . . . But 35 U.S.C. §103 requires an analysis of the prior art *at the time the invention was made* to determine whether the invention was obvious.") [emphasis in original].

g.  A prior art reference must be *enabling* to anticipate under 35 U.S.C. §102. See, e.g., Akzo N.V. v. U.S. Int'l Trade Comm'n., 808 F.2d 1471, 1479 (Fed. Cir. 1986) ("the prior art reference must be enabling, thus placing the allegedly disclosed matter in the possession of the public."). See also MPEP § 2121.01; In re Hoeksema, 399 F.2d 269 (CCPA 1968) ("In determining that quantum of prior art disclosure which is necessary to declare an applicant's invention 'not novel' or 'anticipated' within section 102, the stated test is whether a reference contains an 'enabling disclosure'.")

h.  Corroboration is required to support a date of invention by alleged prior inventors. "As we have had occasion before to observe, oral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented, is, in the nature of the case, open to grave suspicion." Finnigan Corp. v. U.S. Int'l Trade Comm'n, 180 F.3d 1354, 1367 (Fed. Cir. 1999). "[A]n inventor's testimony, standing alone, is insufficient to prove conception – some form of corroboration is required." Price v. Symsek, 988 F.2d 1187, 1194 (Fed. Cir. 1993).

## SUMMARY

10.  The conclusion of the Taylor Report that the patents in suit are invalid is erroneous because of numerous errors made by Dr. Taylor in applying the law to the references cited, including:

a.  None of the statements of law in paragraphs 14-16 and 17-19 of the Taylor Report is correct. To the extent that his conclusions are based on erroneous statements of law they are likewise erroneous.

b.  He used the erroneous technique of arguing obviousness of individual claim elements instead of obviousness of entire claims. His claim charts simply cobble together references which, taken collectively, embody functions similar to those in individual claim elements. That

is neither a proper anticipation nor a proper obviousness analysis. For anticipation, each claim element, with all its limitations, must be found in a single prior art reference, arranged as in the claim. For obviousness, there must be a single combination of one or more prior art references, along with a suggestion to combine them and a suggestion that success will result from the combination, that renders obvious every claim element and limitation. It is not sufficient to show, for example, that element A is present in combination X and that element B can be found in combination Y.

c. He made use of impermissible hindsight by utilizing the claims themselves as a roadmap for applying prior art rather than combining suggested references to yield the subject matter of the claims.

d. In no case does Dr. Taylor provide any motivation or suggestion to combine the references he has used.

e. In the Taylor Report, he did not apply the claim terms as construed in the Court's Markman opinion. The most serious misapplication is his equating shopping carts with order forms and checklists. In the Supplementary Report, he incorrectly interpreted the Court's Markman constructions.

f. He improperly applied references that were not prior but treated them nevertheless as prior art.

g. He improperly relied on uncorroborated deposition testimony concerning dates of invention and features of asserted prior art.

h. He applied an erroneous standard of indefiniteness in asserting that certain claims are "meaningless" when their meaning is in fact unambiguous to a person skilled in the art.

i. He misapplied references that do not teach the elements they are asserted to teach.

j. His analysis of non-infringing alternatives was erroneous.

k. He misapplied secondary indicia of non-obviousness to conclude that they are not pertinent.

l. Many of Dr. Taylor's asserted anticipation references contain no enabling disclosure, but consist of snippets of emails or bulletin board postings devoid of any computer code, diagrams or flowcharts.

The cumulative effect of these errors is to invalidate every conclusion drawn by Dr. Taylor.

## LEVEL OF ONE OF SKILL IN THE ART

11.     I agree with paragraphs 11 and 12 of the Taylor except that I see no evidence to support a requirement of possessing a Bachelor's Degree in Computer Science to be of ordinary skill in the art.  Numerous excellent system developers and programmers learned their craft long after leaving undergraduate school, and therefore would not possess degrees in computer science. Likewise, many technical people from other disciplines such as engineering and physics later migrated to careers in computer programming.

## DATES OF INVENTION

12.     I am informed that Plaintiff will be able to prove dates of invention of particular claims that predate certain items of alleged prior art relied upon by Dr. Taylor.  A timeline of such prior art with respect to the asserted claims is given in Exhibit 3.

