# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **SOVERAIN SOFTWARE LLC,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **CDW CORPORATION,** ) <br> **NEWEGG INC.,** ) <br> **REDCATS USA, INC.** ) <br> **SYSTEMAX INC.,** ) <br> **ZAPPOS.COM, INC.,** ) <br> **REDCATS USA, L.P.,** ) <br> **THE SPORTSMAN'S GUIDE, INC.,** ) <br> **AND** ) <br> **TIGERDIRECT, INC.,** ) <br> ) <br> **Defendants.** ) | Case No. 6:07-CV-00511-LED |

### SOVERAIN'S REPLY TO SYSTEMAX AND TIGERDIRECT'S
### RESPONSIVE CLAIM CONSTRUCTION BRIEF

NYI-4182685

**I.      INTRODUCTION**

Soverain submits this reply to the claim construction brief (Dkt. 204) of defendants Systemax and TigerDirect ("Systemax").

**II.     CLAIM CONSTRUCTION**

    **A.      "Shopping cart computer" (U.S. Patent Nos. 5,715,314 and 5,909,492)**

| Soverain's Construction | Systemax and TigerDirect's Construction |
|---|---|
| a computer processing data associated with one or more shopping carts | a computer processing data associated with one or more shopping carts but is not operated by an operator of a merchant computer |

Attempting to prove the identity between the "shopping cart computer" and the "payment computer" that is critical to Systemax's argument, Systemax points to a quotation from the report of Michael Shamos, Ph.D., Soverain's expert in *Amazon*. Systemax takes the quotation out of context and crops it to its advantage. (Systemax Br. at 5.) Shamos, referring to a drafting error in a specific '314 patent claim (claim 37) not here in suit, explains that *in that erroneous claim*, the recited "payment computer" should have been replaced by the "shopping cart computer," as would be apparent to a person of ordinary skill. The full quote, with Systemax's omission italicized, follows and makes clear that Shamos' statement is of no help to Systemax:

> *With respect to claim 37,* the only logical meaning that can be attached to "payment computer" is that it should read "shopping cart computer." This is clear because it is only the shopping cart computer that holds the shopping cart, hence a request for the shopping cart directed to any other computer would be fruitless.

Systemax's construction hinges on the alleged fact that "[t]he specifications of the '314 and '492 patents do not disclose (or even suggest) an embodiment of the claimed network sales system in which the merchant computer and the payment computer can be owned and/or operated by the same or associated entities." (Systemax Br. at 9.) It is wrong, however. The

'314/'492 patents do disclose an embodiment where both the merchant computer and the payment computer are operated by a manager of the network sales system:

> With reference to FIG. 1, a network sales system in accordance with the present invention includes . . . *a merchant computer* 14, *which may be operated by* a merchant willing to sell products to the buyer or by *a manager of the network sales system, a payment computer* 16 *typically operated by a manager of the network sales system*, and a creation computer . . . .

'314 patent, 4:35-45 (emphasis added).

Systemax also alleges that the background of the patents "state that the inventions were intended to address the security issues" of merchants being able to see users' payment information. (Systemax Br. at 3.) But the background does not discuss *any* "security issues," nor express *any* intent to mitigate them. '314 patent, 1:1-48; '492 patent, 1:1-48.

To find the alleged intent, which is absent from the intrinsic record, Systemax goes to the extrinsic record and points to a supposed admission by one of the inventors, Andrew Payne. In a document produced by Soverain written over three months *before* the '314 and '492 applications were filed, when Payne was an employee of a brand new e-commerce business, Open Market, he wrote: "Story: We are building a payment system for the Web. Our novel approach works with today's clients and doesn't let the merchants see the client's payment credentials." (Systemax Br. at 4, 21-22.)

This statement is irrelevant to claim construction. First, it does not relate to the patents, which were not even filed when it was written. Second, Payne was discussing business plans for Open Market, not the patents. Third, if evidence at all, the document is extrinsic and, therefore, carries minimal weight.[1] Finally, the statement refers only to a "payment system" – not the sales

---

[1] *See Bd. of Regents of the Univ. of Texas Sys. v. Benq Am. Corp.*, No. A-05-CA-181, 2006 WL 6112210, at 7 n.8 (W.D. Tex. Jul. 14, 2006); *see generally Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc).

- 2 -

NYI-4182685

- 3 -

system to which the claims reciting "shopping cart computer" are directed. Far from being an admission, Payne's out-of-context statement, and Systemax's heavy reliance thereon, highlight the weakness of Systemax's position based on the intrinsic record.

Systemax also points to the disclosure of a cryptographic security key shared by the merchant and payment computers, theorizing that such keys are necessary only if those computers have separate operators. (Systemax Br. at 7-9.) Systemax's theory is wrong. The cryptographic keys are necessary to ensure that *buyers* are authorized to purchase products, regardless of who operates the merchant and payment computers. *See* '314 patent, 1:50-2:18.

Systemax's reliance on the *Unitherm* case for the proposition that a claim should be limited to the only embodiment "reasonably derived" from the specification is misplaced. Not only is this an incorrect statement of the law, but it is not supported by *Unitherm*, which stands instead for the proposition (ignored by Systemax) that a limitation from the specification should not be read into the claims.[2] In fact, Systemax's "reasonably derived" theory is directly contradicted by *Phillips*, which cautions against limiting claims to the only embodiment even where that embodiment is expressly disclosed.[3]

### B. "Stored session identifier" (U.S. Patent No. 7,272,639)

| Soverain's Construction | Defendants' Construction |
|---|---|
| Plain meaning applies | a session identifier that is recorded in computer storage without other information, excluding standard browser formats common to the Web on or before June 7, 1995. |

Much of Systemax's brief is devoted to trying to disprove the entitlement of the '639 patent to the June 7, 1995 filing date of its parent. But Systemax misstates the applicable law. To get the parent's filing date, the specification of a continuation need not be "identical" to that

---

[2] *Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.* 375 F.3d 1341, 1351 (Fed. Cir. 2004).

