# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:07-CV-00511-LED |
| | ) | |
| **CDW CORPORATION,** | ) | |
| **NEWEGG INC.,** | ) | |
| **REDCATS USA, INC.** | ) | |
| **SYSTEMAX INC.,** | ) | |
| **ZAPPOS.COM, INC.,** | ) | |
| **REDCATS USA, L.P.,** | ) | |
| **THE SPORTSMAN'S GUIDE, INC.,** | ) | |
| **AND** | ) | |
| **TIGERDIRECT, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

## SOVERAIN'S REPLY TO NEWEGG'S RESPONSIVE
## CLAIM CONSTRUCTION BRIEF

I.   **INTRODUCTION**

Soverain submits this reply to Newegg's Responsive Claim Construction Brief (Dkt. 203), which defendants Systemax and TigerDirect join in its entirety.  Soverain addresses herein the construction of the five remaining claim terms disputed by Newegg.  Following submission of Soverain's opening brief, all remaining defendants withdrew their disputes as to eight terms identified in the joint P.R. 4-3 statement and consented to Soverain's proposed constructions of those terms.  (*See* Dkt. 201 and 202.)  Soverain replies separately to the brief of Systemax and TigerDirect (Dkt. 204) on the two terms that only they dispute.

II.   **CLAIM CONSTRUCTION**

   A.   **United States Patent No. 5,909,492**

      1.   **"Hypertext link"**

| Soverain's Construction | Defendants' Construction |
|---|---|
| a non-sequential web association which the user can use to navigate through related topics | text in a document that forms a navigational element pointing, for example, to another document, or form, or resource |

Soverain's construction of this term is the same as the Court's construction in *Amazon*, and all defendants have consented to this construction for the similar term "hyperlink," as used in the '639 patent.  (*See* Dkt. 201.)  Yet in the '492 patent, Newegg argues for a different construction, based on three arguments that have no merit.

First, Newegg argues that "hypertext link" is limited to text because the specification discloses no alternatives.  (Newegg Br. at 9-10.)  This argument is wrong: Appendix A to the '492 patent – part of the intrinsic record – states that "[t]he chief power of HTML comes from its

– 1 –

ability to link *regions of text (and also images)* to another document (or an image). These regions are typically highlighted by the browser to indicate that they are hypertext links."[1]

Newegg's next argument, that "hypertext link" should not be limited to the World-Wide Web allegedly because during reexamination "Soverain introduced new claims which sabotage the Court's earlier construction" (Newegg Br. at 8), makes little sense. As best understood, Newegg argues that narrowing one claim limitation broadens another. Newegg argues that by adding dependent claim 39 calling the "packet switched network" recited in independent claim 15 "an Internet," applicants expanded the meaning of a completely *different* claim limitation – "hypertext link." According to Newegg, this term, while previously limited to the Web, now also covers "non-Web implementations." *Id.*

Newegg provides no support for its basic legal premise that the addition of a dependent claim can somehow broaden the scope of an independent claim, other than the peculiar notion that Soverain somehow sabotaged the Court's claim construction. Newegg's "sabotage" argument is further undermined by the factually wrong assertion that the Internet (*i.e.*, a network) is the same thing as the Web (*i.e.*, a method of accessing information). In fact, they are different.

Newegg next argues that "hypertext link" should not be limited to the Web because such links allegedly existed pre-Web. (Newegg Br. at 9.) In its opening brief, Soverain demonstrated that a person of ordinary skill in the art would understand "hypertext link" to be limited to the Web in the context of this patent. (Soverain Br. at 24-25.)

---

[1] '492 patent, Appendix A (emphasis added) (relevant portions attached hereto as Ex. 14). Exhibits 1-13 were attached to Soverain's opening brief (Soverain Br.).

B.     **United States Patent No. 7,272,639**

1.     **"Controlled document"**

| Soverain's Construction | Defendants' Construction |
|---|---|
| a document that can be accessed when one or more conditions are met | a document for which authentication is required |

Newegg's construction of this term, appearing only in claim 47, critically hinges on the premise that the '639 patent specification *requires* that access to a "controlled document" be given upon user authentication. (Newegg Br. at 11-16.) In fact, it does not. The only requirements are those expressly stated in claim 47, a method claim which recites the steps of (a) "validating . . . the appended session identifier," and (b) "returning a controlled document *if the appended session identifier is valid*." This is it: according to the express claim language, access to a "controlled document" may be granted if the client has a valid session identifier (also "session ID" or "SID"). Newegg admits this fact in the first paragraph of its six-page long discussion of the term, but spends the remainder of its discussion arguing that the presentation of a valid session ID really means going through a user authentication process. *Id.* at 11-16.

