# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CDW CORPORATION, NEWEGG INC., REDCATS USA, INC., SYSTEMAX INC., ZAPPOS.COM, INC., REDCATS USA, L.P., THE SPORTSMAN'S GUIDE, INC., and TIGERDIRECT, INC., | ) ) ) ) ) ) Civil Action No. 6:07-CV-00511-LED |
| Defendants. | ) ) ) |

**DEFENDANT NEWEGG'S REPLY TO PLAINTIFF SOVERAIN'S OPPOSITION TO NEWEGG'S MOTION FOR SUMMARY JUDGMENT REGARDING THE <u>IMPROPER PRIORITY CLAIM AND INVALIDITY OF THE '639 PATENT</u>**

Defendant Newegg hereby replies to the Opposition filed on September 11, 2009 by Plaintiff Soverain ("Soverain's Opposition") in response to Newegg's Motion for Summary Judgment ("Newegg's Motion") concerning the improper priority claim and invalidity of the '639 patent. Although Newegg disputes many of the representations in Soverain's Opposition, Newegg need not address each one individually to prevail in its Motion.[1] Rather, Newegg's present Reply addresses the critical and dispositive errors of law, as well as red herrings, in Soverain's Opposition.

## I.   This Court's Focus Must Be on the Contents of the '780 Patent Specification

Soverain makes many arguments directed to the ordinary skill and knowledge in the software arts in attempts to show that the claims of the '639 patent are supported by the specification of the '780 patent. However, this Court must not lose sight of the fact that that the single most important consideration in determining whether a claim is supported is the contents of the specification. 35 U.S.C. § 112, first paragraph (requiring that "[t]he specification shall" contain a written description of the claimed invention, enable the claimed invention, and set forth the best mode). Taking a step back from the technical nuances involved in this case, it bears repeating that the only disclosure that is alleged to support the claims of the '639 patent, which encompass a cookie-enabled browser method, is contained in the following two sentences:

> In another embodiment, a server access control may be maintained by programming the client browser to store an SID or a similar tag for use in each URL call to that particular server. This embodiment, however, requires a special browser which can handle such communications and is generally not suitable for the standard browser format common to the Web.

Ex. B of Newegg's Motion, at col. 4, ll. 25-31. This is the only language of the '780 patent alleged to support the '639 patent claims. Soverain's Opposition, at 3. During prosecution of the '639 patent this same allegedly supporting language was cited by the inventors. Newegg's Motion, at 8.

---

[1] This is because "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Newegg's Motion and present Reply demonstrate that there are no genuine issues of *material* fact raised by Soverain.

1

The dynamic URL method claimed by the '780 patent was described with 6 drawings and flowcharts, 10 columns of text, and 51 pages of computer code to satisfy the requirements of Section 112, first paragraph. Ex. B of Newegg's Motion. Soverain would have this Court believe that the above two sentences, which provide no meaningful disclosure concerning how one can "program the client browser to store an SID" or how one could identify, make, or use a "special browser," completely satisfy the requirements of Section 112 with respect to the claims of the '639 patent. As a matter of law, such scant, essentially nonexistent disclosure cannot satisfy each of the distinct requirements of Section 112.[2] *See generally* Newegg's Motion, at 10-21.

Soverain argues that the language in the above two sentences provides "a complete functional description" of the invention claimed by the '639 patent, which is sufficient to satisfy the disclosure requirements of Section 112.[3] Soverain's Opposition, at 11-12. While in some instances a functional description may suffice, *see generally* cases cited at Soverain's Opposition p. 6, there is a limit to how minimal and vague a functional description of software can be. *See Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990) ("The amount of disclosure that will enable practice of an invention that utilizes a computer program may vary according to the nature of the invention, the role of the program in carrying it out, and the complexity of the contemplated programming, all from the viewpoint of the skilled programmer.").

