IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC<br><br>Plaintiff,<br><br>vs.<br><br>CDW CORPORATION, NEWEGG INC., REDCATS USA, INC., SYSTEMAX INC., ZAPPOS.COM, INC., TIGER DIRECT, INC., THE SPORTSMAN'S GUIDE, INC., and REDCATS USA LP<br><br>Defendants. | CIVIL ACTION NO. 6:07-CV-511<br><br>Hon. Leonard E. Davis |

**PLAINTIFF SOVERAIN'S SURREPLY IN OPPOSITION TO NEWEGG'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '639 PATENT**

Newegg's Reply only confirms that summary judgment as to the validity of the '639 patent is not appropriate. Newegg retreats from many of the arguments presented in its Opening Brief on summary judgment (as one example, Newegg's allegations of misconduct by the inventors, so prevalent in its opening brief, are now nowhere to be found). The arguments that remain fail because of internal inconsistencies in Newegg's positions, because Newegg simply ignores disputed facts, and because Newegg misreads the law. Newegg concedes that it does not address all of the issues raised in Soverain's Opposition, contending that it need not do so based on *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Anderson* does not, however, stand for the proposition that a party may simply avoid the facts that do not support its position, as is the case here where Newegg cherry-picks several issues while ignoring other disputed facts raised by Soverain. As it must, Newegg also abandons its argument that it is Soverain that bears the burden on this motion; rather, it is Newegg that must establish that no genuine issues of fact exist. *Id.* Newegg has not met its burden, and its motion is therefore properly denied.

A.  **The Relevant Disclosures In The '780 Patent Specification Are Not Limited To "Two Sentences," And Are Sufficient To Support The Asserted Claims Of The '639 Patent**

Newegg hopes to prevail on its motion by framing the issue as whether two sentences of the '780 patent specification are sufficient to support the asserted claims of the '639 patent. Contrary to Newegg's assertion (Reply at 1), Soverain does not concede that the two sentences of the '780 specification cited to by Newegg are the only sentences that support the '639 claims. (This is the first of many such unsupported misstatements by Newegg in its Reply.)

To reach this "two sentences" argument, Newegg ignores the fact that the '639 patent claims are not claims to a modified browser. While Newegg advocates "taking a step back from the technical nuances involved in this case," it cannot avoid the facts: both the '780 and '639 patents are directed to maintaining state through the use of session identifiers ("SIDs" or "session IDs") transported between the server and the client—either in a URL or in an HTTP header (e.g., using cookies) using a modified browser.[1] Most of the '780 patent specification supports the claims in that it describes not just the means of transporting the session IDs, but technology that is common to *both* methods. It is disingenuous for Newegg to attribute the majority of the disclosure to the first method, when it is equally applicable to the second method.

Newegg again ignores the fact (as set forth in Soverain's Opposition (Opp. at 4)) that the '780 patent also includes cited materials that discuss the modified browser. The '780 patent specification cites Montulli's www.talk post that contains a preliminary specification of cookies, thereby describing to one of ordinary skill in the art one example of a modified browser (again, demonstrating there was no deceit on the part of the inventors). The '780 patent also discloses in materials incorporated by reference[2] that the "hypertext conventions and related functions of the

---

[1] Soverain does not "concede[] that the claims of the '780 and '639 patents are directed to two distinct methods"; this is just another example of Newegg's misstating Soverain's position, without support, and blurring the technology to suit its argument.

[2] *See* 37 C.F.R. § 1.57.

world wide web are described in the appendices of U.S. patent application Ser. No. 08/328,133," which matured into U.S. Patent No. 5,715,314. (Exh. 3, '780 patent, col. 2:11-15.) The '314 patent appendices specifically referenced and made part of the '780 disclosure also provide information about the standard HTTP protocol (Appendices B-D) as well as code for the server to generate HTTP headers, analogous to those used by the modified browser method, e.g. the payment.tcl and cgilib.tcl modules (Appendix G). And while Newegg now raises, for the first time,[3] the notion that the patent must disclose not only modifying a browser but also a modified server, the fact is the '780 patent also discloses among other relevant materials from Netscape, information regarding Netscape's servers. (Exh. 2, '780 patent, pp. 1-2.) These materials cannot be ignored in determining whether a disclosure is sufficient to meet the requirements of § 112. *See Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1381-82 (Fed. Cir. 1999) (Incorporation by reference of material can satisfy § 112 requirements because "it makes no sense to encumber the specification of a patent with all the knowledge of the past concerning how to make and use the claimed invention.").

