UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SOVERAIN SOFTWARE LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:07-CV-511 |
| | § | |
| CDW CORPORATION, NEWEGG INC., | § | Hon. Leonard E. Davis |
| REDCATS USA, INC., SYSTEMAX, INC., | § | |
| ZAPPOS.COM, INC., TIGER DIRECT, | § | |
| INC., THE SPORTSMAN'S GUIDE, INC., | § | |
| and REDCATS USA LP, | § | |
| | § | |
| Defendants. | § | |

NEWEGG'S OPPOSITION TO PLAINTIFF SOVERIAN'S DAUBERT
MOTION TO EXCLUDE EXPERT TESIMONY OF EDWARD R. TITTEL

Introduction

Soverain has moved to preclude Edward R. Tittel from offering expert testimony concerning the application of the prior art to the asserted claims and from comparing the structure of Newegg's system to these claims. In a nutshell, Soverain argues that:

(1) Tittel is not knowledgeable in patent law,

(2) Tittel did not do an "element-by-element" analysis of the claims, and

(3) Tittel did not consult the court's claim constructions.

Each of these arguments fails.

It is of no consequence that Mr. Tittel is not a patent attorney because he is <u>not going to testify regarding patent law.</u>

Soverain's brief acknowledges that the Tittel July 23, 2009 report (Exhibit 1)[*] did not "specifically state opinions on whether the asserted claims are anticipated or obvious over

---

[*] Exhibits referred to herein are attached to Soverain's Motion.

prior art." (p. 5.)  Mr. Tittel's expertise in the <u>technical</u> subject matter of the patents-in-suit has not been challenged.  This is the area in which he will be called to testify and not regarding patent law or claim interpretation.  His testimony is offered to assist the trier of fact to understand the prior art and the Newegg system and to point out relations to the elements of the patent claims.

Neither the decisions of the Fifth Circuit nor the Federal Circuit Court of Appeals applying the Federal Rules of Evidence would support the exclusion of a technical expert in a patent case simply because he is not a patent attorney, especially as he has not been offered to give legal opinions.

> Rule 402 of the Federal Rules of Evidence provides:
>
>> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.
>
> Rule 702 provides:
>
>> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or training, or education may testify thereto in the form of an opinion or <u>otherwise</u>. [Emphasis ours.]
>
> The notes to Rule 702 could not be clearer:
>
>> An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge.  The most common source of this knowledge is the expert witness, although there are other techniques for supplying it.
>>
>> Most of the literature assumes that experts testify only in the form of opinions.  The assumption is logically unfounded.

2

The *Air Crash* and *Salas* decisions of the Court of Appeals for the Fifth Circuit cited by Soverain are principally directed to expert testimony in the form of opinion. However, both decisions emphasize the test for the admissibility:

> Stated more directly, the trial judge ought to insist that a proferred expert bring to the jury more than the lawyers can offer in argument. Indeed, the premise of receiving expert testimony is that it "will assist the trier of fact to understand the evidence or to determine a fact in issue...." Fed.R.Evid.Rule 702.

*In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir. 1986).

In the *Innogenetics* decision of the Court of Appeals for the Federal Circuit, applying its understanding of the law of the Seventh Circuit, the court held testimony regarding the obviousness of patent claims must articulate some "rational underpinnings to support the legal conclusion of obviousness." This case is not applicable here as Mr. Tittel has not been presented to offer an ultimate legal opinion on the obviousness of the claims.

Soverain suggests that Newegg is attempting to use a back door approach to offering testimony on patent law or claim interpretation via Tittel asserting that, of necessity, he will have to state opinions. Soverain relies on *Hearing Components*, a district court opinion that excluded a <u>second</u> expert from testifying with regard to prior art. This proposed expert "neither performed an in-depth analysis of these patents [the patents charged to be infringed] nor considered several pieces of prior art that Shure [accused infringer] and its other invalidity expert believed to be key." The proposed expert's report was vague and was deemed to conclude with an ultimate legal conclusion. A quick review of the Tittel reports will show that his analysis is in-depth. (At his deposition, Mr. Tittel testified that he read the patents-in-suit carefully before preparing his report and spent no less than ten hours and no more than twenty hours reviewing each patent.) Tittel Depo., pp. 24-25. Mr. Tittel's report is careful not to set forth ultimate legal

3

conclusions.  Moreover, Newegg has not put forth more than one expert to explain the prior art. The facts of this case are much different.

