# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

SOVERAIN SOFTWARE LLC,      )
                                  )
            Plaintiff,       )
                                  )
vs.                                 )
                                  )     Civil Action No. 6:07-CV-00511-LED
CDW CORPORATION, NEWEGG   )
INC., REDCATS USA, INC.,      )
SYSTEMAX INC., ZAPPOS.COM,  )
INC., REDCATS USA, L.P., THE   )
SPORTSMAN'S GUIDE, INC., and )
TIGERDIRECT, INC.,          )
                                  )
            Defendants.     )
                                  )

## REPLY TO PLAINTIFF SOVERAIN'S RESPONSE TO DEFENDANT NEWEGG'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

Infringement requires a showing that a defendant has practiced each and every element of the claimed invention.  *Warner-Jenkinson Co., Inc. v. Hilton Davis Corp.*, 520 U.S. 17, 40 (1997); *BMC Resources, Inc. v. Paymentech, LP*, 498 F.3d 1373 (Fed. Cir. 2007).  Newegg's motion plainly demonstrates that it does not practice every element of the asserted claims as multiple elements relate to a client or customer and his or her computer.  Soverain attempts to avoid summary judgment by asserting that this precedent does not apply to system claims and that the Court should instead apply precedent related to the geographic location of infringement. There is no support for the proposition that system claims are exempt from the all elements rule.

With respect to the method claims, Soverain argues that Newegg is the "mastermind" of its networks since it derives benefit therefrom.  This position was specifically rejected in *MuniAuction, Inc. v. Thomson Corporation*, 532 F.3d 1318 (Fed. Cir 2008).  Finally, Soverain argues that the first word in each clause of a claim dictates which entity practices every element contained within the clause. This position is readily dismissed when one considers that within each clause are multiple elements that are satisfied by the customer/client.

1.   The System Claims

Soverain asserts that *MuniAuction* and *BMC* do not apply to system claims and that the issue of joint infringement should instead by addressed under the geographic location of infringement analysis set forth in *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) and *Renhcol, Inc. v. Dan Best Sports*, 548 F.Supp.2d 356 (E.D. Tex. 2008).  In *Warner-Jenkinson*, the Supreme Court reiterated that infringement requires a showing that a defendant has practiced each and every element of a claimed invention.  520 U.S. at 40.  *BMC* and *MuniAuction* applied this doctrine in the context of method claims.  However, there is nothing in either decision that suggests that their holdings are limited to method claims.  Soverain has not

cited a single authority for such a proposition because neither the Supreme Court nor the Federal Circuit has excluded system claims from the all elements rule.

In *Golden Hour Data Systems, Inc. v. Emscharts, Inc.*, No. 2:06-cv-381, 2009 WL 943273 (E.D. Tex. April 3, 2009), Judge Ward addressed this precise issue and applied *BMC* and *MuniAuction* to system claims. Soverain attempts to distinguish *Golden Hour* by noting that Judge Ward did not address whether a single party infringed the system claims. Soverain Opposition, p. 5. This makes no sense. Judge Ward reviewed the applicable case law and properly applied it to a system claim. He thus correctly concluded that under *Warner-Jenkinson, BMC,* and *MuniAuction*, a system claim could not be infringed where the claims included elements that were satisfied by multiple parties. Soverain essentially argues that *Golden Hour* is distinguishable because Judge Ward correctly applied *Warner-Jenkinson, BMC,* and *MuniAuction* instead of the geographic infringement analysis of *NTP*. *Golden Hour* is directly on point and confirms that system claims are not somehow exempt from the all elements rule.

Neither *NTP* nor *Renhcol* addresses the issue of divided infringement. Instead, they address the very different issue of the geographic location of the infringing acts to determine whether infringement occurred in the United States. In footnote 13, the *NTP* court specifically noted that the issue of direct infringement by the customers was not appealed. Contrary to Soverain's assertions on page 3 of its opposition, *NTP* did not hold that "the infringement analysis for use of claimed systems is 'fundamentally different'" such that one party does not have to satisfy every claim limitation. Instead, the court merely held that "the concept 'use' of a patented method or process is fundamentally different from the use of a patented system or device." *NTP*, 418 F.3d at 1317. The court nowhere holds that infringement of a system claim does not require that the accused infringer satisfy each claim limitation. *NTP* held that because

"customers send and receive messages by manipulating the handheld devices in their possession in the United States, the location of the use of the communication system <u>as a whole</u> occurs in the United States." *Id*. (emphasis added).  This cannot be taken to mean that infringement could exist if the accused did not satisfy each claim limitation (i.e. the system as a whole).

