# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>CDW CORPORATION, )<br>NEWEGG INC., )<br>REDCATS USA, INC. )<br>SYSTEMAX INC., )<br>ZAPPOS.COM, INC., )<br>REDCATS USA, L.P., )<br>THE SPORTSMAN'S GUIDE, INC., )<br>AND )<br>TIGERDIRECT, INC., )<br>)<br>    Defendants. ) | Case No. 6:07-CV-00511-LED<br><br>Hon. Leonard E. Davis |

## SOVERAIN'S SURREPLY IN SUPPORT OF ITS OPPOSITION TO SUMMARY JUDGMENT MOTION OF NONINFRINGEMENT

NYI-4226093v1

I.  **INTRODUCTION**

Newegg's Reply (Dkt. # 265) does not cure the fundamental defects of its multiple-actor noninfringement defense against all asserted claims, and fails to rebut the reasons set forth in Soverain's Opposition why this noninfringement motion should be denied.

As to the system claims, Newegg misinterprets the law by rewriting the all elements rule. Without any basis, Newegg interprets this rule to require not only a showing that each claim element is present in the accused system, but also that all claim elements are owned or directly operated by one party. Newegg further fails to recognize that the Federal Circuit in *NTP* and this Court in *Renhcol*,[1] instead of merely establishing a "precedent related to geographic location of infringement" (Reply at 1), set forth the proper infringement analysis for use of system claims.

As to the method claims, Newegg first picks claim language out of context and then asserts that the selected language defines separate process step(s) to be performed by third parties. Soverain's claim analysis and proofs to the contrary stand unrebutted, as Newegg fails even to acknowledge them in its Reply. Finally, Newegg does not deny that it is the mastermind that directs and controls its own ecommerce system, but asserts that it can avoid infringement merely because it is not vicariously liable for acts by its customers. Newegg's position is not supported by the case law, and fails to absolve Newegg from infringement.

II.  **NEWEGG'S MULTIPLE-ACTOR NONINFRINGEMENT DEFENSE DOES NOT APPLY TO THE ASSERTED SYSTEM CLAIMS**

Newegg attempts to justify the application of its multiple-actor noninfringement defense to the asserted system claims using four principal arguments, that:

(1) system claims "are not somehow exempt from the all elements rule" (Reply at 1-3);

(2) the *NTP* and *Renhcol* cases on which Soverain relies in its Opposition are

---

[1] *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005); *Renhcol, Inc. v. Don Best Sports*, 548 F. Supp. 2d 356 (E.D. Tex. 2008) (Davis, J.).

inapplicable, and merely "related to the geographic location of infringement" (Reply at 1-3);

(3) the *Golden Hour Data Systems v. Emscharts, Inc.*, 2009 WL 943273 (E.D. Tex. 2009) case in this District is not distinguishable from the present case, and dictates a finding of noninfringement (Reply at 2); and

(4) Newegg does not "use" buyer/client computers in the context of arms-length customer transactions, and hence cannot infringe (Reply at 3-4).

None of these arguments has merit.

***The all elements rule***:  This argument is a red herring.  Newegg simply makes up a new "all elements rule" for system claims, a rule rewritten by analogy to the method claim analysis in the Federal Circuit *BMC* and *Muniauction* cases.[2]  According to Newegg, for system claims the all elements rule requires not only a showing that each claim element is present in the system – something that Newegg does not even dispute in this Motion – but also that the infringer (as opposed to the system) has to "satisfy each claim limitation." (Reply at 2.)  Newegg's Reply makes clear that in its view, to "satisfy" each claim limitation means that the infringer must own or directly operate each claim element.  (*See*, *e.g.*, Reply at 3-4.)

Newegg's sweeping new rule is deeply suspect.  It would render not enforceable system claims directed to a broad range of applications, merely because the underlying technology is complex and by its very nature involves multiple objects and/or parties.  For example, as in the present case, it would foreclose system claims directed to ecommerce (involving independent buyers and sellers); telecommunications (remote communications involving at least two parties); radar and traffic control systems (multiple objects not under direct control by a single party); and meritorious inventions in many other areas.  What is Newegg's authority for this sweeping rule?

---

[2] *BMC Resources v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008).

Apparently, only the alleged nonexistence of any authority to the contrary.  (Reply at 1, 2, "there is nothing in either decision [*BMC* and *Muniauction*] that suggests that their holdings are limited to method claims.  Soverain has not cited a single authority for such a proposition because neither the Supreme Court nor the Federal Circuit has excluded system claims from the all elements rule.").  In fact, Newegg chooses to <u>ignore</u> the contrary authority, including *NTP* and *Renhcol*.

