IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **SOVERAIN SOFTWARE LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:07-CV-00511-LED |
| ) | |
| **CDW CORPORATION,** ) | |
| **NEWEGG INC.,** ) | |
| **REDCATS USA, INC.** ) | |
| **SYSTEMAX INC.,** ) | |
| **ZAPPOS.COM, INC.,** ) | |
| **REDCATS USA, L.P.,** ) | |
| **THE SPORTSMAN'S GUIDE, INC.,** ) | |
| **AND** ) | |
| **TIGERDIRECT, INC.,** ) | |
| ) | |
| Defendants. ) | |

### SOVERAIN'S OPPOSITION TO NEWEGG'S MOTION *IN LIMINE*

Plaintiff Soverain opposes each enumerated paragraph of Newegg's Motion *in Limine*. Each paragraph is addressed separately below.

**I.    The Court should deny Newegg's motion to preclude evidence, statements, and arguments relating to Newegg's total sales revenues and profits**

Newegg's first motion *in limine* is based on the false premise that Soverain's damages expert, James Nawrocki, applied the entire market value rule in his damages analysis in this case. Newegg argues that any evidence or statements regarding Newegg's gross sales revenue should be excluded because "[t]he total revenues and profits earned by Newegg bear no relevance to Soverain's damages model outside of an invocation of the entire market value rule." (Newegg at

NYI-4245005v4

3.) But Mr. Nawrocki does not apply the entire market value rule in this case.[1] For this reason, the two cases cited by Newegg in its *in limine* motion (*Rite-Hite* and *Lucent*[2]) are inapposite, addressing only whether the entire market value rule was appropriately applied based on the facts presented therein.

In embarking down the wrong path, Newegg ignores federal authority holding that in any reasonable royalty case a damages expert may properly consider total sales of the accused infringer, as well as the infringer's anticipated and actual profits, in a determination of a reasonable royalty rate. In *OPTi Inc. v. Apple, Inc.,* 2009 WL 4727912 (E.D. Tex. Dec. 3, 2009), for example, this Court denied the defendant's motion for a new trial, holding that "total revenue evidence" is clearly relevant to a *Georgia-Pacific* analysis. And in *i4i Ltd. P'ship v. Microsoft Corp.*, 2009 WL 2449024 (E.D. Tex. Aug. 11, 2009), *aff'd as modified,* 2009 WL 4911950 (Fed. Cir. Dec. 22, 2009) this Court again held that total sales revenue is relevant outside of the application of the entire market value rule, finding that the damages expert's testimony comparing his damages calculation with Microsoft's total operating profit from the sale of the accused products was properly admitted. The Court further explained that such use of total sales information was *not*, as Newegg attempts to argue here, a "back-door" attempt to argue an "entire market value" theory of royalties to the jury. *Id.,* at *20 (denying JMOL motion on the issue of damages).

---

[1] The issue of whether Mr. Nawrocki properly considered Newegg's gross sales revenue in the context of his *Georgia-Pacific* analysis is already pending before this Court in Newegg's Motion to Exclude the Expert Report and Testimony of James Nawrocki (Docket No. 252). Soverain will not reargue its position that Mr. Nawrocki has not employed the entire market value rule in his *Georgia-Pacific* analysis, here, and instead refers the Court to Soverain's Opposition and Sur-Reply to Newegg's Daubert Motion to Exclude the Opinions of James Nawrocki at Docket Nos. 264 and 276.

[2] *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538 (Fed. Cir. 1995); *Lucent Techs., Inc. v. Gateway, Inc.*, 2009 WL 2902044 (Fed. Cir. Sept. 11, 2009).

Because evidence or statements regarding Newegg's gross sales revenue are appropriately considered and relevant to a *Georgia-Pacific* damages analysis, and because Newegg cites no authority to the contrary, Newegg's first motion *in limine* should be denied.

