IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CASE NO. 6:07 CV 511 |
| | § | PATENT CASE |
| **CDW CORPORATION, NEWEGG INC.,** | § | |
| **REDCATS USA, INC., SYSTEMAX, INC.,** | § | |
| **ZAPPOS.COM, INC., TIGER DIRECT,** | § | |
| **INC., THE SPORTSMAN'S GUIDE, INC.,** | § | |
| **and REDCATS USA LP** | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Emergency Opposed Motion by Newegg to Disqualify Jones Day (Docket No. 324). After considering the parties' written submissions, oral argument, and testimony presented at the evidentiary hearing, the Court **DENIES** the motion.

**BACKGROUND**

Plaintiff Soverain Software LLC filed suit against Newegg Inc. and several other defendants in November 2007. The present suit involves U.S. Patent Nos. 5,715,314 (the "'314 patent"), 5,909,492 (the "'492 patent"), and 7,272,639 (the "'639 patent") (collectively, the "patents-in-suit"). Newegg is the only remaining defendant.

On June 25, 2008, the Court entered a Scheduling Order setting this case for pretrial conference on January 21, 2010, jury selection on February 1, 2010, and jury trial on February 8, 2010. Shortly after the pretrial conference, the Court continued the trial setting to April 2010 due to the Court's and the parties' scheduling conflicts. Jury selection is now set for April 19, 2010, and

trial will commence on April 26, 2010.

In the fall of 2009, Newegg retained Latham & Watkins ("Latham") to assist Newegg in preparing for a future initial public offering ("IPO") by ensuring that Newegg complied with all applicable laws and regulations. From September 2009 to December 2009, Mark A. Finkelstein worked on the Newegg IPO matter for Latham. Finkelstein was tasked with performing certain due diligence regarding Newegg's general IP matters and pending lawsuits in order to recommend to Latham's corporate attorney what disclosures were necessary during the IPO. Finkelstein participated in due diligence phone calls related to the Newegg IPO matter on September 17, 2009 and December 10, 2009, and attended a lunch meeting between Newegg and Latham on January 5, 2010. During the due diligence phone calls, Newegg and Finkelstein generally discussed the Soverain litigation and the risks and exposures related to the litigation. During this time period, Finkelstein billed approximately ten hours to the Newegg IPO matter.

On February 22, 2010, Finkelstein left Latham and joined Jones Day. Jones Day has represented Soverain throughout this litigation and in two previous litigations involving the patents-in-suit. Since the filing of this case, Jones Day estimates that they have billed over 24,000 hours to tasks related to this litigation. On March 1, 2010, Newegg filed this emergency motion to disqualify Jones Day from further representation of Soverain based on Finkelstein's involvement in the Newegg IPO matter and his subsequent move to Jones Day. The Court held an evidentiary hearing on March 17, 2010.

**APPLICABLE LAW**

As disqualification is a procedural matter not unique to patent law, regional circuit law applies. *Picker Int'l, Inc. v. Varian Assocs., Inc.*, 869 F.2d 578, 580–81 (Fed. Cir. 1989). The movant bears the burden of proving that disqualification is warranted. *In re Am. Airlines, Inc.*, 972

F.2d 605, 614 (5th Cir. 1992); *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981). "Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re Dresser Indus., Inc.*, 972 F.2d 540, 544 (5th Cir. 1992). Federal courts are not bound by state ethical rules; they may also look to national norms, such as the ABA Model Rules. *In re Am. Airlines, Inc.*, 972 F.2d at 610. The attorney disqualification rules are not to be mechanically applied. *See Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th. Cir. 1989). "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995).

