# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 6:07-CV-00511-LED** |
| | ) | |
| **CDW CORPORATION,** | ) | |
| **NEWEGG INC.,** | ) | |
| **REDCATS USA, INC.** | ) | |
| **SYSTEMAX INC.,** | ) | |
| **ZAPPOS.COM, INC.,** | ) | |
| **REDCATS USA, L.P.,** | ) | |
| **THE SPORTSMAN'S GUIDE, INC.,** | ) | |
| **AND** | ) | |
| **TIGERDIRECT, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JOINT PROPOSED CHARGE OF THE COURT[1]

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

---

[1] Where the parties have agreed on a particular instruction, only that instruction is provided.  Where the parties were unable to agree on a particular instruction, Soverain's proposed version is provided, followed immediately by Newegg's proposed version.  The specific disagreed-upon wording is indicated with boldface italics in both parties' proposed versions.

Sources: Court's Charge in *VirnetX, Inc. v. Microsoft Corp.*, No. 6:07-CV-80, at 1 (E.D. Tex. 2010) (in part) ; Court's Charge in *i4i Ltd. P'ship v. Microsoft Corp.*, No. 6:07-CV-113, at 1 (E.D. Tex. 2009); Final Jury Instructions in *Mass Engineered Design, Inc. v. Ergotron, Inc.*, No. 2:06-CV-272, at 1 (E.D. Tex. 2009); Court's Charge in *Orion IP, LLC v. Hyundai Motor Am.*, No. 6:05-CV-322, at 1 (E.D. Tex. 2008); Court's Charge in *Forgent Networks, Inc. v. EchoStar Techs. Corp.*, No. 6:06-CV-208, at 1 (E.D. Tex. 2006); Court's Charge in *z4 Techs., Inc. v. Microsoft Corp.*, No. 6:06-CV-142, at 1 (E.D. Tex. 2006); J. Davis Model Instructions, at 1.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

## 1.  GENERAL INSTRUCTIONS[2]

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  Answer each question on the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

### 1.1   Considering Witness Testimony[3]

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.  As stated before, you the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as

---

[2] Sources: Court's Charge in *i4i,* at 1-2; Court's Charge in *z4 Techs.*, at 1-2; Final Jury Instructions in *Mass Engineered*, at 1-2; Court's Charge in *Orion,* at 1-2; Court's Charge in *Forgent*, at 1-2; J. Davis Model Instructions, at 1; Uniform Jury Instructions for Patent Cases in the United States District Court for the District of Delaware, March 1993.

[3] Sources: Court's Charge in *VirnetX*, at 2-3; Court's Charge in *i4i*, at 2-3; Final Jury Instructions in *Mass Engineered*, at 2-3; Court's Charge in *Orion*, at 2-3; Court's Charge in *Forgent*, at 2-3; Court's Charge in *z4 Techs.*, at 2-3; J. Davis Model Instructions, at 1-2.

to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

## 1.2 How to Examine the Evidence[4]

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the

---

[4] Sources: Court's Charge in *i4i*, at 3-4; Final Jury Instructions in *Mass Engineered*, at 3-4; Court's Charge in *Orion*, at 3-4; Court's Charge in *Forgent*, at 3-4; Court's Charge in *z4 Techs*, at 3-4; J. Davis Model Instructions, at 2-3.

witness's testimony may be presented, under oath, in the form of a deposition.  Some time before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you insofar as possible, the same as if the witness had been present and had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**1.3**    **Expert Witnesses**[5]

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – called an expert witness – is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

## 2.  STIPULATIONS

The parties have agreed, or stipulated to the following facts.  This means that both sides agree that these are facts.  You must therefore treat these facts as having been proved.[6]

1.    Soverain is a Delaware limited liability company with its principal place of business at 233 South Wacker Drive, Chicago, Illinois.

2.    Newegg is a Delaware corporation with its principal place of business at 16839 E. Gale Avenue, City of Industry, California.

3.    The '314 patent, entitled "Network Sales System," was issued by the United States Patent and Trademark Office on February 3, 1998.

---

[5] Sources: Court's Charge in *i4i*, at 4 ; Final Jury Instructions in *Mass Engineered,* at 4-5; Court's Charge in *Orion*, at 4; Court's Charge in *Forgent*, at 4; Court's Charge in *z4 Techs*, at 4; J. Davis Model Instructions, at 3-4.

[6] Sources: Court's Charge in *Orion*, at 4; Court's Charge in *Forgent*, at 4; Court's Charge in *z4 Techs.*, at 4; J. Davis Model Instructions, at 4.

4.      The '492 patent, entitled "Network Sales System," was issued by the United States Patent and Trademark Office on June 1, 1999.

5.      The '780 patent, entitled "Internet Server Access Control and Monitoring Systems," was issued by the United States Patent and Trademark Office on January 13, 1998.

6.      The '639 patent, entitled "Internet Server Access Control and Monitoring Systems," was issued by the United States Patent and Trademark Office on September 18, 2007.

7.      Andrew C. Payne, Lawrence C. Stewart, and G. Winfield Treese are the named inventors of the '314 patent.

8.      Andrew C. Payne, Lawrence C. Stewart, and G. Winfield Treese are the named inventors of the '492 patent.

9.      Thomas M. Levergood, Lawrence C. Stewart, Stephen J. Morris, Andrew C. Payne, and G. Winfield Treese are the named inventors of the '780 patent.

10.     Thomas M. Levergood, Lawrence C. Stewart, Stephen J. Morris, Andrew C. Payne, and G. Winfield Treese are the named inventors of the '639 patent.

11.     The asserted claims of the '314 patent are claims 35 and 51.

12.     The asserted claims of the '492 patent are claims 17, 41, and 61.

13.     The asserted claims of the '639 patent are claims 60 and 79.

14.     Claims 35 and 51 are dependent claims of claim 34 of the '314 patent.

15.     Claim 17 is an independent claim of the '492 patent.

16.     Claim 41 is a dependent claim of claim 15 of the '492 patent.

17.     Claim 61 is a dependent claim of claim 15 and claim 60 of the '492 patent.

18.     Claim 60 is a dependent claim of claim 1 of the '639 patent.

19.     [Intentionally omitted.]

20.     Claim 79 is a dependent claim of claim 78 of the '639 patent.

21.     The damages period, if any of the claims of the patents-in-suit are found to be valid and infringed by Newegg, is from the date of the filing of this suit, November 2, 2007, to the date of trial.

22.     Newegg presently provides Internet websites accessible through the domain names newegg.com (the "Newegg Website") and newegg.ca through which it sells products to customers.  Newegg also operates an Internet website accessible through the domain name neweggmall.com, whereby Newegg hosts stores of third party merchants to facilitate sales between those merchants and their third party customers.

23.     The Newegg Server System has multiple SSL servers and each SSL server processes payment information.

24.     A potential Newegg customer communicates with the Newegg Server System by using a computer with a Web browser.  The customer's

computer and the Newegg Server System are interconnected by the Internet.

25.    The patents-in-suit were originally assigned from the inventors to Open Market, Inc.

26.    Open Market began selling a software product named Transact in 1996.

27.    The Transact product incorporates or reflects each asserted claim of the patents-in-suit as well as additional functionality.

28.    Open Market's assets were purchased by Divine Inc. in 2001.

29.    Divine declared bankruptcy in 2003.

30.    Soverain has not licensed the Transact product to any licensees that were not first licensed by Open Market.

Stipulation Nos. 31-35 apply to what the parties call the "ASP Version" of the Newegg Website (in use until about October 2008):

31.    When a Newegg customer clicks on the "Order Status" hypertext link on the Newegg Website, the customer's computer sends an HTTP message to one of the SSL servers.  This HTTP message comprises a URL.

32.    Each Newegg SSL server has been programmed to transmit an "Order Status" page in response to that HTTP message.

33.    The "Order Status" page on the Newegg Website is coded using HTML and JavaScript.  The "Order Status" page includes "View" hypertext links that correspond to particular transactions.  When the customer clicks such

a link, the customer's computer sends an HTTP message requesting a "View Order" page identified by the link.

34.     Each of the Newegg SSL servers is programmed to respond to that HTTP message by transmitting the "View Order" page to the customer's computer over the network.

35.     Transaction information in the "View Order" page on the Newegg Website includes a currency type used (the "$" symbol near the prices), a transaction date, a product description, and a transaction amount.

Stipulation Nos. 36-40 apply to what the parties call the "ASPX Version" of the Newegg Website (in use after about October 2008):

36.     When a Newegg customer clicks on the "Order History/Print Invoice" hypertext link, the customer's computer sends an HTTP message to one of the Newegg SSL servers.  This HTTP message comprises a URL.

37.     Each Newegg SSL server has been programmed to transmit an "Order History" page in response to this HTTP message.

38.     The "Order History" page on the Newegg Website is coded using HTML and JavaScript.  A Newegg customer can choose a range of the customer's transactions dates displayed on the "Order History" page.  The customer can choose to display the customer's transactions for a given month on the "Order History" page.

39.     The "Order History" page on the Newegg Website includes hypertext links that correspond to particular transactions.  When the customer clicks

such a link, the customer's computer sends an HTTP message requesting a "Invoice Details" page identified by the link.

40.     Each of the Newegg SSL servers is programmed to respond to that HTTP message by transmitting the "Invoice Details" page to the customer's computer over the network.  Transaction information in the "Invoice Details" page includes a currency type used (the "$" symbol near the prices), a transaction date, a product description, and a transaction amount.

