**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| SOVERAIN SOFTWARE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CDW CORPORATION, NEWEGG | ) | Civil Action No. 6:07-CV-00511-LED |
| INC., REDCATS USA, INC., | ) | |
| SYSTEMAX INC., ZAPPOS.COM, | ) | |
| INC., REDCATS USA, L.P., THE | ) | |
| SPORTSMAN'S GUIDE, INC., and | ) | |
| TIGERDIRECT, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Newegg's Rule 50(a) Motion for Judgment as a Matter of Law of Non-Infringement**

TABLE OF CONTENTS

I.      The JMOL Standard ............................................................................................ 1

II.     Standards for Infringement ............................................................................... 2

        A.      Direct Infringement .............................................................................. 2

                1.      All-Elements Rule ...................................................................... 2

                2.      Doctrine of Equivalents ............................................................ 3

                3.      Divided Infringement of Method Claims ................................ 3

                4.      No Divided Infringement of System Claims ........................... 4

        B.      Indirect Infringement ........................................................................... 6

III.    Soverain's Infringement Claims ....................................................................... 6

IV.     Argument – No Literal Infringement ............................................................... 7

        A.      No Literal Infringement: Buyer Computer and Client Computer
                Limitations ............................................................................................ 7

        B.      No Literal Infringement – Programming Limitations .......................... 15

        C.      No Literal infringement – Modification Limitations ........................... 15

        D.      No Literal Infringement – "plurality of requests . . . to add a plurality of
                respective products to a shopping cart in . . . [said or the] shopping cart
                database" ............................................................................................... 16

V.      Argument – No Infringement under Doctrine of Equivalents ......................... 17

VI.     Argument – No Indirect Infringement .............................................................. 18

VII.    Conclusion ....................................................................................................... 19

Defendant, Newegg, Inc. moves for judgment as a matter of law (JMOL) of Non-Infringement under Fed. R. Civ. P. Rule 50(a).[1] Soverain Software LLC ("Soverain" or "Plaintiff") has failed to present any evidence that could support a jury's finding that Newegg infringes the asserted claims of the three patents in suit.  Soverain's infringement claims are premised on misapplied or erroneous legal theories and do not conform to the Federal Circuit's legal proof requirements.  Accordingly, a jury finding of infringement would be legally infirm, and based on improper and irrelevant evidence.  Therefore, the Court should rule that Newegg does not infringe the asserted claims of the patents in suit as a matter of law.[2]

## I.     The JMOL Standard

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may determine the issue against that party; and may grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue."  FED. R. CIV. P. 50(a); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000); *Adams v. Groesbeck I.S.D.*, 475 F.3d 688 (5th Cir. 2007); *Bryant v. Compass Group USA Inc.*, 413 F.3d 471 (5th Cir. 2005).[3]

---

[1]  The testimony cited or described herein is exemplary only since the majority was unavailable by transcript for preparing this motion given the Court's schedule, which had the parties close evidence, rest, and argue the charge on April 29, 2010 before submitting the case to the jury April 30, 2010.  When Newegg files any Rule 50(b) motions, it will supplement the cited/described testimony herein, as appropriate, and correct any inadvertent citation or other errors that may have arisen.

[2]  Newegg renews its previously filed Motion for Judgment of Non-Infringement of the '639, '314 and '492 patents (Docket No. 248), which the Court has carried with the case.

[3]  Rule 50 motions are governed by "the law of the regional circuit where the appeal from the district court normally would lie." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1346 (Fed. Cir. 2007).  Accordingly, the law of the Fifth Circuit applies to the "evidentiary" principles governing judgment as a

Under the law of the Fifth Circuit, entry of a judgment as a matter of law is appropriate if evidence supporting the movant is "uncontradicted and unimpeached [or] if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that [a] reasonable [jury] could not arrive at a contrary verdict." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co*., 341 F.3d 415, 420 (5th Cir. 2003).  In resolving a JMOL motion, the court "must first excise inadmissible evidence."  *Hodges v. Mack Trucks, Inc*., 474 F.3d 188, 193 (5th Cir. 2006).   Inferences that are "mere speculation and conjecture" are "not sufficient to support a jury's verdict." *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005) (internal quotation marks omitted).   Conclusory expert testimony does not qualify as substantial evidence. *Iovate Health Sciences, Inc. v. Vio-Engineered Supplements & Nutrition, Inc*., 586 F.3d 1376, 1381-82 (Fed. Cir. 2009) (applying Fifth Circuit law). Similarly, "when an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 242 (1993); *accord, Guile*, 422 F.3d at 227 ("contradictions" in expert's testimony "coupled with the lack of support for the statements take them out of the realm of substantive evidence"); *Smith v. Louisville Ladder Co*., 237 F.3d 515, 519-21 (5th Cir. 2001) (failure of expert witness to support proof of necessary case elements warrants judgment as a matter of law).

