IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SOVERAIN SOFTWARE LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CDW CORPORATION, NEWEGG ) <br> INC., REDCATS USA, INC., ) <br> SYSTEMAX INC., ZAPPOS.COM, ) <br> INC., REDCATS USA, L.P., THE ) <br> SPORTSMAN'S GUIDE, INC., and ) <br> TIGERDIRECT, INC., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 6:07-CV-00511-LED |

**Newegg's Rule 50(a) Motion for Judgment as a Matter of Law on Damages**

Defendant, Newegg, Inc. moves for judgment as a matter of law (JMOL) on damages under Fed. R. Civ. P. Rule 50(a). Soverain Software LLC ("Soverain" or "Plaintiff") has failed to present any evidence that could support a jury's finding that the royalty Soverain has requested would be reasonable.[1] Soverain's damages are premised on misapplied or erroneous legal theories and do not conform to the Federal Circuit's legal proof requirements. Accordingly, a jury award of the royalty Soverain has requested would be legally infirm, based on improper and irrelevant evidence, and excessive as a matter of law. Therefore, the Court should rule that Soverain is not entitled to such damages as a matter of law.[2]

---

[1] The testimony cited or described herein is exemplary only since the majority was unavailable by transcript for preparing this motion given the Court's schedule, which had the parties close evidence, rest, and argue the charge on April 29, 2010 before submitting the case to the jury April 30, 2010. When Newegg files any Rule 50(b) motions, it will supplement the cited/described testimony herein, as appropriate, and correct any inadvertent citation or other errors that may have arisen.

[2] Newegg renews its objections to Soverain's evidence and expert testimony raised in (1)

Instead, the highest possible amount that the jury could properly award based on the relevant evidence using valid legal theories and conforming to the legal proof requirements is $500,000, as testified to by Newegg's expert Chris Bakewell. Accordingly, Newegg is also entitled to judgment as a matter of law that the total damages may not exceed $500,000.

## I.     The JMOL Standard

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may determine the issue against that party; and may grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue." FED. R. CIV. P. 50(a); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-50 (2000); *Adams v. Groesbeck I.S.D.*, 475 F.3d 688 (5th Cir. 2007); *Bryant v. Compass Group USA Inc.*, 413 F.3d 471 (5th Cir. 2005).[3]

---

Newegg's Daubert Motion and Supporting Brief to Exclude Opinions of James Nawrocki, (Docket No. 252); (2) Newegg's Motion in Limine to Preclude Evidence or Reference to (a) Newegg's total sales revenue and profits (Docket No. 306, I) (objections to which were made by Newegg and overruled at trial) and (b) licenses or licenses of the patents-in-suit, where such licenses were entered into in settlement of litigation (Docket No. 306, II) (objections to which were made by Newegg and overruled at trial); (3) Newegg's Oral Motion to Strike Testimony of James Nawrocki on April 27, 2010; and (4) Newegg's objections to Nawrocki's demonstrative exhibits to the extent they included sales volumes and revenues beyond the hypothetical negotiation generally, and in particular regarding those that were not within the damages period. The evidence referred to in this footnote to which Newegg objected should not be considered by the Court in analyzing the sufficiency of the evidence supporting Soverain's damages because it does not satisfy the Fifth Circuit's requirements for "substantial evidence," discussed herein.

[3] Rule 50 motions are governed by "the law of the regional circuit where the appeal from the district court normally would lie." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1346 (Fed. Cir. 2007). Accordingly, the law of the Fifth Circuit applies to the "evidentiary" principles governing judgment as a matter of law under Rule 50. *Id.*

Under the law of the Fifth Circuit, entry of a judgment as a matter of law is appropriate if evidence supporting the movant is "uncontradicted and unimpeached [or] if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that [a] reasonable [jury] could not arrive at a contrary verdict." *Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 420 (5th Cir. 2003). In resolving a JMOL motion, the court "must first excise inadmissible evidence." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 193 (5th Cir. 2006). Inferences that are "mere speculation and conjecture" are "not sufficient to support a jury's verdict." *Guile v. United States*, 422 F.3d 221, 225 (5th Cir. 2005) (internal quotation marks omitted). Conclusory expert testimony does not qualify as substantial evidence. *Iovate Health Sciences, Inc. v. Vio-Engineered Supplements & Nutrition, Inc.*, 586 F.3d 1376, 1381-82 (Fed. Cir. 2009) (applying Fifth Circuit law). Similarly, "when an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993); *accord*, *Guile*, 422 F.3d at 227 ("contradictions" in expert's testimony "coupled with the lack of support for the statements take them out of the realm of substantive evidence"); *Smith v. Louisville Ladder Co.*, 237 F.3d 515, 519-21 (5th Cir. 2001) (failure of expert witness to support proof of necessary case elements warrants judgment as a matter of law).

