# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **SOVERAIN SOFTWARE LLC,** | ) )  |
| **Plaintiff,** | ) ) |
| v. | ) )   Case No. 6:07-CV-00511-LED |
| **NEWEGG INC.,** | ) ) ) |
| **Defendant.** | ) ) |

**PLAINTIFF SOVERAIN'S SURREPLY IN OPPOSITION TO NEWEGG'S MOTION FOR JUDGMENT AS A MATTER OF LAW ON DAMAGES AND ALTERNATIVE MOTION FOR NEW TRIAL OR REMITTITUR**

NYI-4286343

Newegg continues to ignore the evidentiary support underlying the jury's verdict and instead attempts to reargue its *Daubert* motion to exclude Mr. Nawrocki based on an allegation, unsupported by fact or law, that Mr. Nawrocki used the entire market value rule.  Newegg's belabored attempt to mischaracterize Mr. Nawrocki's opinions and ignore evidence in the record cannot support a motion for JMOL, new trial, or remittitur.  The jury's verdict was fully supported by the record.

I. **NEWEGG'S USE OF THE PATENTED TECHNOLOGY HAS BEEN EXTENSIVE**

Newegg persists in ignoring the fact that, even without Mr. Nawrocki's opinion as to a reasonable royalty (an opinion which should not be disregarded), the jury's verdict was supported by an abundance of evidence and testimony which was identified by Soverain in its opposition. (*See* Opp. 4-5.)

Newegg persists in ignoring the fact that the extent to which it has made use of Soverain's patented technology is an appropriate consideration for a reasonable royalty analysis, and that Newegg's use of Soverain's technology has been extensive.  (PX-246; PX-247.)

In erroneously claiming that single-item sales do not infringe, Newegg ignores the ample record evidence that supports the jury's finding of induced infringement.  Newegg continues to crop Dr. Grimes's testimony in an attempt to bolster its noninfringement claim with respect to single-item sales.  But Dr. Grimes's full testimony is clear that single-item sales *do* infringe. (Opp. Ex. 3, 24:22-25:18.)  Newegg's argument that the buyer computer is not *programmed to receive* the requests until it receives them is simply wrong.  The buyer computer is programmed to receive the requests once it receives the webpages with the ADD-TO-CART buttons, regardless of whether the customer decides to click the buttons.  This is exactly what Dr. Grimes testified to when he said that "Newegg programs the buyer computer . . . *the server computer*

sends the information back to the buyer computer." (*Id.*, Ex. 2, 83:2-4 (emphasis added).)  There is ample evidence to support Newegg's customers' direct infringement of the patents.  (*See also* Dkt. 409.)

Newegg's reliance on *ACCO Brands, Inc. v. ABA Locks. Mfr. Co.*, 501 F.3d 1307 (Fed. Cir. 2007), is misplaced.  Newegg glosses over the critical distinguishing facts between itself and the *ACCO* defendant.  In *ACCO*, the defendant only provided instructions for noninfringing use of a product for which there were both infringing and noninfringing uses.  *Id.* at 1311.  Here, however, the record evidence clearly shows that Newegg only provided instructions for *infringing* use.  (PX-15.)  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318-20 (Fed. Cir. 2009) (affirming infringement where defendant provided instructions for infringing use); *Mass Eng'ed Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 377-78 (E.D. Tex. 2009) (upholding jury verdict of infringement where defendant had not pointed "to a single advertisement, or any documentary evidence" that showed noninfringing use).  Since Newegg offered no evidence that it instructs its customers as to any noninfringing uses, its arguments are no more persuasive now than they were at trial.

## II. THE RECORD SUPPORTS A RUNNING ROYALTY

In claiming that Soverain has no evidence to support a running royalty for patent licenses, Newegg completely ignores the eighteen Divine licenses identified in Soverain's opposition, each of which contained a lump-sum fee based on a running component relating to the licensee's gross sales, net sales, gross profit, or number of transactions.  (Opp. n. 5.)  In addition to these patent licenses, Soverain's predecessor entered into software licenses for Transact that contained running components.  Newegg's argument that there is no evidence that a Transact license is an appropriate consideration for Newegg contradicts the position it has maintained throughout this

case, that Transact is an available, acceptable, noninfringing alternative.  (*See* Tr. 105:2-14; 109:18-24 4/30/10 (closing arguments); Dkt. 310, at 9-10 (opposition to Soverain's motion in limine); Dkt. 263, at 9-11 (opposition to Soverain's *Daubert* motion to exclude Bakewell).) Further, Newegg's representation that the transaction fees in Corel's Transact license are an irrelevant consideration because they are "for maintenance or other services" is incorrect.  The transaction fees were for use of the patented technology and were entirely separate from maintenance fees.  (*See* PX-207, at SOV0158666-668.)

