**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:07 CV 511** |
| | § | **PATENT CASE** |
| **NEWEGG INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Soverain's Renewed Motion for Judgment as a Matter of Law ("JMOL") of Infringement of the '314, '492, and '639 Patents and Motion for New Trial ("MNT") on '639 Patent Damages (Docket No. 402); Soverain's Motion for Permanent Injunction or, in the Alternative, Ongoing Royalties (Docket No. 403); Soverain's Motion for Prejudgment Interest and Costs, Post-Verdict Damages to Judgment, and Post-Judgment Interest (Docket No. 404); Newegg's Renewed Motion for JMOL on Damages and Alternative MNT or Remittitur (Docket No. 406); Newegg's Renewed Motions for JMOL of Non-Infringement and Invalidity of the Asserted Claims and Alternative MNT (Docket No. 407); and Newegg's Opposed Motion to Strike Certain Evidence Submitted in Support of Soverain's Post-Trial Motions (Docket No. 411).  For the reasons stated below, the Court **GRANTS** in part Soverain's motion for JMOL on infringement and MNT on damages (Docket No. 402), **GRANTS** in part Soverain's motion for permanent injunction or, in the alternative, ongoing royalties (Docket No. 403), **GRANTS** in part Soverain's motion for pre-judgment interest, post-verdict damages, and post-judgment interest (Docket No. 404), and **DENIES** all other motions.

# BACKGROUND

Plaintiff Soverain Software LLC ("Soverain") filed suit against Newegg Inc. ("Newegg") and several other defendants in November 2007. Newegg is the only remaining defendant. Soverain asserts U.S. Patent Nos. 5,715,314 (the "'314 patent"), 5,909,492 (the "'492 patent"), and 7,272,639 (the "'639 patent") (collectively, "the patents-in-suit") against Newegg. The '314 and '492 patents, both entitled "Network Sales System," are directed to a network-based sales system including at least one buyer computer, at least one merchant computer, and at least one payment computer, all interconnected by a computer network. The asserted claims in the '314 and '492 patents are system claims. The '639 patent, entitled "Internet Server Access Control and Monitoring Systems," is directed to methods for controlling and monitoring access to network servers. The asserted claims of the '639 patent are method claims.

A jury trial began on April 26, 2010. At trial, Soverain argued that Newegg used technology for its websites that infringed claims 35 and 51 of the '314 patent; claims 17, 41, and 61 of the '492 patent; and claims 60 and 79 of the '639 patent. Newegg argued that it did not infringe Soverain's patents and that Soverain's patents were invalid. Following a five day trial, the Court submitted the following issues to the jury: (1) direct infringement and active inducement of infringement of the '314 and '492 patents, (2) direct infringement of the '639 patent, (3) invalidity of the patents-in-suit based on anticipation, and (4) damages. The jury returned a verdict finding the patents-in-suit not invalid, the '314 and '492 patents infringed, and awarding Soverain $2,500,000 in damages. Specifically, the jury found Newegg liable for induced infringement of claims 35 and 51 of the '314 patent and claims 17, 41, and 61 of the '314 patent, but found that Newegg did not directly infringe any of the asserted claims of the patents-in-suit.

2

## MOTIONS FOR JMOL & NEW TRIAL

**JMOL Standard**

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Summit Tech. Inc. v. Nidek Co.*, 363 F.3d 1219, 1223 (Fed. Cir. 2004). In the Fifth Circuit, JMOL may not be granted unless "there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did." *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir.1995) (internal quotation marks omitted). A court reviews all the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party, however, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).

**New Trial Standard**

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985).

## INFRINGEMENT

### *NEWEGG'S MOTION FOR JMOL & MNT - NO INDIRECT INFRINGEMENT OF '314 AND '492 PATENTS*

Newegg moves for JMOL, or alternatively for a new trial, on the issue of no indirect infringement of claims 35 and 51 of the '314 patent, claim 17 of the '492 patent, and claims 41 and 61 of the '492 patent. Claims 35 and 51 of the '314 patent and claim and claim 17 of the '492 patent

are referred to as the "shopping cart claims."  Claims 41 and 61 of the '492 patent, are referred to as the "hypertext statement claims."

**Shopping Cart Claims**

Newegg first argues that there was no legally sufficient evidence from which a reasonable jury could conclude that the accused Newegg system meets all the limitations of independent claim 34 of the '314 patent[1] or independent claim 17 of the '492 patent ("shopping cart claims"), either literally or under the doctrine of equivalents.

In Newegg's accused system, when a customer adds an item to a shopping cart, product information concerning that item is held in a cookie on the customer's computer.  Once the customer hits checkout, the contents of the cookie are transferred all at once to a shopping cart database.  The issue is whether this transfer in the accused system satisfies two specific limitations in the shopping cart claims: (1) the "modification limitations" and (2) the "plurality limitations."

Claim 34 of the '314 patent requires "said shopping cart computer [to be] a computer that modifies said stored representations of collections of products in said database," and also requires the shopping cart computer be programmed "to modify the shopping cart in the shopping cart database to reflect the plurality of requests to add the plurality of products to the shopping cart." '314 patent, col. 14:12–15, 26–28.  Claim 17 of the '492 patent similarly requires "the shopping cart computer [to be] a computer that modifies the stored representations of collections of products in the database," and that the shopping cart computer be programmed "to modify the shopping cart in the shopping cart database to reflect the plurality of requests to add the plurality of products to the shopping cart." '492 patent, col. 14:64–67; col. 15:13–15.  These are referred to as the "modification limitations."

---

[1] Asserted claims 35 and 51 of the '314 patent depend from independent claim 34 of the '314 patent.

Newegg contends that its system cannot satisfy the modification limitations because there is no modification of the shopping cart database, let alone a modification of the shopping cart *in the* shopping cart database. Soverain contends that there is a modification of a shopping cart in the shopping cart database because an instance of a shopping cart in the database is changed. The Court construed the phrase "to modif[y] [the shopping cart in the shopping cart database]" to mean "to change [an instance of a shopping cart in a shopping cart database]." Docket No. 359-1, at 1. Soverain's technical expert, Dr. Grimes, basing his opinion on the Court's claim construction and other evidence presented at trial, testified that Newegg's system uses a two step process. First, when the customer clicks the check out button, a shopping cart ID is generated, which creates a holding space in the shopping cart database. Soverain contends this step creates an instance of a shopping cart in the shopping cart database. Next, the contents of the customer's shopping cart are moved to the shopping cart database in association with the shopping cart ID. Soverain contends this step represents the required modification. Dr. Grimes further testified that modifying the shopping cart to add all the products at once upon checkout is sufficient to satisfy the modification limitations.

