**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **SOVERAIN SOFTWARE LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:07 CV 511** |
| | § | **PATENT CASE** |
| **NEWEGG INC.** | § | |
| | § | |
| **Defendant** | § | |

<u>**COURT'S CHARGE**</u>

MEMBERS OF THE JURY:

You have heard the evidence in this case.  I will now instruct you on the law that you must apply.  It is your duty to follow the law as I give it to you.  On the other hand, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.  After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist the jury in understanding the evidence and the parties' contentions.

**1.      GENERAL INSTRUCTIONS**

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  Answer each question on the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 1.1    Considering Witness Testimony

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it or speculate as to what the witness would have testified to, if he or she had been permitted to answer the question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse

2

of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**1.2     How to Examine the Evidence**

Certain testimony in this case has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weight as if the witness had testified from the witness stand in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.  In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness.  The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**1.3     Expert Witnesses**

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – called an expert witness – is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he or she testifies regularly as an expert witness and that income from such testimony represents a significant portion of the expert's income.

**2.     SUMMARY OF CONTENTIONS**

I will first give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on these issues.

**2.1     Soverain's Contentions**

In this case, the plaintiff, Soverain, contends that the defendant, Newegg, uses technology for its websites that infringes claims 35 and 51 of the '314 patent; claims 17, 41, and 61 of the '492 patent; and claims 60 and 79 of the '639 patent.  Soverain asks you to award damages for the infringement.

**2.2     Newegg's Contentions**

Newegg contends that it does not infringe Soverain's patents and that Soverain's patents are invalid.  Newegg asks that you deny Soverain any damages.

**2.3    Burdens of Proof**

Soverain has the burden of proving infringement by a preponderance of the evidence. Preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true.  In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  It will be your job to determine whether Soverain has met its burden of proving that infringement of the asserted patent claims is more likely true than not true.

Newegg bears the burden of proving invalidity by clear and convincing evidence.  Proof by clear and convincing evidence is a greater burden of proof than proof by a preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  In determining whether any fact has been shown by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.  It will be your job to determine whether Newegg has met its burden of proving the invalidity of the '314, '492, and '639 patent claims.

**3.    CLAIMS OF THE PATENTS-IN-SUIT**

As I told you at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.  Claims are usually divided into parts or steps, called "elements" or "limitations."  For

example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs on the tabletop.  The tabletop, legs and glue are each a separate element of the claim.

**3.1    Construction of the Claims**

In deciding whether or not the accused technology infringes a patent, the first step is to understand the meaning of the words used in the patent claims.  It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case. It may be helpful to refer to the copies of the '314, '492 and '639 patents that you have been given as I discuss the claims at issue here.

**3.2    Independent and Dependent Claims**

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.  Claim 17 of the '492 patent is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the elements of the other claim to which it refers, as well as the additional elements recited in the dependent claim itself.  In this way, the claim "depends" on another claim.  To determine what a dependent claim covers, it is necessary to look both at the dependent claim and the other claim or claims to which it refers.

When analyzing the validity and alleged infringement of any dependent claim asserted by Soverain, you must consider all limitations of both the dependent claim and the independent claim from which it depends.  For example, claims 35 and 51 of the '314 patent are dependent claims of independent claim 34.  Because dependent claim 35 includes all of the limitations of claim 34, if claim 34 of the '314 patent is not infringed, then claim 35 of the '314 patent cannot be infringed.  Similarly, if claim 34 of the '314 patent is not anticipated, then claim 35 of the '314 patent cannot be anticipated.

**3.3     Interpretation of Claims**

In deciding whether or not the accused technology does or does not infringe a patent claim, or whether the asserted prior art does or does not invalidate a patent claim, the first step is to understand the meaning of the words used in the patent claims.  The meaning of the words in the patent claims is the same for both the infringement and the validity determinations.

As I stated earlier, it is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  In accordance with that duty, I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in Appendix A to this Charge.  You must accept the interpretations contained in Appendix A as correct.  The claim language I have not interpreted for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the field of technology.

**3.4     Glossary of Patent Terms**

A glossary of patent terms is contained in Appendix B to this Charge.