## CUMULATIVE ART

13.     In paragraph 20, Dr. Taylor, without even looking for himself, but relying on misstatements by the examiner, is "reasonably certain" that none of the prior art he cites with respect to session identifiers is cumulative to the art that was before the Patent Office during the '780 prosecution.  However, the Montulli reference on "Session Tracking" (omi.mail.www-talk, Apr. 18, 1995) states, "Since the server needs to process the information to make it usable and since documents don't get resent to servers trying to embed information in a document doesn't work in practice.  People have tried to embed the information in hidden form elements and URLs but the systems inevitably have their problems since alternate navigation mechanisms available

6

to the user break these systems." That was a correct statement of the art at the time, and the earlier Trewitt reference, which was not before the examiner, says essentially the same thing -- that it was questionable whether embedding session ids in URLs would be effective. The Taylor references are therefore cumulative because Montulli discloses the need for session tracking in HTTP sessions, session ids and URL embedding. The remainder of the thread teaches against some claims of the patents in suit. For example, it comments unfavorably on session tracking through server logs (in a statement from the same thread by Pitkow, two of whose other references are relied upon by Dr. Taylor). Thus the examiner had ample art on which to consider the claims and allowed them over this art.

## SUBJECT BACKGROUND

14.     While it is generically true, as asserted in paragraph 21 of the Taylor Report, that the patents in suit pertain to "electronic commerce," they do not claim electronic commerce but rather claim very specific methods and apparatus for conducting it. The language of the EAASY SABRE manual referring to a "shopping basket" is neither the same as, nor equivalent to, the "shopping cart" of the Payne patents, and it is misleading to suggest that EAASY SABRE teaches such a thing.

15.     While it is generically true, as asserted in paragraph 21 of the Taylor Report, that a variety of prior art systems supported selling goods to consumers over a computer network, the patents in suit do not claim such selling, but instead claim very specific methods and apparatus for conducting it. To imply that CompuServe, Prodigy and the Filepp patent (which was considered by the Patent Office during the prosecution of all of the patents in suit), in any way teach or suggest the asserted claims is misleading.

16.     Paragraph 24 of the Taylor Report misstates the "problem to be solved." The shopping cart is not, as stated, merely a way to place a conventional order, but a completely new, and what has turned out to be, a highly successful shopping paradigm having no antecedent in either physical stores or network ordering, and the '314 and '492 patents teach specific methods

7

that capitalize upon the features of this new shopping paradigm.  It is notable that Dr. Taylor's statement of the "problem to be solved" neither quotes, nor utilizes any language from, the specifications of the patents in suit.

## PRIOR ART ANALYSIS

17.     Paragraph 28 of the Taylor Report is a show-stopper.  Dr. Taylor states that he considers "shopping cart, shopping list, shopping basket, shopping trolley, bag, order form and selection list" to be "equivalent" and that they "are merely syntactic variations on a single semantic concept."  These assertions are wrong, and they account for the remaining erroneous conclusions in the Taylor Report concerning the '314 and '492 patents.  Anything can be proven from a false premise.

18.     A "shopping cart," as construed by the Court, is "a stored representation of a collection of products."  The shopping cart paradigm, as described in the patents in suit, is totally distinct from either an "order form" or a "selection list."  An "order form" is a blank form that is filled out by a customer and then sent as a whole to a merchant.  There is no sequential item-by-item addition, subtraction or review of selected items involving interaction between customer and merchant as is possible in the shopping cart model.  Instead, with an order form, the user types catalog numbers or other product descriptions as text onto the form.  When the form is complete, it is transmitted as a unit to the merchant.  The merchant may then respond to it, as by filling the order, denying the order, or raising questions about the order.  The communication is not interactive, and the act of adding a new item to the form, or deleting an item from the form, has no effect whatever until the entire form is sent to the merchant.  The line items on the form are not "representations" of the products, but are at most "identifications" of products.  The shopping cart paradigm relies also on the use of a "shopping cart computer" on which to maintain an active representation of the items the user currently wants to buy, a "shopping cart database" capable of holding multiple orders from multiple customers (and even more than one order from the same customer), and a messaging structure that enables real-time update of the

representations displayed to the user.  These elements are not present in order form or shopping list systems.