[3] *Phillips*, 415 F.3d 1303 at 1323.

of its parent; the requirement is that "new matter" not be added to the continuation.[4] Simply making definite that which is implicit in the original specification, or clarifying what was in the specification originally, does not constitute adding new matter.[5] That is exactly what happened in the filing of the '639 patent application. Thus, when the applicants' attorneys explained that "cookie compatible browsers" are examples of the "special browser" mentioned in the parent, they did not add new matter. Nor did they add new matter when, for clarity, they referred to what were "standard browser format[s]" at the time of the filing of the parent as "early browser formats." *See* '780 patent, 4:24-30; '639 patent, 4:22-29.

Systemax's contrary argument that the '639 patent is an improper continuation, and all that follows from it, including the alleged "disclaimer" of pre-June 7, 1995 standard browsers, should be rejected. Nothing in the '639 patent itself, its parent, or its prosecution history supports the alleged disclaimer of such browsers. In fact, the '639 patent and its parent disclose an embodiment in which the standard browsers store session identifiers and append them to relative URLs. '639 patent, 3:54-65.

Systemax again relies on Dr. Shamos's report, and again takes his words out of context. Shamos's statement regarding "a very specific method of using session identifiers with HTTP" refers to the '780 patent (the '639 patent's parent), not the '639 patent, which had not even issued when Shamos's report was written. Nor does Shamos – even in the context of the parent patent – use the words "*i.e.*, incorporating session identifiers into URLs," which are entirely Systemax's creation.

---

[4] Systemax Br., Ex. 3, Manual of Patent Examining Procedure § 201.07, 6th Ed., Rev. 3 (July 1997).

[5] *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352 (Fed. Cir. 2000); *O'Hara Mfg. v. Eli Lilly & Co.*, 1986 U.S. Dist. LEXIS 22546, at *9-11 (N.D. Ill. July 18, 1986).

- 4 -

Systemax's support for the other limitations read into it claim construction is equally specious. It points to no support for the "computer storage" limitation, which, in any case, is vague because it is unclear how "computer" modifies "storage." And its limitation "without other information [in the request]" would exclude an embodiment of the invention wherein the client's IP address, which is stored at the client, is included in requests sent to the server.[6] There is no clear prosecution-history disavowal of storing other information from the request with the session identifier. The quotation relied on by Systemax ("just the SID (and not the entire request) is stored") is not such a disavowal, for it leaves open the possibility that information less than the "entire" request could be stored. A better, more logical explanation of the quote is that "just the SID" refers to the exclusion of authentication information, and not the exclusion of *all* information.[7] Moreover, the distinction drawn from Freeman-Benson is that it does not disclose a session identifier and does not *append* anything to requests; this distinction was not based on what other information was or was not stored with Freeman-Benson's nonexistent session identifier.[8]

Finally, Systemax improperly labels Soverain's position a "non-construction," and cites *O2 Micro* in support of its view that the Court must provide a construction of "stored session identifier" differing from the claim language just because Systemax has requested such a construction. (Systemax Br. at 24.) But *O2 Micro* does not prevent courts from deciding that the

---

[6] *See* Systemax Br. at 23 (although the phrase "in the request" is not in Systemax's proposed construction, Systemax's argues for the limitation without "other information *in the request*" (emphasis added)).

[7] *See* Soverain Br., Ex. 10, December 28, 2001 Amendment, at 5-7 (noting that Freeman-Benson "stores a particular request, complete with URL, user name and password").

[8] *See id.*

plain meaning of a disputed term applies, as at least one Court in this District has done subsequently.[9]

### III.   CONCLUSION

For the foregoing reasons and those in Soverain's opening brief, the Court should adopt Soverain's claim constructions for "shopping cart computer" and "stored session identifier."

---

[9] *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008); *800 Adept, Inc. v. AT&T Mobility, LLC*, Nos. 5:07-CV-23, -57, 2008 WL 4831093, at *9-10 (E.D. Tex. Jul. 23, 2008).

| | |
|---|---|
| Dated: May 15, 2009 | Respectfully submitted,<br><br>/s/ Ognian V. Shentov (with permission)<br>Kenneth R. Adamo<br>State Bar No. 00846960<br>Lead Attorney<br>Email:  kradamo@jonesday.com<br><br>Mark C. Howland<br>State Bar No. 24027240<br>Email:  mchowland@jonesday.com<br><br>JONES DAY<br>2727 North Harwood Street<br>Dallas, Texas 75201-1515<br>Telephone:  214-220-3939<br>Facsimile:  214-969-5100<br><br>Thomas L. Giannetti<br>NY Attorney Reg. No. 1632819<br>Email:  tlgiannetti@jonesday.com<br><br>Ognian V. Shentov<br>NY Attorney Reg.  No. 2867737<br>Email:  ovshentov@jonesday.com<br><br>JONES DAY<br>222 East 41st Street<br>New York, New York 10017-6702<br>Telephone:  212-326-3939<br>Facsimile:  212-755-7306<br><br>ATTORNEYS FOR PLAINTIFF |

- 7 -

NYI-4182685

**CERTIFICATE OF SERVICE**

      This is to certify that on May 15, 2009 a true and correct copy of the foregoing document has been served on all counsel of record via the Court's ECF system.  This is further to certify that on May 15, 2009 a true and correct copy of the foregoing document has been served on the Court-appointed technical advisor by overnight delivery.

                                                            /s/ Ognian V. Shentov
                                                              Ognian V. Shentov