That Newegg's argument is wrong is apparent from examining the block diagram in Fig. 2B of the patent and the corresponding disclosure at 6:27-7:21, illustrating the process of creating a valid session ID. According to the block diagram, decision block 212 determines if user credentials are needed for the control level assigned to the requested document. If this document is at a low level (branch N for "No" in the diagram), the process immediately generates a SID in block 228. This branch of the process does *not* require user authentication. If the requested document is at a higher level of control, decision block 212 proceeds down the Y (for "Yes") branch and eventually either determines that the request comes from an authorized user (block 218) or creates a new user account (blocks 220, 224, 226), either way eventually reaching block 228 to generate a SID.

– 3 –

The above description is fully consistent with Soverain's proposed claim construction: for low-level controlled documents, the server issues a session identifier immediately, without checking the user's credentials (*i.e.*, without user authentication). The only condition that needs to be met to generate a session identifier in that case is that the request be for a low-level document. '639 Patent, at 6:27-56, and Fig. 2B N-branch of decision block 212. For higher-level documents, other conditions may be required, such as a credentials verification and, for new users, an opening of an account. *Id.* at 6:27-7:21.

Newegg, on the other hand, pretends that the low-level control branch in the generation of a session ID is also user authentication because the entire process in Fig. 2B is labeled a "flowchart describing the details of the authentication process." '639 patent at 4:58-59. The argument is wrong. Regardless of what labels are used in the text and figures, if the patent expressly teaches a valid SID being generated without reference to any user, user authentication cannot be a *required* part of the definition of "controlled document."

Newegg also asserts that its claim construction position is supported by the Federal Circuit cases *Revolution Eyeware* and *SciMed*.[2] Newegg's reliance on these cases is misplaced. *Revolution Eyewear* stands for the unremarkable proposition that "a court looks to the specification for guidance to ascertain the scope of the claim in claim construction." In no way does it support Newegg's position that absent any requirement in the claim itself, a limitation found only as an alternative embodiment can be read into the definition of a claim term. In *SciMed*, the Court limited the catheter claims to a "coaxial lumen" embodiment. This was done even though the patent also disclosed a "dual lumen" embodiment, because the specification expressly touted the advantages of the coaxial lumen embodiment over the dual lumen

---

[2] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., et al.*, 2009 WL 1140100 (Fed. Cir. April 29, 2009), and *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337 (Fed. Cir. 2001).

embodiment, distinguished over prior art that used the dual lumen structure, and, most importantly, stated that the coaxial structure applied to "all embodiments of the present invention contemplated and disclosed." None of these factors apply in the present case, where user authentication is simply an option that depends on the assigned level of access control.

### 2. "Initial service request"

| Soverain's Construction | Defendants' Construction |
|---|---|
| the first service request in a session | the first request for service |

The dispute here is whether the initial service request is (a) the first service request in a session, or (b) the first service request ever. In its opening brief, Soverain demonstrated that its construction is consistent with the function and the purpose of the '639 patent invention, *i.e.*, management of multiple sessions, while Newegg's construction would undermine that very function and purpose. (Soverain Br. at 13-14.) Newegg goes a step further by asserting that the preferred embodiment is described as including "only a single session," and that therefore "there is no basis in the patent" for differentiating between different sessions through separate session IDs. (Newegg Br. at 21.)

The '639 patent disclosure contradicts Newegg's assertions. The '639 patent discloses the possibility of running multiple sessions between the same client and server system, contradicting the sole basis for Newegg's argument. Specifically, the patent discloses that a first controlled document may contain a "relative link" – a link to a second controlled document on the same server, but possibly in a different protection domain. '639 patent, 3:54-4:4. In such a situation, the server system requires a session identifier to access the first controlled document. *Id.* at 3:54-56. If the second controlled document is in a *different* protection domain, the same server system would require *another* session identifier to access that second controlled document, thus creating a second session. *Id.* at 3:54-4:4.

– 5 –

Further, if, as Newegg argues, only a single session between a client and a server were contemplated in the patent, the so-called session would be infinite in length. Newegg does not refute this assertion in Soverain's opening brief.[3] But infinite-length sessions are contradicted by the '639 patent, which discloses that in a preferred embodiment session identifiers have expiration times. '639 patent, 3:32-36.

Soverain's construction of the "initial service request" as "the first request *in a session*" should be adopted.

### 3. "Creating, responsive to the initial service request, the session identifier"

| Soverain's Construction | Defendants' Construction |
|---|---|
| producing, in response to the initial service request, the session identifier | creating, based on a type of the first request for service, the session identifier |

According to Newegg, before a session identifier is created, the system must first determine the "type" of the initial service request, and more specifically whether the request is for a controlled document. (Newegg Br. at 18-20.) But there is no such requirement in the claim language.

The Federal Circuit, moreover, has expressly rejected the contention in Newegg's argument that "if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."[4] Absent an express declaration by the patentee, even a preferred embodiment should not be read into the claims.[5] Thus, the only argument advanced in Newegg's brief, that in all embodiments disclosed in the '639 patent specification a session identifier is created upon request for a controlled document, is unavailing.