Here the only "functional description" in the '780 patent is the phrase "a server access control may be maintained by programming the client browser to store an SID or a similar tag for

---

[2] Soverain argues that Newegg "implies that one paragraph—regardless of its substance—could never adequately describe the modified browser," and cites *In re Hayes Microcomputer Prods. Patent Litig.*, 982 F.2d 1527, 1534 (Fed. Cir. 1992) for the proposition that "the adequacy of the description of an invention depends on its content in relation to the particular invention, not its length." Soverain's Opposition, at 7. Although the brevity of the '780 patent's alleged supporting disclosure highlights its lack of substance, Newegg's Motion focuses on what the contents of the '780 patent could reasonably disclose to a person of ordinary skill in the art. *See generally* Newegg's Motion, at 10-21.

[3] Soverain also suggests that Newegg has conceded that the '780 patent provides a sufficient functional description of the invention claimed by the '639 patent. *See* Soverain's Opposition, at 6-7. However, Newegg at no point conceded as much. Newegg pointed out that, at most, the '780 patent merely mentions a "desired outcome" of such a method at an extremely high level of abstraction. Newegg's Motion, at 12.

use in each URL call to that particular server." This language provides no algorithm, no steps to be performed, and no description of how the "programming" may be done. At most, this language is merely an expressed desire for such functionality. Newegg's Motion, at 12. This Court has very recently invalidated a software patent under Section 112 in similar circumstances, where "the specification "describe[d] no algorithm, formula, or series of steps performed by the computer to accomplish the function" that was set forth in the claims. *Grantley Patent Holdings, Ltd. v. Clear Channel Commun., Inc.*, 2008 WL 5781056 (E.D. Tex. 2008).

Soverain's more particular argument is that "the '780 patent's functional description of a modified browser would have been understood by a person of ordinary skill in the art to mean a browser programmed to receive an HTTP header from a server containing certain information, store that information, and send that information back to the server in another HTTP header, where the information can be a session identifier." Soverain's Opposition, at 7. Newegg is put to wonder where in the '780 specification there is any support for such an understanding. Nothing in the above quoted language from the '780 patent mentions an "HTTP header," let alone two different HTTP headers, let alone how the server and client would each be "programmed" for sending and receiving the distinct HTTP headers. The specification refers simply to a "URL call," not this alleged HTTP header exchange described by Soverain, and nothing in the specification supports Soverain's reading. Even in the light most favorable to Soverain, focusing on the language in the '780 specification, Soverain would still have this Court extrapolate far more information than can possibly be communicated by the '780 patent.

While Soverain focuses on the programming of a "special browser," the '639 patent claims involve interaction between the client browser and the server. *See* Ex. A to Newegg's Motion, at claims 1 and 78. Both the browser and server would have to be appropriately programmed to perform the claimed method together. As Soverain's expert Dr. Shamos explained, with regard to

3

the server's capacity to handle the claimed cookie functionality, "if it didn't previously exist, you had no commands to create cookies, you would have to add commands [for the server] to create cookies." Deposition of Michael Shamos of September 1, 2009, attached hereto as Exhibit A, at 91. Thus, even if the '780 patent provided a sufficient functional description of how to modify a browser to handle cookie functionality, which it does not,[4] the '780 patent would still fail to fully describe the necessary programming because it is absolutely silent as to the corresponding programming of the server. Soverain's Opposition reflects this shortcoming of the '780 patent by entirely avoiding this issue of the necessary programming of the server.

Within the '780 patent's brief, alleged, high level allusion to the subject matter clamed by the '639 patent, the '780 patent teaches away from even using such a method when it explains that "[t]his embodiment, however, requires a special browser which can handle such communications and is *generally not suitable* for the standard browser format common to the Web." Ex. B of Newegg's Motion, at col. 4, ll. 25-31 (emphasis added). This teaching away again highlights the insufficiency of the disclosure in the '780 patent. "[W]here the specification teaches against a purported aspect of an invention, such a teaching 'is itself evidence that at least a significant amount of experimentation would have been necessary to practice the claimed invention.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1379 (Fed Cir. 2007).