Newegg cites *Grantley Patent Holdings, Ltd. v. Clear Channel Commc'ns, Inc.*, 2008 WL 5781056 (E.D. Tex. 2008), allegedly as support for its assertion that the '780 specification is deficient because it provides "no algorithm, formula, or series of steps performed by the computer to accomplish the function." (Reply at 3.) But contrary to Newegg's claim of "similar circumstances" (Reply at 3), the *Grantley* court found that the means-plus-function claims of a patent lacked the corresponding structure required by statute, i.e., 35 U.S.C. § 112 ¶ 6. *Grantley*, 2008 WL 5781056, at *2 (using the two-step analysis for means-plus-function claims to determine enablement). *Grantley*'s means-plus-function analysis does not apply here, as no

---

[3] Newegg did not raise the issue of modified servers in its opening brief. When faced with an argument not raised in the initial motion, Judge Folsom has observed, "[i]t is a basic tenet of civil procedure that reply briefing may only respond to the allegations raised in the nonmovant's response. . . . . To hold otherwise would countenance litigation by ambush." *Z-Tel Commc'ns, Inc. v. SBC Commc'ns, Inc.*, 331 F. Supp. 2d 513, 539 (E.D. Tex. 2004).

means-plus-function claims are at issue. And even for means-plus-function claims, the *Grantley* court acknowledged that disclosure of algorithms and formulas to calculate the projected future revenues would have been unnecessary had the claimed means for determining the projections been based on "merely a straight line projection based only on past revenue." *Id.* at *3 & n.2. As Dr. Stewart and Dr. Shamos explained, the programming of a modified browser is straightforward. (Exh. 1, Stewart Decl. ¶¶ 26-27; Exh. 5, Shamos Decl. ¶ 14.) Newegg presents no evidence to refute the well-founded statements of Dr. Stewart or Dr. Shamos (*see infra* § B).

Finally, buried in its argument about the brevity of the disclosure of the modified browser method, Newegg admits that a functional description of a software-related invention may suffice under § 112. (Reply at 2.) But rather than focusing on what the functional description teaches to one of ordinary skill in the art, Newegg argues that because certain catch phrases are missing, the description cannot be sufficient. (Reply at 3.) This is a distraction from the relevant question: what would the disclosure teach one of ordinary skill in the art at the time of filing? Newegg itself quotes *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 941 (Fed. Cir. 1990): "The amount of disclosure that will enable practice of an invention that utilizes a computer program may vary according to the nature of the invention, the role of the program in carrying it out, and the complexity of the contemplated programming, all from the viewpoint of the skilled programmer." (Reply at 2.) As Dr. Stewart and Dr. Shamos explain in their declarations submitted with Soverain's Opposition, the description was sufficient for one of ordinary skill in the art to program or obtain a modified browser. (Exh. 1, Stewart Decl. ¶¶ 19-28; Exh. 5, Shamos Decl. ¶¶ 10-14) There is no need to "extrapolate" (Reply at 3), for an ordinarily skilled artisan reading the description would have understood exactly what was required. At a minimum, disputed facts exist that preclude summary judgment.