Soverain's expert, Dr. Shamos, is a patent attorney.  However, he has explained at his deposition that he is not planning to testify as to patent law because courts do not appreciate invasion of their province of resolving the legal issues.  Newegg plans to object to any testimony by Dr. Shamos on legal issues and does not expect to have Mr. Tittel explain legal issues.

Soverain notes that Mr. Tittel did not review the prosecution histories of the patents-in-suit.  It was not necessary for him to do so in order to prepare his technical testimony. Normally, when the prosecution history is placed in evidence, it is explained by an experienced patent attorney.  Dr. Shamos, at his deposition, stated that he did not expect to testify regarding the prosecution histories.  This is not surprising as the file wrapper is usually the subject of opinion testimony when the interpretation of the claims is at issue.  The claims have already been construed by this court.

> Tittel's report provides an element-by-element analysis more than adequate to put Soverain on notice of how he will testify regarding the prior art and the Newegg system.

In his report of July 23, 2009 (Exhibit 1), Mr. Tittel confirmed that after a careful review of the claim charts prepared by attorneys, the claim charts "accurately relate the references to the claim language."  The claim charts set forth the precise language of the claims and the corresponding precise language of the prior art references.

In his report of August 18, 2009 (Exhibit 2), Mr. Tittel sets forth claim charts and explains element by element how the Newegg system works.

The claim of "Improperly 'Expertizing' Attorney Work Product" is ludicrous.  It assumes that the claim charts prepared by attorneys or with the help of attorneys were somehow

4

in error and that Tittel bought into an erroneous analysis. Manifestly, if the claim charts in the report of July 23, 2009 (Exhibit 1) were technically accurate, Mr. Tittel could properly state: "In addition, I have carefully reviewed the claim charts related prior art and obviousness references to the claim language and am of the opinion that without exception they accurately relate the references to the claim language." Soverain has already had the opportunity to depose Mr. Tittel and will have the same opportunity at trial. If the claim charts inaccurately relate the prior art or the Newegg system to the claims, this will be exposed. Beyond the claim charts in the July 23, 2009 report (Exhibit 1), Mr. Tittel analyzed each claim at issue and related the essence of each to the prior art in individual paragraphs.

      Mr. Tittel's report is not flawed because he did not rely on the court's claim construction. Subtleties of claim constructions do not bear on Mr. Tittel's technical testimony. Mr. Tittel naturally, as a technical author and editor of books pertaining to the very topics to which these patents relate, gave the claim terms "their ordinary and accustomed meaning as understood by one of ordinary skill in the art." This was the very basis on which this court construed the claims in the Claim Construction Opinion issued by the court on April 7, 2005 in the Amazon litigation. The claim constructions of the court in that case have been adopted for this case with the further constructions stipulated by the parties (Document 214). Even a cursory review of these constructions will show that they do not deviate from the "ordinary and accustomed meaning" of the claim terms. For the most part, they are a mere rephrasing of claims terms. As already pointed out, Soverain has already had the opportunity to depose Mr. Tittel and will have the same opportunity at trial. If the claim charts inaccurately relate the prior art or the Newegg system to the claims because of the court's constructions, this will be exposed. The relationship between the claims and the prior art or the Newegg system do not

depend on any subtleties of claim interpretations. Soverain has not pointed out how Mr. Tittel's testimony will be flawed because he did not rely upon the court's claim constructions.

In the *Innogenetics* case cited by Soverain, the Court of Appeals for the Federal Circuit reversed the lower court's refusal to grant a new trial to allow the testimony of an expert. The expert's report did not use the exact terms of the trial court's claim construction. The appellate court stated: "Dr. Patterson's failure to use the district court's exact words does not change the substance of his testimony or render it inapplicable. We therefore find improper the district court's preclusion of Dr. Patterson's testimony on the basis that he was using a different definition of "method of genotyping." (512 F.3d 1363 at 1378).