Likewise in *Renhcol*, this Court cited *NTP* in the context of determining the geographical location of infringement.  This Court specifically noted that "the Federal Circuit in NTP, in addition to courts that apply NTP, did not focus on whether the defendant's customers controlled and derived beneficial use from each component that allegedly infringed each claim limitation ...." *Renhcol*, 548 F.Supp.2d at 364.  This Court has thus noted that *NTP* and *Renhcol* are inapposite to the issue of joint infringement.[1]  As was demonstrated in Newegg's motion, under the apposite precedent of *BMC* and *MuniAuction*, Newegg cannot infringe the asserted claims as a matter of law.

2.   <u>Newegg Does Not Satisfy Every Limitation of the '314 and '492 Patent Claims</u>

As a supplement to its flawed advancement of the geographical infringement analysis of *NTP* and *Renhcol,* Soverain continues by asserting that Newegg "uses" the buyer computers because they are necessary to complete transactions and that Newegg sends web pages to the buyer computers.  This does not make sense and is inconsistent with Soverain's expert report. As an example, Soverain's technical expert, Dr. Grimes, only asserts that claim limitation [34b] is met when a Newegg customer connects his or her computer to the Newegg servers via the Internet.  Grimes Dec. (Ex. A to Motion) ¶ 83.  Likewise, Dr. Grimes concedes that limitation [34f] is satisfied when the buyer requests to add products to their shopping cart.  *Id.* ¶ 88.  As is

---

[1]  Soverain also relies upon *Civix-DDI, LLC v. Cellco Partnership*, 387 F.Supp.2d 896 (N.D. Ill. 2005), and *Inline Convection Corp. v. AOL Time Warner, Inc.*, 472 F.Supp.2d 598 (D.Del. 2007) to support the proposition that *BMC* and *MuniAuction* do not apply to system claims.  *Civix* and *Inline* antedate *BMC* and *MuniAuction*.  *Civix* relies upon multiple district court costs that were overruled by *BMC* and *MuniAuction*.  *Inline* does not involve the issue of joint infringement and does not address *BMC* and *MuniAuction*.

manifestly clear due to the plain language of the claims, these limitations can only be satisfied by the buyer.  Dr. Grimes must and does agree. As was set forth in Newegg's motion, each of the asserted claims of the '314 and '492 patents includes these same limitations.  Soverain also asserts that Newegg "controls" the entire claimed system or is the "mastermind" because it dictates its function.  This argument was specifically rejected in *MuniAuction, Golden Hour* and *Emtel, Inc. v. Lipidlabs*, *Inc.*, 583 F.Supp.2d 811, 830-31 (S.D. Tex. 2008).  Newegg does not control the customers as it could not be vicariously liable for their actions, and Soverain has made no attempt to show such vicarious liability.

       3.    <u>The Hypertext Statement Claims of the '492 Patent</u>

Again, Soverain urges the Court to ignore *BMC* and *MuniAuction* and apply the geographic infringement analysis of *NTP* and *Renhcol*.  This is again wrong.  Soverain suggests that Newegg satisfies each claim limitation because Newegg can provide order information to customers as opposed to hiring customer service representatives.  However, the actual claim limitations must be the focus of the analysis.  Claims 15, 17, and 18 all require, among other limitations "a client computer for operation by a client user."  It cannot be reasonably argued that Newegg satisfies this limitation.  The claim language itself specifies that the client/customer alone can satisfy this limitation.

Soverain further notes that Newegg did not individually address claims 18, 35, and 36 in its motion.  Dr. Grimes likewise did not separately analyze them since they are virtually identical to claims 17 of the '492 patent and claim 34 of the '314 patent.  *See* Grimes Dec. (Ex. A to Motion) ¶¶ 132-35.  These claims cannot be infringed as a matter of law for the same reasons.

       4.    <u>Newegg Does Not Perform Every Element of the Method Claims</u>

Soverain offers two theories for how Newegg practices each element of the asserted

method claims.  First, it relies upon *Level 3 Communications, LLC v. Limelight Networks, Inc.*, 630 F.Supp.2d 654 (E.D. Va. 2008).  Second, Soverain urges the Court to focus its analysis on only the first word in each claim clause as opposed to each step or limitation in such clause.