***The NTP, Renhcol and other decisions***:  Newegg asserts that the Federal Circuit's decision in *NTP* and this Court's analysis in *Renhcol* are not relevant to its multiple-actor defense, because in its view, these cases established a "precedent related to geographic location of infringement" (Reply at 1-3) and did not reach the question of joint infringement.  Newegg's argument is incorrect and must fail.

Newegg does not dispute that "[u]nder section 271(a), the concept of "use" of a patented method or process is <u>fundamentally</u> different from the use of a patented system or device."  *NTP,* 418 F.3d at 1317 (emphasis added).  Newegg also does not dispute that the Federal Circuit in *NTP* and this Court in *Renhcol* specifically analyzed the use requirement of system claims for determining direct infringement.  In view of this case law, Newegg's assertion that the analysis in *NTP* and *Renhcol* is <u>irrelevant</u> to the multiple-actor defense makes little sense.  If one doesn't know what it means to use a claimed system, how would one determine whether a single party uses the system?  In *Renhcol*, this Court explicitly addressed both "the situs of use and the person who uses a device that allegedly infringes."  548 F. Supp. 2d at 363.  Before concluding that the use occurred in the United States, the Court first concluded that there was use of the allegedly infringing system.  *Id.* at 365.

Newegg's assertion of no contradictory authority also fails because in a recent decision,

the court in *Uniloc USA, Inc. v Microsoft Corp.*, 2009 WL 3106555 (D.R.I.) (Sept. 29, 2009) specifically refused to extend the application of the *Muniauction* multiple-actor rationale to system claims. In that case, defendant Microsoft contended that the only asserted independent claim 19 requires both a local side and remote side, and argued that "the entire accused system that allegedly infringes Claim 19 does not exist until the local side user installs and runs the PA software on his computer." *Id.* *5. Microsoft further argued that "there can be no direct infringement of an apparatus claim by one entity where a third party completes the apparatus, such as by establishing one of its elements." *Id*. In short, Microsoft took the same position articulated by Newegg in this case.

The court disagreed. After analyzing facts very similar to the present case, the court stated that "there can be little doubt Microsoft makes, uses and controls the Clearinghouse server and is the 'mastermind' of the software, causing each local and remote component to (arguably) complete 'infringement' by the entire system." *Id.* (citing *BMC* and *NTP*). The Court concluded that "[t]he bottom line is that nothing Microsoft offers or this Court has reviewed supports finding that Claim 19 cannot, as a matter of law, capture direct infringement by Microsoft in this case." *Id.*

***Golden Hour:*** Newegg again relies heavily on *Golden Hour Data Systems, Inc. v. emsCharts, Inc.*, 2009 WL 943273 (E.D. Tex. 2009), as authority for the application of the multiple-actor defense to system claims, and dismisses Soverain's explanation that the case did not address the issue of whether a single party infringed the system claims, stating that it "makes no sense." (Reply at 2.) Newegg's dismissal is unwarranted, and reflects its failure to examine the complete record in *Golden Hour*. Had Newegg done so, it would have learned that *Golden Hour* supports Soverain, not Newegg. As is apparent from the Final Judgment entered in the

case, the Court found that defendant emsCharts induced infringement of the patent in suit. That is consistent with Soverain's infringement charge against Newegg.

On motion for JMOL, emsCharts challenged four findings by the jury, labeled (i) – (iv). Exh. 10, Defendant emsCharts' Motion for JMOL at 1.[3] The first challenged jury finding (i) was the finding of direct joint infringement by the two defendants in the case. *Id.* This is the only challenge specifically addressed by the Court in the decision on which Newegg relies. *Golden Hour,* 2009 WL 943273 *1 ("The Court now addresses Paragraph (i) of emsCharts' Motion.")

Item (iii) in emsCharts' Motion for JMOL also addresses the issue of whether defendant emsCharts induced some other party to directly infringe the asserted claims. Exh. 10 at 1. In its Opposition, plaintiff Golden Hour argued that "The trial record includes substantial evidence which shows that the customers of emsCharts and Softtech used the infringing systems and carried out the infringing methods." Exh. 11, Golden Hour's Opposition to Motion for JMOL at 19 (emphasis added). The Court agreed with Golden Hour. Exh. 12, Final Judgment entered on April 3, 2009 ("Consistent with the jury verdict, the court finds that emsCharts, Inc. willfully induced the infringement of U.S. Patent No. 6,117,073 claims 1, 6-8, 10, and 12-22.").