**II. The Court should deny Newegg's motion to preclude evidence, statements, and arguments referring or relating to licenses or licensees of the patents-in-suit, where such licenses were entered into in settlement of litigation**

Newegg's second motion *in limine* seeks to preclude under Federal Rules of Evidence 403 and 408 all evidence related to any litigation-related settlement agreement entered into by Soverain. It takes Newegg until the second page of its argument to come clean that Soverain does not, in fact, intend to introduce into evidence litigation-related settlement agreements (which Newegg acknowledges do not appear on Soverain's exhibit list). Nor does Soverain seek to introduce the negotiated amounts of those settlement agreements. All that Soverain seeks to introduce at trial is the fact of the settlement agreements, and the names of the licensees.

Newegg's motion is properly denied because the evidence that Soverain intends to introduce at trial does not fall within exclusionary Fed. R. Evid. 408. Rule 408 is specific that it is invoked only when evidence is "offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount." Fed. R. Evid. 408 (a). "This Rule does *not* require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)." Fed. R. Evid. 408 (b) (emphasis added).

Newegg reads Rule 408 far too broadly in an attempt to prevent the jury from hearing not only the amounts of the litigation-related settlement agreements, but the names of Soverain's licensees. Newegg's position finds no support in Rule 408 or federal case law. In fact, Newegg's own cases explain this limitation on the Rule. For example, in *Pioneer Corp. v. Samsung SDI Co.*, LTD, 2008 U.S. Dist. LEXIS 107079, at *14 (E.D. Tex. Oct. 2, 2008), this Court explained that Rule 408 "by its terms does not operate to exclude evidence unless it is

offered to prove liability for or invalidity of the claim or its amount." *Id.* (citations omitted). To the contrary, "[e]vidence of agreements in general . . . may be relevant and not prohibited by Rule 408 as long as it 'does not extend to the terms of those licenses granted in settlement of litigation.'" *Inline Connection Corp. v. AOL Time Warner, Inc.*, 470 F. Supp. 2d 435, 440 (D. Del. 2007) (citations omitted).

Newegg is forced to misstate the underlying issue to find case law to support its argument. The cases cited by Newegg all address whether litigation-related settlement agreements, including evidence as to the negotiated amounts, should be admitted at trial. *See Pioneer Corp.,* 2008 U.S. Dist. LEXIS 107079, at *5 (excluding testimony regarding "*negotiations, offers and agreements* entered into under the threat of litigation"); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 800 (E.D. Tex. 2007) ("*A payment* of any sum in settlement of a claim for alleged infringement" is not admissible) (emphasis added). Newegg's cases do not address the current issue, whether the existence of the licenses or the identity of the licensees fall within the Rule.

Soverain seeks to introduce evidence only as to the existence of the licenses, and the identities of the licensees. This evidence is permissible within the bounds of Rule 408, and therefore properly admitted at trial.

Newegg's next argument, that Fed. R. Evid. 403 mandates exclusion of the names of Soverain's licensees, also fails. This motion is not about precluding Soverain from offering the litigation-related agreements into evidence; the parties agree that such evidence cannot be offered. Similarly, this motion is not about excluding the amounts paid by licensees to settle litigation; again, the parties agree also that such evidence is not to be offered. The only issue is whether the jury can hear the names of any of those licensees. Newegg seeks to use Rule 403 to

exclude mention of any of those names so as to mislead the jury into believing that a reputable company involved in ecommerce has never taken a license to the patents-in-suit, thereby implying that the patents must be of limited value.

This prejudice is compounded by the fact that Newegg intends to offer into evidence license agreements entered into under threat of litigation by Soverain's predecessor. (Newegg's damages expert Christopher Bakewell relies on these licenses in his expert report, and Newegg identifies these licenses on its exhibit list as likely to be used at trial.) The simple fact is that a number of online retailers, including Amazon.com, the Gap, Zappos, and TigerDirect are licensed under the patents-in-suit. Any danger of prejudice to Newegg if the names of Soverain's licensees are allowed is greatly outweighed by the prejudice to Soverain if the names of its licensees are precluded. Newegg's attempt to preclude Soverain from identifying its licensees – while simultaneously introducing evidence of little known companies who licensed the patents years and years ago from Soverain's predecessor – is itself unfairly prejudicial and would mislead the jury.

Because Soverain does not seek to admit litigation-related license agreements into evidence, or offer evidence relating to the specific terms of the license agreements, Newegg's second motion *in limine* should be denied.