For conflicts involving former representations, the movant must prove either that the present and former matters are substantially related or that the former attorney actually posseses relevant confidential information. *In re Am. Airlines*, 972 F.2d at 615; *see also,* ABA MODEL RULE 1.09; TEX. R. DISCIPLINARY P. 1.09. Under the substantially related test, the movant must prove: "1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and 2) a substantial relationship between the subject matter of the former and present representations." *In re Am. Airlines*, 972 F.2d at 614. In determining if the present and former matters are substantially related, courts have identified three relevant factors: "(1) the factual similarities between the current and former representations, (2) the similarities between the legal question posed, and (3) the nature and extent of the attorney's involvement with the former representation." *Power Mosfet Techs, L.L.C. v. Siemens AG*, 2002 WL 32785219, at *2, No. 2:99-CV-168 (E.D. Tex. 2002) (Folsom, J.); *Dieter v. Regents of Univ. of California*, 963 F. Supp. 908, 912 (E.D. Cal. 1997) (citing *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.*, 518 F.2d 751,

3

760 (2nd Cir. 1975)). If the movant establishes that the prior matter is substantially related to the present matter, an irrebuttable presumption arises that relevant confidential information was disclosed during the former representation. *In re Am. Airlines*, 972 F.2d at 614.

## ANALYSIS

As Finkelstein worked on the Newegg IPO matter while at Latham, the parties do not dispute that an attorney-client relationship existed between Finkelstein and Newegg. Thus, the relevant inquiries are whether the Newegg IPO matter and this litigation are substantially related or whether Finkelstein possesses relevant confidential information.

*Substantially Related*

Newegg not only contends that Finkelstein represented Newegg in a substantially related matter, but goes so far as to say that Finkelstein represented Newegg in "the exact same matter" because "[t]he facts and confidences here involve the very same patents, claims for infringement, invalidity defenses, witnesses, and litigation and trial strategies." Docket No. 324, at 5. Newegg argues that because Finkelstein's involvement in the Newegg IPO matter "concern[ed] the legal evaluation of another pending matter (in terms of potential liability exposure), there can be no question that the two representations are substantially related." Docket No. 330, at 7. Soverain counters that Finkestein's minimal participation in the Newegg IPO matter was not substantially related to Newegg's defense of this patent infringement case. Soverain argues that the current and former representations involve different facts and legal issues and Finkelstein's involvement in the Newegg IPO matter was minor.

Finkestein worked on due diligence matters regarding Newegg's IP and pending lawsuits in order to recommend which disclosures were necessary for Newegg's IPO. The fact that the Soverain litigation was brought up during due diligence calls does not alone establish that the matters are

4

substantially related. "[T]he sole presence of related subject matter does not establish a substantial relationship." *Microsoft Corp. v. Commonwealth Scientific & Indus. Research Organisation*, 2007 WL 4376104, at *8 (E.D. Tex. Dec. 13, 2007) (Davis, J.) (citing *Biax Corp. v. Fujitsu Computer Sys. Corp.*, 2007 WL 1466638, at *2, No. 2:06-CV-364 (Ward, J.)) (finding the fact that both representations involved related subject matter, WLAN technology, was insufficient to establish a substantial relationship). Rather, the relevant factors to consider are whether there are factual similarities between the representations, whether the legal questions posed are similar, and the nature and extent of the attorney's involvement in the former representation. *Power Mosfet Techs, L.L.C.*, 2002 WL 32785219, at *2. The Newegg IPO matter involved due diligence tasks necessary to ensure proper disclosure to the United States Securities and Exchange Commission ("SEC") and the public, while this litigation involves the alleged infringement of the patents-in-suit. The matters are factually and legally different. This is further supported by the fact that Finkelstein has not reviewed the patents-in-suit, pleadings, or any litigation related material, nor was he required to do so in order to perform his due diligence duties in the Newegg IPO matter.

Under *Power Mosfet Techs, L.L.C.*, performing due diligence for an impending IPO is not substantially related to this patent infringement suit. Newegg has the burden of proving that the matters are substantially related and has failed to do so. Accordingly, Newegg cannot rely on the irrebuttable presumption that relevant confidential information was disclosed during the former representation and must show that Finkelstein actually acquired and possesses relevant confidential information.

*Relevant Confidential Information*

Newegg asserts that during Finkelstein's representation of Newegg, he learned relevant confidential information, including critical information regarding the merits of this case, the strength

of Newegg's legal position, and litigation and settlement strategy. Newegg contends that Finkelstein learned confidential information in the September 17, 2009 due diligence phone call, the December 10, 2009 due diligence phone call, and the January 5, 2010 lunch meeting. Soverain contends that Finkelstein learned no relevant confidential information during these meetings. At the evidentiary hearing, the Court heard conflicting testimony from Finkelstein and Lee Cheng, Newegg's General Counsel, regarding what confidential information, if any, was disclosed to Finkelstein during his representation of Newegg on the IPO matter. Specifically, there is a dispute as to whether Finkelstein learned relevant confidential information regarding litigation and settlement strategy, the advice of a Newegg trial consultant, and the results of a mock trial. Based on the testimony and demeanor of the witnesses, Finkelstein's testimony regarding the content of the due diligence calls and lunch meeting is more credible than that of Cheng.