41.     Newegg advertises its newegg.com website by Sponsored Advertisements on Google and Gizmodo.

42.     Newegg advertises its neweggmall.com website.

43.     Newegg provides help files on its newegg.com website that instruct its customers how to use the website.

44.     Newegg provides help files on its neweggmall.com website that instruct its customers how to use the website.

### 3.  SUMMARY OF CONTENTIONS

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on these issues.[7]

### 3.1     Soverain's Contentions

In this case, the plaintiff, Soverain, contends that the defendant, Newegg, uses technology for its websites that infringes claims 35 and 51 of the '314 patent; claims 17, 41, and 61 of the

---

[7] Sources: Court's Charge in *i4i*, at 4; Final Jury Instructions in *Mass Engineered*, at 5; Court's Charge in *Orion*, at 5; Court's Charge in *z4 Techs.*, at 5; J. Davis Model Instructions, at 5.

'492 patent; and claims 60 and 79 of the '639 patent.  Soverain asks you to award damages for the infringement.

**3.2      Newegg's Contentions**

Newegg contends that it does not infringe Soverain's patents and that Soverain's patents are invalid.  Newegg asks that you deny Soverain any damages.

**3.3      Burdens of Proof**[8]

Soverain has the burden of proving infringement by a preponderance of the evidence. "Preponderance of the evidence" means evidence that persuades you that a claim is more likely true than not true.  In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  It will be your job to determine whether Soverain has met its burden of proving that infringement of the asserted patent claims is more likely true than not true.

Newegg bears the burden of proving invalidity by clear and convincing evidence.  Proof by clear and convincing evidence is a greater burden of proof than proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.[9]  In determining whether any fact has been shown by clear and convincing

---

[8] Sources: Court's Charge in *i4i*, at 5-6; Final Jury Instructions in *Mass Engineered*, at 5-6; Court's Charge in *z4 Techs.*, at 5-6; J. Davis Model Instructions, at 5-6.  *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1360 (Fed. Cir. 2007).

[9] Sources: *Buildex Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed. Cir. 1988) (explaining that clear and convincing evidence is evidence that gives the trier of fact "an abiding conviction that the truth of [the] factual contentions [is] 'highly probably'") (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)); *see also Neutrino Dev. Corp. v. Sonosite, Inc.*, 337 F. Supp. 2d 942, 946 (S.D. Tex. 2004) (applying clear and convincing standard from *Colorado v. New Mexico* in context of invalidity).

evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  It will be your job to determine whether Newegg has met its burden of proving the invalidity of the '314, '492, and '639 patent claims.

## 3.4    Glossary of Patent Terms[10] [PENDING]

The following are definitions for patent terms that you should use in this case.

Application – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

Claims – Claims are the numbered sentences appearing at the end of the patent and define the invention.  The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

Comprising – The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising."  "Comprising" means "including" or "containing."  A claim that uses the word "comprising" is not limited to systems or methods having only the elements that are recited in the claim elements, but also covers systems or methods that have all of the elements and add additional elements without changing the required elements.  Take as an example a claim that covers a table.  If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.  However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table.

Continuation – **[NOT AGREED]**

---

[10] Sources: *i4i*, Appendix B at 34-35; Final Jury Instructions in *Mass Engineered*, at 6-9; Court's Charge in *Orion*, at 6-8; Court's Charge in *Forgent*, at 7-9; Court's Charge in *z4 Techs.*, at 6-8; J. Davis Model Instructions, at 6-8.

## SOVERAIN'S PROPOSED DEFINITION OF "CONTINUATION"

A continuation application is a second application for the same invention disclosed in a prior patent application and filed before the first application becomes patented.  The continuation should not include anything which would constitute new matter if inserted in the original application.  ***By disclosing in a patent application a device that inherently performs a function or has a property, operates according to a theory or has an advantage, a patent application necessarily discloses that function, theory or advantage, even though it says nothing explicit concerning it.***  An amendment to the specification of the continuation application that clarifies an express or inherent disclosure of the original parent application does not constitute new matter.[11]

## NEWEGG'S PROPOSED DEFINITION OF "CONTINUATION"

A continuation application is a second application for the same invention disclosed in a prior patent application and filed before the first application becomes patented.  The continuation should not include anything which would constitute new matter if inserted in the original application.  An amendment to the specification of the continuation application that clarifies an express or inherent disclosure of the original parent application does not constitute new matter*.* ***In order for a disclosure to be inherent, however, the missing descriptive matter must necessarily be present in the parent application's specification such that one skilled in the art would recognize such a disclosure.***[12]

---

[11] Sources: U.S. Patent and Trademark Office, *Glossary*, http://www.uspto.gov/main/glossary. (modified); Manual of Patent Examining Procedure, §§ 201.04, 201.07, 2163.07(a) *available at http://www.uspto.gov/web/offices/pac/mpep/index.htm; Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352-53 (Fed. Cir. 2000)***; In re Reynolds, 443 F.2d 384, 389 (C.C.P.A. 1971)***.

[12] Sources: U.S. Patent and Trademark Office, *Glossary*, http://www.uspto.gov/main/glossary. (modified); Manual of Patent Examining Procedure, §§ 201.04, 201.07, 2163.07(a) *available at http://www.uspto.gov/web/offices/pac/mpep/index.htm; Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352-53 (Fed. Cir. 2000)***; Tronzo v. Biomet, Inc., 156 F.3d 1154, 1159 (Fed. Cir. 1998)***.

File Wrapper – See "Prosecution History" below.

License – Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.

Office Action – Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

Ordinary Skill in the Art – From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art" or a "person of ordinary skill in the field." This hypothetical person is presumed to be aware of all of the prior art and knowledge that existed in the field during the relevant time period. The skill of the actual inventor and experts is irrelevant, because they may possess something that distinguishes them from workers of ordinary skill in the art. Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

Parent Application – The term "parent" is applied to an earlier application of the inventor disclosing an invention. A later application filed by the inventor may claim priority and relate back to the parent application with respect to an invention that was sufficiently disclosed in the parent application.[13]

Patent Examiners – Personnel employed by the Patent Office who review (or examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

---

[13] Sources: U.S. Patent and Trademark Office, *Glossary*, http://www.uspto.gov/main/glossary. (modified); Manual of Patent Examining Procedure, § 201.04, *available at http://www.uspto.gov/web/offices/pac/mpep/index.htm;* 35 U.S.C. § 120.

Prior Art – Knowledge that is available to the public either prior to the invention by applicant or more than a year prior to the effective filing date of his/her patent application.

Prosecution History – The written record of proceedings in the Patent Office between the applicant and the Patent Office.  It includes the original patent application and later communications between the Patent Office and the applicant.  The prosecution history may also be referred to as the "File wrapper" of the patent during the course of this trial.

Reexamination – At any time during the enforceability of a patent any person may file a request for the Patent Office to conduct a second examination (the reexamination) of any claim of the patent on the basis of prior art patents or printed publications which that person states to be pertinent and applicable to the patent.[14]

References – Any item of prior art used to determine patentability.

Said – The patent claims use the word "said" instead of "the."  Use of the word "said" in the beginning of a phrase indicates that it is referring to a previous use of the same or a similar phrase.

Specification – The specification is the information that appears in the patent and concludes with one or more claims.  The specification includes the written text, the claims, and the drawings.  In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.

## 4.  CLAIMS OF THE PATENTS IN SUIT[15]

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and

---

[14] Source: U.S. Patent and Trademark Office, *Glossary*, http://www.uspto.gov/main/glossary (modified).

[15] Sources: Court's Charge in *i4i*, at 6; Final Jury Instructions in *Mass Engineered*, at 9; Court's Charge in *Orion*, at 8-9; Court's Charge in *z4 Techs.*, at 8-9; J. Davis Model Instructions, at 8.

describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.  Claims are usually divided into parts or steps, called "elements" or "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop.  The tabletop, legs and glue are each a separate element of the claim.

## 4.1     Construction of the Claims[16]

In deciding whether or not the accused technology infringes a patent, the first step is to understand the meaning of the words used in the patent claims.  It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. It may be helpful to refer to the copies of the '314, '492 and '639 patents that you have been given as I discuss the claims at issue here.

## 4.2     Independent and Dependent Claims[17]

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.  Claim 17 of the '492 patent is an independent claim.

---

[16] Sources: Court's Charge in *i4i*, at 7; Final Jury Instructions in *Mass Engineered*, at 9-10; Court's Charge in *Orion*, at 9-10; Court's Charge in *Forgent*, at 9-10; Court's Charge in *z4 Techs,* at 9; J. Davis Model Instructions, at 8.

[17] Sources: Court's Charge in *i4i*, at 6-7; Court's Charge in *Forgent,* at 10; J. Davis Model Instructions, at 8-9.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements of the other claim to which it refers, as well as the additional elements recited in the dependent claim itself.  In this way, the claim "depends" on another claim. To determine what a dependent claim covers, it is necessary to look both at the dependent claim and the other claim or claims to which it refers.

When analyzing the validity and alleged infringement of any dependent claim asserted by Soverain, you must consider all limitations of both the dependent claim and the independent claim from which it depends.  For example, claims 35 and 51 of the '314 patent are dependent claims of independent claim 34.  Because dependent claim 35 includes all of the limitations of claim 34, if claim 34 of the '314 patent is not infringed, then claim 35 of the '314 patent cannot be infringed.  Similarly, if claim 34 of the '314 patent is not anticipated or obvious, then claim 35 of the '314 patent cannot be anticipated or obvious.

## 4.3    Interpretation of Claims[18]

In deciding whether or not the accused technology does or does not infringe a patent claim, or whether the asserted prior art does or does not invalidate a patent claim, the first step is to understand the meaning of the words used in the patent claims.  The meaning of the words in the patent claims is the same for both the infringement and the validity determinations.