## II.     Standards for Infringement

### A.     *Direct Infringement*

#### 1.     *All-Elements Rule*

"The determination of infringement is a two-step process." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377 (Fed. Cir. 2008). The "court first construes the claims and then determines whether every claim limitation, or its equivalent, is found in the accused device." *Id.*;

---

matter of law under Rule 50. *Id.*

*accord, Cyber Corp. v. FAS Tech. Inc*., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). "Under the all-elements rule, 'an accused product or process is not infringing unless it contains each limitation of the claim, either literally or by an equivalent.' " *PSN Illinois LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1167-68 (Fed. Cir. 2008). A failure to satisfy the all-elements rule requires judgment as a matter of law. *See Exergen Corp. v. Wal-Mart Stores, Inc*., 575 F.3d 1312, 1321 (Fed. Cir. 2009); *Muniauction, Inc. v. Thomson Corp*., 532 F.3d 1318, 1330 (Fed. Cir. 2008).

### 2. Doctrine of Equivalents

"An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Amgen Inc. v. F. Hoffmann-La Roche, Ltd*., 580 F.3d 1340, 1382 (Fed. Cir. 2009) (internal quotation marks omitted). An element in the accused product is equivalent to a claim limitation if the differences between the two are "insubstantial" to one of ordinary skill in the art. *Id*. Insubstantiality may be determined by whether the accused device performs substantially the same function in substantially the same way to obtain the same result as the claim limitation. *Id.*

### 3. Divided Infringement of Method Claims

All of the asserted claims of the '639 patent are method claims.  To establish direct infringement of a method or process claim, a plaintiff must prove that a <u>single</u> actor either (1) performs every step of the claimed method or (2) exercises the requisite "control or direction" over any steps performed by other actors.  *See BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1380-82 (Fed. Cir. 2007); *Muniauction, Inc. v. Thomson Corp*., 532 F.3d 1318, 1329 (Fed. Cir. 2008).[4]

As explained by the Federal Circuit, "the control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for

---

[4] *See also Golden Hour Data Sys., Inc. v. Emscharts, Inc.*, No. 2:06-CV-381, 2009 U.S. Dist. LEXIS 30108, at *8 (E.D. Tex. Apr. 3, 2009) ("[T]he patent holder must prove that 'one party exercises "control or direction" over the entire process such that every step is attributable to the controlling party, *i.e.* "the mastermind." ' " (quoting *Muniauction*, 532 F.3d at 1329)).

the acts committed by another party that are required to complete performance of a claimed method." *Muniauction*, 532 F.3d at 1330; *see also Emtel, Inc. v. LipidLabs, Inc.*, 583 F. Supp. 2d 811, 839 (S.D. Tex. 2008) ("[F]or liability to attach, the 'mastermind' must so control the third party in its performance of the infringing steps that the third party does so as the defendant's agent. The degree of control must be such that the defendant could be vicariously liable for the third party's performance.") (Rosenthal, J.); *Global Patent Holdings, LLC v. Panthers BRHC LLC*, 586 F. Supp. 2d 1331, 1335 (S.D. Fla. 2008) (to satisfy the control or direction standard, "the third party must perform the steps of the patented process by virtue of a contractual obligation or other relationship that gives rise to vicarious liability"), *aff'd*, 318 Fed. Appx. 908, 909 (Fed. Cir. 2009).

### 4.    No Divided Infringement of System Claims

All of the asserted claims of the '314 and '492 patents are system claims.  The Federal Circuit has never recognized that any divided infringement exception to the all-elements rule applies to apparatus or system claims.

As to system claims, some district court cases have suggested or concluded that the exception does apply.  *See Golden Hour Data Systems, Inc. v. Emscharts, Inc.*, No. 2:06-cv-381, 2009 WL 943273 (E.D. Tex. April 3, 2009) (analyzing claims that included system claims under the "control or direction" standard of *BMC* and *MuniAuction*); *Phoenix Solutions, Inc. v. DirecTV Group, Inc.*, 2009 U.S. Dist. LEXIS 114977, No. CV 08-984 MRP, at *28-29 (C.D. Cal. Nov. 23, 2009) ("*BMC Resources* analyzed divided infringement under § 271(a) with respect to process claims, but not apparatus claims. However, the Federal Circuit did not limit its statutory analysis to method claims, and its general holding applies to apparatus claims as well."); *Centillion Data Sys. ,LLC v. Qwest Communications Int'l, Inc.*, No. 1:04-cv-0073-LJM-DML, at *23 (S.D. Ind. October 29, 2009) (holding that "to the extent that Centillion suggests that under *NTP* the use of some, but not all, of the elements of a system claim is sufficient to find direct infringement if the use is 'beneficial,' the Court disagrees.  'Infringement requires, as it always has, a showing that a

4

defendant has practices [sic] each and every element of the claimed invention.'" (quoting and citing *BMC* and *Warner-Jenkinson*), *appeal docketed*, No. 2010-1110 (Fed. Cir. December 4, 2009)).