## II.   Reasonable Royalty Patent Damages

The damages Soverain seeks are in the form of a reasonable royalty. Under 35 U.S.C. § 284, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Any hypothetical negotiation analysis in determining a reasonable royalty must be based on "sound

economic and factual predicates." *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302l 1311 (Fed. Cir. 2002).

Under Federal Circuit precedent, discussed below, to support a reasonably royalty damages award, the evidence must explain the relative value of the patented technology to the licensed products. Similarities between the agreements in evidence and the hypothetical licensing negotiation under consideration, whether in the technology licensed or the licensing negotiation itself, must be established for the evidence to be probative. "[S]ome basis for comparison between the type of license agreement relied upon and the type of royalty damages sought must exist in the evidence presented to the jury." *Lucent Technologies Inc. v. Gateway Inc.*, 580 F.3d 1301, 1317, 1324 (Fed. Cir. 2009).

The appropriate damages analysis must include "well-documented economic evidence [that is] closely tied to the scope of the claimed invention." *Cornell University v. Hewlett-Packard Co.,* 609 F. Supp. 2d 279, 283 (N.D.N.Y. 2009) (granting JMOL for defendant and decreasing damages awarded by jury over 70%). There must be a clearly established and economically justified nexus between the value of the particular patented technology and the alleged damages suffered by the patentee. *ResQNet.Com, Inc. v. Lansa Inc.*, 594 F.3d 860 (Fed. Cir. 2010) ("[A] reasonable royalty analysis requires a court to hypothesize, not to speculate . . . [T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place.").

When a patented product is sold or used along with another distinct product, damages liability for patent infringement does not extend to "items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage. . . ." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d

4

1538, 1549-50 (Fed. Cir. 1995). This is because "there is no basis for extending that recovery to include damage for items that are neither competitive with nor function with the patented invention." *Id.* at 1551. Thus, if the damages are sought under the entire market value rule, the evidence must show that the patented invention was "of such paramount importance that is substantially created the value of the [other product(s)]," *id.* at 1549, or constitutes the basis for consumer demand of those products. *Id; see also Lucent*, 580 F.3d at 1337. The royalty base must also be appropriately chosen to reflect "the smallest salable infringing unit with close relation to the claimed invention." *Cornell*, 609 F. Supp 2d at 288.

### IV.   Soverain's Damages Claims

Soverain contends that newegg.com and newegg.ca infringe claims 35 and 51 of the '314 patent; claims 17, 41, and 61 of the '492 patent; and claims 60 and 79 of the '639 patent. Soverain also contends that neweggmall.com infringes claim 34 of the '314 patent; claim 15 of the '492 patent; and claims 1 and 78 of the '639 patent. Finally, Soverain contends that it should be awarded a royalty of $0.80 per transaction for infringement of the '314 and/or '492 patents during the damages period and $0.40 per transaction for infringement of the '639 patent during the damages period, with that period running from November 2, 2007 through trial.

### V.   Argument

Newegg is entitled to judgment that Soverain is not entitled to damages as a matter of law and that any damages awarded cannot be in excess of $500,000 as a matter of law for the following reasons:

*Damages Unsupported by Evidence, Contrary to Law, and Excessive.* Soverain presented no evidence that $0.80 per transaction for infringement of the '314 and/or '492 patents or $0.40 per transaction for infringement of the '639 patent would be a reasonable royalty in this

5

case. Instead, the evidence presented suggests that Soverain's claimed royalties are excessive, contrary to economic and factual predicates, and inconsistent with the legal strictures of Federal Circuit precedent. Even Soverain's expert admitted that $1.20 royalty per transaction is 40% of Newegg's expected profit of $3 per transaction. Tr. 4/27/10 PM at 160:15-19; *id*. at 162:4-19.