Finally, Newegg's assertion in a footnote that the running royalties in Transact CSP licenses are irrelevant considerations because "two Open Market witnesses who testified indicated that Newegg would take an enterprise or merchant's license, not a CSP license," is an inaccurate representation of the record.  Mr. Ghosh testified that he would expect a Transact license for Newegg to be "[m]ore like a merchant license, probably. … If they were just selling their own stuff [as opposed to them wanting to host the stores of third parties]."  (Tr. 8:23-9:8 4/27/10 PM.)  Newegg Mall is admittedly "a website hosting service: it hosts online stores for third parties."  (Dkt. 412, at 9.)  Similarly, Mr. Treese testified that "[a] company that was selling its own products would be more likely to take the enterprise license."  (Tr. 5:15-17 4/27/10 PM.) Notably, Mr. Treese was never asked what type of license Newegg would require to run all three of the Newegg websites found to infringe, which included Newegg Mall.

### III.   NEWEGG MISUNDERSTANDS THE ENTIRE MARKET VALUE RULE

Newegg's claim that Soverain has failed to seriously distinguish *Lucent* is incorrect, and Newegg's continued reliance on *Lucent* is misplaced.  In *Lucent*, the plaintiff's damages expert arrived at a damages award by multiplying his royalty rate by Microsoft's entire sales revenue for the accused software products.  *Lucent Techs.,* 2009 WL 2902044 at *16.  Microsoft argued that Lucent must instead "tie its damages claim to demonstrated instances of direct

infringement." *Id.* at *17. The Federal Circuit agreed. *See id.* at *26. Unlike in *Lucent*, where the record was devoid of any evidence of how many times the patented method was used, here, Mr. Nawrocki's royalty base coincides with the instances of infringement, which is totally consistent with the Federal Circuit's guidance in *Lucent*. *See also LaserDynamics, Inc. v. Quanta Comp., Inc.*, Civ. No. 2:06-cv-348 (E.D. Tex. June 9, 2010) (remitting damages award based on EMVR to a "per-unit" award).

Newegg argues that the number of infringing transactions cannot be distinguished from gross revenues because the number of transactions multiplied by the average order price equals Newegg's gross revenues.[1] By such logic, the entire market value rule is used in every single case where a per-unit royalty is adopted. Newegg's argument must fail, for in many cases a per-unit royalty is unarguably the most appropriate way in which to "tie … damages … to demonstrated instances of infringement," as it is here.

Newegg's final attempt to strengthen its entire market value rule argument is to claim that Newegg's profitability was the *only* factor Mr. Nawrocki considered in his damages analysis. Newegg is wrong. Mr. Nawrocki testified at length regarding all fifteen of the *Georgia-Pacific* factors. (Tr. 81:19-132:15 4/27/10 PM.)

## IV.   CONCLUSION

Newegg's request for JMOL on damages, new trial, or remittitur should be denied.

---

[1] If Mr. Nawrocki had employed the entire market value rule by using Newegg's total online sales revenue as his royalty base his damages calculation would have been well over one billion dollars. *See i4i Ltd. P'ship*, 2009 WL 2449024, at *20 ("had i4i been permitted to argue an 'entire market value' theory, it would have been entitled to a substantially larger portion of Microsoft's operating profit than under [patentee's expert's] theory of damages").

Dated: June 21, 2010            Respectfully submitted,

          Kenneth R. Adamo
          State Bar No. 00846960
          Lead Attorney
          Email:  kradamo@jonesday.com
          JONES DAY
          2727 North Harwood Street
          Dallas, Texas 75201-1515
          Telephone:  214-220-3939
          Facsimile:  214-969-5100

          Thomas L. Giannetti
          NY Attorney Reg. No. 1632819
          Email:  tlgiannetti@jonesday.com
          Ognian V. Shentov
          NY Attorney Reg.  No. 2867737
          Email:  ovshentov@jonesday.com
          Barry R. Satine
          NY Attorney Reg. No. 1450220
          Email:  barryrsatine@jonesday.com
          JONES DAY
          222 East 41st Street
          New York, New York 10017-6702
          Telephone:  212-326-3939
          Facsimile:  212-755-7306

          Jennifer Seraphine
          CA Attorney Reg. No. 245463
          Email:  jseraphine@jonesday.com
          JONES DAY
          555 California Street, 26th Floor
          San Francisco, CA 94104

          ATTORNEYS FOR PLAINTIFF

NYI-4286343

## CERTIFICATE OF SERVICE

      This is to certify that on June 21, 2010, a true and correct copy of the foregoing document has been served on all counsel of record via the Court's ECF system.

      /s/ Kenneth R. Adamo
      Kenneth R Adamo

NYI-4286343