Newegg argues that Soverain's logic is flawed because the shopping cart ID and the shopping cart are inserted into the database at the same time, and this "single instantiation" cannot be a modification of the shopping cart. Newegg also argues that a shopping cart ID cannot be a shopping cart under the Court's construction. Soverain does not allege that the shopping cart ID is a shopping cart, just that once the shopping cart ID is created, "an instance of a shopping cart" exists in the database. Once the customer's selected products are inserted into the shopping cart in the shopping cart database, that "instance of a shopping cart" is modified. Both Newegg and Soverain presented their infringement theories to the jury, and it was up to the jury to determine which infringement theory was best supported by the testimony and evidence. Accordingly, Soverain presented legally

sufficient evidence for the jury to conclude that Newegg's system satisfied the modification limitations.

Claim 34 of the '314 patent requires the buyer computer be programmed "to receive a plurality of requests from a user to add a plurality of respective products to a shopping cart in said shopping cart database," and claim 17 of the '492 patent similarly requires the buyer computer be programmed to "receive a plurality of requests from a user to add a plurality of respective products to a shopping cart in the shopping cart database." '314 patent, col. 14:3–6; '492 patent, col. 14:54–57. These are referred to as the "plurality limitations."

Newegg contends that moving the customer product information "en masse" from the cookie to the shopping cart database reads the word "respective" out of the plurality limitations. Newegg argues the word "respective" in the claim language requires the accused system to modify the shopping cart database after each product is requested by the customer. However, Dr. Jack Grimes, Soverain's expert, testified that the customer's "ADD TO CART" requests are "requests from a user to add . . . products to a shopping cart in [the] shopping cart database" because the products requested from the user ultimately end up in the shopping cart database, which is all the limitation requires. Trial Tr. 4/26/10 P.M., 81:15–86:7. Dr. Grimes further testified that the plurality limitations are satisfied because each request is associated with a respective product, and a modification of the shopping cart database after each request is not required by the claims. Trial Tr. 4/27/10 A.M. 30:15–31:2. Thus, Soverain presented legally sufficient evidence for the jury to conclude that Newegg's system satisfied the plurality limitations.

Furthermore, Dr. Grimes testified that Newegg's method of adding products one at a time to a cookie and then all at once to a shopping cart in the shopping cart database is equivalent to adding the products one at a time to a shopping cart in the shopping cart database. Trial Tr. 4/26/10

P.M., 93:13–97:17.  Thus, at the very least, there was substantial evidence to support a finding that

Newegg's system satisfies both the modification and plurality limitations and infringes under the

doctrine of equivalents.  Accordingly, Soverain presented legally sufficient evidence for the jury to

conclude that Newegg's accused system satisfied all limitations of the shopping cart claims, either

literally or by equivalents.

**Hypertext Statement Claims**

Claims 41 and 61 of the '492 patent, which depend from claim 15 of the '492 patent, are

referred to as the "hypertext statement claims."  These claims require a hypertext link that provides

details about the transaction, including transaction history.  Newegg argues Soverain presented no

evidence that any Newegg customer ever accessed the hypertext link on Newegg's accused system

and thus there is no evidence of any "use" of the hypertext statement system.[2]  Newegg relies on

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307 (Fed. Cir. 2007), *Lucent Techs.,*

*Inc. v. Gateway, Inc.*, 580 F.3d 1301, (Fed. Cir. 2009), and *E-Pass Techs., Inc. v. 3Com Corp.*, 473

F.3d 1213 (Fed. Cir. 2007), to challenge the jury's finding of infringement.  In *ACCO*, the Federal

Circuit found no direct infringement where the accused product could be used in both an infringing

and non-infringing manner and the accused inducer only instructed customers on the non-infringing

manner.  *ACCO*,  501 F.3d at 1313.  In *Lucent*, the Federal Circuit allowed the jury's verdict of

induced infringement to stand where the accused inducer designed the accused products to be used

in an infringing manner and instructed its customers to use the accused products in both an infringing

---

[2] Although Newegg also contends it does not satisfy the limitation of "the client computer being
programmed to display the statement document" in Claim 15 of the '492 patent, there is legally sufficient evidence to
support the jury's finding that Newegg's accused system meets this limitation of the hypertext statement claims.  *See*
Trial Tr. 4/26/10 P.M., 118:18–120:6.

and non-infringing manner. *Lucent*, 580 F.3d at 1318–19. In *E-Pass*, the only proof of direct infringement was excerpts from product manuals for various accused devices, "show[ing], at best that the [defendants] taught their customers each step of the claimed method in isolation." *E-Pass,* 473 F.3d at 1222.

*ACCO* and *E-Pass* are distinguishable from the instant facts and do not support overturning the jury's verdict, while *Lucent* actually supports the jury's verdict. Although capable of non-infringing modes of operation, Newegg's order history system is reasonably capable of infringing the hypertext statement system claims. *See Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 378 ("[T]o infringe an apparatus claim, it is not necessary for an accused device actually to be performing the functions specified by the claim. All that is required is that the device have the claimed structure, and that this structure in the device have the capability of functioning as described by the claim."). Soverain presented sufficient evidence showing that Newegg instructs its customers to use its system in an infringing manner. Pl.'s Ex. 15, Docket No. 409-10. Indirect infringement and the corresponding direct infringement may be proved by circumstantial evidence. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1219 (Fed. Cir. 2006). "There is no requirement that direct evidence be introduced, nor is a jury's preference for circumstantial evidence over direct evidence unreasonable per se." *Id*. Accordingly, the jury was presented with legally sufficient evidence to conclude that Newegg's customers used the order history system, and thus infringed the hypertext statement claims.

**Newegg's Customers "Use" of the System Claims**

Newegg next argues that even if the accused systems meet all limitations of the shopping cart and hypertext statement claims, there was no legally sufficient evidence from which a jury could

8

conclude that any Newegg customer satisfies each and every limitation of any relevant claim. Induced infringement requires the plaintiff to prove a corresponding act of direct infringement. *See DSU Med. Corp.*, 471 F.3d at 1303. Newegg contends that its customers do not directly infringe any relevant claim because they do not own, possess, operate, direct, or control the accused system. Specifically, Newegg argues that because its customers only own or possess the buyer or client computer and do not "use" anything on the "Newegg side" of the system, they do not practice each and every element of the claimed invention and thus cannot directly infringe. Soverain contends Newegg's customers "use" the system "as a whole" and thus directly infringe.