**4.      INFRINGEMENT**

Any person or business entity that, without the patent owner's permission, makes, uses, sells, or offers to sell a device, or practices a method, that is covered by at least one claim of a patent,

before the patent expires, infringes the patent.  A patent owner has the right to stop others from infringing the patent claims during the life of the patent.  In this case, Soverain asserts that Newegg has infringed the patents-in-suit.  Soverain has the burden of proving infringement by a preponderance of the evidence.

Only the claims of a patent can be infringed.  You must consider each claim individually. You must compare each of the asserted claims, as I have defined them, to the accused methods and systems used by Newegg's websites, and determine whether or not there is infringement.  You must not compare the accused systems or methods with any specific example set out in the patents.

Soverain has alleged that Newegg infringes the asserted claims both directly and indirectly. I will now explain each of the types of infringement in more detail.

## 4.1     Direct Infringement

If any person makes, uses, sells, or offers to sell what is covered by the claims of a patent without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called direct infringement.

A patent claim is directly infringed only if the accused system or method includes each and every element in that patent claim.  If you find that the accused system or method includes each element or step of the claim, then that system or method infringes the claim even if such system or method contains additional elements or steps that are not recited in the claim.  If the accused system or method does not contain one or more of the limitations recited in a claim, then that system or method does not directly infringe that claim.  An accused system infringes a claim if it is reasonably capable of satisfying the claim elements, even though it may also be capable of non-infringing modes of operation.

8

Direct infringement requires a party to perform or use each and every step of a claimed method, literally or under the doctrine of equivalents. Where no one party performs all of the steps of a claimed method but multiple parties combine to perform every step of the method, that claim will nevertheless be directly infringed if one party exercises control or direction over the entire method so that every step is attributable to the controlling party. Mere arms-length cooperation between the parties is not enough to establish direct infringement.

A person can directly infringe a patent without knowing that what it is doing is an infringement of the patent.  It may also directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent and even if it did not know of the patent. Infringement does not require proof that the person copied a product or the patent.

A claim limitation may be directly infringed in one of two ways: either literally or under the doctrine of equivalents.

### 4.1.1   Literal Infringement

A claim limitation is literally met if it exists in the accused system or method just as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as it would be understood by one of skill in the art.

### 4.1.2   Doctrine of Equivalents

A claim limitation is present in an accused system or method under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused system or method are insubstantial.  One way to determine whether a difference is insubstantial is to look at whether the element of the accused system or method performs substantially the same function in substantially the same way to achieve substantially the same result as the element recited in the patent claim.

You may also consider whether, at the time of the alleged infringement, a person having ordinary skill in the field of technology of the patent would have known of the interchangeability of the alternative feature and the unmet requirement of the claim.

The interchangeability of the two features must have been known to persons of ordinary skill in the field of technology at the time the infringement began.

Thus, the inventor need not have foreseen and the patent need not describe all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purposes of the doctrine of equivalents.

## 4.2    Active Inducement of Infringement

Soverain alleges that Newegg is also liable for infringement by actively inducing others to directly infringe claims 35 and 51 of the '314 patent and claims 17, 41, and 61 of the '492 patent.

As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

A person is liable for active inducement of a claim only if:

(1)    the person takes action during the time the patent is in force which encourages acts by someone else; and

(2)    the encouraged acts constitute direct infringement of that claim; and

(3)    the person is aware of the patent, and knows or should have known that the encouraged acts constitute infringement of that patent; and

(4)    the person has an intent to cause the encouraged acts; and

(5)    the encouraged acts are actually carried out by someone else.

In order to prove active inducement, Soverain must prove that each of these requirements is met by a preponderance of the evidence.

Intent to cause the acts that constitute direct infringement may be demonstrated by evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use.   In order to establish active inducement of infringement, it is not sufficient that Newegg was aware of the act(s) that allegedly constitute the direct infringement.  Rather, you must find specifically that Newegg intended to cause the acts that constitute the direct infringement and must have known or should have known that its action would cause the direct infringement.  If you do not find that Newegg specifically meets these intent requirements, then you must find that Newegg has not actively induced the alleged infringement.

## 5.    INVALIDITY

Newegg has challenged the validity of the '314, '492, and '639 patent claims.  Newegg must prove that a patent claim is invalid by clear and convincing evidence.  An issued patent is afforded a presumption of validity based on the presumption that the United States Patent and Trademark Office acted correctly in issuing a patent.