19.     Likewise, a "selection list" has no connection with a shopping cart.  A selection list is analogous to a preprinted form or menu listing all of the items a vendor has available to sell.  The user then chooses the ones he wants to buy by checking boxes on the form, erasing check marks, and so forth, until his list of selections is complete.  The entire list is then sent to the merchant for disposition.  This is similar to an order form but more cumbersome and elementary, for it requires the merchant to include all of his products on the list since a product that is not present cannot be ordered.

20.     The use of the familiar terms "shopping list," "shopping basket," "shopping trolley," and "bag" in paragraph 28 of the Taylor Report are meant to imply misleadingly that the inventors of the patents in suit did no more than implement on a computer a method of shopping that was familiar to all from mail-order catalogs.  A "shopping cart," as used in the patents in suit, is not literally analogous to a "shopping cart" in a grocery store.  A store shopping cart literally contains products, not representations of products.  A store shopping cart cannot compute the total value of merchandise it contains.  A store shopping cart cannot report how much it will cost to deliver or ship the goods it is holding.  In this sense a store shopping cart is equivalent to a "shopping basket," "shopping trolley" or "bag," but none of these is the "shopping cart" of the patents in suit.

21.     A "shopping list" is simply a list of goods prepared in advance by a person who intends to visit a store.  It is nothing like either a store shopping cart or a "shopping cart" within the meaning of the patents in suit.  It does not contain representations of products.

22.     It would have been correct in paragraph 28 of the Taylor Report to say that the listed terms describe not one, but four distinct semantic concepts: the "shopping cart," the "order form," the "selection list" and the "shopping list."  Any effort to equate these concepts in order to bring inapplicable prior art to bear is erroneous.

23.     In paragraph 29 of the Taylor Report, Dr. Taylor expresses his personal belief that "there is a motivation to combine the references listed below in either the references themselves or in the experience of one of ordinary skill in the art." It is notable that nowhere in the remainder of his report is there a single quotation from any of the references suggesting any such combination. Therefore, the motivation to combine cannot have come from the references themselves. Likewise, Dr. Taylor cites no suggestion to combine from any other source. The word "combine" or "combined" is used 20 times in the Taylor Report, but not once is there any citation to any suggestion to combine.

24.     Dr. Taylor avers, without any evidence or demonstration, that a suggestion to combine would be apparent to one skilled in the art. But an omnibus assertion of this kind is meaningless. For every combination of references one must show how the combination was suggested and also why one skilled in the art would reasonably expect success if the combination were attempted. Instead, Dr. Taylor essentially says that it would be apparent to combine any set of references in the field of electronic commerce to invalidate the patents in suit, a principle that has no basis in patent law.

## THE '314 PATENT

25.     I refer now to the claim charts beginning at paragraph 30 of the Taylor Report. As shown in Exhibit 3, the following references do not predate claims 34-39 and have thus been misapplied both as to anticipation and obviousness: Stuff.com, CC, H3, Internet Shopkeeper, and Cameron U.S. Patent 5,592,378.

26.     Biznet has no applicability at all to the '314 patent. Biznet orders were created separately and then physically or electronically mailed to a merchant. It is not a shopping cart system.

27.     The documentary evidence does not support any testimony concerning the structural architecture of NetMarket, or even that it used the shopping cart, as opposed to the selection list, method of ordering. Therefore, it is inapplicable as a reference against the '314 patent.

28.     With respect to the preamble of claim 34, virtually all of the references cited by Dr. Taylor do not teach shopping carts, but instead teach selection lists and order forms.  If those mechanisms had been truly effective for web commerce, Amazon would be using them.

29.     This error is put into clear perspective by Dr. Taylor's citation of the wwworder posting of June 2, 1994.  It describes only a list that is assembled at a user computer and then sent as a unit to a merchant computer.  The merchant computer processes the entire unit and sends a reply to the user.  That is not a shopping cart and does not anticipate the structure of claims 34-39.  Likewise, references to Future Fantasy are inapplicable since that site only provided for the sending of an order form, which is not a shopping cart.

30.     The following systems cited by Dr. Taylor are not shopping cart systems as claimed in the patents in suit, although their descriptions may contain the literal words "shopping cart" or synonyms thereof because they are form-based: EAASY SABRE, Travelshopper, Internet Shopping Network (ISN) and Biznet.