---

[3] Soverain Br. at 14 (describing Defendants' single session as "never-ending").

[4] *E.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (citation omitted).

[5] *See Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907-908 (Fed. Cir. 2005).

NYI-4182978

Furthermore, taken in combination with its construction of "initial service request," Newegg's construction of this term would lead to an implausible scenario, one in which session identifiers are created (1) only following the first service request *ever* between a client and a server, and (2) only if this first request happens to be for a controlled document. Thus, if the first request from a client to a server were for an uncontrolled document, the client could never access a controlled document on that server.

Such a hyper-restrictive construction not only yields an absurd result, but also improperly excludes an embodiment described in the patent as "a typical client-server exchange," in which the first request from the client to the server is for an uncontrolled document.[6] '639 patent, 7:35-8:13. Under Newegg's construction, claim 79 could not cover such an exchange because a session identifier would never be created.

### 4. "subsequent distinct requests"

| Soverain's Construction | Defendants' Construction |
| --- | --- |
| Plain meaning applies; this term does not require construction | every request for a separate and different service |

Newegg argues that notwithstanding a broader disclosure in the specification, the construction of this term should be limited by statements in the prosecution history. (Newegg Br. at 16-17.) Specifically, Newegg cites to a place in the prosecution history where the applicants state that the Freeman-Benson reference does not teach handling different requests (i.e., URLs) to the same server, and specifically "does not teach . . . a SID . . . that is appended to subsequent distinct requests to a particular server." *Id.* According to Newegg, the quoted language "could not be more clear," and therefore "claim scope was sacrificed." *Id.*

---

[6] *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) ("A claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." (citation omitted)); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583-84 (Fed. Cir. 1996).

– 7 –

But it decidedly is *not* clear from Newegg's block quote, or its prosecution history argument, exactly what is allegedly excluded from defendants' construction of "subsequent distinct requests," and specifically whether repeated requests are excluded. That repeated requests are not excluded is discussed in Soverain's opening brief (at pp. 16-17). Newegg ignores Soverain's argument based on the patent's specification, and turns instead to the prosecution history. But a close analysis shows that even assuming Newegg's prosecution history disclaimer arguments extend to repeated requests, they fall short and must fail.

In the same office-action response pointed to by Newegg, applicants made a statement that directly contradicts Newegg's position on alleged waiver:

> [S]ubsequent requests to the server from the browser do not require the user to enter additional verification information, *even for different requests*, because the SID which accompanies *each* request provides validation.[7]

The prosecution history therefore admits of the possibility of "different requests" and therefore does not contain the clear and unambiguous disavowal of repeated requests required to limit claim scope.[8]

## III.  CONCLUSION

For the foregoing reasons, and those set forth in Soverain's opening brief, the Court should adopt Soverain's claim constructions for each of the disputed terms and phrases at issue.

---

[7] Soverain Br., Ex. 10, December 28, 2001 Amendment, at 7 (emphasis added).

[8] *Voda v. Cordis, Corp.*, 536 F.3d 1311, 1321 (Fed. Cir. 2008) ("This court has emphasized . . . that in order to disavow claim scope during prosecution 'a patent applicant must clearly and unambiguously express surrender of subject matter.'" (citation omitted)).

Dated: May 15, 2009                              Respectfully submitted,


                                                 /s/ Ognian V. Shentov
                                                 Kenneth R. Adamo
                                                 State Bar No. 00846960
                                                 Lead Attorney
                                                 Email:  kradamo@jonesday.com

                                                 Mark C. Howland
                                                 State Bar No. 24027240
                                                 Email:  mchowland@jonesday.com

                                                 JONES DAY
                                                 2727 North Harwood Street
                                                 Dallas, Texas 75201-1515
                                                 Telephone:  214-220-3939
                                                 Facsimile:  214-969-5100

                                                 Thomas L. Giannetti
                                                 NY Attorney Reg. No. 1632819
                                                 Email:  tlgiannetti@jonesday.com

                                                 Ognian V. Shentov
                                                 NY Attorney Reg.  No. 2867737
                                                 Email:  ovshentov@jonesday.com

                                                 JONES DAY
                                                 222 East 41st Street
                                                 New York, New York 10017-6702
                                                 Telephone:  212-326-3939
                                                 Facsimile:  212-755-7306

                                                 ATTORNEYS FOR PLAINTIFF

– 9 –

NYI-4182978

**CERTIFICATE OF SERVICE**

       This is to certify that on May 15, 2009 a true and correct copy of the foregoing document has been served on all counsel of record via the Court's ECF system.  This is further to certify that on May 15, 2009 a true and correct copy of the foregoing document has been served on the Court-appointed technical advisor by overnight delivery.

                                              /s/ Ognian V. Shentov
                                              Ognian V. Shentov