---

[4] Soverain tries to distance itself from the fact that the '639 method claims encompass the use of a cookie-enabled internet browser by saying that "the '639 patent is not a cookie patent, but includes claims directed to methods of processing HTTP service requests. This distinction—blurred by Newegg—is crucial." Soverain Opposition, at 1. Soverain's supposed distinction is irrelevant, however. Newegg's evidence demonstrates that a cookie-enabled Netscape browser was publicly available in October of 1994 (more than one year before the filing date of the '639 patent, and eight months before the '780 patent was filed). Soverain does not dispute these facts. Soverain's Opposition, Statement of Genuine Issues, at ¶¶ 12-13. Soverain further admits that the use of a cookie-enabled browser on the internet is encompassed by the claims of the '639 patent. *See* Soverain's Opposition, at page 2 (admitting that the "modified browser approach would include the use of cookies"); *id.* at 3 ("[T]he '639 patent is more than just a cookie patent."); *id.* at 4 (noting that "Dr. Stewart understood the modified browser to include but not be limited to a cookie-enabled browser"). Thus, Even if the '639 patent includes subject matter in addition to the claimed cookie methods, Soverain has admitted that the '639 patent claims read on the prior art, which thereby invalidates the claims. *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999).

4

Ultimately, in effect the '780 patent specification and subsequent '639 patent claims are tantamount to the inventors saying to the Patent Office:

> "We have this invention that works really well for communicating session information on the internet, and it involves programming a 'special browser.' We are not going to tell you any more about what it is, how it works, or how to implement it. Also, it's not particularly well suited to be used with current internet technology, but may we have a patent on it anyway?"

This simply cannot satisfy the *quid pro quo* that grounds the U.S. Patent system.

## II. Soverain's Expert Declarations Fail To Raise Any Issues of Material Fact

As anticipated by Newegg, Soverain offers conclusory expert declarations in attempts to show that the '639 patent claims were supported by the '780 patent specification. In *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008), however, the Federal Circuit reaffirmed that such "conclusory expert assertions cannot raise triable issues of material fact on summary judgment." "It is well settled that an expert's unsupported conclusion . . . is insufficient to raise a genuine issue of material fact, and that a party may not avoid that rule simply by framing the expert's conclusion as an assertion [of material fact]." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed.Cir.2004); *see also Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C. Cir. 1977) ("To hold that Rule 703 prevents a court from granting summary judgment against a party who relies solely on an expert's opinion that has no more basis in or out of the record than [the expert's speculations] . . . would seriously undermine the policies of Rule 56.").

Soverain offers the declarations of Lawrence Stewart, one of the inventors of the '639 patent, and Michael Shamos, Soverain's technical expert, to opine as to the knowledge and capabilities of those of ordinary skill in the art with regard to cookies and browser technology. Soverain's Opposition, Exhibits 1 and 5. However, the critical assertions in the declarations relied upon by Soverain have no basis in the evidence of record, but constitute bare, unsupported allegations insufficient to create a genuine issue of material fact. To properly raise an issue of

5

material fact, evidence offered via declaration must be based on the personal knowledge of the declarant. Fed. R. Civ. P. 56(e)(1). Nothing averred in either of Mr. Stewart's or Mr. Shamos' declarations demonstrates that either declarant has sufficient personal knowledge of facts to support their broad and sweeping opinions. The following table summarizes the critical assertions of these declarants and the glaring lack of personal knowledge in those declarations which would be necessary to support their opinions.