### B. Newegg Does Not Address The Material Facts Raised In The Shamos And Stewart Declarations

Newegg complains in its reply that Soverain "makes many arguments directed to the ordinary skill and knowledge in the software arts." (Reply at 1.) This criticism is baffling, for Newegg at the same time argues that its own motion properly "focuses on what the contents of the '780 patent could reasonably disclose to a person of ordinary skill in the art." (*Id.*) Setting this confusion aside, it is clear from Newegg's own case law that whether the requirements of § 112 have been met is a question that must be answered from the perspective of one of ordinary skill in the art. *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 999 (Fed. Cir. 2008) ("The 'enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation.'").

The only record evidence on this motion is that the disclosures contained in '780 patent specification would have enabled one of ordinary skill in the art to practice the asserted claims of the '639 patent. The declarations of Drs. Stewart and Shamos establish this fact. (Exh. 1, Stewart Decl. ¶¶ 17, 19-28; Exh. 5, Shamos Decl. ¶¶ 10-15.) Specifically, those declarations establish that either the modified browser discussed in those claims (a) was available, a fact admitted to by Newegg (Exh. 1, Stewart Decl. ¶ 17; Exh. 5, Shamos Decl. ¶ 15; *see also* discussion regarding "cookies" *infra* § C), or (b) could have been programmed with little difficulty (Exh. 1, Stewart Decl. ¶¶ 19-28; Exh. 5, Shamos Decl. ¶¶ 10-14). Newegg is wrong to say that Dr. Shamos said otherwise at his deposition; what he said is that "*if*" a cookie-enabled browser did not exist, minimal programming would be needed; but, as Newegg's own position confirms, a cookie-enabled browser did in fact exist (Exh. 5, Shamos Decl. ¶ 15). And there is no merit in Newegg's contention that Dr. Shamos' declaration is somehow contradicted by his testimony at deposition. When Dr. Shamos was asked, "Were changes also necessary to be made to the server to implement the cookie function?", he responded, "Okay, so the answer to that is

minimal . . . . But the mechanism is designed to be *elementary* . . . anybody can do it." (Reply, Ex. A (emphasis added).) The cited Shamos testimony confirms his opinion that the necessary programming changes could be effected with minimal effort.

Newegg's criticism of this evidence, especially having submitted none of its own, is without merit. Newegg submits no declarations of its own and instead relies exclusively on placing statements of counsel in quotes (Reply at 5), which hold no weight. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony.").

Newegg's table (Reply at 6) purporting to outline unsupported assertions in the declarations is refuted by facts both Dr. Stewart and Dr. Shamos included in their declarations. Both Dr. Stewart and Dr. Shamos recited their relevant experience, supporting their personal knowledge of the facts set forth therein. (Exh. 1, Stewart Decl. ¶¶ 2-3; Exh. 5, Shamos Decl. ¶¶ 1-2.) Rather than addressing the fact issues raised in the Stewart and Shamos declarations (no doubt because this would force Newegg to acknowledge the facts in dispute), Newegg resorts to listing the statements *not* made by Drs. Stewart and Shamos. Newegg's table of "glaring lack of personal knowledge" (Reply at 6) is merely a list of questions Newegg should more appropriately address at trial rather than pose and leave unaddressed in its motion for summary judgment.

Newegg's attacks on the Shamos and Stewart declarations as conclusory beg the question of whether Newegg's counsel even read them. Questions that Newegg lists in its second table (Reply at 7) as unanswered in Soverain's Opposition Brief are in fact addressed in the declarations submitted therewith. For example, Newegg's question, "Was the source code for Netscape (or any other browser) available to the public, such that one could simply 'modify' an existing browser?" was answered by Dr. Stewart's explanation that XMosaic was a "widely used

open-source Web browser at the time." (Exh. 1, Stewart Decl. ¶ 24; *see also* Opp. at 12.) Dr. Stewart also explained that it was common for developers to build the XMosaic browser and to modify the browser using its source code modules. (Exh. 1, Stewart Decl. ¶¶ 24-27.) Dr. Stewart's personal knowledge is based on his having been a software developer in the field at the time; his "belief"—summarily dismissed by Newegg—is highly relevant and as such cannot be ignored. Newegg's attack on the sufficiency of the declarations is without merit, especially given Newegg bears the burden on this motion and has not submitted any evidence to the contrary.