> Soverain disingenuously asserts that Mr. Tittel has interpreted the claims differently when considering prior art and the Newegg system.

Mr. Tittel's explanation of the Internet and "packet switching" in his reports of July 23, 2009 (Exhibit 1) and August 18, 2009 (Exhibit 2) are totally consistent.

In his report of July 23, 2009 (Exhibit 1), he stated: "It might also be worth observing in this context that at the time the patent application was filed, the Internet itself was also primarily a packet-switched network (and still largely behaves like one to this day, regardless of the underlying packet-handling techniques in use)."

In his report of August 18, 2009 (Exhibit 2), he stated: "Though much of the Internet remains packet-switched network to this day, and most private TCP/IP networks that attach to the public Internet are packet-switched, the so-called 'Internet Core' – namely the very high speed network links that carry the highest volumes of traffic, and that communications carriers operate to carry both voice and data traffic, and to exchange such traffic at various Internet peering centers – uniformly uses a technology called SONET (Synchronous Optical Networking) to ferry data between endpoints on the Internet core. SONET is a circuit-switching

6

technology, not a packet-switching technology: although it does packetize data, it does not use packet-switching techniques to distribute and direct traffic across its long-and-short haul network links. Manifestly, the Internet is at least a part of a circuit-switched network and has been for some time now, Mr. Grimes' contentions and definitions notwithstanding."

Thus, Mr. Tittel has consistently explained that in 1993 the Internet was primarily packet-switched and today much of it remains packet-switched, albeit, the Internet core uses SONET technology.

Mr. Tittel has not taken inconsistent positions on the meaning of "database" in his three reports.

In Mr. Tittel's report of July 23, 2009 (Exhibit 1), he did not refer to "persistent databases" or to "temporary throw-away structures" in which to store shopping carts as this distinction had no relevance to the understanding of the prior art. His report is totally consistent with the court's construction of a database as "a collection of logically related data stored together in one or more computerized files."

In Mr. Tittel's report of August 18, 2009 (Exhibit 2), he was explaining why the Newegg system does not add a plurality of requests to a shopping cart database one at a time on a shopping cart computer (not the buyer computer). In the Newegg system, the buyer's plural selections are added to a cookie stored on the buyer's computer. The cookie is a "temporary throw-away structure." At the time of checkout, the customer's selections stored in the cookie are transferred to a database at Newegg that is persistent.

In Mr. Tittel's report of August 28, 2009 (Exhibit 3), he commented on the properties of commercial databases, based in part on the testimony of the named inventors Payne and Stewart, explaining why it was common sense to use a commercial database, such as the

7

Sybase database adopted by Open Market, at the time of filing the application for the '314 patent.

Thus, Mr. Tittel has consistently used the ordinary and accustomed meaning of database which is consistent with the court's construction. Within that definition, databases can be further classified as "throw-away," "persistent," and "commercial" without inconsistently applying the claims to prior art or the accused Newegg system.

<u>Conclusion</u>

Mr. Tittel is not a "professional expert." He has never served as an expert witness prior to this case. However, Mr. Tittel's expert reports and his deposition testimony clearly indicate that his testimony will be well within the bounds of Rules 402 and 702 of the Federal Rules of Evidence and the case law interpreting those rules.

Respectfully submitted,

Dated: October 13, 2009

By: <u>/s/ David C. Hanson with permission by Trey Yarbrough</u>
David C. Hanson
Kent E. Baldauf, Jr.
John W. McIlvaine
THE WEBB LAW FIRM
700 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
T: (412) 471-8815
F: (412) 471-4094

Trey Yarbrough
Bar No. 22133500
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

Counsel for Newegg Inc.

8

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being hereby served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 13, 2009.  All other counsel of record will be served via facsimile or first class mail.

        /s/ Trey Yarbrough
        Trey Yarbrough