*Level 3* demonstrates why summary judgment should be granted here.  In *Level 3*, the Court specifically held that "origin servers do not qualify as elements of the claimed methods of the Farber patents for the purposes of the 'all elements' rule…."  *Id*. at 259. Since "origin servers" were not express elements of the claims, it was deemed to be irrelevant if the users satisfied these non-existent "assumed" limitations.  *Id*. at 259-60.  Here each of the asserted method claims recites explicit limitations that are satisfied by the client/customer.  As was addressed in Newegg's motion, every asserted method claim recites specific limitations such as "forwarding a service request from the client to the server system," "the client storing the session identifier," "server requests from a client," "a session identifier stored at the client has been appended by the client," and "a client computer for operations by a client user."  These are express limitations, and are not "assumed" as in *Level 3*.

Soverain further attempts to avoid summary judgment by focusing the Court on only the first word in each claim clause, and implicitly suggests that the claim steps/elements contained within each claim clause can be ignored.  For example, claim clause [78b] begins with the word "receiving," however this clause includes the separate limitation of "a session identifier stored at the client has been appended by the client."  Likewise, clause [39f] includes the limitation of "a plurality of requests from a user to add a plurality of respective products."  Clause [39i] recites "the buyer computer being programmed to receive a request from said user to purchase said plurality of products added to said shopping cart and to cause said payment message to be activated."  Soverain correctly notes that *MuniAuction* mentions that claims could be structured

5

to avoid this issue.  Here they were not so structured.  These claims include explicit limitations that can only be satisfied by the buyer.  Without any support, Soverain attempts to characterize certain limitations of the claims as not being "steps."  Regardless of how it characterizes portions of the claims, they are all limitations that must be satisfied by <u>Newegg</u> for infringement to exist.

     5.    <u>Newegg Does Not Direct or Control its Customers</u>

Soverain asserts that Newegg "directs or controls" its customers computers and/or is the "mastermind" of its e-commerce system and thus is liable for the actions of its customers.  This theory was specifically rejected in *MuniAuction*.  Despite the use of the word "mastermind" in *MuniAuction*, the court specifically held that mere "arms-length cooperation" will not give rise to direct infringement by either party.  532 F.3d at 1329.  *MuniAuction* then clarified that this standard would be satisfied only if Newegg could be held vicariously liable for the conduct of its customers.  *Id*. at 1330.  Soverain has not even attempted to explain how Newegg could satisfy this standard.

Soverain also asserts that Newegg "controls" the customer's computers because the cookie mechanism is automatic.  This exact argument was presented and rejected in *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F.Supp.2d 1331 (S.D. Fla. 2008), wherein the court held that asserted programming of the user's computer could not establish "direction or control" over the <u>user</u> under *MuniAuction*.  Claim 1 of the '639 patent requires "forwarding a service request from the client to the server system," "the client storing the session identifier," and "appending the stored session identifier to each of the subsequent distinct request."  These elements are all satisfied by the client/customer, for whom Newegg is not vicariously liable under any theory.

6.      <u>Internal Testing</u>

Contrary to Soverain's bold assertion, it has presented no actual evidence that Newegg has internally tested its systems in a manner that infringes the claims at issue.  Paragraph 36 of Dr. Grimes' report does not address where, when or how Newegg allegedly satisfies these claim limitations.  Moreover, to the extent that this Court finds that internal testing could alone constitute infringement, damages must be limited to these infringing acts.

7.      <u>Infringement by Newegg's Customers</u>

For the first time Soverain now asserts that Newegg's customers could be the direct infringers and Newegg is liable for inducement of infringement.  This theory was rejected in *BMC*.  Here, because neither Newegg nor the customer satisfy all the claim elements, neither can be liable as a direct infringer.  A claim for inducement, as a form of indirect infringement, requires, as a predicate, that some actor has committed the entire act of direct infringement. *BMC*, 498 F.3d at 1379.  Despite its necessary admissions that the Newegg customer's satisfy certain limitations, Soverain has argued throughout that it is Newegg that infringes.  Now, without any analysis, it is suggested that the Newegg customers do so.

It is indisputable that it is Newegg that operates the servers that are asserted to satisfy many of the limitations of the claims.  Neither Soverain nor its expert has even suggested how the customers could satisfy each limitation.  There is no direct infringement by any entity, and thus no inducement.

                                                        Respectfully submitted,

Dated: October 21, 2009                    By: <u>/s/ David C. Hanson with permission</u>
                                                            <u>by Trey Yarbrough</u>
                                                            David C. Hanson
                                                            Kent E. Baldauf, Jr.
                                                            John W. McIlvaine

THE WEBB LAW FIRM
700 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
T:  (412) 471-8815
F:  (412) 471-4094

Trey Yarbrough
Bar No. 22133500
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

Attorneys for Defendant
Newegg Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being hereby served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 21, 2009.  All other counsel of record will be served via facsimile or first class mail.

/s/ Trey Yarbrough
Trey Yarbrough