Contrary to Newegg's assertions in Reply, Soverain's explanation not only makes perfect sense, it directly supports Soverain's position that the Court in *Golden Hour* merely addressed a narrow issue of joint direct infringement and did not broadly extend the *Muniauction* rationale to system claims. Newegg's reliance on *Golden Hour* is completely misplaced.

*Use of Newegg's system*: In its Reply at 3-4, Newegg asserts that certain components of the sales system claims of the '314 and '492 patent and the hypertext system claims of the '492 patent such as buyer/client computer are not met, allegedly because Newegg cannot be shown to

---

[3] Exhibit numbering continues from Soverain's Opposition.

"use" these buyer/client computers. For example, Newegg states that "it cannot be reasonably argued that Newegg satisfies" the claim limitation of "a client computer for operation by a client user." (Reply at 3-4.) Newegg's argument is another variation of its new all elements rule, which would require a single party to own or directly operate all components of a system claim. The argument should be dismissed for the same reasons discussed above. The assertion that Newegg cannot as a matter of law "use" third party buyer/client computers contradicts its own documents in which the Newegg customer's computer is depicted as part of the overall ecommerce system. *See, e.g.,* Exh. 3, illustration of the overall Newegg system. The argument also is contradicted by applicable precedent to the effect that the analysis of using a system must focus on the whole system – all of its components collectively – and not on the ownership or direct operation of each individual component.

### III. NEWEGG'S ANALYSIS OF THE METHOD CLAIMS IS FLAWED

In its analysis of the asserted method claims (Reply at 4-6), Newegg first attempts to distinguish *Level 3 Communications, LLC v. Limelight Networks, Inc.*, 630 F. Supp. 2d 654, 659-60 (E.D. Va. 2008). There, the court rejected a multiple-actor noninfringement theory because certain third-party components ("origin servers") were not required to perform any steps in the claimed methods. According to Newegg, *Level 3* rejected the noninfringement theory because it deemed the origin servers to be "non-existent 'assumed' limitations," whereas the method claims in the present case recited third-party "express limitations, [that] are not 'assumed' as in *Level 3*." (Reply at 5.) Newegg's attempt to distinguish between "express" and "assumed" limitations is contradicted by the record in *Level 3* and is unavailing for several reasons.

First, in *Level 3,* the defendant claimed that "an origin server is a required element of each of the asserted claims …, and contend[ed] in this connection that it does not infringe because it 'does not either own, or direct or control, any 'origin servers.'" *Id.* at 658. In short, contrary to Newegg's

assertion, the term "origin servers" was expressly recited in the asserted claims in *Level 3*. The *Level 3* court <u>rejected</u> this defense, holding that the origin servers, while recited in the claims, were nevertheless not relevant for determining whether the accused infringer performs each of the recited <u>process</u> steps. *Id.* at 659. The same reasoning applies to the buyer/client computers and other third-party components recited in the method claims, as discussed in Section III.B of Soverain's Opposition. (Opp. at 9-17.)

Next, Newegg alleges that in its Opposition, Soverain focuses "on only the first word in each claim clause, and implicitly suggests that the claim steps/elements contained within each claim clause can be ignored." (Reply at 5.) The allegation is unfounded and misleading. In each case Newegg picks a phrase out of context, and presents it as if it were a separate process step.

For example, Newegg asserts that "claim clause [78b] begins with the word 'receiving,' however this clause includes the separate limitation of 'a session identifier stored at the client has been appended by the client.'" Newegg asserts that in addition to "receiving," the claim requires third party customers to perform separate steps of "storing" a session identifier and "appending" it to a service request. This is not the case. Claim clause [78b] recites:

> <u>receiving</u>, from the client, a service request to which a session identifier stored at the client has been appended by the client …

The language of the entire claim clause makes it apparent that Newegg's argument ignores the distinction between the "receiving" <u>step</u> in the claimed process, and limitations that define the context in which the receiving step is performed. To use the terminology in *Level 3*, claim element [78b] "assumes" that a service request received from the client includes an appended session identifier that has been previously stored. But the <u>only</u> step that is required by the claim is the one of "receiving" a service request with certain characteristics (i.e., having an appended session identifier). The same analysis also applies to all claims considered in Section III.B of Soverain's Opposition, and is further presented in the accompanying Statement of Genuine Issues. (*See* Newegg's Statement of

NYI-4226093v1

- 7 -

Undisputed Material Facts at ¶¶ 3-5, 7-9, 22-23, 33 and Soverain's Statement of Genuine Issues responding to those paragraphs.)