### III. The Court should deny Newegg's motion to preclude testimony by Michael Shamos which purports to explain legal principles or provide legal instruction for analyzing the validity of the asserted claims

Dr. Shamos will not "provide legal instruction" to the jury as Newegg charges. He should, however, be permitted to present the bases for his expert testimony concerning validity of the patents in suit. This testimony will necessarily include the legal standards for validity as he understands them that he applied in forming his opinions. Newegg seeks to preclude such testimony by Shamos and, therefore, Soverain opposes Newegg's motion.

Dr. Shamos is Soverain's technical expert for issues relating to the validity of the patents in suit. Dr. Shamos has a Ph.D. and is a professor of computer science. He also has a law degree and previously worked as a patent attorney. But Soverain is not offering him as a patent-law expert. Shamos specifically stated in his expert report that he has "not been asked to offer an opinion on the law." (Shamos Report ¶ 14.) At his deposition, in testimony quoted by Newegg, Shamos said that he does not expect to testify as to "what the law is." (Newegg at 10.) However, Shamos also made it clear that, if asked, he would testify to his understanding of the law as he applied it in reaching his opinions. (*Id.*)

This testimony is not only permissible, it is necessary. The jury should hear the basis for an expert's opinion on validity. "General and conclusory testimony . . . does not suffice as substantial evidence of invalidity." *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004). It is, therefore, important for an expert opining on validity to be able to present the bases for his opinions. Dr. Shamos will also rebut opinions offered by Newegg's technical expert Edward Tittel as they relate to patent validity.[3] For Shamos to rebut Tittel's testimony, he will have to point out flaws in Tittel's analysis (and also defend his own conclusions). This is likely to involve his understanding of the legal standards of anticipation and obviousness.

Newegg confuses Shamos's testimony regarding his understanding of the law as a basis for his opinions with "providing legal instruction." They are not the same. As one court has observed, experts in patent cases "must give their expert opinions on ultimate issues of fact, *while explaining their own understandings of the law*, but without purporting to give expert opinions as to what the law is." *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1136-37

---

[3] Newegg does not seek to prevent Shamos from testifying as to the ultimate issue of validity, i.e., whether Newegg showed that the patents in suit are invalid, nor could they under Fed. R. Evid. 704(a). Nor does Newegg seek to prevent Shamos from testifying as to whether the alleged prior art teaches the claim elements.

(W.D. Mich. 1996) (denying motion *in limine* to exclude expert testimony on validity and other topics as directed to "purely legal matters") (emphasis added).

Newegg's cases are distinguishable. *Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir. 1997), *Specht v. Jensen*, 853 F.2d 805, 806, 809 (10th Cir. 1988), and *Marx & Co. v. Diner's Club, Inc.*, 550 F.2d 505, 508 (2d Cir. 1977), involved lawyers being offered as legal experts or based on their legal expertise. Even then, *Specht* noted, "The line we draw here is narrow. We do not exclude all testimony regarding legal issues. We recognize that a witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible." 853 F.2d at 809-10 ("[A] expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function."). And contrary to Newegg's suggestion (Newegg at 10-11), Dr. Shamos, simply because he is a lawyer, should not be impossibly confined when serving as a technical expert. *See Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 533 (5th Cir. 2002) ("[M]erely being a lawyer does not disqualify one as an expert witness.") (citation omitted).

Newegg will not be prejudiced by permitting Dr. Shamos to testify as to his understanding of law, nor will the jury be confused. Shamos will not instruct the jury as to the law or opine as to what the law is, nor will the jury be faced with conflicting instructions. On the other hand, Soverain will be prejudiced if Shamos is precluded from explaining the bases for his opinions, and the jury will be deprived of testimony important to its evaluation of the experts. To the extent Newegg believes that Shamos has misapplied the law, Newegg will have the opportunity to cross examine him. *Waco*, 278 F.3d at 533. The Court will instruct the jurors as to the proper substantive patent law, and will no doubt say that they can give the experts' testimony the weight they believe it deserves. *Id.*

Newegg's third motion *in limine* seeking to preclude Dr. Shamos from testifying on his understanding of the law as he applied it to reach his opinions should be denied.