Both in his declaration and at the evidentiary hearing, Finkelstein flatly denied having received any or possessing any Newegg confidential information relevant to the Soverain litigation. The evidence shows that Finkelstein did not have access to any confidential documents related to the Soverain litigation because he was never charged with making an independent assessment regarding the merits of the Soverain litigation and, most importantly, he was not covered under the protective order in this case. In fact, Finkelstein learned only enough information about the Soverain litigation to assess Newegg's maximum potential exposure as a result of the Soverain litigation for disclosure in the SEC Form-S1. Although Newegg discussed with Finkelstein the general risks and exposures that could result from the Soverain litigation, Cheng admitted that certain risk factors discussed during these meetings are not unique to Newegg's business.

Furthermore, in performing his assessment of the risks and exposures associated with the Soverain litigation, Finkelstein focused on Newegg's worst case scenario. He inquired into the

maximum damages sought by Soverain and any settlement offers that could be used as a valuation of the Soverain litigation risk, but never asked about the merits of the litigation or Newegg's litigation or settlement strategy. The settlement offers of the individual parties are already known by the other side. There is no evidence that Finkelstein learned information about Newegg's settlement point or any other confidential settlement strategy. In addition, Finkelstein admits that he learned Cheng's personal beliefs regarding non-practicing entities and settlement theories, but did not consider this information confidential. As for Cheng's personal litigation beliefs that were exchanged during the January 5, 2010 lunch meeting, Cheng was discussing certain comments he had recently made at a litigation panel. This can hardly be considered relevant confidential information.

Finkelstein testified under oath that there was no disclosure of confidential trial strategy or settlement strategy on the due diligence calls or at the lunch meeting. Indeed, it is hard to believe that Newegg would be so open about its litigation and settlement strategy on due diligence phone calls where underwriters' counsel assisting in the IPO were present. In addition, Cheng claims that he regarded Finkelstein as Newegg's counsel for litigation and other IP matters, but it is clear that Latham was only representing Newegg in the IPO matter. Furthermore, considering that Finkelstein knew nothing about the merits of the Soverain litigation, it is not credible that Newegg consulted Finkelstein on the details of the litigation, the merits of the case, or Newegg's litigation and settlement strategy.

A severe remedy such as disqualification cannot be granted on generalities. Prior to the evidentiary hearing, Soverain requested certain documents related to the contents of the two phone calls and lunch meeting between Newegg and Finkelstein. As a result of that request, Newegg agreed not to rely on any of those documents as substantive evidence in connection with the

7

evidentiary hearing and Soverain agreed not to compel the documents or a privilege log. While Newegg is not required to produce the actual confidential information, it has the burden to delineate with specificity what confidential information was shared. Newegg failed to meet this burden. *See Biax Corp.*, 2007 WL 1466638, at *3 (finding that defendant failed to meet burden with general allegations that firm had learned information regarding product operation and defendant's engineering operations). Thus, Newegg has not shown that Finkelstein possesses any relevant confidential information.

## CONCLUSION

While the Court respects Newegg's confidentiality concerns, the record reveals no appearance of impropriety on the part of Finkelstein or Jones Day. For the past six years, Jones Day has become extensively familiar with the case and expended millions of dollars in preparation, and removing Jones Day now would severely prejudice Soverain. In addition, all that remains in this action is the actual trial of the case, which would have commenced before Finkelstein's move to Jones Day had the trial not been continued for two months. Because Newegg has failed to show that the matters are substantially related or that Finkelstein possesses relevant confidential information, the Court **DENIES** Newegg's Motion to Disqualify Jones Day (Docket No. 324).

**So ORDERED and SIGNED this 18th day of March, 2010.**



_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**