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  In accordance with that duty, I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in Section 4.4.  Within the text of the claims of each patent-in-suit, I have bolded

---

[18] Sources: Court's Charge in *i4i,* at 7; Final Jury Instructions in *Mass Engineered,* at 9-10; Court's Charge in *Orion,* at 10; Court's Charge in *Forgent,* at 9-10; Court's Charge in *z4 Techs.,* at 9-10; J. Davis Model Instructions, at 9-10.

and underlined the terms which I have defined for you.  You must accept the interpretations contained in Section 4.4 as correct.  The claim language I have not interpreted for you in Section 4.4 is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the field of technology.

## 4.4  Court's Construction of Claim Terms[19]

The meaning of some of the words used in the patent claims at issue which the Court interpreted are as follows:

### 4.4.1  The '314 Patent and the '492 Patent Claim Terms

[A] Shopping Cart URL – A URL concerning a shopping cart.

A statement URL – A URL concerning a statement.

Hypertext link – A non-sequential web association which the user can use to navigate through related topics.

Message – A unit of information sent electronically.

Modif[y] [the shopping cart in the shopping cart database] – To change [an instance of a shopping cart in a shopping cart database].

Payment message – A message relating to a payment for one or more products.

Plurality of products added to . . . shopping cart / [Add a] plurality of respective products to a shopping cart / [add] . . . plurality of products to . . . shopping cart – Product identifiers which are added to an instance of a shopping cart in the shopping cart database / [add] identifiers of respective products to an instance of a shopping cart / [add] identifiers of products to an instance of a shopping cart.

---

[19] Sources: Court's Charge in *Orion*, at 10-11; Court's Charge in *z4 Techs.*, at 10-11.

Public packet switched computer network – A packet switched computer network, accessible by the public through communication common carriers to provide data transmission services.  "Packet switching" means a message-delivery technique in which small units of information (packets) are relayed through stations in a computer network preferably along the best route available between the source and the destination.  "Public data network" is a network established and operated by common carriers for the specific purpose of providing low error-rate data transmission services to the public.

Record[] . . . in a database – Store[] in a database.

Shopping cart – A stored representation of a collection of products.

Shopping cart computer – A computer processing data associated with one or more shopping carts.

Shopping cart database – A database of stored representations of collections of products, where "database" means a collection of logically related data stored together in one or more computerized files.

Shopping cart message – A message concerning a shopping cart.

To cause said[/the/a] payment message to be activated to initiate a payment transaction – To cause an action associated with said[/the/a] payment message to initiate a payment transaction.

### 4.4.2   The '639 Patent Claim Terms

A purchase request / a request to purchase – One or more messages requesting a purchase.

An identifier of a purchaser – A text string that identifies a purchaser.

Charging the user . . . according to the user information – Charging an account associated with the user according to the user information.

Controlled document – A document that can be accessed when one or more conditions are met.

Creating, responsive to the initial service request, the session identifier – Producing, in response to the initial service request, the session identifier.

Durable product – Physical product.

Forwarding . . . from the client to the server system – Sending . . . from the client to the server system.

Fulfilling the purchase request based on the user information – Carrying out the purchase request based on the user information.

Hyperlink – A non-sequential web association which the user can use to navigate through related topics.

Initial service request – The first service request in a session.

Returning – Sending back.

Service request – A solicitation of services from a client to a server.  A service request may entail the exchange of any number of messages between the client and the server.

Session – A series of requests and responses to perform a complete task or set of tasks between a client and a server system.

Session identifier – A text string that identifies a session.

User identifier – A text string that identifies a user.

Validating, at the server system, the appended session identifier / validating the session identifier appended to the service request – At the server system, determining the validity of the appended session identifier."

## 5.  INFRINGEMENT[20]

Any person or business entity that, without the patent owner's permission, makes, uses, sells, or offers to sell a device, or practices a method, that is covered by at least one claim of a patent, before the patent expires, infringes the patent. A patent owner has the right to stop others from infringing the patent claims during the life of the patent.  In this case, Soverain asserts that Newegg has infringed the patents-in-suit.  Soverain has the burden of proving infringement by a preponderance of the evidence.

Only the claims of a patent can be infringed. You must compare each of the asserted claims, as I have defined them, to the accused methods and systems used by Newegg's websites, and determine whether or not there is infringement.  You must not compare the accused systems or methods with any specific example set out in the patents.  The only correct comparison is with the language of the claim itself, with the meanings I have given you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

In this case, there are two possible ways that a claim may be infringed:  (1) literal infringement and (2) infringement under the doctrine of equivalents.  Soverain has alleged that Newegg directly infringes the asserted claims.

In order to prove infringement, Soverain must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

---

[20] Sources: Court's Charge in *VirnetX*, at 7-8; Court's Charge in *i4i,* at 8-9.

I will now explain each of the types of infringement in more detail.

**5.1     Direct Infringement [NOT AGREED]**

**SOVERAIN'S PROPOSED CHARGE**[21]

If any person makes, uses, sells, or offers to sell what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called direct infringement.

To determine direct infringement, you must compare the accused systems or methods with each of the asserted claims of the '314, '492 and '639 patents, using my instructions as to the meaning of the patent claims.

A patent claim is directly infringed only if the accused system or method includes each and every element in that patent claim.  If the accused system or method does not contain one or more of the limitations recited in a claim, then that system or method does not directly infringe that claim.  ***An accused system infringes a claim if it is reasonably capable of satisfying the claim elements, even though it may also be capable of non-infringing modes of operation.***  If you find that the accused system or method includes each element or step of the claim, then that system or method infringes the claim even if such system or method contains additional elements or steps that are not recited in the claim.

A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent.  It may also directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.  Infringement does not require proof that the person copied a product or the patent.

---

[21] Sources: Court's Charge in *VirnetX,* at 8-10; Court's Charge in *i4i,* at 10-11.

*Direct infringement of a method claim requires a party to perform or use each and every step of the claimed method, literally or under the doctrine of equivalents.  Where no one party performs all of the steps of a claimed method, but multiple parties combine to perform every step of the method, that claim will nevertheless be directly infringed if one party exercises control or direction over the entire method so that every step is attributable to the controlling party.  Mere arms-length cooperation between two parties is not enough to establish direct infringement.*

You must consider each of the asserted claims of the patents-in-suit individually, and decide whether making, selling, or using the accused systems or performing the accused methods infringes that claim.  You must be certain to compare such accused system or method with each claim that such system or method is alleged to infringe.  Such accused system or method should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Taking each asserted claim of the '314, '492 and '639 patents separately, if you find that Soverain has proved by a preponderance of the evidence that each and every limitation of that claim is present in the accused system or method, then you must find that such system or method infringes that claim.

A claim limitation may be directly infringed in one of two ways: either literally or under the doctrine of equivalents.

**NEWEGG'S PROPOSED CHARGE**[22]

---

[22] Sources: Court's Charge in *VirnetX*, at 8-10; Court's Charge in *i4i,* at 10-11.

If any person makes, uses, sells, or offers to sell what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called direct infringement.

To determine direct infringement, you must compare the accused systems or methods with each of the asserted claims of the '314, '492 and '639 patents, using my instructions as to the meaning of the patent claims.

A patent claim is directly infringed only if the accused system or method includes each and every element in that patent claim.  If the accused system or method does not contain one or more of the limitations recited in a claim, then that system or method does not directly infringe that claim.  If you find that the accused system or method includes each element or step of the claim, then that system or method infringes the claim even if such system or method contains additional elements or steps that are not recited in the claim.

A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent.  It may also directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent.  Infringement does not require proof that the person copied a product or the patent.

*A patent claim is directly infringed by Newegg only if Newegg itself practices each and every element of the claim, literally or under the doctrine of equivalents.  If Newegg itself does not perform one or more steps recited in a method claim, Newegg does not infringe that method claim.  If Newegg itself does not own or operate one or more elements recited in a system claim, Newegg does not infringe that system claim.  If there are others apart from Newegg that perform certain steps of a method claim, or own or operate certain elements of a system claim, there can be no infringement by Newegg unless Soverain has proven that*

***Newegg controlled or directed the activity of the others, such that Newegg would be legally responsible for the others' actions.  Mere arms-length cooperation between the parties is not enough to establish direct infringement.[23]***

You must consider each of the asserted claims of the patents-in-suit individually, and decide whether making, selling, or using the accused systems or performing the accused methods infringes that claim.  You must be certain to compare such accused system or method with each claim that such system or method is alleged to infringe.  Such accused system or method should be compared to the limitations recited in the patent claims, not to any preferred or commercial embodiment of the claimed invention.

Taking each asserted claim of the '314, '492 and '639 patents separately, if you find that Soverain has proved by a preponderance of the evidence that each and every limitation of that claim is present in the accused system or method, then you must find that such system or method infringes that claim.

A claim limitation may be directly infringed in one of two ways: either literally or under the doctrine of equivalents.

---

[23] ***Sources: The National Jury Instruction Project's Model Patent Jury Instructions, at 3.13 (2009) (citing Muniauction Inc. v. Thomson Corp., 532 F.3d 1318, 1329-30 (Fed. Cir. 2008); BMC Resources Inc. v. Paymentech LP, 498 F.3d 1373, 1378-81 (Fed. Cir. 2007)).Warner-Jenkinson Co., Inc. v. Hilton Davis Corp., 520 U.S. 17, 40 (1997); MuniAuction, Inc. v. Thomson Corporation, 532 F.3d 1318 (Fed. Cir 2008); BMC Resources v. Paymentech, L.P., 498 F.3d 1373, 1381-82 (Fed. Cir. 2007); Golden HourData Systems, Inc. v. Emscharts, Inc., No. 2:06-cv-381, 2009 WL 943273 (E.D. Tex. April 3, 2009); Global Patent Holdings, LLC v. Panthers BRHC LLC, 586 F.Supp.2d 1331 (S.D. Fla. 2008); DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1330-31 (Fed. Cir. 2001); Gen. Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997); Martin v. Barber, 755 F.2d 1564, 1567 (Fed. Cir. 1985); Amstar Corp. v. Envirotech Corp., 730 F.2d 1476, 1481-82 (Fed. Cir. 1984); Emtel, Inc. v. Lipidlabs, Inc., 583 F.Supp.2d 811, 830-31 (S.D. Tex. 2008); Centillion Data Sys., LLC v. Qwest Communications Int'l, Inc., No. 1:04-cv-0073-LJM-DML (S.D. Ind. October 29, 2009).***

### 5.1.1 Literal Infringement[24]

A claim limitation is literally met if it exists in the accused system or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as it would be understood by one of skill in the art.