However, divided infringement is premised upon agency principles. Agency is a fiduciary relationship that arises when one party (the principal) assents to another party (the agent) to act on behalf of the principal subject to the principal's overriding control.   *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006).  Agency principles apply where method claims are involved because method claims can only be infringed by the actions of the alleged infringer. *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1322 (Fed. Cir. 2005) ("The invention recited in a method claim is the performance of the recited steps."). Apparatus claims, however, are not about acts. Rather, apparatus claims are about structure. *See Creative Internet Advertising Corp. v. Yahoo! Inc.*, No. 6:07cv354, 2008 WL 5061625 at *16 (E.D. Tex. Nov. 24, 2008) ("[A]pparatus claims recite structure — not steps or processes."). "Not only will the [infringement] analysis differ for different types of infringing acts, it will also differ as the result of differences between different types of claims." *NTP*, 418 F.3d at 1317 (internal citations omitted).

Thus, the principles underlying divided infringement break down when applied to apparatus claims because the predicate act is missing; there is only structure. Without an act, there is no basis to hold a principle vicariously liable. Applying agency principles to apparatus claims impermissibly redrafts apparatus claims into method form. *BMC*, 498 F.3d at 1381 ("BMC correctly notes the difficulty of proving infringement of this claim format. Nonetheless, this court will not unilaterally restructure the claim or the standards for joint infringement to remedy these ill-conceived claims.").

Accordingly, Newegg submits that the divided-infringement exception to the all-elements rule should not apply to system claims.  Alternatively, however, and at a minimum, a plaintiff asserting a system claim that is susceptible to a divided infringement challenge (because the

alleged infringer does not own or possess all elements of the system) must at least satisfy the "control or direction" standard for the divided infringement of method claims. *Cf.  Golden Hour Data Sys.*, *Inc. v. Emscharts*, *Inc.*, No. 2:06-CV-381, 2009 U.S. Dist. LEXIS 30108, at *8 (E.D. Tex. Apr. 3, 2009).   (Indeed, no court has held that the all-elements rule can be avoided for any type of claim absent at least a showing of "control or direction" sufficient to give rise to vicarious liability as explained above.)

### B.    Indirect Infringement

Liability for indirect infringement can exist only where there is direct infringement.  *See BMC Resources Inc.*, 498 F.3d at 1379 ("Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement.").

## III.   Soverain's Infringement Claims

The following table lists the claims Soverain has asserted against Newegg.   For any dependent claims, the underlying independent base claim is also shown.

| Patent | Asserted Claims | Independent Base Claim |
|---|---|---|
| 5,715,314 | 35 | 34 |
|  | 49 | 34 |
|  | 51 | 34 |
| 5,909,492 | 17 | N/A |
|  | 41 | 15 |
|  | 61 | 15 |
| 7,272,639 | 60 | 1 |
|  | 66 | 1 |
|  | 68 | 1 |
|  | 79 | 78 |

Because a dependent claim can only be infringed if the claim from which it depends is infringed, *Wahpeton Canvas Co. v, Frontier Inc.*, 870 F.2d 1546 (Fed. Cir. 1989), Newegg need only establish that the following claims are not infringed to demonstrate its non-infringement of all asserted claims:

| Patent | Claim(s) |
|---|---|
| 5,715,314 | 34 |
| 5,909,492 | 15 |
|  | 17 |

6

| 7,272,639 | 1 |
| | 78 |

Specifically, Soverain contends that newegg.com and newegg.ca infringe claims 35 and 51 of the '314 patent; claims 17, 41, and 61 of the '492 patent; and claims 60 and 79 of the '639 patent.  Soverain also contends that neweggmall.com infringes claim 34 of the '314 patent; claim 15 of the '492 patent; and claims 1 and 78 of the '639 patent.

## IV.    Argument – No Literal Infringement

Newegg is entitled to judgment that it does not infringe any of the asserted claims of the patents in suit for the following reasons:

### A.    *No Literal Infringement: Buyer Computer and Client Computer Limitations*

For the asserted system claims requiring a buyer or client computer, there is no legally sufficient evidence and no evidence from which a reasonable juror could find that Newegg satisfies this limitation.  In particular, there is no such evidence that (1) Newegg owns, possesses, or supplies customers with, a buyer or client computer or that (2) buyers/clients are controlled or directed by Newegg such that Newegg could be vicariously liable for their actions.  Accordingly, infringement cannot exist as a matter of law.