*Entire Market Value Rule:* Soverain's reasonable royalty calculation is based on the value of the products sold on Newegg's website and Newegg's profits therefrom, not on the value that is attributable to the patented technology. Such a damages calculation is legally impermissible absent proof that the claimed invention constitutes the basis for customer demand for those products. Neither of these elements has been established by Soverain.

Nawrocki's royalty base and rate. Soverain's expert, James Nawrocki ("Nawrocki") used as his royalty base the entire amount of Newegg's sales during the damages period of products ranging from computer hard drives and cables to monitors and cameras – totaling some 28,316,504 transactions. He attributed to each sale an average price of $200 per transaction and assumed a profit margin in the range of 1.5-3% per sale. He then applied as his royalty rate a 25-33% "rule of thumb" to Newegg's total online sales profits during the damages period. That rate was then applied to the entire market value of Newegg's sales even though there was (1) no evidence that claimed inventions drove customer demand for those sales, and (2) no evidence that Newegg's entire profit was traceable to the claimed inventions.

Nawrocki's damages opinion is based on the entire market value rule. Although Soverain disputes it, there can be no doubt that Nawrocki is using the entire market value rule in computing damages. Nawrocki's proposed reasonable royalty is based on the total profits earned by Newegg through the sales of products on the Newegg website during the damages period. As required by the entire market value rule, however, Nawrocki made no economic analysis or

6

otherwise attempted to determine whether and to what extent Newegg's online sales profit is attributable to the patented technology versus other factors. *See, e.g.,* Tr. 4/27/10 PM at 156:23-159:16; 163: 8-19 (Nawrocki testimony) (admitting failure to perform economic analysis of the relative contribution of factors to Newegg's business success). As subsequently discussed, this fatal flaw in his opinion alone renders Nawrocki's damages opinion unreliable, unsupported by substantial evidence, legally infirm and excessive. In fact, Nawrocki admitted this flaw in agreeing that if his assumption that the technology embodied in the patents is integral, critical, or fundamental to Newegg's business turns out to be wrong, then his opinion of damages is incorrect. Tr. 4/27/10 PM at 163:8-19.

That Soverain disputes that its expert is using the entire market value rule is of no moment. Indeed, the *Lucent* court cautioned against Soverain's type of approach to patent damages. *See Lucent*, 580 F.3d at 1338 (rejecting expert's attempt to manipulate royalty base and royalty rate to achieve an entire market value measure of damages under the guise of simply proffering a heightened royalty rate).

<u>Damages based on the entire market value rule are not legally or factually sustainable in this case.</u> Nawrocki's use of the total online sales profit is unreliable, and thus tantamount to no evidence, independently devoid of evidentiary support, legally erroneous, and renders his damages amounts excessive. The evidence established that Newegg's profit reflects and includes the value and price of the electronics and other products sold on the Newegg website, the Newegg brand and reputation, and Newegg's fast shipping and award-winning customer service, among many other factors in addition to its shopping cart and session ID technology, which Soverain accuses in this case. This was shown by Nawrocki's testimony (see Tr. 4/27/10 PM, at 156:23-159:16) (admitting that a variety of factors other than the claimed inventions

7

contributed to Newegg's success but that he had not attempted to independently quantify their contribution) and supported by Lee Cheng's and Chris Bakewell's testimony, transcripts of which were not available at the time of preparing and/or filing this Motion.  Mr. Cheng testified about Newegg's history and success as a company, its sixteen core values, as well as its low profit margins and the factors that drive customers to Newegg, none of which include the alleged infringing technology.  Mr. Bakewell testified about damages, including the results of actual Newegg customer surveys indicating the main factors driving shoppers to Newegg, none of which included the accused instrumentalities.