The relevant claims of the '314 and '492 patents are all system claims. Although Newegg originally argued that the divided infringement standard set forth in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, and *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008), applied to both system and method claims, Newegg now concedes that the *BMC/Muniauction* divided infringement standard only applies to method claims and is inapplicable here. Accordingly, the Court is tasked with determining what constitutes "use" of system claims for purposes of determining infringement. "In the context of [35 U.S.C.] § 271(a), courts interpret the term 'use' broadly to determine if behavior constitutes an infringing 'use' of a patented invention." *Renhcol Inc. v. Don Best Sports*, 538 F. Supp. 2d 356, 360 (E.D. Tex. 2008) (Davis, J.) (citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1316–17 (Fed. Cir. 2005)). In *NTP, Inc. v. Research in Motion, Ltd.*, the Federal Circuit addressed what constitutes "use" for purposes of determining the situs of use of a claimed system. 418 F.3d at 1313–18. "The use of a claimed system under section 271(a) is the place at which the system *as a whole* is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." *Id*. at 1317 (emphasis added).

The *NTP* court specifically emphasized the fundamental distinction between the "use" of a system and the "use" of method, noting that "use" of a method is "unlike use of a system *as a whole*, in which the components are used *collectively,* not individually." *Id***.** at 1318 (emphasis added).

Numerous district courts have utilized the Federal Circuit's analysis in *NTP* to interpret "use" broadly to determine infringement. In *epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, the claimed method and apparatus was directed to "managing dynamic web page generation requests." 492 F. Supp. 2d 608, 613 (E.D. Tex. 2007) (Folsom, J.). The court found that the customers did not "use" the software because they did not control and were not responsible for running the software that managed the incoming requests—they merely submitted requests to the web server. *Id*. at 615. The court noted that "the issue of control is central to determining whether a party is liable for 'using' a claimed invention," and that it is important that the function controlled by the user is the exact function the claimed system was directed to. *Id*. at 614 ("Importantly, the claimed system in *NTP* was directed to a system for the transmission of messages . . . and that is exactly the function that the defendant's customers controlled. Thus, the defendant's customers were users of the system.").

In *Renhcol Inc. v. Don Best Sports*, the claims were directed to an electronic marketplace for prediction information, claiming a computer storage medium comprising code to facilitate transactions in the prediction information market and a computer programmed to execute that code. 538 F. Supp. 2d at 361–62. In *Renhcol*, this Court found that "use" of the computer storage medium and programmed computer required control of the execution of the code located on the accused computer and computer storage medium, but found that certain suppliers and consumers of the marketplace controlled execution of the code by uploading and downloading prediction info to and

10

from the marketplace, thus precluding summary judgment based on situs of use.  *Id*. at 363–64.  In *Nuance Communications Inc. v. Tellme Networks, Inc.*, the claims were direct to an "apparatus for processing verbal information for competing a task."  — F. Supp. 2d —, 2010 WL 1609883, *8 (D. Del. April 20, 2010).  The *Nuance* court noted that "[t]he completion of a task is the reason that a caller engages the accused services," and thus calling the accused services may constitute an infringing use if the caller exercised control over the accused services by dictating the format and manner in which the task is accomplished.

Newegg's "own, possess, operate, direct, or control" standard is in direct conflict with the analysis set forth in *NTP*.  Although Soverain's "use" of a system "as a whole" standard is more in line with established law, the cases here also stress the importance of the control element.  The shopping cart claims are directed to a "network-based sales system" and "hypertext statement system."  The claimed systems are directed to the function of purchasing products and viewing order and transaction history, and those are the exact functions controlled by Newegg's customers. Newegg's customers control the operation of Newegg's sales system by choosing the products to purchase, when to checkout, and when to submit an order, and they control Newegg's hypertext-statement system by choosing to view their order history and transaction details.  *See* Trial Tr. 4/26/10 P.M., 60:18–129:4, 135:15–137:21.  In addition, Newegg's customer use and benefit from Newegg's systems when they purchase products and view their order histories.  *See id.*  Accordingly, the jury was presented with sufficient evidence to support the jury's verdict that Newegg's customers were "users" of the Newegg's system.  Thus, the Court **DENIES** Newegg's motion for JMOL and MNT of no indirect infringement of the '314 patent and '492 patents.

### SOVERAIN'S MOTION FOR JMOL & MNT - DIRECT INFRINGEMENT OF '314 AND '492 PATENTS

Soverain moves for JMOL, or alternatively for a new trial, on the issue of direct infringement of claims 35 and 51 of the '314 patent, claim 17 of the '492 patent, and claims 41 and 61 of the '492 patent. Soverain contends that Newegg directly infringes the asserted claims of the '314 patent and '492 patents because Newegg "uses" its sales system just as Newegg's customers do. Soverain's post-verdict briefing does not adequately address the necessary control element that is central to determining "use" of a claimed invention. Furthermore, at the post-verdict hearing, Soverain indicated that "[t]he reason . . . [it] moved for a new trial under direct [infringement] theories [was] in case . . . [Newegg] prevail[ed] on their induced theory." Post-Verdict Hr'g Tr. 4/2/10 P.M., 16:7-10. As Newegg did not prevail on overturning the jury's verdict of induced infringement of the '314 patent and '492 patents, it is not necessary to address Soverain's motion for JMOL of direct infringement in detail. The jury was presented with sufficient evidence to support the jury's verdict that Newegg is not a "user" of its system and thus, does not infringe. Accordingly, the Court **DENIES** Soverain's motion for JMOL and MNT of direct infringement of the '314 patent and '492 patents.

### SOVERAIN'S MOTION FOR JMOL & MNT - DIRECT INFRINGEMENT OF CLAIM 79 of '639 PATENT

Soverain moves for JMOL, or alternatively for a new trial, on the issue of direct infringement of claim 79 of the '639 patent. Claim 79 is directed to a "method of processing, in a server system, service requests from a client to the server system." '639 patent, col. 14:43–44. Soverain contends that Newegg irrefutably meets every limitation of the claim, while Newegg contends that certain limitations of the claim can only be satisfied by the client or customer. If Newegg is correct that the

claims require action by multiple parties, then the divided infringement standard set forth in *BMC* and *Muniauction* would be applicable. Thus, the relevant inquiry is whether Newegg's customers perform any required steps of these method claims.