The "effective filing date" of an application is generally the date that the application was actually filed at the U.S. Patent Office, but in instances with continuation applications, the effective filing date can be earlier.  A continuation application is an application filed during the pendency of a parent application that claims inventions that were disclosed in the parent application and claims the priority date of the parent application.   A claim of priority means that the continuation application is claiming entitlement to the same filing date as the parent application, such that the continuation is treated as if it were filed on the same day as the parent application.  The date that the parent application was filed is the "effective filing date" even though the application may have been filed months or years later.  The effective filing date determines whether certain items constitute

prior art that can be used to invalidate a patent.  Here, the '639 patent application was filed as a continuation of the '780 patent and claims priority to the '780 patent.

I will now explain to you Newegg's grounds for invalidity in detail.  In making your determination as to invalidity, you should consider each claim separately.

## 5.1    Anticipation for Lack of Novelty

A patent claim is invalid if the claimed invention is not new.  For a claimed invention to be invalid on the basis of anticipation because it is not new, all of its elements must be in a single previous device or method, or described in a single previous publication or patent.  These items are called "prior art references."  You may not combine two or more items of prior art to prove anticipation.  Newegg must prove by clear and convincing evidence that the various claims of the patents-in-suit are anticipated by a single item of prior art.

The disclosure in a prior art reference does not have to be in the same words as the claim, but all the elements of the claim must be there, either stated expressly or necessarily implied or inherent in the level of ordinary skill in the field of technology of the patent at the time of the invention, so that someone of ordinary skill in the field of technology of the patent looking at that one prior art reference would be able to make and use the claimed invention.  Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.  Inherency may not be established by probabilities or possibilities.  The mere fact that a certain thing may coincidentally result from a given set of circumstances is not sufficient.

I will now explain the different ways in which Newegg can show that the various claims of the patents-in-suit are not new.

### 5.1.1   Anticipation by Printed Publication or Prior Patent

A patent claim is invalid if the invention defined by that claim was described in a printed publication or patented in the United States or foreign country before it was invented by the patent applicant, or more than one year prior to the effective filing date of the United States patent application.  Printed publications may include issued patents.

A printed publication or patent will not be an anticipating prior art reference unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to enable one of ordinary skill in the field of technology to practice the invention without undue experimentation.  Factors to be considered in determining whether a disclosure would require undue experimentation include:

(1)     the quantity of experimentation necessary;

(2)     the amount of direction or guidance disclosed in the patent or publication;

(3)     the presence or absence of working examples in the patent or publication;

(4)     the nature of the invention;

(5)     the state of the prior art;

(6)     the relative skill of those in the field of the technology;

(7)     the predictability of the art; and

(8)     the breadth of the claims.

A printed publication must be reasonably accessible to those members of the public who would be interested in its contents.  It is not necessary that the printed publication be available to every member of the public.  So long as the printed publication was available to the public, the form in which the information was recorded is unimportant.  The information must, however, have been

13

maintained in some permanent form, such as printed or typewritten pages, magnetic tape, microfilm, photographs, or photocopies.

A United States patent that was filed before the inventors of the patents-in-suit invented one of their claimed inventions is prior art with respect to those claimed inventions as of the date the United States patent was filed.  In other words, a U.S. Patent can be prior art as of its filing date if it was filed before the inventors of the patents-in-suit invented their inventions, even if the patent did not actually publish or issue until after the inventors invented their inventions.

### 5.1.2   Anticipation by Public Knowledge or Use by Another

A patent claim is invalid if the invention recited in that claim was publicly known or used in the United States by someone other than the inventor before the patent applicant invented it, or more than one year before the effective filing date of the United States patent application.

Private or secret knowledge, such as knowledge confidentially disclosed within a small group, is not enough to invalidate a patent claim.  A prior public use by another may anticipate a patent claim, even if the use was accidental or was not appreciated by the other person.  Thus, a prior public use may anticipate an invention even if the user did not intend to use the invention, or even realize he or she had done so.

### 5.1.3   Anticipation by Prior Invention

A patent claim is invalid if the invention defined by that claim was invented by another person in the United States before it was invented by the patentee, and that other person did not abandon, suppress or conceal the invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor.  An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose.  Thus, if another person reduces to

14

practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

A patentee who is not the first to reduce to practice can still be the first to invent if he can show two things:

(1)    that he conceived of the invention before the other party conceived of his invention; and

(2)    that he exercised reasonable diligence in reducing his invention to practice, from the time just before the other party conceived, to the time he reduced to practice.