31.     For example, the EAASY SABRE User's Guide makes reference to the term "shopping basket," but this usage is merely metaphorical.  The mechanism of purchasing is an order form with prompting.  There is no suggestion that the hypertext transfer protocol is used, and the user must specifically request pricing each time he wants to know the value of services ordered.

32.     Referring to p. 15 of the Taylor Report, it is clear from the Markman order that a terminal connected to a system is not a "computer," and therefore cannot be a "buyer computer." The Court defined "computer" as "a functional unit that can perform substantial computation, including numerous arithmetic operations, or logic operations without human intervention."  A terminal does not fit this definition since it is used simply to transmit keystrokes to a remote computer and to display the characters corresponding to those keystrokes.  Therefore, references to Major BBS/OmniMall are inapplicable.

33.     (p. 15) EAASY SABRE cannot have a "shopping cart computer" since it does not have a "shopping cart."  Likewise for CompuServe, Prodigy, Major BBS/OmniMall, H3,

11

Stuff.com, and Future Fantasy, which are form processing or selection list systems.  This leaves only CC as a reference possibly having a shopping cart computer, but CC is not prior art as to '314.

34.     (p. 15)  With reference to the "shopping cart database," Dr. Taylor incorrectly assumes that any list of what a user wants to order qualifies as a shopping cart, and then takes the leap of assuming that any storage of such a list is a "shopping cart database."  A collection of order forms need not be either a "database" or a "shopping cart database."

35.     (p. 16)  The references to depositions concerning Stuff.com, NetMarket and ISN are uncorroborated and cannot be relied upon for invalidity.

36.     (p. 16)  Since Trewitt contains no reference to shopping carts, it cannot be said to teach a shopping cart database.  There are therefore no remaining prior art references that arguably might contain a shopping cart database.  Trewitt actually emphasizes that systems such as FFBS were shopping list systems, not shopping cart systems.

37.     (p. 17)  With respect to interconnecting the buyer computer and shopping cart computer, there are no remaining proper prior art references (that is, corroborated references that are prior to applicants' date of invention) possessing these elements.

38.     (p. 17)  The "plurality of requests" element begins to define the shopping cart paradigm in claim language.  A feature of the shopping cart that distinguishes it from an order form or shopping list is the interactive ability to update the cart by sending shopping cart messages from the buyer computer to make additions and deletions to the cart, without the need to send the entire contents of the order repetitively, and to have the shopping cart computer respond interactively by, for example, updating the price or the visual contents of the cart.

39.     (p. 18)  The references to FFBS and Trewitt are inapplicable since they do not teach the cited element.

40.     (p. 19)  Dr. Taylor cites many references that enable buyers to purchase "multiple items."  But that is not the substance of the claim element under discussion.  The patent does not claim online shopping generically, nor does it claim simply the ability to buy more than one

thing. The claim sets forth a specific mechanism for buying a plurality of items through a particular exchange of messages, and Dr. Taylor does not cite any art on p. 19 that teaches the claimed sequence of exchanges.

41.     (pp. 19-23)  The claim element discussed at the bottom of p. 19 through p. 23 is specific and must be found or suggested in the prior art to be rendered obvious.  There are no proper prior art references that can arguably be said to comprise or teach this element.  The other references are either not prior or are inapplicable, as discussed above.

42.     (p. 23)  Dr. Taylor asserts that CC contained the "payment message" required in claim 34, but there is no evidence of that.  While the website may have allowed a user to "send in an order," an order is not a payment, and certainly does not require a payment message or causing the payment message to be "activated," as required by the claim.

43.     (pp. 23-25)  There are no proper prior art references (references that actually predate the invention) that comprise or teach the element discussed here.  The analysis of Biznet, for example, refers to the possibility of developing an "effective solution" without specifying one, which is surely not an enabling disclosure.  On p. 25, the ISN discussion makes it clear that that was an order form system, not a shopping cart system.

44.     (pp. 25-26)  Here Dr. Taylor discusses the capability of various systems to support multiple users and multiple items, but does not show how the entire claim element can be found in any reference.  The claim deals with manipulation of collections of stored representations of items.

45.     (p. 26)  With respect to claim 35, Dr. Taylor has not identified any prior art reference or combination that teaches the claimed limitation.  Dr. Taylor states that he agrees with the analysis of reexamination control number 90/007,287 (the "Reexam") with respect to claim 35 and incorporates its conclusions by reference.  In a reexamination, the Patent Office applies a different standard in allowing claims than is used in litigation.  It gives the broadest reasonable interpretation to the claims; in litigation the Markman interpretations govern.  In the

13

reexamination the application is accorded only its priority date, not the possibly earlier dates of invention of the claims.