| EXPERT ASSERTION | LACK OF FOUNDATION |
|---|---|
| "I believe that a developer at the time, June 1995, could have read the paragraph in question and made or obtained the described browser." (Stewart, ¶ 17) | Mr. Stewart does not allege that he himself ever programmed, worked on, or supervised the programming of any browser such as the referenced "special browser." Rather, this statement is expressly stated as nothing more than Mr. Stewart's "belief." |
| "I believe that a developer in June 1995 also would have understood the 'special browser' to include a cookie-compatible browser, and therefore the Netscape browser." (Stewart, ¶ 18) | Mr. Stewart alleges nothing to suggest that anybody else he knew attributed such a precise meaning to the word "special" in the '780 patent context. Rather, this statement is expressly stated as nothing more than Mr. Stewart's "belief." |
| "[O]ne of ordinary skill in the art to which the '639 Patent pertains would have had at least three years of experience in software development, including experience with client/server computing, hypertext and key Web technologies, namely HTTP, URLs, HTML and their associated specifications." (Shamos, ¶ 6) | Mr. Shamos does not allege that he himself has ever implemented, worked on, or overseen any programming of a modified browser at the relevant time such that he would have personal knowledge of what level of skill was ordinary and/or required to implement the referenced "special browser." |
| "[O]ne of ordinary skill in the art would have understood the specification to mean that the commonly used browsers at the time of filing would not support 'such communications' that are used to command the browser to store data on the client machine and later send it back to the server." (¶ 11) | Mr. Shamos does not allege that he himself has ever implemented, worked on, or overseen any programming of a modified browser at the relevant time such that he would have personal knowledge of what an "ordinary" software developer of such browsers would have understood the '780 specification to mean. |
| "Based on the description of the 'special browser' provided in the '780 patent, one of ordinary skill in the art would have had all of the information necessary to program an existing browser to perform the required storage and return of data, including a session ID." (Shamos, ¶ 14)<br><br>It would have taken "one week to implement a working version" of the special browser. (Shamos, ¶ 14)<br><br>"Anyone wishing to replicate [cookie] functionality in [a browser other than Netscape] would have been able to do so without experimentation beyond normal quality control testing." (Shamos, ¶ 15) | Mr. Shamos does not allege that he himself has ever implemented, worked on, or overseen any programming of a modified browser at the relevant time such that he himself would have personal knowledge of what was necessary to accomplish the programming of the "special browser." |

In view of the above, neither expert may properly comment on what the '780 specification would mean to an "ordinary" developer, or as to the knowledge required and difficulty of programming the "special browser." Further, the expert declarations offered by Soverain leave unanswered the following key questions relating to the ordinary skill in the art and the programming process.

| | |
|---|---|
| **Ordinary Skill in the Browser Software Art** | Who in 1995 had sufficient knowledge to program an internet browser? <br><br> How many people had ever done any internet browser programming at that time? <br><br> How is it that the mere release of the Netscape browser (along with the publication of the "Preliminary Specification" attached as Exhibit M to Newegg's Motion) could have communicated sufficient knowledge of the details of cookies for those of ordinary skill in the art to practice the claimed method of the '639 patent?[5] |
| **Browser Programming Process** | What exactly would be involved in the programming of a browser? <br><br> Was the source code for Netscape (or any other browser) available to the public, such that one could simply "modify" an existing browser, as Soverain alleges? <br><br> Would not such source code be necessary for a programmer to "modify" a browser? <br><br> Could one modify a browser to effectively perform the '639 patented method without also modifying the server? (No, according to Soverain's expert Dr. Shamos. *See supra*) <br><br> What would be involved in appropriately modifying the server? |

Because the expert declarations offered by Soverain cannot aver sufficient facts to answer the above questions based on their own personal knowledge, the declarations have not properly raised any factual issues to support Soverain's bare attorney argument. Accordingly, Soverain has not met its burden to overcome summary judgment.