Finally, the cases cited by Newegg only further support Dr. Stewart and Dr. Shamos as witnesses having knowledge and having provided properly substantiated declarations. As Soverain pointed out in its Opposition Brief (Opp. at 12 n.8), in *Sitrick*, 516 F.3d at 1001, the so-called "expert" admitted to having no expertise in the relevant area. There are no admissions of lack of expertise here. Dr. Stewart, a co-inventor of the '780 and '639 patents, was a developer at the time (Exh. 1, Stewart Decl. ¶¶ 2-3), and Dr. Shamos, Ph.D. in computer science, is a founder of the Institute for ecommerce at Carnegie Mellon University (Exh. 5, Shamos Decl. ¶¶ 1-2). Newegg's continued reliance on *Sitrick* is misplaced.

The other cases that Newegg relies upon in its reply do not support its argument either. (Reply at 5.) In *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 671-73 (D.C. Cir. 1977), the court observed that the expert's opinion was speculative because (1) the expert admitted that he was unfamiliar with the record of the case, (2) the evidence of the record contradicted rather than supported all of his predictions, and (3) in his deposition, the expert conceded that his presented opinion was incorrect. And in *Dynacore Holdings v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004), the court noted that Dynacore's experts contributed little more than "precisely conclusory assertions, reached using words in ways that contradict their plain meaning, that a critical claim limitation is found in the accused device." The facts presented here could not be

more in contrast. Dr. Stewart, a co-inventor of the patents-in-suit, and Dr. Shamos, one of the technical experts in the case, are familiar with the record in the case, and Newegg has cited no contradictions or errors in their declarations that would support the application of its cited cases.

Newegg cannot avoid disputed facts simply by ignoring them. Newegg has not addressed the material facts raised in the Shamos and Stewart declarations and its motion therefore fails.

C.  **Newegg Can't Have Its Cookies And Eat Them Too**

Newegg's inconsistent positions as to whether "cookies" were known or unknown at the time of the filing of the '780 patent application raise additional fact issues that preclude summary judgment. (Soverain has *not* admitted that the '639 patent claims read on the prior art, or even that cookies are prior art, as stated, again without support, in Newegg's Reply. (Reply at 4 n.4))

To support its argument that the patent specification does not adequately describe the "modified browser," Newegg argues, on the one hand, that the cookie browser was not known and, therefore, the patent language would not have enabled one of ordinary skill in the art to practice the invention. Specifically, in its Opening Brief, Newegg states:

> As demonstrated ... a cookie compatible browser was in no way routine or well known when the '780 patent was filed [June 1995].

(Newegg at 14; *see also* at 15.) But in arguing that the Netscape browser was known to the inventors and therefore should have been disclosed in more detail, Newegg asserts the directly contrary position:

> … at the time that the '780 patent was filed (June 7, 1995), a cookie compatible browser was already available (i.e., Netscape Navigator) and its cookie functionality had been publicized.

(Newegg at 5, *see also* 2, 21, and Reply at 4, n.4.)

Newegg cannot have it both ways: either, as Newegg and Soverain agree, the "cookie" was known, and one of ordinary skill in the art would have known the modified browser description included the Netscape browser and used it for the modified browser embodiment; or,

as Newegg sometimes contends, it was unknown. The court need not reach the issue on this motion as Newegg's own inconsistent position raises issues of fact that preclude summary judgment.

D.  **The '780 Patent Specification Does Not "Teach Away" From The Modified Browser Method**

Newegg paints the decision holding patent claims invalid in *Liebel-Flarsheim Co. v. Medrad*, *Inc.*, 481 F.3d 1371 (Fed. Cir. 2007), as turning on one word in the specification— "impractical"—then leaps to the conclusion that one word in the '780 specification should also invalidate the '639 patent claims. Newegg ignores that the *Liebel* court's holding was based upon the fact that the patent specification had *no* disclosure at all for syringes without pressure jackets, while the patent claims were construed to cover syringes with and without pressure jackets.[4] *Id.* at 1374-75. In contrast, the '780 specification *does* have a disclosure of modified browsers. The only issue is whether it is sufficient.