Newegg's "direction or control" analysis of method claim 1 of the '639 patent, where different method steps are performed by Newegg and its clients' computers, is similarly flawed. Newegg does not dispute that (1) it is the mastermind of its own ecommerce system; (2) it directs and controls its operation; or (3) actions by its customers' computers are prescribed by Newegg and performed automatically. (Reply at 6.) Instead, Newegg asserts that it can avoid infringement merely because it is not "vicariously liable" for its customers making purchases over the Internet. *Id*. Thus, amplifying on statements in its opening brief, Newegg now asserts that "this [direction or control] standard would be satisfied only if Newegg could be held vicariously liable for the conduct of its customers." *Id*. (emphasis added). Newegg's assertion is wrong. The Federal Circuit in *Muniauction* never stated that vicarious liability is the only way to show "direction or control" over a third party that performs infringing steps. *Muniauction,* 532 F.3d at 1329-30. As pointed out in Soverain's Opposition at 18, in *Akamai Tech. v. Limelight Networks, Inc.*, 614 F. Supp. 2d 90, 120 (D. Mass. 2009), a case on which Newegg relies in its opening brief, the court reached the opposite conclusion. Newegg's non-reply, which ignores *Akamai* and other case law cited by Soverain (Opp. at 21) and merely repeats statements in its opening brief, is unavailing.

## IV. NEWEGG INDUCES ITS CUSTOMERS TO INFRINGE

In its Reply, Newegg asserts that Soverain's alternative infringement theory, under which Newegg's customers are the direct infringers and Newegg is liable for inducement of infringement, is presented for the first time in the Opposition, and further that "[t]his theory was rejected in *BMC*." (Reply at 7.) Neither assertion is correct. Soverain's inducement of infringement theory was previously presented in the expert report of its technical expert witness. *See* e.g., Exh. 1, Declaration of Jack D. Grimes, Ph.D., Grimes Report ¶ 150. Newegg does not

supply a cite to enable confirmation of which "theory was rejected in *BMC*." But if Newegg is arguing that Soverain's theory of induced infringement was rejected under *BMC,* it is wrong.

Soverain's theory of induced infringement applies to Newegg customers' use of the system claims, not the method claims. Newegg's assertion that neither Newegg itself, nor its customers, use the system as a whole (i.e., that no single actor uses the ecommerce system) defies common sense because the customers use the shopping cart and payment mechanisms of Newegg's ecommerce system to select and purchase desired products. As demonstrated in Soverain's Opposition at 23, customers also use Newegg's hypertext-statement system when they view their order histories. Finally, Newegg's assertion that no single party uses the system simply ignores this Court's analysis in *Renhcol* and contradicts the holding in *Uniloc*.

Newegg does not dispute that the remaining elements of induced infringement are met. (Reply at 7.) Accordingly, at the very least, summary judgment of noninfringement should be denied because there is a genuine issue of material fact as to whether Newegg's customers directly infringe the asserted system claims.

## V. CONCLUSION

Newegg's motion for summary judgment of noninfringement should be denied as to all asserted claims in the Soverain patents.

Dated: October 30, 2009                              Respectfully submitted,

                                                      /s/ Ognian V. Shentov (with permission)
                                                     Kenneth R. Adamo
                                                     State Bar No. 00846960
                                                     Lead Attorney
                                                     Email: kradamo@jonesday.com

                                                     JONES DAY
                                                     2727 North Harwood Street
                                                     Dallas, Texas 75201-1515
                                                     Telephone: 214-220-3939
                                                     Facsimile: 214-969-5100

          Thomas L. Giannetti
          NY Attorney Reg. No. 1632819
          Email:  tlgiannetti@jonesday.com

          Ognian V. Shentov
          NY Attorney Reg. No. 2867737
          Email:  ovshentov@jonesday.com

          JONES DAY
          222 East 41st Street
          New York, New York 10017-6702
          Telephone:  212-326-3939
          Facsimile:  212-755-7306

          ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    This is to certify that on October 30, 2009 a true and correct copy of the foregoing document has been served on Newegg Inc.'s counsel by electronic mail.

                                              /s/ Ognian V. Shentov
                                              Ognian V. Shentov