**IV.   The Court should deny Newegg's motion to preclude plaintiff from proffering argument and witness statements related to the reexamination of the 5,909,492 and 5,715,314 patents**

Soverain should be permitted to present evidence on the reexaminations of the '314 and '492 patents, reexaminations which confirmed their validity.  The Federal Circuit has held that proceedings before the Patent Office such as reexamination and reissuance are relevant to the issue of patent validity.  *See, e.g.*, *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985); *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed. Cir. 1986).  The '314 and '492 patents successfully underwent reexamination, with the Patent Office confirming the patentability of the existing patent claims and also allowing additional claims.  The Patent Examiner's decision is evidence highly relevant to the issue of validity, and must be considered by the jury.  *Custom Accessories,* 807 F.2d at 961 (evidence of a reexamination is "evidence the court *must* consider in determining whether the party asserting invalidity has met its statutory burden by clear and convincing evidence") (citation omitted) (emphasis added).

The reexaminations are probative evidence for an additional reason.  Art now cited by Newegg against the '314 and '492 patents was considered by the Examiner during the reexaminations.  The jury should hear this evidence.  Newegg attempts to bolster its preclusion argument by pointing to three references (books excerpts relating to the CompuServe Mall) not before the Patent Office during the reexaminations.  But Newegg ignores that during the reexaminations, the Patent Office considered the CompuServe Mall, among other references relied upon by Newegg (the Viescas book on Prodigy (D-24) and the Gifford patent (D-12)).

Newegg cites no cases in support of its argument that evidence of reexaminations should be precluded. To the contrary, the Federal Circuit has held that the Patent Office's confirmation that a patent's claims are valid is highly relevant to the issue of validity and *must* be considered. *See Custom Accessories*, 807 F.2d at 961 (reversing district court's holding of invalidity where district court failed to "give any credence to the PTO reexamination proceeding"). To the same effect are *Echostar Technologies Corp. v. TiVo, Inc.*, 2006 WL 2501494, at *4 (E.D. Tex. July 14, 2006) (outcome of a reexamination provides "the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims") and 4 Donald S. Chisum, Chisum on Patents § 11.07[4][f][iii] (2005) ("[I]t would seem appropriate that the courts give substantial weight to specific determinations of fact made by the Office in confirming patentability.").

Soverain will not introduce evidence, statements, or arguments indicating or suggesting that the '314 and '492 patents are "gold plated," i.e., entitled to a higher or stronger presumption of validity because they have undergone reexamination. Nor will Soverain refer to the patents as "doubly valid." However, evidence that the patents successfully underwent reexamination with validity confirmed, over some of Newegg's prior art, is highly relevant, and Soverain should be permitted to present this at trial. Supporting this is a case relied on by Newegg, in which the Federal Circuit observed that where prior art was before the Patent Office, the defendant rightly "has the added burden of overcoming the deference that is due to a qualified agency presumed to have properly done its job." *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *see also* 4 Donald S. Chisum, Chisum on Patents § 11.07[4][f][iii] (2005) ("[T]he Federal Circuit holds that reexamination does not alter the presumption [of validity] but does make it more difficult for one challenging a patent claim's validity to carry the burden of proof.").

Newegg's fourth motion *in limine* should be denied.

Dated: January 15, 2010 Respectfully submitted,

/s/ Thomas L. Giannetti (with permission)
Kenneth R. Adamo
State Bar No. 00846960
Lead Attorney
Email:  kradamo@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone:  214-220-3939
Facsimile:  214-969-5100

Thomas L. Giannetti
NY Attorney Reg. No. 1632819
Email:  tlgiannetti@jonesday.com
Ognian V. Shentov
NY Attorney Reg.  No. 2867737
Email:  ovshentov@jonesday.com
Barry R. Satine
NY Attorney Reg. No. 1450220
Email:  barryrsatine@jonesday.com
JONES DAY
222 East 41st Street
New York, New York 10017-6702
Telephone:  212-326-3939
Facsimile:  212-755-7306

Jennifer Seraphine
CA Attorney Reg. No. 245463
Email:  jseraphine@jonesday.com
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

      This is to certify that on January 15, 2010, a true and correct copy of the foregoing document has been served on all counsel of record via the court's ECF system.

                                        /s/ Thomas L. Giannetti
                                        Thomas L. Giannetti