### 5.1.2 Doctrine of Equivalents [NOT AGREED]

### SOVERAIN'S PROPOSED CHARGE[25]

A claim limitation is present in an accused system or method under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused system or method are insubstantial.

One way to determine whether a difference is insubstantial is to look at whether the element of the accused system or method performs substantially the same function in substantially the same way to achieve substantially the same result as the element recited in the patent claim.

You may also consider whether, at the time of the alleged infringement, a person having ordinary skill in the field of technology of the patent would have known of the interchangeability of the alternative feature and the unmet requirement of the claim.

The interchangeability of the two features must have been known to persons of ordinary skill in the field of technology at the time the infringement began.

Thus, the inventor need not have foreseen and the patent need not describe all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or

---

[24] Sources: Court's Charge in *VirnetX*, at 10 (modified).

[25] Sources: Court's Charge in *VirnetX*, at 10-11 (modified); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (U.S. 1997) ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."); *id* at 40 ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.").

improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purposes of the doctrine of equivalents.

**NEWEGG'S PROPOSED CHARGE**[26]

A claim limitation is present in an accused system or method under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused system or method are insubstantial.  One way to determine whether a difference is insubstantial is to look at whether the element of the accused system or method performs substantially the same function in substantially the same way to achieve substantially the same result as the element recited in the patent claim.  ***Such equivalence must be determined for individual elements of the claimed invention, not the invention as a whole.***

You may also consider whether, at the time of the alleged infringement, a person having ordinary skill in the field of technology of the patent would have known of the interchangeability of the alternative feature and the unmet requirement of the claim.

The interchangeability of the two features must have been known to persons of ordinary skill in the field of technology at the time the infringement began.

Thus, the inventor need not have foreseen and the patent need not describe all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purposes of the doctrine of equivalents.

---

[26] Sources: Court's Charge in *VirnetX,* at 10-11; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (U.S. 1997) ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."); *id* at 40 ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element, or whether the substitute element plays a role substantially different from the claimed element.").

## 5.2      Active Inducement of Infringement[27]

Soverain alleges that Newegg is also liable for infringement by actively inducing others to directly infringe claims 35 and 51 of the '314 patent and claims 17, 41, and 61 of the '492 patent.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A person is liable for active inducement of a claim only if:

(1)      the person takes action during the time the patent is in force which encourages acts by someone else; and

(2)      the encouraged acts constitute direct infringement of that claim; and

(3)      the person is aware of the patent, and know or should have known that the encouraged acts constitute infringement of that patent; and

(4)      the person has an intent to cause the encouraged acts; and

(5)      the encouraged acts are actually carried out by someone else.

In order to prove active inducement, Soverain must prove that each of these requirements is met.  Proof of each requirement must be by a preponderance of the evidence, i.e., that it is more likely than not that each of the above requirements has been met.

Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.  In order to establish active inducement of infringement, it is not sufficient that Newegg was aware of the act(s) that allegedly constitute the direct infringement.  Rather, you must find specifically that Newegg intended to cause the acts that constitute the direct infringement and must have known or should have known that its action

---

[27] Sources: Court's Charge in *VirnetX*, at 11-12; Court's Charge in *i4i*, at 11-12; Final Jury Instructions in *Mass Engineered*, at 16-17.

would cause the direct infringement.  If you do not find that Newegg specifically meets these intent requirements, then you must find that Newegg has not actively induced the alleged infringement.

## 6. INVALIDITY[28]

For a patent to be valid, the invention claimed in the patent must be new, useful, and non-obvious.  The terms "new," "useful," and "non-obvious" have special meanings under the patent laws.  I will explain these terms to you as we discuss Newegg's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described.  In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Newegg has challenged the validity of the '314, '492, and '639 patent claims on a number of grounds.  Newegg must prove that a patent claim is invalid by clear and convincing evidence.  An issued patent is afforded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing a patent.

I will now explain to you each of Newegg's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

---

[28] Sources: Court's Charge in *i4i,* at 15; Final Jury Instructions in *Mass Engineered,* at 21; Court's Charge in *Orion,* at 14-15; Court's Charge in *Forgent,* at 12; Court's Charge in *z4 Techs.,* at 15; J. Davis Model Instructions, at 13.

**6.1     The Effective Filing Date of the '639 Patent**[29]

The "effective filing date" of an application is generally the date that the application was actually filed at the U.S. Patent Office, but in instances with continuation applications, the effective filing date can be earlier.  A continuation application is an application filed during the pendency of a parent application, claims inventions that were disclosed in the parent application, and claims the priority date of the parent application.  A claim of priority means that the continuation application is claiming entitlement to the same filing date as the parent application, such that the continuation is treated as if it were filed on the same day as the parent application. The date that the parent application was filed is the "effective filing date" even though the application may have been filed months or years later.  The effective filing date determines whether certain items constitute prior art that can be used to invalidate a patent.  I will explain prior art and invalidity to you in detail shortly.

Here, the '639 patent application was filed as a continuation of the '780 patent and claims priority to the '780 patent.  Newegg contends that the '639 patent is not entitled to the earlier filing date of its parent application because the parent application, the '780 patent application, does not comply with the requirements of written description, enablement, and best mode.

Newegg bears the burden of showing by clear and convincing evidence that the '780 patent specification does not meet these disclosure requirements, and as a consequence the '639 patent is not entitled to the filing date of its parent application.  I will now address each requirement.

---

[29] Sources: 35 U.S.C. § 120; *University of Rochester v. G.D. Searle & Co., Inc.*  358 F.3d 916, 921 (Fed. Cir. 2004). *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1313 (Fed. Cir. 2002); *In re Hafner*, 410 F.2d 1403, 1406 (C.C.P.A. 1969).

### 6.1.1    Written Description[30]

With respect to the written description requirement, Newegg contends that the '780 patent application, the priority application of the '639 patent, does not contain an adequate written description of the claimed inventions of the '639 patent.  A patent must contain a written description of the invention claimed in the patent.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention of the claims, even though the description might not use the exact words found in each claim.  The written description must show that the inventor was in possession of each claim of the invention at the time the application for the patent was originally filed, even though the claim may have been changed or new claims added during the prosecution of the parent application, or after the filing of later applications based on the parent application.  It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a person of ordinary skill would understand that any aspect not expressly discussed is implicit in the patent application as originally filed.  Any amendment to the '639 specification that clarifies an express or inherent disclosure of the original parent application is not to be considered new matter and would not affect the priority claim of the '639 patent.

To prove the '639 patent claims are not entitled to the priority date of the '780 patent, Newegg must prove by clear and convincing evidence that the '780 patent does not contain written descriptions of the inventions covered by the asserted claims of the '639 patent.

---

[30] Sources: Model Patent Jury Instructions, National Jury Instruction Project, 5.2; *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916 (Fed. Cir. 2004); *Turbocare Div. of Demag Delaval Turbomach. Corp., v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2002); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956 (Fed. Cir. 2002) (*en banc*); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000); *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 996-1001 (Fed. Cir. 2000); *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-90 (Fed. Cir. 1998); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555 (Fed. Cir. 1991); Court's Charge in *Forgent*, at 13 (modified).

### 6.1.2   Enablement [NOT AGREED]

**SOVERAIN'S PROPOSED CHARGE**[31]

With respect to the enablement requirement, Newegg contends that the '780 application, the priority application of the '639 patent, does not contain an enabling written description of the claimed inventions of the '639 patent.  A patent specification must disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed (or its effective filing date), to make and use the claimed invention.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  A patent need not expressly state information that skilled persons would be likely to know or be able to obtain.  Newegg bears the burden of establishing lack of enablement, by clear and convincing evidence, by showing that it is highly probable that a person skilled in the field, upon reading the patent document, would not be able to make and use the invention without undue experimentation.  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.  Factors you may consider in determining whether making the invention would require undue experimentation include:

 (1) the time and cost of any necessary experimentation;

 (2) how routine any necessary experimentation is in the field of computer
    programming;

---

[31] Sources: 35 U.S.C. § 112(1); Federal Circuit Bar Association Model Patent Jury Instructions, at 38 (Jan. 12, 2008) (citing *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352-53 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)); Court's Charge in *Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*, No. 6:08-cv-001203, at 16-17 (E.D. Tex. 2009); Federal Circuit Bar Association Model Patent Jury Instructions, at 50 (Nov. 12, 2009).

(3)     whether the patent discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field;

(6)     the level of ordinary skill in the field of computer programming; and

(7)     the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather you must make your decision whether or not the degree of experimentation is excessive, based upon the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time, you have a clear conviction that a person of ordinary skill in the field of technology would have had to experiment excessively to make and use the invention.