Thus, the Court should grant judgment as a matter of law of no literal infringement of the asserted system claims requiring a buyer or client computer: namely, claim 34 of the '314 patent (limitation 34[b] requires "one buyer computer"); claim 15 of the '492 patent (limitation 15[b] requires "a client computer"); and claim 17 of the '492 patent (requiring "at least one buyer computer").[5]

---

[5] Dr. Grimes testified that claim 17 of the '492 patent is substantively identical to claim 34 of the '314 patent with the addition of a few new limitations.  Tr. 4/27/10 AM at 42-43. With respect to the common limitations, his testimony relied on his testimony regarding claim 34 of the '314 patent.  Thus, the following elements of claim 17 of the '492 patent would likewise be met by the user/customer, as opposed to Newegg:

> 17[b] "at least one buyer computer for operation by a user desiring to buy products"

In particular, claim 34 the '314 patent could not be infringed without the participation of the Newegg buyer/customer.  *See Global Patent Holdings*, 586 F.Supp.2d at 1335 ("If no person ever visited Defendant's website, then Plaintiff's patent would never be infringed.").  Claim 34[b] includes the limitation of "at least one buyer computer for operation by a user desiring to buy products."  As to that limitation, Dr. Grimes testified that the customer's computer becomes a buyer computer when it is connected to the Newegg system over the internet.   Tr. 4/27/10 AM at 19.

Similarly as to Claim 15, limitation 15[b] requires "a client computer for operation by a client user."  Dr. Grimes testified that this element is met by the computers of Newegg's customers.  Tr. 4/26/10 PM at 115; *see also* Grimes Demo. Ex. at 61 (identifying the client computer as a "customer" computer).  As above, this element is unquestionably satisfied by the customer, not Newegg.  Indeed, it cannot reasonably be argued that Newegg itself satisfies the limitation of a "buyer computer for operation by a user desiring to buy products."  Newegg does not provide computers to the buyers.  Since Newegg does not practice this element, infringement cannot be found as a matter of law under the all-elements rule.  *Warner-Jenkinson*, 520 U.S. at 40; *BMC*, 498 F.3d at 1380.

---

17[f] "the buyer computer being programmed"

17[f] "a plurality of requests from a user to add a plurality of respective products to a shopping cart"

17[j] "the buyer computer being programmed to receive a request from the user to purchase the plurality of products added to the shopping cart"

Consequently, because this system claim requires the participation of two parties, it cannot be infringed by Newegg as described herein in the discussion of claim 34 of the '314 patent.

  As to the additional limitations of claim 17, one has been designated as 17[g] and includes the limitation "to send a plurality of respective shopping cart messages over the network to the shopping cart computer." Dr. Grimes testified that this limitation is met when the buyer requests to add products to a shopping cart and the buyer's computer sends a shopping cart message to Newegg. But that is just another example of a limitation is met by the buyer and the buyer computer.  Infringement cannot exist because this additional limitation is likewise not performed by Newegg.

Dr. Grimes testified that Newegg "uses" a system that includes the client computer when Newegg's server system and a customer computer are interconnected by the Internet.  Dr. Grimes has similarly testified that customers "use" that system as well.  As a matter of law, however, the interconnection across the Internet of two systems – each of which is wholly-owned, possessed, and operated by legally distinct entities – does not create a new "system" (such that either entity can be said to have "used" the entirety of the system for purposes of imposing infringement liability) ***merely because the two systems can communicate back and forth subject to an industry-standard protocol (here, http)***.  The Federal Circuit has never endorsed such a far-reaching and incredible proposition of infringement liability, and such a theory is invalid as a matter of law because it violates the all-elements rule and because such networked communications between distinct entities does not by itself create any basis for imposing vicarious liability, even assuming any such an exception to the all-elements rule could be applied to system claims.

*     *     *

Although the "buyer computer" limitation is alone sufficient to preclude a finding of infringement, Newegg also does not practice additional elements of this claim.  Specifically, for the asserted system or method claims requiring some action by the client or buyer computer, there is no legally sufficient evidence and no evidence from which a reasonable juror could find that Newegg controls that action of the client or buyer computer in a manner sufficient to meet the Federal Circuit's "control or direction" standard.  For this reason, the Court should grant judgment as a matter of law of no literal infringement as to claim 34 (limitation 34[f]), which further requires "a plurality of requests from a user to add a plurality of respective products."  Dr. Grimes testified that this is met when the user requests to add products to the shopping cart by clicking an "ADD TO CART" button.  But this "clicking" is again an action of the user, not Newegg.  Tr. 4/27/10 AM at 23-25.