Where a patented product is sold or used along with another distinct product, damages liability for patent infringement does not extend to "items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage . . . ."  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995).  This is because "there is no basis for extending that recovery to include damages for items that are neither competitive with nor function with the patented invention."  *Id.* at 1551.  In other words, damages for patent infringement are limited to those that can be tied to the patented subject matter.  *Id.* at 1549.  It is only in specific circumstances that the entire market rule may be properly invoked, namely, only if the patented component is "of such paramount importance that it substantially created the value of the [other product(s)]," or constitutes "the basis for customer demand" of those products.  *Id.*

The Federal Circuit has strongly cautioned district courts that there must be a clearly established and economically justified nexus between the value of the particular patented technology and the alleged damages suffered by the patentee.  *See ResQNet.com, Inc. v. Lansa, Inc.*, 2010 U.S. App. LEXIS 2453, at *19 (Fed. Cir. Feb. 5, 2010) ("[A] reasonable royalty

8

analysis requires a court to hypothesize, not to speculate. . . . [T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place."); *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1338 (Fed. Cir. 2009) (rejecting expert's proferred royalty because the evidence showed that patented software feature was not the reason that consumers purchased the entire accused software product).

Newegg's business involves operating websites that re-sell products such as computers and other electronics. The subject matter of the patents-in-suit simply provides functionality by which certain particular aspects of the overall shopping experience on Newegg's website may be effectuated. Specifically, the patents encompass technology including shopping cart functionality (*i.e.*, generally allowing users to select and gather various different items while shopping, to later be purchased all as a single transaction) and session identification (*i.e.*, generally storing personal and shopping-related information so that the website can identify, group, and organize records of the user's activity on the website). Newegg, not being a software company or competitor of Soverain's, does not sell the software technology covered by the patents-in-suit. Tr. 4/27/10 PM at 163:20-24, 165:5-11. Rather, Newegg at most allegedly uses the patented software technology as one small part of its overall websites.

The evidence shows that Newegg's products bear no functional relationship to the patented inventions. All things being equal, a product purchased via www.Newegg.com is the same if it is purchased via www.Amazon.com, and is also same if it is purchased at a brick and mortar store location such as Best Buy. The end product is completely unaffected by the manner in which or vendor from which it is purchased. Newegg's use or non-use of the patented technology has no impact on the products it sells. The products sold by Newegg therefore "have essentially no functional relationship to the patented invention," and cannot be used as a basis for

damages. *Rite-Hite*, 56 F.3d at 1549. At most, the patented technology is used by Newegg "only as a matter of convenience or business advantage" when selling products online. *Rite-Hite*, 56 F.3d at 1550.

In *Lucent*, the Federal Circuit rejected an expert's basing damages on the sale of Microsoft Outlook as a whole because "there was no 'evidence that anybody anywhere at any time ever bought Outlook . . . because it had [the patented] date picker.' " 580 F.3d at 1337-38. Likewise, Soverain introduced no evidence that "anybody anywhere at any time ever [shopped on Newegg's websites] . . . because it [has a shopping cart and method for tracking sessions]." In *Lucent* the patented software was "but a tiny feature of one part of a much larger software program" and the court found it "inconceivable to conclude, based on the present record, that the use of one small feature, the date-picker, constitutes a substantial portion of the value of Outlook." *Id* at 1332-33. The court further noted that Outlook contains millions of lines of code, "only a tiny fraction of which encodes the date-picker feature". Accordingly, the court concluded the patented software was a "minor aspect of a much larger software program," which had a negligible effect on the demand for Outlook, and any profit attributable to the patented software was deemed to be "exceedingly small." *Id.* at 1333.

The facts in the present case are very similar to those in *Lucent.* The patented shopping cart and session ID technology form only a small part of the extensive functionality and capability of Newegg's website. Indeed, James Wu, Newegg's Chief Technology Officer, testified that the portions of the Newegg website relating to the shopping cart and session ID functionality constitute less than 1% of the total lines of the code Newegg independently developed for its website. (Transcript unavailable at time of writing.) The portion of Newegg's profit attributable to the patented inventions, if any, is at most exceedingly small.

Soverain introduced no evidence or testimony at trial tending to show that the patented technology drives demand for the products Newegg sells on its website. Nothing in the evidence supports such a showing. Indeed, the evidence shows the opposite. In any case, Soverain has taken the position that it need not provide <u>any</u> evidence that the patented technology drives demand for Newegg's products. Dkt. No. 264, at p. 4, FN 3. Accordingly, Soverain cannot as a matter of law base its damages on Newegg's total sales profits.