The parties dispute which actions are actually required by claim 79, which depends from claim 78. Claims 78 and 79 provide as follows:

> 78. A method of processing, in a server system, service requests from a client to the server system through a network, said method comprising the steps of:
>> **receiving**, from the client, a service request to which a *session identifier stored at the client has been appended by the client*, wherein communications between the client and server system are according to hypertext transfer protocol;
>> **validating** the session identifier appended to the service request; and servicing the service request if the appended session identifier is valid.

> 79. The method of claim 78, further comprising, in the server system:
>> **receiving** an initial *service request from the client*;
>> **creating**, responsive to the initial service request, the session identifier; and
>> **returning** the session identifier to the client for storage by the client for use in subsequent distinct requests to the server system.

'639 patent, col. 14:43–60 (emphasis added). The bold portions of the claims illustrate the steps Soverain contends the claims require. Newegg, on the other hand, contends that the italicized portions of the claim represent additional claim limitations requiring action on the part of the user. Soverain contends that Newegg is attempting to create multiple-actor issues by reading additional limitations into the claims.

Both parties cite to *SiRF Technology, Inc. v. International Trade Commission* to support their reading of the claims. 601 F.3d 1319 (Fed. Cir. 2010). In *SiRF*, the Federal Circuit did not even reach the question of divided infringement because it found the claims did not require any specified actions be taken by third parties. *Id.* at 1329. The claim language at issue in *SiRF* contained similar language as the claims at issue here: "receiving satellite ephemeris at a first location" and "receiving

13

satellite signals from at least one satellite and at least one receiving station." *Id*. The court found that "[t]his [was] not a situation where a method claim specifies performance of a step by a third party, or in which a third party actually performs some of the designated steps." *Id*. As in *SiRF*, "the method claims at issue here are drawn to actions which can be performed and are performed by a single party." *Id*. Moreover, in *BMC Resources, Inc. v. Paymentech, L.P.*, the Federal Circuit observed that "[a] patentee can usually structure a claim to capture infringement by a single party." 498 F.3d at 1381. For example, a patentee might structure the claims so that the steps "feature[] references to a single party's supplying or *receiving* each element of the claimed process." *Id.* (emphasis added). Claims 78 and 79 are drafted in this manner, specifying the required action by Newegg (e.g., "receiving"), along with a limitation defining the action's object (e.g., "service request from the client").

Dr. Grimes testified that all of the steps contained in dependent claim 79 are performed by Newegg through its server system. Trial Tr. 4/26/10 P.M., 158:21–165:18. During its cross-examination of Dr. Grimes, Newegg did not question Dr. Grimes on the steps recited by claim 79, but instead focused on actions not specifically required by the claim, such as whether the customer *sends* the service request to the server and whether the session identifier stored at the client has been *appended* by the client. Trial Tr. 4/27/10 A.M., 61:8–62:3. Dr. Grimes explained during direct examination that although a client must send a request for Newegg to receive and must append the session identifier to the request, claims 78 and 79 do not recite steps of sending and appending. Trial Tr. 4/26/10 P.M., 159:11–160:9.

In addition, Newegg's own technical expert, Edward Tittel, did not testify as to any of the steps actually included in claim 79 because Mr. Tittel failed to address claim 79 in his expert reports

and was precluded from testifying outside the scope of his reports.  To get around this, Newegg

questioned Tittel about claim 1 of the '639 patent and attempted to equate claim 1 to claims 78 and

79.  Claim 1 provides as follows:

> 1. A method of processing service requests from a client to a server system through a network, said method comprising the steps of forwarding a service request from the client to the server system, wherein communications between the client and server system are according to hypertext transfer protocol;
> returning a session identifier from the server system to the client, *the client storing the session identifier* for use in subsequent distinct requests to the server system; and
> *appending the stored session identifier* to each of the subsequent distinct requests from the client to the server system.

'639 patent, col. 10:26–38 (emphasis added).  When questioning Mr. Tittel about the storing action,

Newegg's counsel stated that "this limitation is also in Claim 78." Trial Tr. 4/29/10 A.M., 43:13-18.

 This is likely to have misled the jury into thinking that claim 60, which depends from claim 1, and

claim 79, which depends from claim 78, were one in the same.  The wording of the claims clearly

demonstrates this is not the case.  Unlike claims 78 and 79, claim 1, and therefore claim 60,

expressly require the steps of "forwarding" the service request and "storing" and "appending" the

session identifier, which are all customer actions.  Although the phrases Newegg points to in claim

79 (e.g., "service request to which a *session identifier stored at the client has been appended by the

client*") are limitations that must be satisfied, "appending" and "sending" are not separate steps

requiring action in claim 79.  Because Newegg did not refute Dr. Grime's testimony that Newegg

performs each properly defined step of claim 79, and because no reasonable jury could have found

that claim 79 was not infringed, the Court **GRANTS** Soverain's motion for JMOL of direct

infringement of claim 79 of the '639 patent.

15

## DAMAGES

### *SOVERAIN'S MNT - DAMAGES FOR '639 PATENT*

Having granted Soverain's motion for JMOL on Newegg's direct infringement of claim 79 of the '639 patent, the Court **GRANTS** Soverain's motion for a new trial on damages for such infringement, to be held after all appeals have been exhausted.

### *NEWEGG'S MOTION FOR JMOL, MNT, OR REMITTITUR - DAMAGES FOR '314 AND '492 PATENTS*

Newegg moves for JMOL that total damages in this case cannot exceed $500,000.  In the alternative, Newegg moves for a new trial on damages or a remittitur in the amount of $500,000. In support of its motion for JMOL, Newegg argues that Soverain's damages demand was excessive, unsupported by the facts, and inconsistent with Federal Circuit precedent.   Thus, Newegg contends it presented the only valid damages theory, which was a lump sum of $500,000, representing a paid-up license for the life of the patent.  Specifically, Newegg argues: (1) Soverain's damages expert, James Nawrocki, violated the Entire Market Value rule and Georgia Pacific factor 13; (2) Mr. Nawrocki failed to exclude or account for non-infringing uses; (3) Mr. Nawrocki conducted an improper "commercial success" analysis; and (4) Soverain had no evidentiary support for a use-based running royalty.