Conception is the mental part of an inventive act, i.e., the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is to be applied in practice.

Reasonable diligence means that the inventor worked continuously in the United States on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

## 5.2    Corroboration of Oral Testimony

Oral testimony alone is insufficient to prove prior invention or that something is prior art. A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness, or a witness testifying on behalf of an interested party.  This includes any individual or company testifying that his invention or its invention predates the patents-in-suit.  Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the alleged prior art inventor's testimony has been corroborated.  For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the filing date of the patents-in-suit, that party must also have provided

some sort of corroborating evidence that agrees with that oral testimony.  If you find the party has not corroborated the oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony.  In making this determination, you should consider the following factors:

(1)    The relationship between the corroborating witness and the alleged prior user;

(2)    The time period between the event and this trial;

(3)    The interest of the corroborating witness in the subject matter of this suit;

(4)    Contradiction or impeachment of the witness's testimony;

(5)    Extent and detail of the corroborating witness's testimony;

(6)    The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

(7)    Probability that a prior use could occur considering the state of the art at the time; and

(8)    Impact of the invention on the industry, and the commercial value of its practice.

## 6.    DAMAGES

I have now instructed you as to the law governing Soverain's claims of patent infringement and Newegg's claims of invalidity.  If you find that Newegg has infringed a claim of the '314, '492, or '639 patent, then you must determine what damages Newegg must pay to Soverain for that infringement.  If, on the other hand, you find that Newegg has not infringed a claim of the '314, '492, or '639 patent, then Soverain is not entitled to any damages, and you should not make any findings about damages for that claim.

The fact that I am instructing you about damages does not mean that Soverain is or is not entitled to recover damages.  You should not interpret the fact that I have given instructions about Soverain's damages as an indication any way that I believe that Soverain should, or should not, win this case.  I am instructing you on damages only so that you will have guidance in the event you decide that Newegg is liable and that Soverain is entitled to recover money from Newegg.

## 6.1    Date Damages Begin

In considering damages, the time period is November 2, 2007, to the present.  It is undisputed that Soverain cannot recover any damages for any infringement of the patents-in-suit before November 2, 2007.

## 6.2    Reasonable Royalty – Generally

The patent laws specifically provide that the amount of damages that Newegg must pay Soverain for infringing Soverain's patents may not be less than a reasonable royalty for the use that Newegg made of Soverain's inventions.

A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to use the claimed invention.  The royalty payment generally reflects the value of the use of the claimed invention.  A reasonable royalty is the royalty that would have resulted from a hypothetical arms-length negotiation between Soverain's predecessor Open Market, and a company in the position of Newegg on the eve of infringement, with both sides to this negotiation willing to enter into a license and both sides to this negotiation operating under the assumptions that the patents are valid, the patents are infringed, and the licensee would respect the patents.

You are to decide what a reasonable royalty would be, based on circumstances as of the time just before Newegg began selling or using the patented inventions. You may consider any actual

profits made by Newegg and any commercial success of the patented inventions, but the amount of those profits is not determinative on the issue of what is a reasonable royalty.

Although the relevant date for the hypothetical reasonable royalty negotiation is the date that the infringement began, you may consider in your determination of reasonable royalty damages any evidence with respect to the expectations for the future that the negotiators had as of the eve of infringement and any actual profits by Newegg after that time, and any commercial success of the patented invention in the form of sales of the patents or infringing product after that time.  You may only consider this information, however, if it was foreseeable at the time the infringement began.

Soverain has the burden to prove by a preponderance of the evidence that it suffered the damages it seeks.  While Soverain is not required to prove damages with mathematical precision, it must prove its damages with reasonable certainty.  Soverain is not entitled to damages that are speculative.  Soverain's proof of damages must have a sound economic basis.

## 6.3    Reasonable Royalty – Factors

In deciding what is a reasonable royalty, you may consider the factors that Soverain and Newegg would consider in setting the amount Newegg should pay.  I will list for you a number of factors you may consider.  This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty.

(1)    Any royalties received by Soverain or its predecessors for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

(2)    Any rates paid by Newegg for the use of other patents comparable to the patents-in-suit.

(3)    The nature and scope of the license, as exclusive or nonexclusive; or as restricted or unrestricted in terms of territory, or with respect to the parties to whom the product may be sold.