46.    (pp. 26-27)  With respect to claim 36, Dr. Taylor states that "The Prodigy and EAASY SABRE systems disclosed this claim."  He may mean that they disclosed the limiting element, but he has not shown that they anticipate the claim.  There are no proper prior art references that comprise or teach the claimed element.

47.    (p. 27)  With respect to claim 37, the only logical meaning that can be attached to "payment computer" is that it should read "shopping cart computer."  This is clear because it is only the shopping cart computer that holds the shopping cart, hence a request for the shopping cart directed to any other computer would be fruitless.  There are no proper prior art references that comprise or teach the claimed element.

48.    (pp. 27-28)  With respect to claim 38, I have the same comment regarding the substitution of "shopping cart computer" for "payment computer."  There are no proper prior art references that comprise or teach the claimed element.

49.    (pp. 28-29)  Claim 39 is a method claim corresponding to claim 36.  There are no proper prior art references that comprise the claimed steps.

## THE '492 PATENT

50.    (p. 30)  Referring to the claim charts beginning at paragraph 31 on p. 30 of the Taylor Report.  As shown in Exhibit 3, no asserted claim of the '492 patent is predated by any of the following references, which have thus been misapplied by Dr. Taylor:  Stuff.com, CC, H3, Internet Shopkeeper, Berners-Lee article 8/94, and Cameron U.S. Patent 5,592,378.  WWWorder does not predate claims 2 and 3 of the '492 patent.  Future Fantasy Bookstore does not predate claims 1, 5, 15 or 16 of the '492 patent.

51.    (p. 30)  Dr. Taylor appears to believe the '492 patent simply claims a network-based sales system in its basic form, namely one in which a merchant offers product descriptions over a network to a buyer, who may select products to order.  I believe this because he has cited

alleged prior art that does not conform at all to the structures in the claims.  The '492 patent clearly discloses that network sales systems were known in the prior art, that they exhibited deficiencies and that the claimed invention remedies those deficiencies.

52.   (p. 30)  The claims require a "creation computer" that is distinct from the "merchant computer."  That they are different is clear from the fourth element/limitation of claim 1: "said creation computers, said merchant computer, and a payment computer being interconnected by a public packet switched computer network."  If the merchant and creation computers were the same machines, they would not be interconnected by a network.  Therefore, references in which these computers are the same device, or for which Dr. Taylor cannot show that they are different devices, are inapplicable.

53.   (p. 30)  There is no teaching in EAASY SABRE, CompuServe, Major BBS, H3, CC, FFBS, NetMarket, VVV, Internet Shopkeeper or Trewitt to employ a creation computer that is separate from a merchant computer.  It has already been noted which of these references are inapplicable as not being prior art or not being corroborated.

54.   (pp. 32-33)  A "creation computer" must be used to create a database, not just to scan images that might later be used to populate a database, or that might host the database. Thus the references to H3, CC, FFBS, and Stuff.com are inapplicable.  There is no evidence or showing at all that any of the "computers" referred to with in Biznet or Internet Shopkeeper were "creation computers."  In the case of NetMarket, the Kohn deposition testimony concerning database creation is uncorroborated.  Dr. Taylor cites no support for the presence of creation computers (as opposed to hosting computers) in EAASY SABRE and Travelshopper.

55.   (p. 33)  The claim requires that the merchant computer perform both the function of sending advertisements and causing products to be transmitted to a user.  There is no showing in the case of Major BBS or EAASY SABRE that any computer performed both functions.

56.   (pp. 33-34)  While Dr. Taylor asserts that in the cited systems the computers were interconnected by a public packet switched network, this is incorrect.  To the extent that the creation and merchant computers may have been distinct (and there is no such showing), they

15

would not have been connected by a public network, but would have been connected by a private local area network. It is the user computer (not claimed) and the merchant computer that would have been connected by a public network in the cited references.

57.    (pp. 33-34)  Dr. Taylor conveniently fails to follow the language of claim 1, which requires at least three separate computers performing different functions to be interconnected. The fact, for example, that the CC and H3 computers were all on networks does not imply, or even suggest, that these systems possessed separate creation, merchant and payment computers.