III. <u>The Best Mode Requirement Must be Satisfied in the '780 Patent Disclosure</u>

Soverain argues that because the inventors viewed the best mode when the '780 patent was

---

[5] Newegg in no way concedes that the release of Netscape or its "preliminary" specification provided programmers of ordinary skill with sufficient knowledge to program a cookie-enabled browser. Assuming *arguendo* that Netscape and the details of its cookie functionality were so well known as Soverain argues, Soverain has expressly admitted that the subject matter was unpatentable at the time the '780 patent was filed. Soverain's Opposition, at 10 (saying that "one of ordinary skill in the art would know that Netscape is an example of a modified browser, and therefore *no* experimentation at all would be necessary to make and use the invention [of the '639 patent].") (emphasis in original). When there are teachings in the prior art such that a claimed invention could be practiced without undue experimentation, the claimed subject matter is unpatentable. *See Elan Pharm., Inc. v. Mayo Found. For Med. Educ. & Research*, 346 F.3d 1051, 1054 (Fed. Cir. 2003).

7

filed to be their then-claimed dynamic URL method, the '780 patent need not disclose the best mode of the later claimed method in the '639 patent. Soverain's Opposition, at 16-17. This is legally erroneous.

Soverain relies on *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 558 (Fed. Cir. 1994) for the proposition that "[t]the law does not require that the best mode to be updated when a continuation is filed." Soverain's Opposition, at 18. However, this legal principle is irrelevant here, as Newegg's present Motion is concerned with the adequacy of the best mode disclosure when the '780 parent application was filed, not when the '639 continuation was filed. This is because 35 U.S.C. § 120 affords a right of priority only if the invention claimed by the continuing application is "disclosed in the manner provided by the first paragraph of section 112" in the parent application. "Accordingly, the date for evaluating a best mode disclosure in a continuing application is the date of the earlier application." *Transco*, 38 F.3d at 557. Here, the best mode for practicing the '639 claimed invention must have been adequately disclosed in the '780 patent.

*Transco* was a case concerned with whether a continuation application having claims directed to the same invention as the parent application would have to include any updates concerning the best mode of practicing that same invention. *Transco*, 38 F.3d at 558-59. There, the patentee merely filed a continuing application, with no new claims and no changes to the specification, to advance prosecution of the case. *Id.* Ultimately, the patentee was not required to have updated the disclosure in the continuing application to recite new refinements of the best mode that had become known to the inventor after the parent's filing date. *Id.* at 558-59.

By contrast, here Soverain concedes that the claims of the '780 and '639 patents are directed to two distinct methods. Soverain's Opposition, at 1-2. Soverain inexplicably does not, however, concede that these distinctly claimed inventions are also supported by materially different specifications. *See* Soverain's Opposition, at 1 (referring to the two specifications as "shared"). As

8

is immediately apparent from a comparison of the two specifications, the '639 patent adds entirely new language to support the '639 claims, the new language having no basis whatsoever in the '780 patent. *See* Newegg's Motion, at 7. It is well settled that the addition of "new matter" to a patent specification destroys a priority claim, and an application may only claim the benefit of an earlier filing date with respect to "common subject matter." *Transco*, 38 F.3d at 556. Newegg's argument is not based on a failure to "update" the best mode, but a failure to "set forth" the best mode in the first instance, as is required by 35 U.S.C. § 112, first paragraph.

Newegg has established that even though the best mode known to the inventors for practicing the invention claimed in the '639 patent involved a cookie compatible browser, the disclosure in the '780 patent does not adequately disclose that mode, and indeed does not even reference the word "cookie." Newegg's Motion, at 19-21. No meaningful disclosure appeared to support the '639 patent claims until the '639 patent was filed. It is ultimately irrelevant whether the inventors believed the URL method was the best mode of practicing the invention claimed by the '780 patent at the time the '780 patent was filed. The '639 patent later distinctly claimed a different method involving cookies, and so it is dispositive that the '780 patent fails to adequately disclose the known best mode of practicing that invention.