The *Liebel* court observed other facts that supported its finding of invalidity. *Id.* at 1379. The court observed that the patent's background section described syringes without pressure jackets as "expensive and therefore impractical," and found in this language evidence of a need for significant experimentation. *Id.* Other evidence of significant experimentation included testimony of the inventors that (1) they were unsuccessful in trying to produce the syringes without pressure jackets; (2) the production would have required more experimentation and testing; and (3) they did not pursue production of the syringes because it was "too risky." *Id.* Newegg has no comparable admissions from the '780 patent inventors, and Newegg again ignores that here there are supporting declarations averring that programming a modified browser would take a week or less (Exh. 1, Stewart Decl. ¶ 26; Exh. 5, Shamos Decl. ¶ 14),

---

[4] The *Liebel* court observed that the originally filed claims were limited to syringes with pressure jackets, but that limitation was stripped from all claims in subsequent amendments. *Id.* at 1374-75. The contrary is true here: the '780 claims as originally filed were broad enough to encompass both embodiments and were subsequently narrowed. (*See* Opp. at 3-4.)

declarations that raise issues of fact that preclude summary judgment.

### E. The Inventors Properly Disclosed What They Believed To Be The Best Mode Of Practicing The Invention As Of The Filing Of The '780 Patent

The inventors' belief as of the filing date of the '780 patent is determinative as to whether the best mode requirement of § 112 is met. In yet another misreading of the law, Newegg is simply wrong in its assertion that whether the inventors believed the URL method to be the best mode of practicing the patent at the time the '780 application was filed "is ultimately irrelevant." (Reply at 9.) Rather, the factual issue of the inventors' subjective belief of best mode precludes summary judgment for Newegg. *See Calabrese v. Square D Co.*, 1999 WL 718238, at *2 (Fed. Cir. 1999) (holding that there was a genuine issue of material fact because the inventor's state of mind was relevant in the determination of best mode).

Newegg misunderstands (or misstates) the best mode analysis by ignoring its first prong, the subjective intent of the inventors. As in *Transco Products Inc. v. Performance Contracting, Inc.*, 38 F.3d 551 (Fed. Cir. 1994), relied upon by Newegg, the patents at issue here are a parent patent and its continuation patent. The Federal Circuit in *Transco* clearly stated that it is the best mode *as understood by the applicants* at the time of the filing of the parent that must be enabled. *Id.* at 558-59. Dr. Stewart, a co-inventor of both patents, believes that the best mode of practicing the invention was carrying the session ID in the URL—his subjective belief is critical to the first part of the best mode analysis, and his statement under oath creates an issue of fact precluding summary judgment. Newegg twists the best mode case law to say that an inventor must be prescient to envision what the best mode is for a future continuation and that is the best mode. This is not correct, and at the very minimum disputed facts exist that preclude summary judgment on this issue as well.

### F. Conclusion

Newegg's motion raises genuine issues of material fact and must be denied.

Dated: September 28, 2009	Respectfully submitted,


/s/ Thomas L. Giannetti (with permission)
Kenneth R. Adamo
State Bar No. 00846960
Lead Attorney
Email: kradamo@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: 214-220-3939
Facsimile: 214-969-5100

Thomas L. Giannetti
NY Attorney Reg. No. 1632819
Email: tlgiannetti@jonesday.com
Ognian V. Shentov
NY Attorney Reg. No. 2867737
Email: ovshentov@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone: 212-326-3939
Facsimile: 212-755-7306

Jennifer Seraphine
CA Attorney Reg. No. 245463
Email: jseraphine@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

 This is to certify that on September 28, 2009 a true and correct copy of the foregoing document has been served on all counsel of record via the court's ECF system.

              /s/ Thomas L. Giannetti
              Thomas L. Giannetti