**NEWEGG'S PROPOSED CHARGE**[32]

With respect to the enablement requirement, Newegg contends that the '780 application, the priority application of the '639 patent, does not contain an enabling written description of the claimed inventions of the '639 patent.  A patent specification must disclose sufficient information to enable one skilled in the field of the invention, at the time the application was filed (or its effective filing date), to make and use the claimed invention.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is invalid.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention.  A patent need not expressly state information that skilled persons would be likely to know or be able to

---

[32] Sources: 35 U.S.C. § 112(1); Federal Circuit Bar Association Model Patent Jury Instructions, at 38 (Jan. 12, 2008) (citing *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 690-92 (Fed. Cir. 2001); *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1345-46 (Fed. Cir. 2000); *Schering Corp. v. Amgen Inc.*, 222 F.3d 1347, 1352-53 (Fed. Cir. 2000); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)); Court's Charge in *Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*, No. 6:08-cv-001203, at 16-17 (E.D. Tex. 2009); Federal Circuit Bar Association Model Patent Jury Instructions, at 50 (Nov. 12, 2009).

obtain.  Newegg bears the burden of establishing lack of enablement, by clear and convincing evidence, by showing that it is highly probable that a person skilled in the field, upon reading the patent document, would not be able to make and use the ***full scope of the*** invention without undue experimentation.  The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's written description fails to meet the enablement requirement.  Factors you may consider in determining whether making the invention would require undue experimentation include:

(1)     the time and cost of any necessary experimentation;

(2)     how routine any necessary experimentation is in the field of computer programming;

(3)     whether the patent discloses specific working examples of the claimed invention;

(4)     the amount of guidance presented in the patent;

(5)     the nature and predictability of the field;

(6)     the level of ordinary skill in the field of computer programming; and

(7)     the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather you must make your decision whether or not the degree of experimentation is excessive, based upon the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time, you have a clear conviction that a person of ordinary skill in the field of technology would have had to experiment excessively to make and use the invention.

### 6.1.3   Best Mode[33]

Newegg contends that the asserted claims of the '639 patent are not entitled to the priority date of the '780 patent because the '780 patent specification does not disclose the best mode of practicing the invention of the '780 patent.

The purpose of the best mode requirement is to ensure that the public obtains a full disclosure on how to practice the invention claimed in the patent.  The inventor must disclose the best mode he or she knew at the time of original filing for carrying out the invention as described in the claims.  An inventor need not set forth "routine details" that would be apparent to one skilled in the art.  However, if an inventor knows of a best way or mode of making and using the claimed invention at the time the patent application was originally filed, then the original written description must contain a description of that mode or the claim is invalid.

To determine whether the inventor complied with the best mode requirements, two questions must be answered:

(1)      At the time the original patent application was filed, did the inventor consider a particular mode for practicing his invention superior to all other modes?

(2)      If so, did the inventor adequately disclose the superior mode in the patent?

---

[33] Sources: AIPLA Model Instructions.; 35 U.S.C. § 112, ¶1; *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1223 (Fed. Cir. 2006); *Bayer AG v. Schein Pharms., Inc.*, 301 F.3d 1306, 1314-1319 (Fed. Cir. 2002); *Mentor H/S, Inc., v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001); *Eli Lilly and Co. v. Barr Labs., Inc.*, 251 F.3d 955, 963 (Fed. Cir. 2001); *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1286 (Fed. Cir. 2000); *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1581 (Fed. Cir. 1996); *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996); *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 558 (Fed. Cir. 1994); *Shearing v. Iolab Corp.*, 975 F.2d 1541, 1545-46 (Fed. Cir. 1992); *Wahl Instruments, Inc. v. Acvious, Inc.*, 950 F.2d 1575, 1581 (Fed. Cir. 1991); *Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, 1209-10 (Fed. Cir. 1991); *Chemcast Corp. v. Arco Indus. Corp.*, 913 F.2d 923, 927-28 (Fed. Cir. 1990); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535-36 (Fed. Cir. 1987); *DeGeorge v. Bernier*, 768 F.2d 1318, 1324-25 (Fed. Cir. 1985); *Application of Gay*, 309 F.2d 769, 772 (C.C.P.A. 1962); Court's Charge in *Retractable Techs., Inc. v. Occupational & Med. Innovations, Ltd.*, No. 6:08-cv-001203, at 17-18 (E.D. Tex. 2009) (modified).

The first prong of the best mode inquiry focuses on the state of mind of the particular inventor and the knowledge he possessed at the time the original application was filed.  The first question is subjective.

For instance, a selection made for commercial expediency (such as the availability of certain components, prior relationships with certain suppliers, and other routine manufacturing choices) may be the "best" decision in a manufacturing circumstance but may have been chosen by someone other than the inventor or may not be considered by the inventor to be the best mode of carrying out the invention.

If the answer to the first question is "yes," the second question of the analysis should be addressed.  The second question, an objective inquiry, focuses on the scope of the patented invention and the level of skill in the field of the invention.  The disclosure in the original specification must be adequate to allow one of ordinary skill in the field to make and use the best mode of the invention.  Those skilled in the field of the invention should not have to look to the commercial embodiment in order to practice the best mode.

To prove the '639 patent claims are not entitled to the priority date of the '780 patent, Newegg must prove by clear and convincing evidence that the '780 patent does not sufficiently disclose what the inventors believed to be the best way to carry out the claimed invention of the '780 patent at the time the '780 patent application was filed.

## 6.2    Anticipation for Lack of Novelty[34]

A patent claim is invalid if the claimed invention is not new.  For a claimed invention to be invalid on the basis of anticipation because it is not new, all of its elements must be in a single

---

[34] Sources: 35 U.S.C. § 102; Court's Charge in *VirnetX*, at 15-16; Court's Charge *i4i,* at 15-18; Final Jury Instructions in *Mass Engineered,* at 22; Court's Charge in *Orion,* at 18-21; Court's Charge in *Forgent,* at 16-17; J. Davis Model Instructions, at 13-15.

previous device or method, or described in a single previous publication or patent.  We call those things "prior art references."  Newegg must prove by clear and convincing evidence that these items are prior art.  The description in a reference does not have to be in the same words as the claim, but all the elements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the field of technology of the patent at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one reference would be able to make and use the claimed invention.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.  Inherency may not be established by probabilities or possibilities.  The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient.  A party claiming anticipation by inherency must show that the elements of the claim are always present in the prior art or always result from the practice of the prior art.  You may not combine two or more items of prior art to prove anticipation.

Before explaining the different ways in which Newegg can show that the inventions are not new, there are two basic concepts that underlie your decision on this question.

First I will address the concept of conception.  Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice.  Conception of an invention is complete when the idea is so clearly defined in the inventor's mind that a person of ordinary skill in the field of technology would be able to reduce the invention to practice without extensive research or experimentation.  Conception may be proven when the invention is

shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial.

Second, a claimed invention is reduced to practice when it has been tested sufficiently to show that it will work for its intended purpose.  An invention may be reduced to practice even if the inventor has not made or tested a prototype of the invention.  The invention may be reduced to practice by being fully described in a filed patent application.

Here is a list of ways Newegg can show that a claim of the patents-in-suit was not new:

(1)     If the claimed invention was patented or described in a printed publication, anywhere in the world, before the invention was made by the inventors; or

(2)     If the claimed invention was known or used by others in the United States before the invention was made by the inventors.

A printed publication or patent will not be an anticipating prior art reference unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. Factors to be considered in determining whether a disclosure would require undue experimentation include:

(1)     the quantity of experimentation necessary;

(2)     the amount of direction or guidance disclosed in the patent or publication;

(3)     the presence or absence of working examples in the patent or publication;

(4)     the nature of the invention;

(5)     the state of the prior art;

(6)     the relative skill of those in the field of the technology;

(7)     the predictability of the art; and

(8)     the breadth of the claims.

A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.  Newegg must prove anticipation for lack of novelty by clear and convincing evidence.

### 6.2.1   Anticipation by a Printed Publication[35]

Newegg contends that various claims of the patents-in-suit are invalid because they were anticipated by a printed publication.  A patent claim is invalid if the invention defined by that claim was described in a printed publication before it was invented by the patent applicant, or more than one year prior to the effective filing date of the United States patent application (as described previously in section 6.1).  Printed publications may include issued patents.

The disclosure must be complete enough to enable one of ordinary skill in the field of the technology to practice the invention without undue experimentation (you may refer back to the instructions on Anticipation for Lack of Novelty for the eight factors to consider when determining undue experimentation).  A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.

So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

Newegg must prove anticipation by a printed publication by clear and convincing evidence.

---

[35] Sources: Court's Charge in *i4i,* at 18-19; Court's Charge in *Orion,* at 18; J. Davis Model Instructions, at 15.

### 6.2.2   Anticipation by Prior Patent[36]

Newegg contends that various claims of the patents-in-suit are invalid because they were anticipated by a prior patent.  A claim in a patent is invalid if the invention defined by that claim was patented in the United States or a foreign country before it was invented by the inventor of the patent-in-suit or more than one year before the effective filing date of the inventor's United States patent application (as described previously in section 6.1).

A United States patent that was filed before the inventors of the patents-in-suit invented one of their claimed inventions is prior art with respect to those claimed inventions as of the date the United States patent was filed.  In other words, a U.S. Patent can be prior art as of its filing date if it was filed before the inventors of the patents-in-suit invented their inventions, even if the patent did not actually publish or issue until after the inventors invented their inventions.

To show anticipation of the patented invention, Newegg must show by clear and convincing evidence that the prior patent disclosed all of the elements of each claim of the patent that Newegg contends is invalid.  As with a printed publication, the disclosure must be complete enough to enable one of ordinary skill in the field of technology to practice the invention without undue experimentation (you may refer back to the instructions on Anticipation for Lack of Novelty for the eight factors to consider when determining undue experimentation).

To show anticipation of the patented invention, Newegg must show by clear and convincing evidence that the prior patent disclosed all of the elements of each claim of the patent that Newegg contends is invalid.