Claim 34 (limitation 34[g]) of the '314 patent also includes the limitation "to send a plurality of respective shopping cart messages to said shopping cart computer."  Dr. Grimes testified that Newegg satisfies this claim element when a customer clicks an "ADD TO CART" or "DOWNLOAD" button and the buyer computer sends a message to one of Newegg's SSL servers.  Tr. 4/26/10 at 86-87; *see also id.* at 76 (explaining that "ADD TO CART" and "DOWNLOAD" buttons are functionally identical).  But it cannot reasonably be disputed that it is the Newegg customer (via his or her "clicks"), not Newegg, that "sends a plurality of respective shopping cart messages" to the shopping cart computer.  Again, because the Newegg buyer/customer satisfies this claim limitation, infringement cannot exist.

Claim 34 (limitation 34[j]) requires the "buyer computer being programmed to receive a request from said user to purchase said plurality of products added to said shopping cart."  Again, the claim requires the buyer/user to send a request to purchase the plurality of products to his or her computer.  But Newegg does not program the user's computer to receive requests from the user because that functionality is part of the pre-installed browser, as Ed Tittel testified.

The Court should grant judgment as a matter of law of no literal infringement of claim 41 of the '492 patent, which requires "a statement URL sent by the client computer" for the same reasons: namely, the buyer/customer computer satisfies this requirement, not Newegg.

Likewise, the Court should grant judgment as a matter of law of no literal infringement of claim 1 of the '639 patent, which requires "communications between the client and server system are according to [http]" (in 1[b]); "client storing the session identifier" (in 1[c]); and the client computer "appending the stored session identifier" (in 1[d]).[6]   Claim 1 cannot be infringed by Newegg because Newegg does not perform every step in the claimed method.  *BMC*, 498 F.3d at 1378-79.  In particular, limitation 1[a] of this claim requires "processing service requests from a

---

[6] For the same reason, the Court should grant judgment as a matter of law of no literal infringement of claim 60 of the '639 patent, which requires "a purchase request" from the client computer (in 60[a]).

client to a server system." As to that, Dr. Grimes testified that client computers send service requests to Newegg over the Internet. Tr. 4/26/10 PM at 142-43. But that is a step performed by the client, not Newegg.

Limitation 1[c] of this claim includes "the client storing the session identifier for use in subsequent distinct requests to the server system." Dr. Grimes claims this limitation is satisfied because the client computer stores the cookie. Tr. 4/26/10 PM at 147-48. This element is thus satisfied by the "client computer," not Newegg. Tr. 4/27/10 AM at 58-59

For the same reason, the Court should grant judgment as a matter of law of no literal infringement of claim 78 of the '639 patent, which requires (1) a "session identifier stored at the client" (78[b]) and that the session identifier "has been appended by the client" (78[b]); (2) that the client use http to communicate with the server system; and (3) "storage by the client." In each case, claim 78 requires action by the client computer. Claim 78 (limitation 78[a]) requires "processing…service requests from a client to the server system through a network." As with claim 1, this claim requires the participation of a client (buyer/customer) and server system (Newegg). In particular, as Dr. Grimes testified, there must be a service request from a client. Tr. 4/27/10 AM at 61.

Claim 78 (limitation 78[b]) requires "a service request to which a session identifier stored at the client has been appended by the client." This likewise requires an action by the client via the "client computer," as Dr. Grimes testified. Tr. 4/27/10 AM at 61-62.

As in *Global Patent Holdings*, claims 1 and 78 of the '639 patent require an action by the remote computer user or client. If no user/client visited the Newegg website, these claim limitations cannot be satisfied. *Global Patent Holdings*, 586 F.Supp. at 1335. Moreover, as in *MuniAuction,* various portions of the claims are performed by the client (*e.g.*, storing the session identifier at the client). Under *Global Patent Holdings*, even if such actions were based on html or http code from Newegg, the mere provision of such code or other instructions does not obviate

11

the fact that the actions themselves are ultimately performed by the customer and/or customer computer. *Id.* As since, since Newegg does not perform every element of claims 1 and 78, it cannot be held to infringe under the all-elements rule absent proof that Newegg "controls or directs" the actions of its customers under the standard described above. *MuniAuction*, 532 F.3d at 1329. But as to that, Newegg's customers are not required to visit Newegg's website, they are not Newegg's agents, and Newegg could not be vicariously liable for their actions, let alone by the mere provision (at most) of any instructions.