Further, when evaluating damages for patent infringement, the Federal Circuit has been clear that expert testimony "requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture." *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999); *see also ResQNet.com, Inc.*, 2010 U.S. App. LEXIS 2453, at *19 ("[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place."). "[A] reasonable royalty analysis requires a court to hypothesize, not to speculate. . . ." *ResQNet.com, Inc.*, 2010 U.S. App. LEXIS 2453, at *19 (citing *Grain Processing Corp.*, 185 F.3d at 1350 (explaining that courts must "prevent the hypothetical from lapsing into pure speculation" when evaluating damages claims).

Although Nawrocki claimed to have considered the contributions made by Newegg apart from the patented technology in providing its e-commerce technology platform, he admitted that he made no attempts whatsoever to quantify the value of Newegg's contributions when arriving at his precise royalty rate of $1.20 per transaction. *See* Tr. 4/27/10 PM, at 156:23-159:16.

Because Nawrocki made no attempt to quantify and apportion the value of the patented technology in light of Newegg's overall website, his opinion of an appropriate royalty rate goes far beyond the hypothetical and amounts to nothing more than "pure speculation." *Grain*

11

*Processing Corp.*, 185 F.3d at 1350. As a matter of law, because Nawrocki has not demonstrated via "sound economic proof" that the patented technology drives demand for Newegg's website, and because has did not sufficiently support his supposed apportionment analysis, Soverain's damages may not be based on Newegg's total profits. *Grain Processing Corp.*, 185 F.3d at 1350; *Rite-Hite*, 56 F.3d at 1549.

*Damages not apportioned: '314 Patent.* Soverain's damages are infirm and cannot support a verdict based on the asserted claims of the '314 patent because Nawrocki admits that he failed to apportion, account for, or otherwise exclude single-item orders from his royalty base, Tr. 4/27/10 PM at 154:1-12, which by the admission of Soverain's infringement expert, Dr. Grimes, are non-infringing:

> "Q. Do you agree that a plurality means more than one?
>
> A. It means two or more, that's correct, yes.
>
> Q. So is this limitation [from claim 34 of the '314 patent] satisfied if the customer only puts a single item in the shopping cart and then checks out?
>
> A. No, the claim language is very clear. It has to be programmed to receive a plurality of requests from the user.
>
> Q. So to –
>
> A. So there has to be – the structure has to contain the ability for the user to make multiple requests.
>
> Q. So to satisfy the system in this claim the user has to put multiple items in the shopping cart?
>
> A. That's what I – that's the evidence I put forward, yes."

(Grimes' testimony, April 27, 2010, p.25, ll. 2-18). Newegg's damages expert, Mr. Bakewell

12

testified that he examined Newegg's sales records and concluded that two-thirds of the sales included in Nawrocki's royalty base were single sales. At a minimum, thus, Nawrocki's royalty base for damages for infringement of the '314 patent must be reduced by two-thirds.

*Damages not apportioned: '492 Patent.* Soverain's damages are infirm and cannot support a verdict based on the asserted hypertext statement claims of the '492 patent because Nawrocki failed to apportion, account for, or otherwise exclude from his royalty base transactions that do not meet the hypertext statement limitation of those claims. As Soverain's infringement expert Dr. Grimes testified, those claims require a hypertext link that provides details about transactions, including transaction history. *See* Tr. 4/27/10 AM, at 43:21-45:20.

However, Soverain presented no evidence whatsoever that any Newegg customer has ever used such link or accessed such history. Indeed, Dr. Grimes testified that he had "no idea" how often such link is accessed by Newegg customers or even if it had been accessed by Newegg's customers. *See* Tr. 4/27/10 AM, at 46:4-46:14. Therefore, there is no evidence that any of the Newegg transactions that are included in Nawrocki's royalty base infringe the asserted claims of the '492 patent. Accordingly, there is no evidence that supports an award of any damages for infringement of the asserted claims of the '492 patent based on Nawrocki's use based royalty theory.