First, Newegg contends that Mr. Nawrocki used Newegg's entire sales as the royalty base and a  25–33% Rule of Thumb  as the royalty rate.  Soverain counters that Mr. Nawrocki used the number of infringing transactions as the royalty base, and considered Newegg's gross sales in determining the royalty rate.  Considering the foundation laid by Mr. Nawrocki's testimony, his application of the 25% Rule of Thumb was relevant and reliable.  In addition, Newegg cross-

examined Mr. Nawrocki on the application of the Rule of Thumb, Trial Tr. 4/27/10 P.M., 146:10-23, and presented contrary evidence on the issue of damages.  Trial Tr. 4/29/10 P.M., 11:5–65:7.  As for Newegg's entire market value rule argument, Mr. Nawrocki never relied on the entire market value rule in his expert reports or at trial.  Indeed, had Soverain been permitted to argue an "entire market value" theory, it would have been entitled to a substantially larger portion of Newegg's operating profit than under Mr. Nawrocki's theory of damages.  *See i4i Ltd. P'ship v. Microsoft Corp.*, 670 F. Supp. 2d 568, 592 n.8  (E.D. Tex. 2009) (Davis, J.) (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc*., 567 F.3d 1314, 1331 (Fed. Cir. 2009) (explaining that the entire market value rule "permits a patentee to recover the entire value of an apparatus that contains both patented and unpatented components")).  Nawrocki conducted a proper *Georgia-Pacific*[3] analysis to determine a reasonable royalty rate to apply to the number of infringing transactions royalty base, and his testimony in this regard was appropriately considered by the jury.   Trial Tr. 4/27/10 P.M., 81:19–132:15.

Newegg next argues that Nawrocki failed to exclude single-item sales, which Newegg contends do not infringe, from his royalty.  Although Newegg represents in its briefing that Dr. Grimes admitted that single-item sales do not infringe, Dr. Grimes admitted no such thing.  Dr. Grimes testified that "the structure has to contain the ability for the user to make multiple requests" in order to infringe.  Trial Tr. 4/26/10 P.M., 81:15–86:5.  Thus, it was not improper for Nawrocki to include single-item sales in his reasonable royalty analysis.  Furthermore, Newegg's arguments regarding Nawrocki's failure to account for transactions that do not meet the hypertext statement limitation are misplaced.  As stated above in addressing infringement, "to infringe an apparatus

---

[3] *Georgia-Pacific Corp. v. U.S. Plywood Co.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

claim, it is not necessary for an accused device actually to be performing the functions specified by the claim.  All that is required is that the device have the claimed structure, and that this structure in the device have the capability of functioning as described by the claim." *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 633 F. Supp. 2d 361, 378.  Mr. Nawrocki properly considered the capability of infringement in his analysis of reasonable royalty for the '314 and '492 patents.

Third, Newegg argues that Nawrocki improperly focused on Newegg's commercial success, rather than the success of the patented invention.  Although the Court "must carefully tie proof of damages to the claimed invention's footprint in the market place," *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010), this does not prevent the alleged infringer's profits or revenues from being a relevant consideration in a *Georgia-Pacific* analysis.  Indeed, the factors for calculating a reasonable royalty under *Georgia-Pacific* make the character of the commercial embodiment of the invention, the benefits to those who have used the invention, the extent to which the infringer has made use of the invention, and any evidence probative of the value of that use specifically relevant to the "reasonable royalty" analysis.  *Georgia-Pacific,* 318 F. Supp. at 1120.

Finally, Newegg contends that there was no evidentiary support for Soverain's use-based running royalty theory.  Newegg's argument ignores the fact that certain fully paid-up lump-sum licenses introduced into evidence were based on running components, representing a percentage of sales, profits, or a fee per transaction.  *See* Trial Tr. 4/27/10 P.M., 100:8–105:9; Trial Tr. 4/29/10 P.M., 116:10–117:9.  Mr. Nawrocki's opinion that damages should be calculated on a running royalty basis is supported by sufficient evidence.  Furthermore, the Court instructed the jury that the damages period ran from November 2, 2007 to the present, without any objection from either party.  Thus, there is no reason to assume the jury's verdict of $2.5 million represented a paid-up license

for the life of the patent.

The purpose of this Court's "gatekeeper" function under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* is served by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579 (1993). There is sufficient evidence that Mr. Nawrocki's damages opinion is both relevant and rests on a reliable foundation. Additionally, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. at 596. Newegg vigorously cross-examined Mr. Nawrocki concerning his damages opinion. Trial Tr. 4/27/10 P.M., 132:20–167:7; 171:15–21. Newegg also presented its own lump-sum damages theory, and the jury was free to weigh the parties' distinct theories and evidence. "[T]he factual determination of a reasonable royalty . . . need not be supported, and indeed, frequently is not supported by the specific figures advanced by either party." *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1167 (Fed. Cir. 1991). The jury's verdict of $2,500,000 is well within the amounts advocated by the parties' damages experts and is supported by sufficient evidence. Thus, the Court **DENIES** Newegg's motion for JMOL on damages.

Alternatively to JMOL, Newegg requests a new trial or remittitur. In addition to arguing that the jury's damages award was excessive and against the great weight of the evidence, Newegg sets forth a number of alleged errors that it contends infected the jury's award. However, most of these errors derive from Soverain's damages theory, which the Court has already found reliable. In addition, Newegg made a tactical decision during trial not to offer evidence of the amount Soverain paid for the patents-in-suit at a bankruptcy court auction and thus, Newegg cannot now complain that the Court excluded such evidence. *See* Trial Tr. 4/27/10 P.M., 64:9–65:16. Furthermore, remittitur

19

is within the sound discretion of the trial court and is only appropriate when the damages verdict is "clearly excessive." *See Thompson v. Connick*, 553 F.3d 836, 865 (5th Cir. 2008).  Accordingly, the Court **DENIES** Newegg's MNT or remittitur for the same reasons outlined with regard to Newegg's motion for JMOL on damages and for the reasons set forth above.

### NEWEGG'S MOTION FOR JMOL & MNT - INVALIDITY

Newegg moves for JMOL, or alternatively for a new trial, on the issue of invalidity of all the asserted patent claims based on anticipation and obviousness.  Specifically, Newegg asserts that (1) claims 35 and 51 of the '314 patent were anticipated by the CompuServe Mall; (2) claims 35 and 51 of the '314 patent and claim 17 of the '492 patent were obvious based on the CompuServe Mall, alone or in combination with Gifford; (3) claims 41 and 61 of the '492 patent were obvious based on Gifford; and (4) claims 60 and 79 of the '639 patent were obvious based on Gifford and Johnson, either alone or in combination.   In addition, Newegg reurges each of the invalidity grounds set forth in Newegg's Rule 50(a) motion for JMOL submitted at the close of evidence (Docket No. 368). Newegg finally argues that if the Court concludes JMOL is not warranted based on the foregoing grounds, the Court should grant a new trial on anticipation and obviousness based on a number of errors regarding the admission and exclusion of evidence, charge error, and the Court's dismissal of Newegg's obviousness claims at the close of evidence.