(4)     Whether or not Soverain or any of its predecessors had an established policy and marketing program to maintain its patent exclusivity by not licensing others to use the inventions or by granting licenses under special conditions designed to preserve that exclusivity.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory and the same line of business.

(6)     The effect of selling the patented inventions in promoting sales of other products or inventions of Newegg; the existing value of the inventions to Soverain as a generator of sales of its non-patented items; and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the hypothetical license.

(8)     The established profitability of the inventions; their commercial success; and their current popularity.

(9)     The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results.

(10)     The nature of the patented inventions, the character of the commercial embodiment of the inventions as owned and produced by Soverain, and the benefits to those who have used the inventions.

(11)     The extent to which Newegg has made use of the patented inventions and any evidence that shows the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the inventions or analogous inventions.

(13)     The portion of the profits that is due to the patented inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Newegg.

(14)     Expert opinions as to what a reasonable royalty would be.

(15)     The amount that a licensor such as Open Market and a licensee such as Newegg would have agreed upon if both parties had been reasonably and voluntarily trying to reach an agreement.

19

In addition, it is proper for you to consider any economic or business factors that normally prudent business people would, under similar circumstances, reasonably take into consideration in negotiating the hypothetical license.

**6.4      Non-Infringing Alternatives**

In determining a reasonable royalty, you may consider whether or not Newegg had commercially acceptable non-infringing alternatives to taking a license from Open Market that were available at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.

**7.      INSTRUCTIONS FOR DELIBERATIONS**

You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be controlled by sympathy, prejudice, or public opinion.  All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong.  However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.  You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence.  Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you regarding your conduct during the trial.  After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  The notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.  You may now retire to the jury room to deliberate.

**APPENDIX A - CLAIM CONSTRUCTION FOR PATENTS-IN-SUIT**

| U.S. Patent Nos. 5,715,314 and 5,909,492 ||
|---|---|
| Claim Term, Phrase, or Clause | Court's Construction |
| A statement URL | A URL concerning a statement |
| Computer | A functional unit that can perform substantial computation, including numerous arithmetic operations, or logic operations without human intervention |
| Connected to | Having a link to . . . to send or receive data |
| Database | A collection of logically related data stored together in one or more computerized files |
| Document(s) | Any type of digital data |
| Hypertext link | A non-sequential web association which the user can use to navigate through related topics |
| Interconnected by a [computer network/public packet switched computer network] | To be connected by a [computer network/public packet switched computer network] |
| Message | A unit of information sent electronically |
| Modif[y] [the shopping cart in the shopping cart database] | To change [an instance of a shopping cart in a shopping cart database] |
| Payment message | A message relating to a payment for one or more products |
| Plurality of products added to . . . shopping cart / [Add a] plurality of respective products to a shopping cart / [add] . . . plurality of products to . . . shopping cart | Product identifiers which are added to an instance of a shopping cart in the shopping cart database / [add] identifiers of respective products to an instance of a shopping cart / [add] identifiers of products to an instance of a shopping cart |
| Product(s) | Anything that can be advertised, sold, and provided to a purchaser |

| U.S. Patent Nos. 5,715,314 and 5,909,492 ||
|---|---|
| Claim Term, Phrase, or Clause | Court's Construction |
| Public packet switched computer network | A packet switched computer network, accessible by the public through communication common carriers to provide data transmission services. "Packet switching" means a message-delivery technique in which small units of information (packets) are relayed through stations in a computer network preferably along the best route available between the source and the destination. "Public data network" is a network established and operated by common carriers for the specific purpose of providing low error-rate data transmission services to the public. |
| Record[] . . . in a database | Store[] in a database |
| Shopping cart | A stored representation of a collection of products |
| Shopping cart computer | A computer processing data associated with one or more shopping carts |
| Shopping cart database | A database of stored representations of collections of products, where "database" means a collection of logically related data stored together in one or more computerized files |
| Shopping cart message | A message concerning a shopping cart |
| Statement document comprising the purchase transaction records | A document that includes purchase transaction records |
| To cause said[/the/a] payment message to be activa ted to initiate a payment transaction | To cause an action associated with said[/the/a] payment message to initiate a payment transaction |
| Transaction detail hypertext link | Hypertext link to transaction detail |
| Transmit[ting/ed] | To send information over a communications channel |