58.    (pp. 33-34)  In discussing the interconnection between the computers, Dr. Taylor wrongly equates "process" with "computer." "Ethernetworking" is not interconnection by a "public packet switched network." Dr. Taylor says several times that in the case of various references the systems "could have been set up" according to the claim. That is very far from a showing of anticipation, which requires that the systems were either set up that way in fact or could not have been set up any other way. In the case of EAASY SABRE the issue is not whether one reading the claims of the '492 patent would in hindsight figure out how to implement EAASY SABRE using a public packet-switched network. There is no showing that the EAASY SABRE computers required by the claim even existed or were connected that way. The fact that CompuServe was "accessible" via the Internet does not imply that the computers required by the claim either existed or were connected in that fashion.

59.    (pp. 34-35)  Dr. Taylor ignores the fact that "said network" in the claim refers back to the "public packet switched network" of an earlier element. Instead he supposes that any network will serve in its place. Therefore his citations of H3, CC, FFBS, Stuff.com, Internet Shopkeeper, Major BBS and NetMarket, EAASY SABRE and CompuServe (that is, all of the references) are inapplicable.

60.    (pp. 36-38)  Dr Taylor's mapping between claim elements and components of the references is incorrect. There is no showing that H3 had a creation computer and therefore element [a] is not present. Dr. Taylor does not identify any "payment computer" in any

16

reference, and therefore elements [e] and [f], referring to the "access message" produced by the payment computer, cannot be present.

61.     (pp. 38-39)  With respect to claim 3, when shopping for travel products the "product fulfillment item" cannot be the product itself, since the product must be transmitted by the creation computer to the merchant computer.  If the "product" is the "right to travel" or the "reservation number," these things are not generated by the creation computer and thus this element is not present in EAASY SABRE.  Whether products in Major BBS or Travelshopper were digital is not the relevant point.  The question is whether they were resident on a creation computer and transmitted to a merchant computer.

62.     (p. 39)  The analysis of claim 4 is contorted.  The issue is not whether the fulfillment items were hard goods, but whether they were hard good identifiers.  Since there is no showing in any of the references that a creation computer existed, the claim cannot be anticipated by them.

63.     (pp. 41-45)  In his discussion of claim 15, Dr. Taylor states that it would be apparent to combine certain references with certain others to render the claim obvious.  However, the claim recites six separate elements and even more subelements, all of which must be shown to exist in the asserted combination.  No such showing has been made.  The claim is directed to the "smart statement" described in the '492 specification.  This smart statement is not merely a summary of items being purchased for confirmation purposes, but has an existence that is maintained subsequent to the completion of a transaction and can be requested later.  The "transaction details" are revealed by clicking on hyperlinks.  No reference that does not teach a smart statement can anticipate this claim or render it obvious.  Dr. Taylor's analysis here is classic hindsight, stating essentially that "it would have been obvious how to do that if one had been told what to do" instead of "the references teach one to do that."

64.     (pp. 41-45)  Claims 15 and 16 predate CC, so that reference is inapplicable to those claims.  EAASY SABRE, Prodigy and Travelshopper were not hypertext systems.  Hyperform contains no teaching at all about display of transaction details through hyperlinks.

65.    (pp. 46-47)  The inapplicability of Dr. Taylor's cited references to claims involving a "shopping cart computer" have been discussed extensively above in connection with the '314 patent.  If anything, some of them are even less applicable in the context of hypertext systems.  For example, EAASY SABRE was not a hypertext system.  Nielsen, Bieber and Berners-Lee discuss hyperlinks, but not within the context of a sales system and do not mention selling, purchasing, transactions, transaction databases or user statements.  It is amazing that even the large collection of references cited by Dr. Taylor collectively do not teach all of the elements of claims 15 and 16.

66.    (p. 48)  With reference to the "buyer computer" element, as discussed above, a terminal is not a "computer" under the Court's Markman interpretation.

67.    (pp. 48-49)  With reference to the "shopping cart computer" element, one cannot have a shopping cart computer without a shopping cart.  As previously shown, EAASY SABRE, Travelshopper, Internet Shopping Network (ISN), NetMarket, wwworder, Biznet, Prodigy, Major BBS/OmniMall, H3, Stuff.com, and Future Fantasy do not have shopping carts, and thus do not teach shopping cart computers.  CC, which arguably discloses a shopping cart, is predated by claim 17.