**IV.     All of Newegg's Cited Authority is Pertinent, Binding Precedent**

Contrary to Soverain's position, the biotech and chemical cases relied upon by Newegg (*e.g., Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 560 F.3d 1366 (Fed. Cir. 2009)[6], and *Chiron Corp. v. Genentech, Inc.* 363 F.3d 1247, 1255 (Fed. Cir. 2004), and *Plant Genetic Systems, N.V. v. DeKalb Genetics Corp.*, 315 F.3d 1335, 1338 (Fed. Cir. 2003)) are highly pertinent and constitute

---

[6] Soverain points out that the judgment in *Ariad Pharmaceuticals, Inc. v. Eli Lilly & Co.*, 560 F.3d 1366 (Fed. Cir. 2009) was vacated on August 21, 2009 when the Federal Circuit granted a petition for rehearing *en banc* (Soverain's Opposition, at page 8, FN 4). First, Soverain fails to mention that the judgment was vacated after Newegg filed its present Motion. Second, the question presented by the petition for rehearing *en banc* does not "weigh against any grant of summary judgment" (Soverain's Opposition, p. 8, FN 4) because the Federal Circuit has yet to render any opinions which change the current state of the law in this area. Newegg's Motion is supported by more than adequate well settled legal authority for this Court to decide the present Motion on its merits.

9

some of the best and most recent binding precedent from the Federal Circuit on Section 112, first paragraph standards. While some of the cases cited by Soverain may involve software patents (despite being much older precedent), the basic principles and standards regarding Section 112, first paragraph, are universally applicable. Indeed, Soverain's supposed "apposite precedent" (Soverain's Objection, page 8) cited and relied upon biotech and chemical cases for essentially the same propositions that Newegg relies upon in the present Motion. *See, e.g., Robotic Vision Systems, Inc. v. View Engineering, Inc.*, 112 F.3d 1163, 1165-66 (Fed. Cir. 1997) (citing biotech/chemical case *Genentech, Inc. v. Novo Nordisk, A/*S, 108 F.3d 1361, 1366-67 (Fed. Cir. 1997) for the proper analytical framework of Section 112, first paragraph issues); *In re Hayes Microcomputer Prods., Inc.*, 982 F.2d 1527, 1533-34, 1536 (Fed. Cir. 1992) (citing biotech/chemical cases *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 926 (Fed. Cir. 1990) and *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367 (Fed. Cir. 1986) for the proper analytical frameworks of Section 112, first paragraph issues). Further, and more importantly, Newegg's Motion demonstrated that the factual circumstances in its cited biotech and chemical cases (as well as non-biotech/chemical cases) are closely analogous to those in the present litigation, mandating their application as controlling precedent in the manner described by Newegg. *See generally,* Newegg's Motion, at 10-21.

## CONCLUSION

For the foregoing reasons and those set forth in Newegg's Motion, Newegg hereby moves the Court to enter summary judgment that the asserted claims of U.S. Patent No. 7,272,639 are invalid. Even if this Court declines to enter summary judgment of invalidity, Newegg alternatively moves the Court to at least enter summary judgment that the '639 patent is not entitled to the filing date of the parent '780 patent.

                                        Respectfully submitted,

Dated: September 18, 2009        By: /s/ David C. Hanson with permission by
                                        Trey Yarbrough
                                        David C. Hanson
                                        Kent E. Baldauf, Jr.
                                        John W. McIlvaine

                                        THE WEBB LAW FIRM
                                        700 Koppers Building
                                        436 Seventh Avenue
                                        Pittsburgh, PA 15219
                                        T:  (412) 471-8815
                                        F:  (412) 471-4094

                                        Trey Yarbrough
                                        Bar No. 22133500
                                        YARBROUGH ♦ WILCOX, PLLC
                                        100 E. Ferguson St., Ste. 1015
                                        Tyler, Texas 75702
                                        Tel: (903) 595-3111
                                        Fax: (903) 595-0191
                                        trey@yw-lawfirm.com

                                        Attorneys for Defendant
                                        Newegg Inc.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 18, 2009.  All other counsel of record will be served via facsimile or first class mail.

                                        /s/ Trey Yarbrough
                                        Trey Yarbrough