---

[36] Sources: 35 U.S.C. § 102; Court's Charge *i4i,* at 19; Court's Charge in *Forgent,* at 17; J. Davis Model Instructions, at 16.

### 6.2.3   Anticipation by Public Knowledge or Use by Another[37]

Newegg contends that various claims of the patents-in-suit are invalid because they were anticipated by public knowledge or use by another.  A patent claim is invalid if the invention recited in that claim was publicly known or used in the United States by someone other than the inventor before the patent applicant invented it, or more than one year before the effective filing date of the United States patent application (as described previously in section 6.1).  Private or secret knowledge, such as knowledge confidentially disclosed within a small group, is not enough to invalidate a patent claim.  Newegg must prove anticipation by public knowledge or use by clear and convincing evidence.

### 6.2.4   Anticipation by Prior Invention[38]

Newegg contends that various claims of the patents-in-suit are invalid because they were anticipated by a prior invention.  A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress or conceal the invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose.  Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

A patentee who is not the first to reduce to practice can still be the first to invent if he can show two things:

---

[37] Sources: 35 U.S.C. § 102; J. Davis Model Instructions, at 15.

[38] Sources: 35 U.S.C. § 102; Court's Charge in *z4 Techs.,* at 18-19; J. Davis Model Instructions, at 15-16.

(1)     that he conceived of the invention before the other party conceived of his invention; and

(2)     that he exercised reasonable diligence in reducing his invention to practice, from the time just before the other party conceived, to the time he reduced to practice.

Reasonable diligence means that the inventor worked continuously in the United States on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

To show anticipation of the patented invention, Newegg must show by clear and convincing evidence that the prior invention disclosed all of the elements of each claim of the patent that Newegg contends is invalid.

### 6.3     Obviousness [NOT AGREED]

### SOVERAIN'S PROPOSED CHARGE[39]

Newegg contends that various claims of the patents-in-suit are invalid because the claimed invention was obvious to one of ordinary skill in the field of technology at the time the invention was made.  To be patentable, an invention must not have been obvious to a person of ordinary skill in the pertinent field of technology at the time the invention was made.  The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the field of technology at the time it was made.  Newegg bears the burden of proving this defense by clear and convincing evidence.

You must not use hindsight when comparing the prior art to the invention for obviousness. In making a determination of obviousness or non-obviousness, you must consider only what was

---

[39] Sources: 35 U.S.C. § 103; Court's Charge *i4i,* at 21-22; J. Davis Model Instructions, at 16-18.

known before the invention was made.  You may not judge the invention in light of present day knowledge or by what you learned from or about the patents during trial.

If the prior art merely discloses numerous possible combinations but gives no direction as to which of those main choices is likely to be successful, this does not constitute a prior teaching or suggestion of the claim combination.  Similarly, if the prior art merely discloses that it would be obvious to explore a new technology or general approach that seemed to be a promising field of experimentation, this would not constitute a teaching or suggestion of the claimed combination.

In determining whether or not Newegg has established obviousness of a claim of the patents-in-suit patent by clear and convincing evidence, you must consider the following:

(1)    The scope and content of the prior art put into evidence in this case;

(2)    The differences, if any, between each claim of the patent and that prior art; and

(3)    The level of ordinary skill in the field of technology at the time the invention was made; and

(4)    Any ***additional*** considerations relating to obviousness or non-obviousness of the invention.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

**NEWEGG'S PROPOSED CHARGE**[40]

Newegg contends that various claims of the patents-in-suit are invalid because the claimed invention was obvious to one of ordinary skill in the field of technology at the time the invention was made.  To be patentable, an invention must not have been obvious to a person of ordinary skill in the pertinent field of technology at the time the invention was made.  The issue is not whether the claimed invention would have been obvious to you as a layman, to me as a

---

[40] Sources: 35 U.S.C. § 103; Court's Charge *i4i,* at 21-22; J. Davis Model Instructions, at 16-18.

Judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the field of technology at the time it was made.  Newegg bears the burden of proving this defense by clear and convincing evidence.

You must not use hindsight when comparing the prior art to the invention for obviousness. In making a determination of obviousness or non-obviousness, you must consider only what was known before the invention was made.  You may not judge the invention in light of present day knowledge or by what you learned from or about the patents during trial.

If the prior art merely discloses numerous possible combinations but gives no direction as to which of those main choices is likely to be successful, this does not constitute a prior teaching or suggestion of the claim combination.  Similarly, if the prior art merely discloses that it would be obvious to explore a new technology or general approach that seemed to be a promising field of experimentation, this would not constitute a teaching or suggestion of the claimed combination.

In determining whether or not Newegg has established obviousness of a claim of the patents-in-suit patent by clear and convincing evidence, you must consider the following:

(1)   The scope and content of the prior art put into evidence in this case;

(2)   The differences, if any, between each claim of the patent and that prior art; and

(3)   The level of ordinary skill in the field of technology at the time the invention was made; and

(4)   Any *secondary* considerations relating to obviousness or non-obviousness of the invention.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

### 6.3.1   Scope and Content of the Prior Art[41]

The first question you must answer in determining whether or not the invention was obvious is the scope and content of the prior art at the time the invention was made.  You must decide whether the specific references relied upon by Newegg in this case are prior art to the invention described in the asserted claims of the patents-in-suit.

Prior art includes previous devices, articles and methods that were publicly used or offered for sale; and printed publications or patents that disclose the invention or elements of the invention.  Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the invention was made.

In order for a reference to be relevant for you to consider in deciding whether or not the claims of the patents-in-suit would have been obvious, the reference must be within the field of the inventors' endeavor, or if it is from another field of endeavor, the reference must be reasonably related to the particular problem or issue the inventors faced or addressed when making the inventions described in the claims of the patents-in-suit.  A reference from a field of endeavor other than the inventors' is reasonably related to the problem or issues the inventors faced if the reference is one which, because of the matter with which the reference deals, logically would have commended itself to the attention of the inventors when considering the problems or issues they faced.  It is for you to decide what the problems or issues were that the inventors faced at the time the inventions in the claims of the patents-in-suit.

### 6.3.2   Differences Over the Prior Art [NOT AGREED]

### SOVERAIN'S PROPOSED CHARGE[42]

---

[41] Sources: Court's Charge in *VirnetX*, at 20-21; Court's Charge in *i4i,* at 22-23.

The next question you must answer in determining whether or not the invention was obvious at the time it was made is what differences there are, if any, between the prior art and the patented invention.  In analyzing this issue, do not focus solely on the differences between the prior art and the invention because the test is not whether there are differences.  Rather, the test is whether or not the invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those items.  A claim is not obvious merely because all of the elements of that claims already existed.  In determining whether an invention is obvious, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  One way to decide whether one of ordinary skill in the art would combine what is described in various items of prior art is whether there is some teaching, suggestion, or motivation in the prior art for a skilled person to make the combination covered by the patent claims.  Motivation can be implicit or explicit.

In considering whether a claimed combination of prior art elements is obvious, you must consider whether the improvement is more than the predictable use of prior art elements according to their established functions.  When a patent simply arranges old elements, with each

---

(continued…)

[42] Sources: Court's Charge in *VirnetX*, at 21-22; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007).

performing the same function it had been known to perform, and yields no more than one would expect form such an arrangement, the combination is obvious.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents together like pieces of a puzzle. Multiple references in the prior art can be combined to show that a claim is obvious. Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed. To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art. Neither the particular motivation nor the alleged purpose of the patentee controls. One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim. Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations may be found in the nature of the problem(s) solved by the claimed invention.

The fact that a combination was obvious to try may demonstrate that the combination itself was obvious.

**NEWEGG'S PROPOSED CHARGE**[43]

The next question you must answer in determining whether or not the invention was obvious at the time it was made is what differences there are, if any, between the prior art and the

---

[43] Sources: Court's Charge in *VirnetX,* at 21-22; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418-19 (2007).

patented invention.  In analyzing this issue, do not focus solely on the differences between the prior art and the invention because the test is not whether there are differences.  Rather, the test is whether or not the invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time the invention was made.

If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are in separate items, you must then consider whether or not it would have been obvious to combine those items.  A claim is not obvious merely because all of the elements of that claims already existed.  In determining whether an invention is obvious, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does.  This is so because inventions in most, if not all, instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.  One way to decide whether one of ordinary skill in the art would combine what is described in various items of prior art is whether there is some teaching, suggestion, or motivation in the prior art for a skilled person to make the combination covered by the patent claims.  Motivation can be implicit or explicit.

In considering whether a claimed combination of prior art elements is obvious, you must consider whether the improvement is more than the predictable use of prior art elements according to their established functions.  When a patent simply arranges old elements, with each performing the same function it had been known to perform, and yields no more than one would expect form such an arrangement, the combination is obvious.

It is common sense that familiar items may have obvious uses beyond their primary purposes, and a person of ordinary skill often will be able to fit the teachings of multiple patents

together like pieces of a puzzle.  Multiple references in the prior art can be combined to show that a claim is obvious.  Any need or problem known in the field and addressed by the patent can provide a reason for combining the elements in the manner claimed.  To determine whether there was an apparent reason to combine the known elements in the way a patent claims, you can look to interrelated teachings of multiple patents, to the effects of demands known to the design community or present in the marketplace, and to the background knowledge possessed by a person of ordinary skill in the art.  Neither the particular motivation nor the alleged purpose of the patentee controls.  One of ordinary skill in the art is not confined only to prior art that attempts to solve the same problem as the patent claim.  Teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps that a person of ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations may be found in the nature of the problem(s) solved by the claimed invention.