In particular, there is no record evidence that customers are agents of Newegg – or vice versa – with respect to either the operation of the Newegg website or of any customer computer. Nor is there any record evidence that Newegg has entered any contractual relationship with any customer concerning the operation of the Newegg website or of any customer computer. As such, and as a matter of law, there is no record basis to find that Newegg satisfies the Federal Circuit's control or direction standard with respect to any limitation performed by a customer or customer computer. For these reasons, infringement of claims 1 and 78 of the '639 patent cannot exist as a matter of law. *Id.* at 1330; *Global Patent Holdings*, 586 F.Supp.2d at 1331.

The Court should also grant judgment as a matter of law of no literal infringement of claim 60 of the '639 patent, which requires "fulfilling the purchase request based on the user information" (60[d]). At trial, the only evidence introduced on this point was by Dr. Grimes, to the effect that this limitation is met by a third-party delivery service like DHL, but there was no legally sufficient evidence or evidence from which a reasonable person could conclude that Newegg meets this limitation or otherwise controls a third-party so as to meet the Federal Circuit's "control or direction" standard.

For claim 60 of the '492 patent, the Court should grant judgment as a matter of law of no literal infringement. This claim requires that "the statement document includes information on transactions by the user that took place in a given month." At trial, however, the only evidence

introduced was from Dr. Grimes that a customer would have to set a particular month in order to produce such a statement document.  *See* Tr. 4/26/10 PM at 124.  There was no legally sufficient evidence and no evidence from which a reasonable juror could conclude that Newegg defines that time period for the customer or otherwise controls any customer in doing so, as to meet the Federal Circuit's "control or direction" standard described above.

As discussed in the next section regarding programming, Newegg does not "program" the client computer as required by Claim 34 (limitation 34[f]) of the '314 patent: "said buyer computer being programmed to receive a plurality of requests from a user to add a plurality of respective products to a shopping cart."  More fundamentally, even if Newegg's server system were erroneously said to "program" a customer computer through the provision of software programming, that still would be legally insufficient to establish infringement because the mere provision of instructions to a separate legal entity does not satisfy the "control or direction" standard.  *See, e.g.*, *Global Patent Holdings*, 586 F.Supp.2d at 1335 (providing software with which a customer can practice the claim limitation does not constitute direction or control).

Similarly, Claim 15 (limitation 15[f]) of the '492 patent requires "the client computer being programmed to display the statement document."  As explained above, Newegg does not program the user's computer.  *See Global Patent Holdings*, 586 F.Supp.2d at 1335.  This limitation further requires "a request from the client user to display transaction details corresponding to a portion of the statement document displayed by the client computer."  Dr. Grimes testified that this limitation is satisfied by a customer or customer computer when the customer clicks on certain links.  Tr. 4/26/10 PM at 118-20.  As such, this claim is like the system claim analyzed by Judge Ward in *Golden Hour* in that the claim requires instrumentalities of two separate entities.  Here, the claim requires "a client computer for operation by a client user."  As Newegg does not supply the client computer or control the client, Newegg cannot infringe this claim.  As in *Global Patent Holdings*, the present claim requires a remote computer user and

13

cannot be infringed unless this third party visits the Newegg website.  Indeed, the accused system **does not even exist** without the initial participation of the third party customer, which Dr. Grimes admitted is the result not of Newegg but of a customer's own free will.  Tr. 4/27/10 AM at 14-15. For these reasons, infringement cannot exist.  *Global Patent Holdings*, 586 F.Supp.2d at 1335.

Claim 15 of the '492 patent also requires the "client computer being programmed" and "a request from the client user to display transaction detail."  For the same reasons given above, Newegg likewise does not satisfy these elements, and infringement cannot exist.  *MuniAuction*, 532 F.3d at 1329;  *Emtel*, 583 F.Supp.2d at 830-31.

*        *        *

In summary, under *MuniAuction, Inc. v. Thomson Corporation*, 532 F.3d 1318 (Fed. Cir 2008), and the cases cited in the Standards for Infringement (Divided Infringement) section of this motion, infringement of a method or process claim requires that a single defendant practice each and every element of a claimed invention, or that the defendant control or direct the entire process or method such that every step is attributed to the defendant.  Here, each of the asserted method claims includes elements that must be satisfied by multiple parties, including at least a customer and a merchant.  The arms length purchase transactions between Newegg and its customers and/or third parties like DHL (which do not even concern the operation of Newegg's website) simply cannot be found to satisfy the Federal Circuit's "control or direction" standard in *MuniAuction* either for the asserted method claims or even for the asserted system claims (assuming for the sake of argument only that the "control or direction" standard can be used as an exception to the all-elements rule for system claims).  For these reasons, Newegg cannot infringe the asserted claims of the patents-in-suit as a matter of law.[7]