Soverain may argue that because the claims of the '312 and '429 patents are system claims, that somehow excuses these evidentiary and legal failures. But such an argument would be unavailing because a use-based royalty, as Soverain chose to seek here, by definition must be based on infringing uses. (Soverain may contend that a use-based royalty for a system claim should be based on ***any*** use of an infringing system, even non-infringing uses. Such a theory finds absolutely no support in the case law, however, which is unsurprising because it is

13

unreasonable as a matter of law: in particular, no reasonable person could find that two parties, in a hypothetical negotiation, would agree to a use-based royalty that requires royalty payments for non-infringing uses.[4])

*No evidentiary support for use-based running royalty.* Nawrocki's opinion that the parties to the hypothetical negotiation would have agreed to, and that damages should be awarded in the form of, a running royalty rather than a lump sum is devoid of evidentiary support and inconsistent with Newegg's and Soverain's licensing practices regarding this sort of technology. Indeed, there is no evidence in this case of Newegg having agreed to a running-royalty based license on the <u>use</u> of any technology, let alone this sort of technology. Rather, the testimony was to the contrary. *See* testimony of Lee Cheng (explaining that Newegg had only ever agreed to pay a royalty based on product sales, not product use) (Transcript unavailable at time of writing). Indeed, Soverain introduced no evidence that it or its predecessors Open Market or Divine ever licensed this technology for a use-based running royalty. *See* Tr. 4/27/10 PM, at 149:18-150:6; 152:2-152:22; 153:8-153:21 (Nawrocki); 4/27/10 PM, at 53:13-54:23; 66:8-66:12 (Wolanyk). Absent evidence of use-based running royalty licenses for the specific technology at issue (or at the very least for the type of technology in this industry), a use-based running royalty is impermissible as a matter of law. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983) (following *Foster v. American Machine & Foundry Co.*, 492 F.2d 1317, 182 USPQ 1 (2d Cir. 1974)).

More generally, Federal Circuit law requires that "some basis for comparison between the type of license agreement relied upon and the type of royalty damages sought must exist in the

---

[4] Any suggestion by Soverain that any use of a system that is capable of infringement constitutes an infringing use, would find no support in the case law. In addition, Soverain has already acknowledged that infringing systems may be capable of non-infringing modes of operation. *See* Dkt. 360, Ex. A at 22 (Soverain's proposed charge).

evidence presented to the jury." *Lucent Technologies Inc. v. Gateway Inc.*, 580 F.3d 1301, 1317, 1324 (Fed. Cir. 2009). Because Soverain failed to provide such evidence, damages cannot be calculated through a use-based running royalty, but instead may only be awarded through a single lump sum, as Newegg's expert Mr. Bakewell opined.

*Improper* Georgia Pacific *Analysis.* Nawrocki's damages opinion is flawed and cannot support a verdict because he failed to perform a proper *Georgia Pacific* analysis, including with respect to factor 15. In particular, Nawrocki focused on <u>Newegg</u>'s commercial success (which years after the hypothetical negotiation was substantial), rather than on the success of the patented invention, which was then – and has always been – relatively minimal, in exercising his "professional judgment" as to what a reasonable royalty should be. Tr. 4/27/10 PM at 134:3-13; *id*. at 141:2-6, 9-16, 21-25; *id.* at 146:5-9; *id.* at 142: 8-16, 21; *id*. at 143:6. But Nawrocki simply failed to establish any nexus between the patented technology and Newegg's commercial success. For these reasons, Nawrocki's reliance on Newegg's post-2001 success was legally impermissible to support his inflated damages opinion.

### Conclusion

For the foregoing reasons, Newegg asks the Court to render judgment as a matter of law in favor of Newegg on the issue of damages, that Soverain is not entitled to the damages it seeks as a matter of law, and that any damages awarded against Newegg cannot be in excess of a $500,000 lump sum as a matter of law.

Respectfully submitted,

Dated: April 29, 2010    By:    /s/ Mark D. Strachan
                                Mark D. Strachan
                                Texas State Bar No. 19351500
                                Richard A. Sayles
                                Texas State Bar No. 17697500
                                SAYLES | WERBNER
                                1201 Elm Street

4400 Renaissance Tower
Dallas, Texas 75270
Telephone: (214) 939-8700
Facsimile: (214) 939-8787


David C. Hanson
Kent E. Baldauf, Jr.
Daniel H. Brean
THE WEBB LAW FIRM
700 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
T:  (412) 471-8815
F:  (412) 471-4094


Trey Yarbrough
Texas Bar No. 22133500
YARBROUGH ♦ WILCOX, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

Attorneys for Defendant Newegg Inc.

**Certificate of Service**

      The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being hereby served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on April 29, 2010, or will be served via electronic mail. All other counsel of record will be served via facsimile or first class mail.

                                                   /s/ Mark D. Strachan
                                                    Mark D. Strachan