In order to show that it is entitled to JMOL on its affirmative defense of invalidity, Newegg is required to prove the essential elements of that defense to a virtual certainty.  *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) ("For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements.").  As for Newegg's motion for JMOL of anticipation based on claims 35 and 51 of the

'314 patent, Newegg must prove that the CompuServe Mall discloses each and every limitations of the claimed invention arranged exactly as claimed, or that any missing element is necessarily present, or inherent, in the CompuServe Mall. *See Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008); *Schering Corp. v. Geneva Pharms.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Newegg argues that Alexandor Trevor's and Edward Tittel's testimony regarding the CompuServe Mall was sufficient to establish anticipation. However, Mr. Tittel did not testify regarding the limitation of "said buyer computer being programmed . . . to send . . . shopping cart messages . . . each of which comprises a product identifier identifying one of said plurality of products," and Mr. Trevor admitted that the CompuServe Mall was not programmed to send such messages. Trial Tr. 4/28/10 P.M., 83:1-23. Mr. Tittel also failed to explain how the CompuServe Mall reference disclosed a "shopping cart database," as construed by the Court. Mr. Trevor recognized that the references did not disclose such a database. Trial Tr. 4/28/10 P.M., 79:19–80:2. Soverain's expert, Dr. Michael Shamos, relying on Mr. Trevor's trial testimony regarding the CompuServe Mall, presented evidence that the CompuServe Mall did not have a shopping cart message with a product identifier because there was no need for a product identifier. Trial Tr. 4/29/10 P.M., 162:18–165:9. Dr. Shamos further testified that CompuServe Mall did not contain a "shopping cart database" because the personal holding files kept in the main memory failed to meet the Court's construction of "shopping cart database." Trial Tr. 4/29/10 P.M., 165:10–168:17. The jury was free to disbelieve Mr. Tittel's expert testimony, and the existence of contrary testimony by Dr. Shamos supports the jury's conclusion that the CompuServe Mall does not anticipate claims 35 and 51 of the '314 patent.

With regard to obviousness, the Court granted Soverain's motion for JMOL of no obviousness and did not send the obviousness issue to the jury. Newegg's expert, Mr. Tittel, did not

express any opinions on obviousness or conduct a proper *Graham*[4] analysis.  Newegg contends that

it need not present expert testimony on the ultimate legal issue of obviousness and thus it was error

for the Court to deny Newegg the opportunity to argue obviousness to the jury and submit the issue

for a jury finding.  The Federal Circuit has made clear that "[t]here must be some articulated

reasoning with some rational underpinning to support the legal conclusion of obviousness."

*Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008).  In *Proveris Scientific*

*Corp. v. Innovasystems, Inc.*, the Federal Circuit upheld the district court's decision to require

defendants to present expert testimony in order to establish anticipation and obviousness.  536 F.3d

1256, 1267–68 (Fed. Cir. 2008).  As in *Proveris*, the subject matter in this case "is sufficiently

complex to fall beyond the grasp of an ordinary layperson."  *Id*.  Accordingly, because Newegg did

not meet its burden of establishing a prima facie case of obviousness of the asserted claims, the

Court stands by its prior decision granting Soverain's motion for JMOL on obviousness.

Lastly, Newegg asserted various grounds of alleged error in support of its MNT.  First, the

Court's admission of evidence related to the existence of settlement licenses was not prejudicial to

Newegg because neither the licenses themselves nor any evidence relating to the specific terms of

the licenses were admitted.  In fact, the Court only allowed Soverain to state the names of its well-

known licensees to rebut Newegg's offering of license agreements to smaller companies.  Second,

while the Court's exclusion of the belatedly produced CompuServe Mall materials caused only

minor prejudice to Newegg, admitting these materials on the eve of trial would have been highly

prejudicial to Soverain.  Furthermore, Newegg can hardly claim prejudice with regard to the Court's

exclusion of the belatedly produced documents given the Court's admission of the CompuServe

---

[4] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966).

Manuals over Soverain's strenuous objections.  Third, although Newegg contends the Court failed to instruct the jury that a witness's testimony only has to be corroborated if the witness is an interested party, Newegg's allegation of charge error is without merit.  "[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest."  *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999); *see also Adenta GMBH v. Orthoarm, Inc.*, 501 F.3d 1364 (Fed. Cir. 2007).  Lastly, as previously discussed, the Court's dismissal of Newegg's obviousness claims at the close of evidence does not warrant a new trial.

In sum, the jury's verdict on invalidity was not without support and certainly not against the great weight of the evidence.  Thus, based on the foregoing reasons, the Court **DENIES** Newegg's motion for JMOL and MNT on invalidity of the patents-in-suit.

### SOVERAIN'S MOTION FOR PREJUDGMENT INTEREST AND COSTS, POST-VERDICT DAMAGES, AND POST-JUDGMENT INTEREST

Soverain moves for prejudgment interest and costs, post-verdict damages until the time of judgment, and post-judgment interest.  Soverain's request for post-judgment interest is uncontested and is, accordingly, granted pursuant to the provisions of 28 U.S.C. § 1961.

Soverain is also entitled to an award of prejudgment costs.  35 U.S.C. § 284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").  Soverain shall provide the clerk of this Court with a detailed bill of costs pursuant to Local Rule CV-54.

With regard to prejudgment interest, Soverain calculates prejudgment interest based on the

jury's $2,500,000 award using the prime interest rate, compounded quarterly.  Newegg does not dispute that Soverain is entitled to prejudgment interest, but argues that prejudgment interest is properly calculated using the U.S. Treasury Bill rate, not prime rate, and that $2,500,000 is not the proper amount from which prejudgment interest should be calculated.  As Newegg's arguments regarding the proper damages award have been previously addressed and rejected, and the Court has determined it will not alter the jury's award of $2,500,000, prejudgment interest will be calculated on this amount.

The interest rate used to calculate prejudgment interest and the method and frequency of compounding is left to the discretion of the district court.  *See Uniroyal, Inc. V. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus.,* Inc., 862 F.2d 1564, 1579–80 (Fed. Cir. 1988)(citing *Bio-Rad Labs.*, 807 F.2d at 969).  Interest should be awarded from the date of infringement to the date of final judgment.  *Nickson Indus., Inc. v. Rol Mfg*, 847 F.2d 795, 800 (Fed. Cir. 1988).  Accordingly, prejudgment interest shall be awarded to Soverain on the $2,500,000 damages award at the prime rate as of August 11, 2010 compounded monthly through July 31, 2010 and compounded daily for the month of August 2010.  Interest should be calculated from the date of infringement through the date of final judgment.