23

| U.S. Patent Nos. 7,272,639 ||
|---|---|
| Claim Term, Phrase, or Clause | Court's Construction |
| A purchase request / a request to purchase | One or more messages requesting a purchase |
| Charging the user . . . according to the user information | Charging an account associated with the user according to the user information |
| Creating, responsive to the initial service request, the session identifier | Producing, in response to the initial service request, the session identifier |
| Forwarding . . . from the client to the server system | Sending . . . from the client to the server system |
| Fulfilling the purchase request based on the user information | Carrying out the purchase request based on the user information |
| Hypertext transfer protocol | Also known as HTTP, the client/server protocol used to access information on the World Wide Web |
| Initial service request | The first service request in a session |
| Returning | Sending back |
| Service request | A solicitation of services from a client to a server. A service request may entail the exchange of any number of messages between the client and the server |
| Session | A series of requests and responses to perform a complete task or set of tasks between a client and a server system |
| Session identifier | A text string that identifies a session |
| User identifier | A text string that identifies a user |

| U.S. Patent Nos. 7,272,639 | |
|---|---|
| Claim Term, Phrase, or Clause | Court's Construction |
| Validating, at the server system, the appended session identifier / validating the session identifier appended to the service request | At the server system, determining the validity of the appended session identifier |

## APPENDIX B - GLOSSARY OF PATENT TERMS

The following are definitions for patent terms that you should use in this case.

Application – The initial papers filed by the applicant in the United States Patent and Trademark Office (also called the "Patent Office" or "PTO").

Claims - Claims are the numbered sentences appearing at the end of the patent and define the invention.  The words of the claims define the scope of the patent owner's exclusive rights during the life of the patent.

Comprising – The beginning, or preamble, portion of each of the asserted independent claims uses the word "comprising."  "Comprising" means "including" or "containing."  A claim that uses the word "comprising" is not limited to systems or methods having only the elements that are recited in the claim elements, but also covers systems or methods that have all of the elements and add additional elements without changing the required elements.  Take as an example a claim that covers a table.  If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.  However, if a table contains a tabletop, legs, but no glue, then the claim does not cover the table.

Continuation – A continuation application is a second application for the same invention disclosed in a prior patent application and filed before the first application becomes patented.  The continuation should not include anything which would constitute new matter if inserted in the original application.  An amendment to the specification of the continuation application that clarifies an express or inherent disclosure of the original parent application does not constitute new matter.

File Wrapper – See "Prosecution History" below.

License – Permission to use the patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other consideration.

26

Office Action – Communication from the patent examiner regarding the specification of the patent application and/or the claims pending in the patent application.

Ordinary Skill in the Art – From time to time in these instructions I will refer to a hypothetical person of "ordinary skill in the art" or a "person of ordinary skill in the field." This hypothetical person is presumed to be aware of all of the prior art and knowledge that existed in the field during the relevant time period.  The skill of the actual inventor and experts is irrelevant, because they may possess something that distinguishes them from workers of ordinary skill in the art.  Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the art, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

Parent Application – The term "parent" is applied to an earlier application of the inventor disclosing an invention.  A later application filed by the inventor may claim priority and relate back to the parent application with respect to an invention that was sufficiently disclosed in the parent application.

Patent Examiners – Personnel employed by the Patent Office who review (or examine) patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the disclosure adequately describes the invention.

Prior Art – Knowledge that is available to the public either prior to the invention by applicant or more than a year prior to the effective filing date of his/her patent application.

Prosecution History – The written record of proceedings in the Patent Office between the applicant and the Patent Office.  It includes the original patent application and later communications between the Patent Office and the applicant.  The prosecution history may also be referred to as the "File wrapper" of the patent during the course of this trial.

27

<u>Reexamination</u> – At any time during the enforceability of a patent any person may file a request for the Patent Office to conduct a second examination (the reexamination) of any claim of the patent on the basis of prior art patents or printed publications which that person states to be pertinent and applicable to the patent.

<u>References</u> – Any item of prior art used to determine patentability.

<u>Said</u> – The patent claims use the word "said" instead of "the."  Use of the word "said" in the beginning of a phrase indicates that it is referring to a previous use of the same or a similar phrase.

<u>Specification</u> – The specification is the information that appears in the patent and concludes with one or more claims.  The specification includes the written text, the claims, and the drawings. In the specification, the inventor sets forth a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so.