68.    (pp. 49-50)  Likewise, none of the references cited by Dr. Taylor teaches a "shopping cart database" since none teaches a shopping cart.  CC, which arguably discloses a shopping cart database, is predated by claim 17.

69.    (p. 50)  Similarly, none of the references cited by Dr. Taylor teaches a buyer computer interconnected to "shopping cart computer" since none teaches a shopping cart.  CC, which arguably discloses such a structure, is predated by claim 17.

70.    (pp. 50-59)  The same arguments apply to the remaining elements of claim 17.

71.    (pp. 59-60)  The same rebuttal to Dr. Taylor's claim 17 contentions apply to claim 18.

18

72.     (p. 60-64)  Claims 35-36 are method claims corresponding to claims 17-18 and have the same date of invention.  Therefore, the same rebuttal offered for claims 17-18 applies also to claims 35-36.

## PROSECUTION OF THE 6,449,599 PATENT

73.     In paragraph 33 of his report, Dr. Taylor relies on a rejection by the examiner in the application that matured into the Payne '599 patent as a basis for asserting that claim 19 of the '492 patent is invalid.  Dr. Taylor fails to appreciate that an examiner's non-final rejection has no evidentiary effect, carries no presumption of correctness, is made using a different standard than the one applied in litigation and is made without the benefit of any Markman interpretation.

74.     The examiner rejected proposed claim 35 on the grounds that it was unpatentable over the Allen reference in view of Gifford '424.

75.     The Manual of Patent Examining Procedure (MPEP) provides in Section 2142 ("The Legal Concept of Prima Facie Obviousness"): "When the motivation to combine the teachings of the references is not immediately apparent, it is the duty of the examiner to explain why the combination of the teachings is proper. Ex parte Skinner, 2 USPQ2d 1788 (Bd. Pat. App. & Inter. 1986)."  It is indisputable, from an examination of the prosecution history, that the examiner provided no explanation whatsoever why the combination of the teachings was proper.

76.     Several terms used in claim 19 of the '492 patent have been interpreted by the Court, including: "access message," "computer," "interconnected by a computer network," "message," "payment computer," "payment message," "product."  These Markman interpretations were not available to the examiner during the '599 prosecution.  It is not sufficient merely to cite an examiner's rejection as a basis for obviousness during litigation.  An argument must be made based on the claim terms as interpreted by the Court, and the necessary motivation to combine and expectation of success must be supplied.

77.     It should be noted at this point that the examiner in the '599 case allowed claims 1-3, which are very similar to claims 1-3 of '492, despite having expressly considered Allen and Gifford. This indicates that Allen and Gifford were not material to the '492 prosecution.

78.     Paragraphs 34 and 35 of the Taylor Report exhibit the same deficiency with respect to claims 21 and 30 of the '492 patent.

79.     Paragraph 36 of the Taylor Report argues that claim 19 is also invalid for "same invention type" double patenting based on claim 1 of the earlier-issued '314 patent. The argument is defective because Dr. Taylor is mistaken about the meaning of the word "broader" in patent claim interpretation. MPEP §804 outlines the principle: "A reliable test for double patenting under 35 U.S.C. 101 is whether a claim in the application could be literally infringed without literally infringing a corresponding claim in the patent. In re Vogel, 422 F.2d 438, 164 USPQ 619 (CCPA 1970)." Thus there will be no double patenting if claim 19 of '492 can be infringed without infringing claim 1 of '314. Claim 19 contains the limitation "the merchant computer being programmed to receive the access message, to cause the access message authenticator to be verified." The element in '314 claim 1 asserted to be analogous is: "said merchant computer being programmed to receive said access message, to verify said access message authenticator." Claim 19 can be infringed if the merchant computer hands off the verification to a different computer or instrumentality. Claim 1 requires the merchant computer itself to do the verification. Therefore claim 19 can be infringed without infringing claim 1, so there is no double patenting.

80.     The same error occurs in paragraphs 37 and 38 of the Taylor Report with respect to claims 21 and 30 of '492.

81.     Paragraph 39 repeats the incorrect Allen/Gifford argument with respect to claims 1 and 33 of '314.