The fact that a combination was obvious to try may demonstrate that the combination itself was obvious.  ***When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp.  If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense.  In that instance, the fact that a combination was obvious to try might show that it was obvious.***

### 6.3.3   Level of Ordinary Skill in the Field[44]

For obviousness, you must consider the level of ordinary skill in the field.  The ordinary skilled person is a person of average education and training in the field of the invention and is presumed to be aware of all relevant prior art.  The actual inventor's skill is irrelevant to this inquiry.

You are instructed that a person of ordinary skill in the field of technology would have a Bachelor of Science degree in computer engineering or computer science, or equivalent education, with two to three years of practical experience developing or operating software and systems that relate to commerce on the Internet.

### 6.3.4   *Additional/Secondary* Considerations [NOT AGREED]

### SOVERAIN'S PROPOSED CHARGE for *Additional* Considerations [45]

*The next question you must answer, in determining whether or not the invention was obvious at the time it was made is what evidence there is, if any, of additional considerations relating to the obviousness or non-obviousness of the invention.*  You may consider in your analysis any evidence that was presented to you in this case regarding the presence or absence of the following factors in deciding whether or not the invention would have been obvious at the time it was made:

(1)    Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

(2)    Whether or not there was long felt but unresolved need in the field of technology that was satisfied by the invention;

(3)    Whether or not others had tried but failed to make the invention;

(4)    Whether or not others copied the invention;

---

[44] Source: Court's Charge in *i4i*, at 25.

[45] Sources: Court's Charge in *i4i,* at 25-26; Court's Charge in *VirnetX*, at 23-24 (modified).

(5)     Whether or not the invention achieved any unexpected results;

(6)     Whether or not the invention was praised by others;

(7)     Whether or not others have taken licenses to use the invention;

(8)     Whether or not experts or those skilled in the field at the making of the invention expressed surprise or disbelief regarding the invention;

(9)     Whether or not products incorporating the invention have achieved commercial success; and

(10)    Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventor made the invention.

**NEWEGG'S PROPOSED CHARGE for *Secondary* Considerations**[46]

*In determining whether or not the invention was obvious at the time it was made, any applicable secondary considerations relating to the obviousness or non-obviousness of the invention may be considered.*  You may consider in your analysis any evidence that was presented to you in this case regarding the presence or absence of the following factors in deciding whether or not the invention would have been obvious at the time it was made:

---

[46] Sources: Court's Charge in *i4i,* at 25-26; Court's Charge in *VirnetX*, at 23-24 (modified); *Leapfrog Enters., Inc. v. Fisher-Price, Inc., 485 F.3d 1157, 1162 (Fed. Cir. 2007); Media Techs. Licensing, LLC v. Upper Deck Co., 2010 U.S. App. LEXIS 4174, at \*12 (Fed. Cir. Mar. 1, 2010) ("Even if Media Tech could establish the required nexus, a highly successful product alone would not overcome the strong showing of obviousness.").; Honeywell Int'l, Inc. v. United States, 2010 U.S. App. LEXIS 3199, at \*39 (Fed. Cir. Feb. 18, 2010) ("The secondary considerations advanced by Honeywell are therefore insufficient to overcome the strong showing of obviousness."); Arkie Lures, Inc. v. Gene Larew Tackle, Inc., 119 F.3d 953, 960 (Fed. Cir. 1997) ("Even where such evidence [of secondary considerations] exists, it may not be compelling enough to overcome the strong showing of obviousness in light of the prior art."); Muniauction, Inc. v. Thomson Corp., 532 F.3d 1318, 1327 (Fed. Cir. 2008) ("[A] nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision."); Ormco Corp. v. Align Tech., Inc., 463 F.3d 1299, 1311-1312 (Fed. Cir. 2006) ("Evidence of commercial success, or other secondary considerations, is  only significant if there is a nexus between the claimed invention and the commercial success."  Commercial success is "irrelevant" unless attributed to a claimed feature of the invention.).  Graham v. John Deere Co., 383 U.S. 1 (1966) (pronouncing that "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized" in determining obviousness); i4i Ltd. P'ship v. Microsoft Corp., 2010 U.S. App. LEXIS 5010, at \*19 (Fed. Cir. Mar. 10, 2010) (referring to extra factors regarding obviousness as "secondary considerations") Crocs, Inc. v. ITC, 2010 U.S. App. LEXIS 3793, at \*28 (Fed. Cir. Feb. 24, 2010) (analyzing "secondary considerations" for obviousness determination); Lucent Techs. v. Gateway, Inc., 580 F.3d 1301, 1310 (Fed. Cir. 2009) (explaining that "secondary considerations" may be relevant to obviousness evaluation).*

    (1)      Whether or not the invention proceeded in a direction contrary to accepted wisdom in the field;

    (2)      Whether or not there was long felt but unresolved need in the field of technology that was satisfied by the invention;

    (3)      Whether or not others had tried but failed to make the invention;

    (4)      Whether or not others copied the invention;

    (5)      Whether or not the invention achieved any unexpected results;

    (6)      Whether or not the invention was praised by others;

    (7)      Whether or not others have taken licenses to use the invention **based on the merits of the claimed invention**;

    (8)      Whether or not experts or those skilled in the field at the making of the invention expressed surprise or disbelief regarding the invention;

    (9)      Whether or not products incorporating the invention have achieved commercial success **based on the merits of the claimed invention**; and

    (10)    Whether or not others having ordinary skill in the field of the invention independently made the claimed invention at about the same time the inventor made the invention.

***The presence of any of the above factors may suggest that the claimed invention was not obvious. However, such secondary considerations may or may not support an overall conclusion of nonobviousness in view of an otherwise strong showing of obviousness in light of the prior art.***

## 6.4    Corroboration of Oral Testimony [NOT AGREED]

### SOVERAIN'S PROPOSED CHARGE[47]

Oral testimony of ***a single witness*** alone is insufficient to prove prior invention or that something is prior art.  A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from

---

[47] Sources: Court's Charge *i4i*, at 20-21; *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1375 (Fed. Cir. 2009).

an interested witness, or a witness testifying on behalf of an interested party.  This includes any individual or company testifying that his invention or its invention predates the patents-in-suit. Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the filing date of the patents-in-suit, that party must also have provided some sort of corroborating evidence that agrees with that oral testimony.  If you find the party has not corroborated the oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony. In making this determination, you should consider the following factors:

(1)     The relationship between the corroborating witness and the alleged prior user;

(2)     The time period between the event and this trial;

(3)     The interest of the corroborating witness in the subject matter of this suit;

(4)     Contradiction or impeachment of the witness's testimony;

(5)     Extent and detail of the corroborating witness's testimony;

(6)     The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

(7)     Probability that a prior use could occur considering the state of the art at the time; and

(8)     Impact of the invention on the industry, and the commercial value of its practice.

**NEWEGG'S PROPOSED CHARGE**[48]

Oral testimony of ***an interested party*** alone is insufficient to prove prior invention or that something is prior art.  A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness, or a witness testifying on behalf of an interested party.  This includes any individual or company testifying that his invention or its invention predates the patents-in-suit. Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the filing date of the patents-in-suit, that party must also have provided some sort of corroborating evidence that agrees with that oral testimony.  If you find the party has not corroborated the oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony. In making this determination, you should consider the following factors:

 (1) The relationship between the corroborating witness and the alleged prior user;

 (2) The time period between the event and this trial;

 (3) The interest of the corroborating witness in the subject matter of this suit;

 (4) Contradiction or impeachment of the witness's testimony;

 (5) Extent and detail of the corroborating witness's testimony;

---

[48] Sources: Court's Charge *i4i*, at 20-21; *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1375 (Fed. Cir. 2009); ***Thomson S.A. v. Quixote Corp., 166 F.3d 1172, 1176 (Fed. Cir. 1999).***

(6)     The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

(7)     Probability that a prior use could occur considering the state of the art at the time; and

(8)     Impact of the invention on the industry, and the commercial value of its practice.

### 7. DAMAGES [NOT AGREED]

**SOVERAIN'S PROPOSED CHARGE**[49]

I have now instructed you as to the law governing Soverain's claims of patent infringement and Newegg's claims of invalidity.  If you find that Newegg has infringed a valid claim of the '314, '492, or '639 patent, then you must determine what damages Newegg must pay to Soverain for that *infringement*.  If, on the other hand, you find that Newegg has not infringed a valid claim of the '314, '492, or '639 patent, then Soverain is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that Soverain is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about Soverain's damages as an indication any way that I believe that Soverain should, or should not, win this case.  I am instructing you on damages only so that you will have guidance in the event you decide that Newegg is liable and that Soverain is entitled to recover money from Newegg.

**NEWEGG'S PROPOSED CHARGE**[50]

I have now instructed you as to the law governing Soverain's claims of patent infringement and Newegg's claims of invalidity.  If you find that Newegg has infringed a valid

---

[49] Sources: Court's Charge in *Orion,* at 26; Court's Charge in *Forgent,* at 22-23; Court's Charge in *z4 Techs.,* at 26; J. Davis Model Instructions, at 19-20.

[50] Sources: Court's Charge in *Orion,* at 26; Court's Charge in *Forgent,* at 22-23; Court's Charge in *z4 Techs.,* at 26; J. Davis Model Instructions, at 19-20.

claim of the '314, '492, or '639 patent, then you must determine what damages Newegg must pay to Soverain for infringement *of that claim only*.  If, on the other hand, you find that Newegg has not infringed a valid claim of the '314, '492, or '639 patent, then Soverain is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that Soverain is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about Soverain's damages as an indication any way that I believe that Soverain should, or should not, win this case.  I am instructing you on damages only so that you will have guidance in the event you decide that Newegg is liable and that Soverain is entitled to recover money from Newegg.