---

[7] *See also Desenberg v. Google, Inc.*, No. 09-cv-10121, 2009 WL 2337211(S.D.N.Y. July 30, 2009) (under *MuniAuction*, Internet transaction claims could not be infringed by Google where elements were satisfied by users); *Akamai Technologies, Inc. v. Limelight Networks, Inc*., 614 F.Supp.2d 90 (D. Mass. 2009) (under *MuniAuction*, Internet transactions claims could not be infringed where defendant's customers modify

14

### B.    No Literal Infringement – Programming Limitations

As Ed Tittel testified, to satisfy the limitation of the buyer computer "being programmed," the buyer computer must have an acceptable browser program installed thereon.  There is no evidence that Newegg installs browsers on its customers' computers.  Moreover, as Ed Tittel testified, the provision of a web page or html to a buyer computer by Newegg cannot constitute programming the buyer computer.  As such, the Court should grant judgment as a matter of law of no literal infringement for asserted claims requiring the buyer or client computer to be "programmed" in some fashion, as there was no legally sufficient evidence and no evidence from which a reasonable person could conclude that Newegg programs those computers.  Thus, the Court should grant judgment as a matter of law of no literal infringement of claim 34 of the '314 patent, which requires "said buyer computer being programmed" (34[f]); claim 15 of the '492 patent, which requires "the client computer being programmed" (15[f]); and claim 17 of the '492 patent, which twice requires "the buyer computer being programmed."

### C.    No Literal infringement – Modification Limitations

The Court should grant judgment as a matter of law of no literal infringement for asserted claims requiring a shopping cart computer to modify "said stored representations of collections of products in said database" or to modify "the shopping cart in the shopping cart database," as there was no legally sufficient evidence and no evidence from which a reasonable person could conclude that any shopping cart computer performs such a modification in accordance with the Court's claim construction.  Rather, as shown by the testimony of James Wu and Ed Tittel, the database operations of the Newegg server system never modify or change any stored representation of any collection of products and never modify or change any shopping cart in any shopping cart database.

---

embedded objects of their web pages pursuant to defendant's instructions).

Likewise, when customers add an item to a shopping cart, this generates no request to put any item in any shopping cart in a shopping cart database.  Rather, product information concerning the item is put in a cookie, which is not a shopping cart database.  Conversely, when customer chooses to checkout (and product information for the entire shopping cart is inserted into the database), there is at that time no request to put any item in a shopping cart, as Dr. Grimes acknowledged.  Tr. 4/27/10 AM at 28-30.  This is because no additional item is being added to any shopping cart (or cookie) by the checkout process itself.

More generally speaking, and as confirmed by the testimony of James Wu and Ed Tittel, although Newegg's system inserts and/or deletes records in the relevant database, it does not modify or change individual records.[8]

Thus, the Court should grant judgment as a matter of law of no literal infringement for (1) claim 34 of the '314 patent, which requires "said shopping cart computer [to be] a computer that modifies said stored representations of collections of products in said database" (34[m]) and (2) claim 17 of the '492 patent, which requires the accused system "to modify the shopping cart in the shopping cart database to reflect the plurality of requests to add the plurality of products to the shopping cart"  and also requires "the shopping cart computer [to be] a computer that modifies the stored representations of collections of products in the database."

### D. No Literal Infringement – "plurality of requests . . . to add a plurality of respective products to a shopping cart in . . . [said or the] shopping cart database"

The Court should grant judgment as a matter of law of no literal infringement for asserted claims requiring the accused system to "receive a plurality of requests from a user to add a plurality of respective products to a shopping cart in said shopping cart database" (claim 34[f] of the '314 patent) or "to receive a plurality of requests from a user to add a plurality of respective

---

[8] Indeed, as explained by James Wu and Ed Tittel, the Newegg server system cannot reasonably be said to modify or change the shopping cart database when it inserts or deletes a record in that database because such operations are not properly understood as changes.

products to a shopping cart in the shopping cart database" (claim 17 of the '492 patent).    In each case, there was no legally sufficient evidence and no evidence from which a reasonable person could conclude that Newegg satisfies these limitations.    In particular, the evidence from Dr. Grimes was that Newegg's system puts product information into a Newegg database only when a customer chooses the checkout option.    However, Dr. Grimes also testified the checkout option is not a request to add any product to any shopping cart.  Tr. 4/27/10 AM at 28-30.  In addition, the uncontroverted evidence was that the Newegg system does not add product information to any shopping cart database in response to any customer request to add any product to any shopping cart.  Rather, product information for a customer shopping cart is solely stored in a cookie in response to such requests.