With regard to post-verdict damages, Soverain calculated a daily rate of $2,900 for post-verdict damages by extrapolating the jury's award of $2,500,000.  *See* Nawrocki's Post-Verdict Declaration, Docket No. 403-2, at 2–3.  Soverain's damages expert divided the number of Newegg online sales transactions from January 31, 2010 to April 30, 2010 by 120 days to yield a rate of 32,844 transactions per day.  *Id*.  Soverain then applied a per transaction royalty of $0.088 to yield an ongoing royalty of $2,900 per day of infringement until final judgment.  *Id*.  Newegg utilized

Soverain's per transaction rate solely for purposes of calculating post-verdict damages, but maintains that the $2,900 per day royalty must be reduced to $966.67 per day to account for Newegg's single-item sales transactions.  The Court has previously addressed and rejected Newegg's argument regarding single-item sales.  Accordingly, post-verdict damages shall be awarded to Soverain in the amount of $2,900 per day until final judgment.

### SOVERAIN'S MOTION FOR PERMANENT INJUNCTION OR, IN THE ALTERNATIVE, ONGOING ROYALTIES

**Permanent Injunction**

Soverain requests an order permanently enjoining Newegg from using the technology claimed in Soverain's '314 and '492 patents to operate its infringing websites and any colorable variation thereof.  Soverain proposes the following language:

> Newegg, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who receive actual notice hereof, are hereby restrained and enjoined, pursuant to 35 U.S.C. § 283 and Fed. R. Civ. P. 65(d), from:
>
> 1. infringing or inducing others to infringe U.S. Patent No. 5,715,314 (the '314 patent) through operation of the www.newegg.com, www.newegg.ca, or www.neweggmall.com websites, or any colorable variation thereof, including www.biz.newegg.com, through and including the expiration of the '314 patent, February 3, 2015; and
>
> 2. infringing or inducing others to infringe U.S. Patent No. 5,909,492 (the '492) patent through operation of the www.newegg.com, www.newegg.ca, or www.neweggmall.com websites, or any colorable variation thereof, including www.biz.newegg.com, through and including the expiration of the '492 patent, October 24, 2014.

Soverain's Proposed Order Granting Injunctive Relief, Docket No. 403-12.  Importantly, Soverain is seeking to enjoin www.biz.newegg.com, a website that is not part of any of the accused systems.

The decision to grant or deny injunctive relief is within the district court's discretion, which

should be exercised consistent with traditional principles of equity. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006). A party is entitled to a permanent injunction only if: "1) [the party] has suffered an irreparable injury; 2) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the [parties], a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391.

First, Soverain argues that its licensing program will be irreparably harmed if Newegg is not enjoined from using Soverain's patented technology. Soverain contends that if Newegg is not enjoined after having been adjudged an infringer, other infringers will be encouraged to risk litigation, rather than take a license. Although a patent holder may in some cases establish irreparable harm by showing that an existing infringement precludes his ability to license, it is too speculative in this case to assume that third parties will choose to risk litigation rather than license Soverain's technology simply because Newegg has not been enjoined. *See z4 Techs., Inc. v. Microsoft Corp.*, 434 F. Supp. 2d 437, 440 (E.D. Tex. 2006) ("There is no logical reason that a potential consumer or licensee of z4's technology would have been dissuaded from purchasing or licensing z4's product activation technology for use in its own software due to Microsoft's infringement."); *but see Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 492 F. Supp. 2d 600, 604 (E.D. Tex. 2007) ("*CSIRO*") (finding harm to a licensing program sufficient to establish irreparable harm where the patent holder research institution relied heavily on its ability to license to finance its research and development for frontier projects). In addition, Soverain and its predecessors have extensively licensed the patents-in-suit, and Soverain's patent licensing program has largely focused on obtaining monetary objectives, rather than non-monetary

26

objectives (e.g., cross licensing for resolution of litigation).   Soverain's focus on monetary objectives does not favor an injunction.   *Cf. CSIRO*, 492 F. Supp. 2d at 604 (finding that CSIRO's harm was "not merely financial").   Furthermore, although Soverain contends that its Transact product is a direct competitor to the www.neweggmall.com website, any possible competition between Newegg Mall and Transact is too insubstantial to support an injunction.   Soverain has not established any competition with respect to www.newegg.com and www.newegg.ca.   Thus, this factor weighs against enjoining Newegg.

Second, Soverain contends that monetary remedies are inadequate to compensate Soverain because the injury to Soverain and the value of its technology are not quantifiable.   Soverain argues the harm that will result from an inability to license its technology to its competitors without engaging in a full-fledged trial is both incalculable and irreparable.   The Court rejects these arguments as purely speculative.   Moreover, "[w]hen the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest."   *eBay*, 547 U.S. at 396. Newegg argues that monetary damages would be adequate to compensate Soverain because the portions of its website relating to shopping cart functionality constitute less than 1% of the total lines of code that make up its system.   While this may be true, Soverain has shown that its patented technology is "necessary" to Newegg's e-commerce system.   Trial Tr. 4/28/10 A.M., 98:3-14; Trial Tr. 4/29/10 P.M., 30:20–31:4.   Although this case presents a unique situation where the infringing component of Newegg's system is a small, yet necessary portion of the entire system, it is equivocal whether this is a situation where "the product is the invention."   *Compare CSIRO*, 492 F. Supp. 2d

at 605–06 (finding monetary damages less adequate to compensate for infringement because the infringement related to "the essence of the technology"), *with z4*, 434 F. Supp. 2d at 440 (finding the infringing technology was "a small component of [Microsoft's] software" because it "in no way related to the core functionality for which the software is purchased by consumers").  However, the jury's $2.5 million damages award, which represents only a fraction of the $22.6 million advocated by Soverain, demonstrates that the infringed claims constitute a small part of the total value of Newegg's system.  Accordingly, this factor also weighs against enjoining Newegg.

The balance of hardships favors Newegg.  Soverain only argues its licensing program will suffer if Newegg is not enjoined.  It is clear from Soverain's briefing that its licensing program has focused on obtaining purely monetary objectives.  While enjoining Newegg from operating its website would have a significant effect on Newegg and its e-commerce system, the absence of an injunction would not significantly harm Soverain because monetary remedies are adequate to compensate Soverain for Newegg's continued infringement.  Thus, the balance of hardships weighs against enjoining Newegg.