## 7.1    Date Damages Begin[51]

Under the Patent Laws, Soverain can recover damages for infringement that occurred only after Soverain gave "notice" of its patent rights.  Here Soverain gave Newegg notice by filing this lawsuit against Newegg on November 2, 2007.  In considering damages, the time period is November 2, 2007, to the present.  It is undisputed that Soverain cannot recover any damages for any infringement of the patents-in-suit before November 2, 2007.

## 7.2    Reasonable Royalty – Entitlement[52]

The patent laws specifically provide that the amount of damages that Newegg must pay Soverain for infringing Soverain's patents may not be less than a reasonable royalty for the use that Newegg made of Soverain's inventions.

---

[51] Source: J. Davis Model Instructions, at 26.

[52] Sources: 35 U.S.C. § 284 (2009); Final Jury Instructions in *Mass Engineered,* at 38; The National Jury Instruction Project, at 6.6.

### 7.3    Reasonable Royalty – Definition[53]

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to use the claimed invention.  The royalty payment generally reflects the value of the use of the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical arms-length negotiation between Soverain's predecessor Open Market, and a company in the position of Newegg on the eve of infringement, with both sides to this negotiation willing to enter into a license and both sides to this negotiation operating under the assumptions that the patents are valid, the patents are infringed, and the licensee would respect the patents.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before Newegg began selling or using the patented inventions. You may consider any actual profits made by Newegg and any commercial success of the patented inventions, but the amount of those profits is not determinative on the issue of what is a reasonable royalty.

### 7.4    Reasonable Royalty – Timing [NOT AGREED]
### SOVERAIN'S PROPOSED CHARGE[54]

Although the relevant date for the hypothetical reasonable royalty negotiation is the date that the infringement began, you may consider in your determination of reasonable royalty damages any evidence with respect to the expectations for the future that the negotiators had as of the eve of infringement and any actual profits by Newegg after that time, and any commercial success of the patented invention in the form of sales after that time of the patents or infringing

---

[53] Sources: Court's Charge in *i4i,* at 27; Final Jury Instructions in *Mass Engineered,* at 38-39; Court's Charge in *z4 Techs.,* at 27-28; J. Davis Model Instructions, at 24.

[54] Source: AIPLA Model Instructions, Patent Damages No. 22 (same, except for inclusion of the 2001 date and language regarding expectations future negotiators would have in 2001).

product after that time.  You may only consider this information, however, if it was foreseeable at the time the infringement began.

### NEWEGG'S PROPOSED CHARGE[55]

Although the relevant date for the hypothetical reasonable royalty negotiation is the date that the infringement began, you may consider in your determination of reasonable royalty damages any evidence with respect to the expectations for the future that the negotiators had as of the eve of infringement and any actual profits by Newegg after that time, and any commercial success of the patented invention*,* in the form of sales after that time of the patents or infringing product after that time.  You may only consider this information, however, if it was foreseeable at the time the infringement began.

**7.5** *Entire Market Value Rule*[56] **[NOT AGREED; Soverain does not agree to the inclusion of an instruction regarding the Entire Market Value Rule]**

### NEWEGG'S PROPOSED CHARGE

*Where a patented invention is used or sold along with other products not covered by the patent, the patent owner may not collect damages based on the value of the other products unless the patent owner can demonstrate that the patented invention is of such paramount importance that it substantially created the value of the other products.  In other words, it must be shown that the patented invention is the basis for customer demand of the other products.  Also, if the other products have essentially no functional relationship to the patented invention, but instead the patented invention is used only for convenience or business advantage when selling the other products, damages may not be based on the sales revenues of*

---

[55] Source: AIPLA Model Instructions, Patent Damages No. 22 (same, except for inclusion of the 2001 date and language regarding expectations future negotiators would have in 2001).

[56] *Sources: Lucent Technologies, Inc. v. Gateway, Inc., 2009 WL 2902044 (Fed. Cir. 2009); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); Cornell University v. Hewlett-Packard Co., No. 01-CV-1974, 2008 WL 2222189, at \*4 (N.D.N.Y. May 27, 2008) (Rader, J., sitting by designation); Opti, Inc. v. Apple, Inc., No. 2:07-CV-21, slip op. at 3 (E.D. Tex. April 3, 2009).*

*the other products.  Other products may have a functional relationship to the patented*

*invention if the product and patented invention are together analogous to components of a*

*single assembly or parts of a complete machine.*

*For purposes of your damages calculation, you are to assume that the patented*

*invention is used by Newegg when it sells other products, such as computers and other*

*consumer products, that are not covered by the patents-in-suit.  You may not use Newegg's*

*product sales revenues as your royalty base unless you believe that the use of the patented*

*shopping cart and session ID inventions creates the demand for the products sold by Newegg,*

*and that those inventions have a functional relationship with those products that are not*

*covered by the patents-in-suit.*

*In determining a per-transaction royalty, you may not base the royalty on any portion*

*of profits or revenues from the sales of products not covered by the asserted patents unless*

*Soverain has proven that the claimed shopping cart or session ID inventions created customer*

*demand for those sales.*

*If you do not believe that the patented inventions create the demand for the products*

*sold by Newegg, and are functionally related to those products, Soverain may still be able to*

*recover damages, but those damages may not be based on the value of the Newegg's product*

*sales.*

## 7.6    Burden of Proof[57]

Soverain has the burden to persuade you by a preponderance of the evidence that it

suffered the damages it seeks.  While Soverain is not required to prove damages with

---

[57] Sources: *Lucent Technologies, Inc. v. Gateway, Inc.*, 2009 WL 2902044 (Fed. Cir. 2009); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549-51 (Fed. Cir. 1995); *Cornell University v. Hewlett-Packard Co.*, No. 01-CV-1974, 2008 WL 2222189, at *4 (N.D.N.Y. May 27, 2008) (Rader, J., sitting by designation); *Opti, Inc. v. Apple, Inc.*, No. 2:07-CV-21, slip op. at 3 (E.D. Tex. April 3, 2009); *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *Oimess v. Walgreen Co.*, 88 F.3d 1025, 1027 (Fed. Cir. 1996).

mathematical precision, it must prove its damages with reasonable certainty.  Soverain is not entitled to damages that are speculative.  Soverain's proof of damages must have a sound economic basis.

## 7.6    Reasonable Royalty – Factors[58]

In deciding what is a reasonable royalty, you may consider the factors that Soverain and Newegg would consider in setting the amount Newegg should pay.  I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

(1)    Any royalties received by Soverain or its predecessors for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

(2)    Any rates paid by Newegg for the use of other patents comparable to the patents-in-suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive; or as restricted or unrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

(4)    Whether or not Soverain or any of its predecessors had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity.

(5)    The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business.

(6)    The effect of selling the patented inventions in promoting sales of other products or inventions of Newegg; the existing value of the inventions to Soverain as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

(7)    The duration of the patent and the term of the hypothetical license.

---

[58] Sources: Court's Charge in *VirnetX*, at 25-27; Court's Charge in *i4i*, at 28-29; Final Jury Instructions in *Mass Engineered,* at 39-40; Court's Charge in *Orion*, at 28-29; Court's Charge in *Forgent*, at 24-25; Court's Charge in *z4 Techs.,* at 28-29; *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified and aff'd sub nom. Georgia-Pacific Corp. v. United States Plywood Champion Papers, Inc.,* 446 F.2d 295 (2d Cir.), *cert denied,* 404 U.S. 870 (1971); J. Davis Model Instructions, at 24-26.

(8)     The established profitability of the inventions; their commercial success; and their current popularity.

(9)     The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

(10)    The nature of the patented inventions, the character of the commercial embodiment of the inventions as owned and produced by Soverain, and the benefits to those who have used the inventions.

(11)    The extent to which Newegg has made use of the patented inventions and any evidence that shows the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

(13)    The portion of the profits that is due to the patented inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Newegg.

(14)    Expert opinions as to what a reasonable royalty would be.

(15)    The amount that a licensor such as Open Market and a licensee such as Newegg would have agreed upon if both parties had been reasonably and voluntarily trying to reach an agreement.

In addition, it is proper for you to consider any economic or business factors that normally prudent business people would, under similar circumstances, reasonably take into consideration in negotiating the hypothetical license.

## 7.7    Non-Infringing Alternatives[59]

In determining a reasonable royalty, you may consider whether or not Newegg had commercially acceptable non-infringing alternatives to taking a license from Open Market that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.

---

[59] Sources: 3A *Federal Jury Practice and Instructions* § 71.01 (5th ed. 2001); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F. 3d 958, 971 (Fed. Cir. 2000); *Fonar Corp. v. General Elec. Co.*, 107 F. 3d 1543, 1553 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 908 (1997).

## 8.  INSTRUCTIONS FOR DELIBERATIONS[60]

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  A limited liability corporation is entitled to the same fair trial as a private individual.  All persons, including limited liability corporations, and other organizations stand equal before the law and are to be treated as equals.  A patent owner is entitled to protect its patent rights under the United States Constitution.  This includes bringing suit in a United States District Court for money damages for infringement.  This may be done regardless of whether the owner of the patent is an individual, a partnership, a bank, a small company with only a few investors, or a large company

---

[60] Sources: Court's Charge in *i4i,* at 30-31; Final Jury Instructions in *Mass Engineered,* at 41-42; Court's Charge in *Orion,* at 29-31; Court's Charge in *Forgent,* at 26-27; Court's Charge in *z4 Techs.,* at 29-31; J. Davis Model Instructions, at 28-29.

made up of many investors.  The law recognizes no distinction among types of patent owners.  A patent owner may be a competitor of an accused infringer, but it does not have to be.  The characterization of a patent lawsuit as good or bad or as misuse of the patent laws based upon the status of the patent owner is inappropriate and should not play any part in your deliberations.  All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial.  After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will

always first disclose to the attorneys your question and my response before I answer your question.

      After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.