Separately, and as a matter of law, Soverain's theory that Newegg's server system satisfies this limitation by moving all shopping cart product information "en masse" from a cookie to a shopping cart database is infirm because it reads the "respective" limitations out of these claims. Put another way, the repeated use of the word "respective" in these claims requires an infringing system to add products *one at a time* to a shopping cart in a shopping cart database and thus cannot be satisfied by Newegg's substantially and undeniably different method of operation, which works "en masse" as described above.

For these reasons, the Court should grant judgment as a matter of law of no literal infringement of claim 34 of the '314 patent and claim 17 of the '492 patent.

## V.    Argument – No Infringement under Doctrine of Equivalents

The Court should grant judgment as a matter of law of no infringement by equivalents for asserted claims requiring the accused system to "receive a plurality of requests from a user to add a plurality of respective products to a shopping cart in said shopping cart database" (claim 34[f] of the '314 patent) or "to receive a plurality of requests from a user to add a plurality of respective products to a shopping cart in the shopping cart database" (claim 17 of the '492 patent).  In each

case, there was no legally sufficient evidence and no evidence from which a reasonable person could conclude that Newegg satisfies these limitations under the doctrine of equivalents. Although Dr. Grimes testified that the Newegg system satisfies the "plurality of requests . . ." limitations in these claims under the doctrine of equivalents, no reasonable juror could accept that opinion because other uncontroverted testimony demonstrated that the Newegg way of adding the entire contents of the cookie to the database in one action is substantially different than the way required by these patent limitations.  In particular, as Dr. Grimes admitted and testimony by James Wu and/or Ed Tittel confirmed, Newegg's way has both substantial benefits (using less database space and less time) and costs (inability of customers to continue a shopping session at a different computer) compared to the way required by the patent limitations. Tr. 4/27/10 at 39-42.

Likewise, although Soverain has argued that Newegg's system satisfies the "modification" limitations under the doctrine of equivalents, such a position is unreasonable for the same reasons: by putting shopping cart product information into a database once a cart is "full" (rather than by modifying a cart in a database on an item-by-item basis), Newegg gains the aforementioned and substantial efficiency benefits not otherwise possible by the technology claimed in the shopping cart patents.

For these reasons, the Court should grant judgment as a matter of law of no infringement by equivalents of claim 34 of the '314 patent and claim 17 of the '492 patent.

## VI.    Argument – No Indirect Infringement

Soverain contends that Newegg encourages its customers to infringe, but there is no legally sufficient and no evidence from which a reasonable person could conclude that any customer satisfies all limitations of any asserted claim.

In particular, for the asserted system claims requiring a buyer or client computer (claim 34 of the '314 patent and claims 15 and 17 of the '492 patent), there is no such evidence that any customer owns or supplies any structure to the accused system other than the buyer or client

computer.

Likewise, for the asserted claims requiring action to be taken by the client or buyer computer (discussed in Part IV.A above), there is no such evidence that any customer controls any actions in any accused method or system other than actions taken by the client or buyer computer.

And for the same reasons provided above in Part IV.A, there is no cognizable legal basis to hold that customers or customer computers "use" any accused system simply because their computers may interconnect with the Newegg server system through the Internet.

For these reasons, the Court should grant judgment as a matter of law of no direct infringement by Newegg customers of claim 34 of the '314 patent; claims 15, 17, 41, and 60 of the '492 patent; and claims 1, 60, and 78 of the '639 patent.   In turn, the Court should grant judgment as a matter of law of no indirect infringement by Newegg of any of these asserted claims.   *See BMC Resources Inc.*, 498 F.3d at 1379.

**VII.    Conclusion**

For the foregoing reasons, Newegg asks the Court to render judgment as a matter of law in its favor of non-infringement.

Respectfully submitted,

Dated: April 29, 2010                    By:      /s/Mark D. Strachan_____
Mark D. Strachan
Texas State Bar No. 19351500
Richard A. Sayles
Texas State Bar No. 17697500
SAYLES | WERBNER
1201 Elm Street
4400 Renaissance Tower
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787

David C. Hanson
Kent E. Baldauf, Jr.
Daniel H. Brean
THE WEBB LAW FIRM
700 Koppers Building

19

436 Seventh Avenue
Pittsburgh, PA 15219
T:  (412) 471-8815
F:  (412) 471-4094

Trey Yarbrough
Texas Bar No. 22133500
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

Attorneys for Defendant Newegg Inc.

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being hereby served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 29, 2010, or will be served via electronic mail.  All other counsel of record will be served via facsimile or first class mail.

        /s/ Mark Strachan
        Mark Strachan