Because Soverain has not shown irreparable harm in the absence of a permanent injunction, any harm Soverain might suffer can be adequately remedied through the recovery of monetary damages, and the balance of hardships weighs in favor of Newegg, an injunction would not serve the public interest and is improper in this instance.  Thus, the Court **DENIES** Soverain's motion for a permanent injunction.

## Ongoing Royalties

In the absence of an injunction, Soverain requests an award of ongoing royalties for the remaining life of the '314 and '492 patents.  "Under some circumstances, awarding an ongoing

royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007) ("*Paice II*"). "Even though a permanent injunction may no longer be proper in many patent cases in light of *eBay*, an ongoing royalty rate must still adequately compensate a patentee for giving up his right under the law to exclude others from making, using, selling, offering for sale or importing his invention." *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 630 (E.D. Tex. 2009) ("*Paice III*"). In addition, the Court must account for the change in the legal relationship between the parties. "Failing to consider the parties' changed legal status would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." *Paice III*, 609 F. Supp. 2d at 628. Furthermore, an on-going post-verdict royalty is appropriately higher than the jury's pre-verdict reasonable royalty. *See Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 n.2 (Fed. Cir. 2008); *Creative Internet Adver. Corp. v. Yahoo!, Inc.*, 674 F. Supp. 2d 847, 861 (E.D. Tex. 2009).

Moreover, the Federal Circuit has encouraged parties to negotiate a license amongst themselves regarding the future use of a patented technology before imposing an ongoing royalty. *See Paice III*, 609 F. Supp. 2d at 623 (citing *Paice II*, 504 F.3d at 1315). From the parties' post-verdict briefing on the ongoing royalty issue, as well as the parties' settlement negotiation history thus far, it is clear that further license negotiation would be fruitless. Thus, the Court is faced with the task of determining an appropriate ongoing royalty arising from a post-verdict hypothetical negotiation, taking into account the changed relationship between the parties. *See Creative,* 674 F. Supp. 2d at 860.

Newegg is now an adjudged infringer and Newegg's continued infringement is both

voluntary and intentional, making Newegg's continued infringement willful.  *See Paice III*, 609 F.

Supp. 2d at 628.   In addition, both Newegg and Soverain's financial position has changed

dramatically since the hypothetical negotiation.   Newegg is now the second largest online-only

retailer and has announced its plans for an initial public offering.   Soverain's licensing program has

had recent success as Soverain has entered into seven agreements with large e-commerce retailers,

including Amazon and TigerDirect.   As expected, the parties have markedly different views of how

these changes affect their respective negotiating positions.   The parties' changed financial positions

appear to cancel each other out because each party is more successful today than they were at the

time of the hypothetical negotiation.   However, the Court cannot ignore Newegg's adjudged infringer

status in determining an appropriate ongoing royalty.

Reducing the jury's verdict to a per-transaction rate results in an award equal to $0.088 per

Newegg transaction.   Soverain contends that an appropriate ongoing royalty, taking into account the

changed legal and factual circumstances, is at least $0.20 per transaction.   Newegg contends that

Soverain's proposed ongoing royalty is unreasonable because Soverain has failed to take into

account Newegg's proposed design-arounds for the shopping cart claims and hypertext statement

claims.   Newegg argues that these design-arounds should lower the parties' expectations regarding

any ongoing royalty or eliminate the need for such royalty altogether.   Newegg advocates for an

ongoing royalty of 1.25 cents per $100 transaction, or in the alternative, $0.088 per transaction

because the parties' various changed circumstances cancel each other out.

Newegg's 2009 profit rate of approximately 2.5% yields an operating profit of $4.68 per

transaction.  *See* Nawrocki's Post-Verdict Declaration, Docket No. 403-2, at 13.   Although Judge

Folsom in *Paice III* applied a 25% Rule of Thumb to the profit rate as a starting point to determine

an ongoing royalty, such an approach is not in line with the jury's verdict in this case because $0.088 per Newegg transaction represents only 1.88% of Newegg's profits. Accordingly, the Court uses Soverain's proposal of $0.20 as a starting point. Even taking into account Newegg's adjudged infringer status, the jury's award of only $0.088 per transaction (1.88% of Newegg's profits) counsels against an ongoing royalty of $0.20 per transaction (4.27% of Newegg's profits). *See Paice III*, 609 F. Supp. 2d at 630 ("[T]he jury's award for past damages . . . counsels in favor of a reduction."). If Newegg proves successful in designing-around the shopping cart claims and hypertext statement claims, it will be freed of the obligation to pay ongoing royalties. When the time comes, Soverain will have the burden of proving that Newegg's design-arounds are not colorably different and thus still infringing. *See Creative,* 674 F. Supp. 2d at 855. Although Newegg's proposed re-designs do not preclude the post-verdict relief Soverain is entitled to given Newegg's adjudged infringement, the Court does consider Newegg's proposed design-arounds because "the costs of switching to an alternative design is a factor that the parties would consider in arriving at an appropriate ongoing royalty rate." *Paice III*, 609 F. Supp. 2d at 627. Based on the foregoing reasons, and the fact that Soverain did not account for Newegg's proposed design-arounds in its $0.20 proposal, the Court finds it is reasonable to reduce Soverain's proposal by 25%.

Thus, taking into account the changed legal and factual circumstances occurring since the first hypothetical negotiation, the Court **GRANTS** Soverain's motion for ongoing royalties and concludes that $0.15 per transaction is an appropriate ongoing royalty to adequately compensate Soverain for Newegg's continued infringement.

## NEWEGG'S MOTION TO STRIKE EVIDENCE

Newegg moves to strike Mr. Nawrocki's entire declaration and portions of Katharine

31

Wolanyk's declaration as unreliable, irrelevant, and inadmissible.  Both declarations were submitted by Soverain in support of its post-verdict motions.  The Court overrules Newegg's objections to these declarations and **DENIES** Newegg's motion to strike.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** in part Soverain's motion for JMOL on infringement and MNT on damages (Docket No. 402), **GRANTS** in part Soverain's motion for permanent injunction or, in the alternative, ongoing royalties (Docket No. 403), **GRANTS** in part Soverain's motion for pre-judgment interest, post-verdict damages, and post-judgment interest (Docket No. 404), and **DENIES** all other motions.

**So ORDERED and SIGNED this 11th day of August, 2010.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**